**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| The Scotts Company, LLC, *et al.* | ) | Case No: Civil Action No. 2:23-cv-001541 |
| | ) | |
| **Plaintiffs,** | ) | Judge Edmund A. Sargus |
| | ) | Magistrate Judge Elizabeth Preston Deavers |
| v. | ) | |
| | ) | |
| SBM Life Science Corp., | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### DEFENDANT'S PARTIAL MOTION TO DISMISS

---

Pursuant to FED. R. CIV. P. 12(b)(6), Defendant SBM Life Science Corp. ("SBM") hereby moves the Court for the entry of an order dismissing Counts III, VI, VII and VIII of the Complaint filed herein [Doc. 1] for failure to state a claim upon which relief can be granted.

SBM also moves the Court, pursuant to FED. R. CIV. P. 12(b)(6), for the entry of an order dismissing Counts I and III as to Plaintiff The Scotts Company, LLC because it lacks statutory standing to assert such claims.

The grounds supporting this Motion are set forth in the memorandum of law submitted herewith.

Respectfully Submitted,

*/s/ Katherine C. Ferguson*
Katherine C. Ferguson (0079207)
Lindsay M. Nelson (0095560)
Kooperman Mentel Ferguson Yaross Ltd.
250 East Town Street, Suite 200
Columbus, Ohio 43215
Telephone: (614) 344-4800
Facsimile: (614) 344-4800
kferguson@kmfylaw.com
lnelson@kmfylaw.com

Robert J. Morris (*pro hac vice* forthcoming)
Philip J. Cardinale (*pro hac vice* forthcoming)
Danielle B. Dobosz (*pro hac vice* forthcoming)
Smith Anderson Blount Dorsett Mitchell
& Jernigan, LLP
2300 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Counsel for SBM Life Sciences Corp.*

## <u>MEMORANDUM OF LAW</u>

## <u>COMBINED TABLE OF CONTENTS AND SUMMARY OF ARGUMENT</u>

<u>Page</u>

**TABLE OF CONTENTS** ................................................................................................. i

**TABLE OF AUTHORITIES** ......................................................................................... iv

**I.    INTRODUCTION** ................................................................................................ 1

**II.   ALLEGATIONS OF COMPLAINT** ................................................................. 2

    **A.  Asserted Trademarks** ................................................................................. 2

        **The "Red Mark"** .................................................................................. 2

        **The "Red Design Mark"** .................................................................... 3

        **Ownership of the Asserted Trademarks** ......................................... 4

        **Allegations That The Asserted Trademarks Are "Famous"** ........... 5

    **B.  Asserted Trade Dress** ................................................................................. 6

**III.  LAW AND ARGUMENT** ................................................................................... 7

    **A.  Legal Standard On Motion To Dismiss** ................................................... 7

    **B.  Count III Fails To State A Viable Claim For Trademark Dilution** ...... 8

> <u>*Summary:*</u> A trademark qualifies for protection against dilution under 15 U.S.C. § 1125(c) only if it is "famous." 15 U.S.C. 1125(c)(1); *see Kibler v. Hall,* 843 F.3d 1068, 1083 (2016). A mark is famous if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine whether a mark possesses the requisite degree of recognition to qualify as famous, courts consider: (i) the duration, extent and reach of advertising and publicity around the mark; (ii) amount, volume, and extent of product sales under the mark; (iii) actual recognition of the mark; and (iv) whether the mark is federally registered. *Id.* (i)-(iv); *see Kibler,* 843 F.3d at 1083. Count III should be dismissed because the Complaint fails to allege facts plausibly showing that the asserted trademarks are "famous."

    **1.    Only Marks That Are "Household Names" Can Be Considered "Famous"** ... 9

> <u>*Summary:*</u> A trademark is famous only if it is a "household name," which means that "when the general public encounters the mark in almost any context, it associates the term, at least initially, with the mark's owner." *Kibler,* 843 F.3d at 1083. Examples of marks that are famous are COCA-COLA soft drinks, BUDWEISER beer, CAMEL cigarettes, and BARBIE dolls.

i

**2.    The Complaint Lacks Factual Allegations Necessary To Support The First Factor Considered In Determining Whether A Mark Is "Famous" (Duration, Extent And Geographic Reach Of Advertising And Publicity Of Mark) ............... 10**

**3.    The Complaint Lacks Factual Allegations Necessary To Support The Second "Fame" Factor (Amount, Volume, and Geographic Sales of Goods Under Mark)12**

**4.    The Complaint Lacks Factual Allegations Necessary To Support The Third "Fame" Factor (Extent Of Actual Recognition Of Mark) ........................................ 12**

**5.    Regarding The Fourth "Fame" Factor, The Mere Fact That A Mark Is Registered Is Not Sufficient To Establish That It Is "Famous" .............................. 13**

**6.    The Complaint Does Not Allege Facts Plausibly Showing That Any Of The Asserted Marks Is A "Household Name," As A Trademark Dilution Requires.... 14**

**C.   Count VI Fails To State A Viable Claim For Unfair Competition Under The Lanham Act Relating To The "ORTHO Black Trade Dress" ............................ 14**

**1.    The Complaint Does Not Identify The Claimed Trade Dress Sufficiently .... 14**

*Summary:* "To recover for trade dress infringement under § 43(a) of the Lanham Act, a party must first identify what particular elements or attributes comprise the protectable trade dress." *Tumblebus Inc. v. Cramer*, 399 F.3d 764, 768 (6th Cir. 2005); 1 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 8.3 ("All courts agree that the elements of the alleged trade dress must be clearly listed and described."). Count VI should be dismissed because the Complaint does not identify the asserted "ORTHO Black Trade Dress" sufficiently to enable defendant or the Court to ascertain what the elements of the claimed trade dress are or how the claimed trade dress is allegedly distinctive.

**2.    The Complaint Does Not Plausibly Allege That The Product Line Bearing The Claimed Trade Dress Has A Consistent Overall Look ..................................... 18**

*Summary:* Count VI also should be dismissed because the Complaint seeks trade dress protection for some plurality of ORTHO "control products," yet it does not allege facts plausibly showing that the product line bearing the claimed trade dress has a "consistent overall look." *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 173 (3rd Cir. 2000); *see* 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:5.50 ("When the alleged trade dress consists of a certain look or style of different packaging for a number of different products, it is more difficult to prove that there is a common denominator among those packages which identifies plaintiff as the source. Plaintiff must prove that its alleged trade dress has a 'consistent overall look.'").

**D.   Counts VII And VIII Fail to State Valid Ohio State Law Claims for Trade Dress Infringement. ......................................................................................................... 25**

*Summary:* The analysis of an unfair competition claim under the Lanham Act is the same as for unfair competition claims under the Ohio Deceptive Trade Practices Act and Ohio common law. *ETW Corp. v. Jireh Publishing, Inc.,* 332 F.3d 915, 920 (6th Cir. 2003). For the same reasons that Count VI fails to state a valid claim for trade dress infringement under the Lanham Act, the companion claims arising under the Ohio Deceptive Trade Practices Act (Count VII) and under Ohio's common law of unfair competition (Count VIII) also fail.

**E. The Trademark Infringement Claim Under 15 U.S.C. § 1114 (1) (Count I) Should Be Dismissed As To Scotts LLC For Lack Of Statutory Standing** .............. 26

*Summary:* Count I of the Complaint asserts a claim for infringement of registered trademarks under 15 U.S.C. § 1114 (a), which permits a cause of action to be asserted thereunder only by "the registrant." The Complaint uses the defined term SCOTTS to refer to both The Scotts Company, LLC ("Scotts LLC") and OMS Investments, Inc. ("OMS"). To the extent SCOTTS' infringement claim under 15 U.S.C. § 1114(1) is asserted on behalf of Scotts LLC, it should be dismissed because OMS – not Scotts LLC – owns the asserted registrations. Scotts therefore lacks statutory standing under 15 U.S.C. § 1114(1). While a minority line of case law permits an exclusive licensee of a registered trademark to bring an infringement claim under 15 U.S.C. § 1114(1) if it is tantamount to an assignment, the Complaint makes no allegation that Scotts LLC holds an exclusive license to the asserted registrations.

**F. The Trademark Dilution Claim (Count III) Also Should Be Dismissed As To Scotts LLC For Lack Of Statutory Standing** ............................................................ 27

*Summary*: The plain language of 15 U.S.C. § 1125(c) makes clear that a claim for trademark dilution may be brought only by the mark's owner. To the extent SCOTTS' trademark dilution claim is asserted on behalf of Scotts LLC, it should be dismissed for lack of statutory standing because Scotts LLC is not the owner of the asserted marks.

**IV. CONCLUSION** .............................................................................................................. 28

## **TABLE OF AUTHORITIES**

**Cases**

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,*
    280 F.3d 619, 620 n. 2 (6th Cir. 2002) ........................................................................ 25

*American Customer Satisfaction Index, LLC v. Foresee Results, LLC,*
    2019 WL 3342340 *4 (E.D. Mich. July 25, 2019) ........................................................ 27

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................................ 7

*Audi AG v. D'Amato,*
    469 F.3d 534 (6th Cir. 2006) ....................................................................................... 9

*Avery Dennison Corp. v. Sumpton,*
    189 F.3d 868 (9th Cir. 1999) ....................................................................................... 9

*Bd. Of Regents v. KST Elec., Ltd.,*
    550 F. Supp. 657 (W.D. Tex. 2008) ............................................................................. 10

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................................ 7

*Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.,*
    339 F. Supp. 2d 944 (W.D. Mich. 2004). ..................................................................... 27

*Blockchange Ventures I GP, LLC v. Blockchange, Inc.,*
    2021 WL 4340648 (S.D.N.Y. Sept. 22, 2021) ............................................................... 8

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.,*
    2013 WL 6670584 *7 (S.D.N.Y. Mar. 29, 2013) ........................................................ 13

*Bodine Perry, PLLC v. Bodine,*
    2023 WL 2734679 *7 (N.D. Ohio Mar. 31, 2023) ....................................................... 26

*Brookwood Funding, LLC v. Avant Credit Corp.,*
    2015 WL 11504556 *4 (N.D. Ga. July 28, 2015) ........................................................... 8

*Coach Servs., Inc. v. Triumph Learning LLC,*
    668 F.3d 1356 (Fed. Cir. 2012) ......................................................................... 9, 10, 14

*Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn Mayer Inc.,*
    2020 WL 68775178 *9 (C.D. Cal. Oct. 23, 2020) ....................................................... 11

*Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.,*
    393 F.3d 755 (8th Cir. 2005) ....................................................................................... 9

*EVIG, LLC v. Mister Brightside, LLC,*
    2023 WL 5717291 *5 (D. Nev. Sept. 5, 2023) ............................................................. 16

*Fair Wind Sailing, Inc. v. Dempster,*
    764 F.3d 303 (3d Cir. 2014) .................................................................................... 15, 18

*Federal Treas. Enterprise Sojuzplodoimport v. SPI Spirits Ltd.,*
    726 F.3d 62 (2d Cir. 2013) ........................................................................................... 26

*Gavitt v. Born,*
    835 F.3d 623 (6th Cir. 2016) ............................................................................. 24

*Global Brand Holdings, LLC v. Church & Dwight Co.,*
    2017 WL 6515419 *5 (S.D.N.Y. Dec. 19, 2017) ............................................... 13

*Heller, Inc. v. Design Within Reach, Inc.,*
    2009 WL 2486054 *3 (S.D.N.Y. Aug. 14, 2009) ....................................... 8, 9, 11

*Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.,*
    270 F.3d 298 (6th Cir. 2001) ............................................................................. 14

*Heron Dev. Corp. v. Vacation Tours, Inc.,*
    2017 WL 5957743 **8-9 (S.D. Fla. Nov. 30, 2017) .................................... 26, 28

*It's a 10, Inc. v. Beauty Elite Group, Inc.,*
    2013 WL 6834804 * 8 (S.D. Fla. Dec. 23, 2013) ................................................. 9

*Knature Co., Inc. v. Duc Heung Group, Inc.,*
    2021 WL 2548679 *3 (C.D. Cal. Apr. 22, 2021) ............................................... 26

*Landscape Forms, Inc. v. Columbia Cascade Co.,*
    113 F.3d 373 (2nd Cir. 1997) ............................................................................. 18

*Luv N' Care Ltd. v. Regent Baby Prods. Corp.,*
    841 F. Supp. 2d 753 (S.D.N.Y. 2012) ................................................................ 10

*Mellintine v. Ameriquest Mortgage Co.,*
    515 Fed. Appx. 419 (6th Cir. 2013) ..................................................................... 8

*Mike Vaughn Custom Sports, Inc. v. Piku,*
    15 F. Supp. 3d 735 (E.D. Mich. 2014) ......................................................... 14, 18

*Mosaic Brands, Inc. v. Ridge Wallet, LLC,*
    2020 WL 6821013 *6 (C.D. Cal. Oct. 29, 2020) ............................................... 16

*Nader v. Blackwell,*
    545 F.3d 459 (6th Cir. 2008). .............................................................................. 7

*Novel v. Zapor,*
    2016 WL 6603291 (S.D. Ohio Mar. 22, 2016) .................................................... 5

*Papasan v. Allain,*
    478 U.S. 265 (1986) ............................................................................................. 7

*Parts.com, LLC v. Yahoo! Inc.,*
    996 f. Supp. 2d 933-940-41 (S.D. Cal. 2013) ................................................... 11

*Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.,*
    732 F.3d 645 (6th Cir. 2013) ............................................................................... 7

*Plumeus, Inc. v. Intersog LLC,*
    2013 WL 5609331 *2 (N.D. Ill. Oct. 11, 2013) ................................................. 11

*Profusion Indus., LLC v. Chem-Tek Sys., Inc.,*
    2016 WL 7178731 *5 (N.D. Ohio Dec. 9, 2016) ............................................... 27

*Sleep Sci. Partners, v. Lieberman,*
    2010 WL 1881770 *3 (N.D. Cal. May 10, 2010) .............................................. 16

*Sugarfina, Inc. v. Sweet Pete's LLC,*
    2017 WL 4271133 *4 (C.D. Cal. Sept. 25, 2017) ........................................... 16

*TCPIP Holding, Inc. v. Haar Communications, Inc.,*
    244 F.3d 88 (2d Cir. 2001).......................................................................... 9

*Thane Int'l, Inc. v. Trek Bicycle Corp.,*
    305 F.3d 894 (9th Cir. 2002) ....................................................................... 10

*TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N. Am., LLC,*
    292 F. Supp. 3d 864 (N.D. Iowa 2018)........................................................ 8, 14

*Varsity News Network, Inc. v. Carty Web Strategies, Inc.,*
    2017 WL 7201873 *7 (C.D. Cal. Aug. 30, 2017)........................................... 13

*Walker Wear LLC v. Off-White LLC,*
    624 F. Supp. 3d 424 (S.D.N.Y. 2022).......................................................... 9, 11

*Yankee Candle Co. v. Bridgewater Candle Co.,*
    259 F.3d 25, 42 (1st Cir. 2001) ................................................................... 19

**Statutes**
15 U.S.C. § 1114 ................................................................................................. 26
15 U.S.C. § 1114(1) ........................................................................................... 1, 26, 28
15 U.S.C. § 1125(a) ........................................................................................... 1, 2, 14, 28
15 U.S.C. § 1125(c) ........................................................................................... 1, 8, 27, 28
15 U.S.C. § 1125(c)(1) ....................................................................................... 8
15 U.S.C. § 1125(c)(2)(A) .................................................................................. 9, 10, 12, 13
15 U.S.C. § 1127 ................................................................................................ 26
FED. R. CIV. P. 8(a) ............................................................................................ 7
FED. R. CIV. P. 12(b)(6)...................................................................................... 7, 8, 28
Ohio Rev. Code § 4165.01.................................................................................. 25
Ohio Rev. Code § 4165.02.................................................................................. 25
Ohio Rev. Code § 4165.04.................................................................................. 25
Local Rule 12(b)(6)............................................................................................ 7, 8

**Other Authorities**
MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION  (4th ed. 2011)...... 14, 15, 19, 26, 27, 28

## I.      INTRODUCTION

This is an action concerning trademarks and trade dress used by parties that market and sell consumer lawn and garden products.

Plaintiffs The Scotts Company, LLC ("Scotts LLC") and OMS Investments, Inc. ("OMS") – whom the Complaint refers to collectively as "Scotts"[1] – allege that they market and sell ORTHO brand "control products" ("such as pesticides, insecticides, and related products") under two designs that the Complaint calls the "Red Marks." According to the Complaint, defendant SBM Life Science Corp. ("SBM") is infringing the "Red Marks" through the marketing and sale of competing products under SBM's red BIOADVANCED design. SCOTTS accordingly purports to assert claims against SBM for trademark infringement under 15 U.S.C. § 1114 (1) (Count I); unfair competition under 15 U.S.C. § 1125(a) (Count II); trademark dilution under 15 U.S.C. § 1125(c) (Count III); and unfair competition under the Ohio Deceptive Trade Practices Act (Count IV) and under Ohio common law (Count V). As shown below, the trademark dilution claim (Count III) should be dismissed because the Complaint fails to allege facts plausibly showing that the "Red Marks" are famous, as 15 U.S.C. § 1125(c) requires. Also, to the extent that the trademark dilution claim and the trademark infringement claim under 15 U.S.C. § 1114(1) are asserted on behalf of Scotts LLC, they should be dismissed because Scotts LLC lacks statutory standing to bring such claims.

SCOTTS also alleges that it markets and sells "control products" under what the Complaint calls the "ORTHO Black Trade Dress," which SCOTTS claims is being infringed by the packaging for certain products offered and sold by SBM. SCOTTS purports to assert claims against SBM for

---

[1]      (When this brief refers to the Complaint's use of the defined term "Scotts," it is shown in capital letters (*i.e.,* SCOTTS) to differentiate the Complaint's defined term "Scotts" (which comprises both Scotts LLC and OMS) from the individual plaintiff Scotts LLC.

unfair competition under 15 U.S.C. § 1125(a) (Count VI); unfair competition under the Ohio Deceptive Trade Practices Act (Count VII); and unfair competition under Ohio common law (Count VIII). As demonstrated below, all claims concerning the "ORTHO Black Trade Dress" should be dismissed because the Complaint (a) fails to identify the claimed trade dress sufficiently and (2) fails to allege facts plausibly showing that the line of ORTHO "control products" marketed and sold under the claimed trade dress exhibits a consistent overall look, which is required to support the trade dress protection sought.

## II.    ALLEGATIONS OF COMPLAINT

Plaintiff The Scotts Company, LLC ("Scotts LLC") is an Ohio limited liability company with its principal place of business in Ohio. Complaint [Doc. 1] ¶ 5. Plaintiff OMS Investments, Inc. ("OMS"), "an affiliate" of Scotts LLC, is a Delaware corporation with an office in California. *Id.* ¶ 6. The Complaint refers to Scotts LLC and OMS collectively as SCOTTS, *id.* p. 1, which the Complaint describes as "the world's largest marketer of branded consumer lawn, garden and pesticide products." *Id.* ¶ 1.

### A.    Asserted Trademarks

In Counts I through V of the Complaint, SCOTTS purports to assert federal and state law claims relating to certain trademarks allegedly used by SCOTTS in the marketing and sale of what are described as "control products." The Complaint does not explain what "control products" are, but it lists "pesticides, insecticides, and related products" as examples. *See* Complaint ¶ 1.

The "Red Mark"

One of the trademarks asserted as the basis for these claims is a plain red rectangle that the Complaint calls the "Red Mark":

2



*Id.* ¶ 15. Sᴄᴏᴛᴛs allegedly has used the "Red Mark" since as early as 1995 in manufacturing, marketing and selling "control products" under the ORTHO brand. *Id.* According to the Complaint, two federal trademark registrations issued for the "Red Mark" in International Class 5 in 1995. *Id.* ¶ 21. The first such registration (U.S. Reg. No. 2,991,191) declares that "[t]he mark consists of a red rectangle" and depicts the registered mark as:



*See* Complaint, Exh. A. The second registration (U.S. Reg. No. 2,991,195) declares that "[t]he mark consists of a red rectangle with a black border" and depicts the registered mark as:



*See* Complaint, Exh. A.

<u>The "Red Design Mark"</u>

The other trademark asserted in this case is a red house-shaped design bearing the word ORTHO in white lettering, referred to in the Complaint as the "Red Design Mark":



3

*Id.* ¶ 25. SCOTTS allegedly has used the "Red Design Mark" in connection with ORTHO "control products" since August 11, 2010. *Id.*

The Complaint alleges five federal trademark registrations for the "Red Design Mark." *See id.* ¶ 33. Four issued in 2013 and 2014. *See id.* ¶ 33. They each declare that "[t]he mark consists of the words 'ORTHO' in white across the design of a red house" and depict the registered mark as:



*See* Complaint, Exh. C. The fifth registration alleged for the "Red Design Mark" (U.S. Reg. No. 3,582,553)*, see id.* ¶ 33, declares that "[t]he mark consists of the word 'ORTHO' in white block letters with black shadows centered in a solid red rectangle that has an outer gold border with an inner black border between the gold border and the red rectangle," and it depicts the registered mark as:



*See* Complaint, Exh. C. This registration issued in 2009, and it claims the mark registered thereunder was first used in 2001, *see id.,* both of which precede the claimed first use of the "Red Design Mark" in August 2010. *See id.* ¶ 26.

<u>Ownership of the Asserted Trademarks</u>

The asserted trademarks are owned by OMS. In particular, the Complaint alleges that OMS owns "various intellectual property assets . . ., including the Red Marks . . . ." *Id.* ¶ 5. (As the term is defined in the Complaint, the "Red Marks" consist of the "Red Mark" and the "Red Design

Mark." *See id.* ¶ 1.) OMS also is alleged to be the owner of the various federal registrations alleged for the "Red Mark" and the "Red Design Mark" (*i.e.,* the "Registered Red Mark" and the "Registered Red Design Mark"). *See id.* ¶¶ 21, 33. The Complaint emphasizes that those registrations have achieved incontestable status, which is alleged to be "conclusive evidence" of "[OMS'] ownership of the registered trademarks" themselves. *Id.* ¶¶ 23, 35.

Nowhere in the Complaint is Scotts LLC alleged to own any of the asserted trademarks. Scotts LLC is identified instead as "the licensee of various intellectual property assets owned by OMS, including the Red Marks . . . ." *Id.* ¶ 5. No copy of this license has been provided, and the Complaint is silent regarding its terms.

<u>Allegations That The Asserted Trademarks Are "Famous"</u>

The Complaint's allegations offered in support of the legal conclusion that the asserted trademarks are "famous" under Section 43(c) of the Lanham Act are largely conclusory, with few allegations that are factual. For purposes of a motion to dismiss, distinguishing allegations of *fact* from those that are *conclusory* is critical. *See, e.g., Novel v. Zapor,* 2016 WL 6603291 (S.D. Ohio Mar. 22, 2016) ("Under *Iqbal,* when presented with a motion to dismiss, the Court first determines which of Plaintiff's allegations are factual and entitled to a presumption of truth, and which are 'conclusory' and not entitled to such a presumption.")

The *factual* allegations offered in support of the Complaint's assertion that the "Red Mark" is "famous" under Section 43(c) of the Lanham Act consist of the following:

- Since as early as 1995, SCOTTS has continuously engaged in the business of manufacturing, marketing and selling ORTHO "control products" under the Red Mark *See id.* ¶ 15.

- SCOTTS prominently uses the Red Mark directly on packaging for ORTHO "control products" and in nationwide advertising and promotional materials for such products, including but not limited to print advertisements, television advertisements, brochures, and the Internet. *See id.* ¶ 17.

5

- SCOTTS advertises and sells ORTHO "control products" under the Red Mark throughout the United States. SCOTTS also markets ORTHO "control products" under the Red Mark throughout the United States via the Internet, including at its website www.ortho.com. *See id.* ¶ 18.

The *factual allegations* in support of the legal conclusion that the "Red Design Mark" is "famous" are largely identical. *See id.* ¶¶ 26-32. The only differences are: (1) that use of the "Red Design Mark" did not commence until August 11, 2010 (*see id.* ¶ 26); (2) that images are included with the Complaint allegedly showing exemplary uses of the "Red Design Mark" on ORTHO "control products" (*see id.* ¶ 27); and (3) that SCOTTS markets ORTHO "control products" on social media platforms such as Twitter, YouTube, Facebook, and Instagram (*see id.* ¶ 28).

The Complaint's remaining allegations in support of the legal conclusion that the asserted trademarks are "famous" are *conclusory*. Those allegations, which lack factual enhancement, include:

- SCOTTS has "invested substantial resources" advertising and marketing ORTHO control products under the "Red Mark" and "Red Design Mark" and "establishing these goods in the minds of consumers as high-quality goods offered by SCOTTS." *See id.* ¶ 16.

- The Red Mark and Red Design Mark are "inherently distinctive." *Id.* ¶¶ 19, 31.

- The Red Mark and Red Design Mark have "become favorably known among consumers as used in connection with [ORTHO control products]" and have become "invaluable symbol[s] of the source of products bearing the Red Mark [and 'the Red and White Design Mark'], of the high quality of products bearing the mark[s], and of consumer goodwill." *Id.* ¶¶ 19, 31.

### B. Asserted Trade Dress

In Counts VI through VIII, SCOTTS purports to assert claims relating to certain trade dress used in the marketing and sale of "control products" under the ORTHO brand. Following is the Complaint's complete description of what it calls the "ORTHO Black Trade Dress":

> The distinctive packaging of certain SCOTTS' ORTHO control products consists of a unique arrangement of colors, graphic elements, font styles and texts, including, but not limited to, a predominantly black background, a prominent placement of SCOTTS' Red Design Mark at the top of the Trade Dress of, horizontal information bar designs and the locations and relative sizes of the branding and product name elements, product descriptions and imagery on the Trade Dress.

*Id.* ¶ 39. Images provided with the Complaint allegedly depict examples of the "ORTHO Black Trade Dress," *see id.* ¶ 39 and Exhibit D, but no explanation is provided about how those images supposedly depict the Complaint's textual description.

## III.    LAW AND ARGUMENT

### A.    Legal Standard On Motion To Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Papasan v. Allain,* 478 U.S. 265, 283 (1986). To sufficiently plead a claim, Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a); *see Nader v. Blackwell,* 545 F.3d 459, 470 (6th Cir. 2008). To meet the Rule 8(a) standard and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The factual matter alleged, taken as true, "must be enough to raise a right to relief above the speculative level" and "nudge [the] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 555, 570. To meet the plausibility standard, a plaintiff must demonstrate more than a "sheer possibility that a defendant has acted unlawfully" and, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

In considering a Rule 12(b)(6) motion, the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the non-moving party's favor. *See Philadelphia*

*Indem. Ins. Co. v. Youth Alive, Inc.,* 732 F.3d 645, 649 (6th Cir. 2013). However, the court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id.* Further, a "formulaic recitation of the elements of a cause of action will not do," *Twombly,* 550 at 555, nor will labels or "naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "The bare assertion of legal conclusions is not enough to constitute a claim for relief." *Mellintine v. Ameriquest Mortgage Co.,* 515 Fed. Appx. 419, 423 (6th Cir. 2013).

### B. Count III Fails To State A Viable Claim For Trademark Dilution

In Count III of the Complaint, Scotts purports to assert a claim alleging dilution of the "Red Mark" and the "Red Design Mark" under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

A trademark qualifies for protection against dilution under §43(c) only if it is "famous." 15 U.S.C. 1125(c)(1); *see Kibler v. Hall,* 843 F.3d 1068, 1083 (2016). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff purporting to state a claim for trademark dilution must plead facts sufficient to show that the claim is facially plausible. *Twombly,* 550 U.S. at 570; *Heller,* 2009 WL 2486054 *4; *Blockchange Ventures I GP, LLC v. Blockchange, Inc.,* 2021 WL 4340648 (S.D.N.Y. Sept. 22, 2021). More particularly, "whether a mark is 'famous' is a legal conclusion and, therefore, the court does not simply accept Plaintiff's recitation of that element of its dilution case." *Brookwood Funding, LLC v. Avant Credit Corp.,* 2015 WL 11504556 *4 (N.D. Ga. July 28, 2015). "Rather, under *Twombly* and *Iqbal,* Plaintiff must allege facts which makes such a conclusion plausible." *Id.; see also TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N. Am., LLC,* 292 F. Supp. 3d 864, 873 (N.D. Iowa 2018) (plaintiff "must allege facts demonstrating that fame is not only possible, but plausible").

8

Section 43(c) provides that a mark is "famous" only if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine whether a mark possesses the requisite degree of recognition to qualify as famous, courts consider the following factors: (i) the duration, extent and reach of advertising and publicity around the mark; (ii) the amount, volume, and extent of product sales under the mark; (iii) actual recognition of the mark; and (iv) whether the mark is federally registered. *Id.* (i)-(iv); *see Kibler,* 843 F.3d at 1083.

### 1. Only Marks That Are "Household Names" Can Be Considered "Famous"

Establishing fame for purposes of a trademark dilution claim is "difficult." *Kibler,* 843 F.3d at 1083.[2] As the Sixth Circuit has pointed out, "[c]ourts have interpreted the [Lanham] Act to require the mark to be a 'household name.' *Kibler,* 843 F.3d at 1083 (quoting *Coach Servs., Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 1373 (Fed. Cir. 2012)). This means that "when the general public encounters the mark in almost any context, it associates the term, at least initially, with the mark's owner." *Kibler,* 843 F.3d at 1083 (quoting *Audi AG v. D'Amato,* 469 F.3d 534, 547 (6th Cir. 2006)). Consequently, courts have limited the class of marks eligible for anti-dilution protection to those that are "truly prominent and renowned" and "almost universally recognized by the general public." *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 875 (9th Cir. 1999); *Heller, Inc. v. Design Within Reach, Inc.,* 2009 WL 2486054 *3 (S.D.N.Y. Aug. 14, 2009).

Examples of famous marks are DUPONT, BUICK, KODAK, and COCA-COLA. *TCPIP Holding, Inc. v. Haar Communications, Inc.,* 244 F.3d 88, 99 (2d Cir. 2001); *It's a 10,* 2013 WL

---

[2] Other courts have likewise observed that whether a mark is truly "famous" is a "rigorous standard," *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.,* 393 F.3d 755, 763 (8th Cir. 2005), a "heavy burden," *Walker Wear LLC v. Off-White LLC,* 624 F. Supp. 3d 424, 429 (S.D.N.Y. 2022), and a "threshold [that] . . . is exceptionally high." *It's a 10, Inc. v. Beauty Elite Group, Inc.,* 2013 WL 6834804 * 8 (S.D. Fla. Dec. 23, 2013).

6834804 * 8. Other examples are BUDWEISER beer, CAMEL cigarettes, and BARBIE dolls. *Luv N' Care Ltd. v. Regent Baby Prods. Corp.,* 841 F. Supp. 2d 753, 758 (S.D.N.Y. 2012). For comparison, well-known marks such as COACH, TREK, or the University of Texas Longhorns have been found *not* to meet the rigorous fame standard. *See Coach,* 668 F.3d at 1373; *Bd. Of Regents v. KST Elec., Ltd.,* 550 F. Supp. 657, 674 (W.D. Tex. 2008); *Thane Int'l, Inc. v. Trek Bicycle Corp.,* 305 F.3d 894, 911 (9th Cir. 2002).

Here, the Complaint states the naked legal conclusion that the asserted marks are "famous," *see* Complaint ¶¶ 20, 32, but it fails to allege sufficient facts to plausibly show that they are "household names" qualifying as "famous" under Section 43(c).

### 2. The Complaint Lacks Factual Allegations Necessary To Support The First Factor Considered In Determining Whether A Mark Is "Famous" (Duration, Extent And Geographic Reach Of Advertising And Publicity Of Mark)

Regarding the first factor considered under Section 43(c) (the duration, extent and geographic reach of advertising and publicity of the mark), *see* 15 U.S.C. §1125(c)(2)(A), the Complaint's spotty allegations are conclusory and lacking in factual detail.

According to the Complaint's broadbrush allegations, SCOTTS has marketed and sold ORTHO "control products" under the "Red Mark" since 1995 and under the "Red Design Mark" since 2010; SCOTTS uses the marks on packaging for such products and in nationwide advertising and promotional materials for those products; SCOTTS advertises and sells such products under the marks throughout the United States; and SCOTTS markets the products under the marks via the Internet and on social media. *See id.* ¶¶ 15, 17-18, 26-28, 30. No detail is provided, however, about the actual extent, duration or reach of SCOTTS' use, marketing, advertising or other publicity involving the marks. Thus, for example, the Complaint alleges no facts about any particular marketing, advertising or publicity featuring the asserted marks; alleges no facts about when any

10

such marketing, advertising or publicity took place; alleges no facts showing how any such marketing, advertising or publicity was intended to foster recognition of the asserted marks among the general public; alleges no facts showing the frequency or consistency of any such marketing, advertising or publicity; and alleges no facts showing that any such marketing, advertising or publicity actually generated recognition of the marks among the general public.

Also absent from the Complaint are factual allegations about SCOTTS' actual expenditures incurred to promote the asserted marks or SCOTTS' advertising budgets devoted to promotion of the marks. This is a critical omission. *See Walker Wear LLC,* 624 F. Supp. 3d at 430-31 (failure to allege information about advertising budget held "unsupportive" of claim that asserted mark was famous); *Heller,* 2009 WL 2486054 *4 (plaintiff's failure to allege advertising budget relating to asserted mark supported finding that asserted mark was not famous).

The Complaint's vague statement that SCOTTS has "invested substantial resources" in advertising and promoting the "Red Mark" and "Red Design Mark" (Complaint, ¶¶ 16, 29) is unavailing, because such a threadbare, conclusory allegation is not sufficient under *Twombly* to establish that the marks are "famous." *See, e.g., Walker Wear LLC,* 624 F. Supp. 3d at 431 (allegation that plaintiff "invested substantial time and money in the marks" is a mere conclusion that is not a proper factual basis for a finding of fame); *Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn Mayer Inc.,* 2020 WL 68775178 *9 (C.D. Cal. Oct. 23, 2020) (plaintiff's conclusory allegation that it "devoted substantial time, effort, and resources to the development and extensive promotion" of asserted mark held insufficient to survive a motion to dismiss); *Plumeus, Inc. v. Intersog LLC,* 2013 WL 5609331 *2 (N.D. Ill. Oct. 11, 2013) (allegation that plaintiff "invested substantial resources" in "numerous national and international marketing campaigns" held insufficient to state a plausible claim); *Parts.com, LLC v. Yahoo! Inc.,* 996 f.

11

Supp. 2d 933-940-41 (S.D. Cal. 2013) (plaintiff's conclusory allegation that it "'expended a significant amount of resources' to 'promote[] . . . [the] mark throughout the United States'" held insufficient to satisfy applicable pleading standard).

### 3.  The Complaint Lacks Factual Allegations Necessary To Support The Second "Fame" Factor (Amount, Volume, and Geographic Sales of Goods Under Mark)

With respect to the second factor under Section 43(c) (amount, volume, and geographic extent of sales of goods under the mark), *see* 15 U.S.C. § 1125(c)(2)(A), the Complaint alleges only that ORTHO "control products" are sold under the asserted marks throughout the United States. *Id.* ¶¶ 18, 27. No other relevant information is provided. Thus, no facts are alleged identifying specific products that have been sold under each of the asserted marks or specifying how long such products have been sold under the asserted marks. No facts are alleged regarding the quantity of such products sold under the asserted marks in any given year, and no facts are alleged about the revenue or profit generated through such sales.

### 4.  The Complaint Lacks Factual Allegations Necessary To Support The Third "Fame" Factor (Extent Of Actual Recognition Of Mark)

Turning to the third factor under Section 43(c) (extent of actual recognition of the mark), the Complaint does not allege facts plausibly showing actual recognition of the "Red Mark" or the "Red Design Mark" among the United States consuming public. The Complaint references no consumer surveys showing public recognition of the marks. It likewise points to no unsolicited media coverage of the marks, and it cites no other evidence suggesting their fame. The Complaint also alleges no facts indicating actual recognition by the consuming public that the marks are a designation of source of the goods of the marks' owner, OMS. *See* Complaint ¶ 5 (alleging marks are owned by OMS).

The Complaint's sole attempt to allege some public awareness of the marks is the formulaic, unadorned allegation that each of the asserted marks "has become known among consumers as used in connection with ORTHO Products," and "has become an invaluable symbol of the source of products bearing [the marks], of the high quality products bearing the mark[s], and of consumer goodwill." Complaint ¶¶ 19, 29. This threadbare allegation, however, is a mere conclusion not entitled to the presumption of truth and, as such, does not plausibly show that the marks are "famous." *See, e.g., Varsity News Network, Inc. v. Carty Web Strategies, Inc.,* 2017 WL 7201873 *7 (C.D. Cal. Aug. 30, 2017) (holding insufficient under *Twombly* and *Iqbal* plaintiff's allegations that "consumers have come to recognize the [mark] as representative of high quality, superior, and effective products and services offered by [plaintiff]" and that "[t]he [mark] has become a valuable asset of [plaintiff] as well as a symbol of its goodwill and positive reputation"); *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.,* 2013 WL 6670584 *7 (S.D.N.Y. Mar. 29, 2013) (allegation that mark has "great value and secondary meaning upon consuming public" is conclusion not entitled to presumption of truth). In any event, even if it were accepted to be true, the allegation that the asserted marks have "become known among consumers" comes nowhere close to establishing the type of widespread recognition among the general consuming public required to establish that the marks are famous. *See Global Brand Holdings, LLC v. Church & Dwight Co.,* 2017 WL 6515419 *5 (S.D.N.Y. Dec. 19, 2017) ("consumer recognition" is not the same as an allegation of wide recognition by the general consuming public).

### 5. *Regarding The Fourth "Fame" Factor, The Mere Fact That A Mark Is Registered Is Not Sufficient To Establish That It Is "Famous"*

The fourth factor under 43(c) considers whether the mark is registered. *See* 15 U.S.C. § 1125(c)(2)(A). While the Complaint alleges that the "Red Mark" and "Red Design Mark" are federally registered, this fact alone is not sufficient to establish that they are plausibly famous for

purposes of a trademark dilution claim. *See TrueNorth Companies,* 292 F. Supp. 3d at 874. After all, as the Federal Circuit has pointed out, "[o]ne cannot logically infer fame from the fact that a mark is one of the millions on the Federal Register." *Coach,* 668 F.3d at 1374 (quoting 4 J. McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:104 at 24-310 (4th ed. 2011)).

**6.  *The Complaint Does Not Allege Facts Plausibly Showing That Any Of The Asserted Marks Is A "Household Name," As A Trademark Dilution Requires***

In sum, the Complaint fails to allege facts plausibly showing that the "Red Mark" and "Red Design Mark" are "famous" for purposes of a trademark dilution claim. Indeed, nothing in the Complaint even remotely suggests that any of the asserted marks is a "household name" like COCA-COLA that the general consuming public immediately associates with OMS, the marks' owner. The trademark dilution claim in Count III accordingly should be dismissed.

**C.    Count VI Fails To State A Viable Claim For Unfair Competition Under The Lanham Act Relating To The "ORTHO Black Trade Dress"**

In Count VI, SCOTTS asserts a claim under 15 U.S.C. § 1125(a) alleging infringement of the "ORTHO Black Trade Dress." To state a claim for infringement of unregistered trade dress under the Lanham Act, a plaintiff must allege that: (1) its trade dress is protectable; (2) the trade dress is primarily nonfunctional; and (3) there is a likelihood of confusion between its trade dress and the competing good's trade dress. *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.,* 270 F.3d 298, 308 (6th Cir. 2001); *Mike Vaughn Custom Sports, Inc. v. Piku,* 15 F. Supp. 3d 735, 745 (E.D. Mich. 2014). Count VI fails to allege facts plausibly showing that the "ORTHO Black Trade Dress" constitutes protectable trade dress, and it therefore should be dismissed.

**1.  *The Complaint Does Not Identify The Claimed Trade Dress Sufficiently***

"To allege that trade dress is protectable, 'plaintiffs should detail exactly what their trade dress consists of.'" *Mike Vaughn Custom Sports,* 15 F. Supp. 3d at 745-46 (E.D. Mich. 2014); *see*

14

*also Tumblebus Inc. v. Cramer,* 399 F.3d 754, 768 (6th Cir. 2005) ("To recover for trade-dress infringement under § 43(a) of the Lanham Act, a party must first identify what particular elements or attributes comprise the protectable trade dress.") This requires the plaintiff "to articulat[e] the specific elements which comprise its distinct dress." *Fair Wind Sailing, Inc. v. Dempster,* 764 F.3d 303, 308 (3d Cir. 2014); *see* 1 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 8.3 ("All courts agree that the elements of the alleged trade dress must be clearly listed and described.") Indeed, without an appropriately specific definition of the elements comprising the asserted trade dress, a defendant is not given adequate notice of the overall look the plaintiff wishes to protect. *Fair Wind Sailing,* 764 F.3d at 310.

Here, the Complaint describes the "ORTHO Black Trade Dress" as:

> [A] unique arrangement of colors, graphic elements, font styles and text, including, but not limited to, a predominantly black background, a prominent placement of SCOTTS' Red Design Mark at the top of the Trade Dress of, horizontal information bar designs and the locations and relative sizes of the branding and product name elements, product descriptions and imagery on the Trade Dress.

Complaint ¶ 39. This description is bewilderingly vague. The opening phrase ("a unique arrangement of colors, graphic elements, font styles and text") is so general that it could describe the packaging for virtually every consumer product imaginable, from HOSTESS TWINKIES pastries to PENNZOIL motor oil to TIDE laundry soap:

  

Such excessive generality gives SBM and the Court no notice at all of the scope of trade dress protection being claimed by SCOTTS.

The description's use of "including, but not limited to" to introduce the subsidiary list of claimed elements also gives SBM and the Court inadequate notice of SCOTTS' trade dress claim because "it does not clearly delineate the boundaries of protection that [SCOTTS] is claiming." *EVIG, LLC v. Mister Brightside, LLC,* 2023 WL 5717291 *5 (D. Nev. Sept. 5, 2023). Indeed, the use of open-ended language such as "including, but not limited to" in describing asserted trade dress is particularly unfair because "[w]hen a party pleads a list of elements with a non-limiting qualifier, they are leaving the door open to redefine the purportedly protected elements at a later stage of the litigation." *Id.* Consequently, "[c]ourts have often dismissed trade dress claims for failing to provide a complete list of elements where the list of alleged trade dress elements is preceded by a non-limiting qualifier." *Mosaic Brands, Inc. v. Ridge Wallet, LLC,* 2020 WL 6821013 *6 (C.D. Cal. Oct. 29, 2020) (dismissing trade dress claim using "including" to introduce list of elements); *see Sugarfina, Inc. v. Sweet Pete's LLC,* 2017 WL 4271133 *4 (C.D. Cal. Sept. 25, 2017) (dismissing trade dress claim using phrase "may include"); *Sleep Sci. Partners, v. Lieberman,* 2010 WL 1881770 *3 (N.D. Cal. May 10, 2010) (dismissing trade dress claim using "including, but not limited to" to list claimed elements).

When the Complaint finally attempts to list some of the discrete elements claimed as part of the "ORTHO Black Trade Dress," the description of those elements is too vague to communicate what they mean, ultimately producing many more questions than answers. When the description refers to a "predominantly black background," what does the word "background" refer to? A product container? A portion of a product container? Does "predominantly black" mean 51% black? 75% black? 95% black? When the description refers to "a prominent placement of SCOTTS' Red Design Mark at the top of the Trade Dress of," what is meant by the word "of" dangling at the end of the phrase? "[A]t the top of the Trade Dress of . . ." makes no sense. (Is an element

missing from the description that would describe where the "Red Design Mark" is to be placed? Or does the phrase mean that the "Red Design Mark" must appear at the top of the element called "horizontal information bar designs"?) What "horizontal information bar designs" might be is anyone's guess, since nothing is provided that specifies what they are or defines their placement, thickness, quantity, or color. The final phrase in the Complaint's description ("the locations and relative sizes of the branding and product name elements, product descriptions and imagery on the Trade Dress") is just a laundry list of general elements, with no detail provided about the "locations" for the elements being claimed or their "relative sizes." Compounding the insufficiency of the textual description is the fact that nowhere is there any mention of how the listed elements, individually or together, are claimed to be distinctive.

The Complaint provides the following images of three ORTHO "control products" as examples of the claimed trade dress:

  

*See* Complaint ¶ 39 and Exhibit D. These images do nothing, however, to dispel the confusion created by the textual description of the claimed trade dress, because the Complaint does not connect the images to the description to illustrate what the asserted trade dress is claimed to be or how it is allegedly distinctive. As a result, SCOTTS effectively leaves SBM and the Court to scour the images to try to identify elements that are only vaguely listed in the textual description and to

17

interpret for themselves as best they can what the scope of the claimed trade dress might be and how SCOTTS might claim it to be distinctive.

In sum, the Complaint fails to give adequate notice of SCOTTS' claim concerning the "ORTHO Black Trade Dress." The statement that it is "a unique arrangement of colors, graphic elements, font styles and text" is so general that it provides no notice at all of what the asserted trade dress is claimed to be. When the Complaint attempts to give a description of its discrete elements, the list it provides is incomplete on its face, because introducing the list with the phrase "including, but not limited to" necessarily means that there are additional unidentified elements of the claimed trade dress other than those listed. With respect to those elements of the "ORTHO Black Trade Dress" that the Complaint manages to list, they are not described with sufficient specificity for SBM or the Court to ascertain what they are intended to refer to or how the claimed trade dress is claimed to be distinctive. The vagueness of the Complaint's description of the listed elements is not salvaged by the inclusion of images supposedly exemplifying the claimed trade dress, because the Complaint fails to point out where any of those listed elements is depicted in the images. The result is a wholesale failure by SCOTTS to identify the "ORTHO Black Trade Dress" sufficiently to give adequate notice of the scope of protection being claimed, which warrants dismissal of the trade dress infringement claim. *See Mike Vaughn,* 15 F. Supp. 3d at 746; *Fair Wind Sailing,* 764 F.3d at 310.

## 2. *The Complaint Does Not Plausibly Allege That The Product Line Bearing The Claimed Trade Dress Has A Consistent Overall Look*

Where a plaintiff seeks trade dress protection for the packaging for a series or line of products, "[the] concern for protecting competition is acute." *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 380 (2nd Cir. 1997). More particularly, "trade dress claims across a line of products present special concerns in their ability to artificially limit competition, as such

claims are generally broader in scope than claims relating to an individual item." *Yankee Candle Co. v. Bridgewater Candle Co.,* 259 F.3d 25, 42 (1st Cir. 2001). Accordingly, to claim trade dress protection for the packaging a series or line of products, a plaintiff "must first demonstrate that the series or line has a recognizable and consistent overall look." *Rose Art Indus., Inc. v. Swanson,* 235 F.3d 165, 173, (3rd Cir. 2000); *see* 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:5.50 ("When the alleged trade dress consists of a certain look or style of different packaging for a number of different products, it is more difficult to prove that there is a common denominator among those packages which identifies plaintiff as the source. Plaintiff must prove that its alleged trade dress has a 'consistent overall look.'"). The appearance of the packaging across the product line packaging need not be identical, of course, but any variations in the packaging must not alter the design's distinctive characteristics, and the claimed trade dress must convey "a single and continuing commercial expression." *Rose Art,* 235 F.3d at 173.

Here, the Complaint alleges that trade dress protection is claimed for a plurality of "control products" marketed and sold under the ORTHO brand. *See, e.g.,* Complaint ¶ 1 ("ORTHO Black Trade Dress" is "packaging design of certain of its ORTHO control products"), ¶ 39 ("the distinctive packaging of certain SCOTTS' ORTHO control products consists of a unique arrangement of colors, graphic elements, font styles and text"). The Complaint fails, however, to clearly identify the product line or individual products that supposedly use the claimed trade dress. In some passages, the Complaint indicates that the asserted "ORTHO Black Trade Dress" is used in connection with SCOTTS' "weed control products," *see id.* ¶¶ 39-40, but in others the Complaint suggests that the claimed trade dress is used in connection with "control products" generally, *see id.* ¶¶ 37, 43, which are not defined in the Complaint but evidently include "pesticides, insecticides and related products." *See id.* ¶ 1. Absent a sufficient identification of the line or series of products

that supposedly uses the claimed trade dress, the Complaint fails to establish that there is a "consistent overall look" across the plurality of products using it and thereby deprives SBM and the Court of adequate notice of the scope of trade dress protection being claimed.

If, however, one were to read the Complaint with liberality to allege that SCOTTS uses the claimed "ORTHO Black Trade Dress" in connection with "weed control products," then the Complaint makes clear that there is no "recognizable and consistent overall look" across the ORTHO "weed control product" line. Indeed, the images of the ORTHO weed control products from www.ortho.com that are reproduced at Exhibit C of the Complaint show wide variations in trade dress. For example, there appears next to the title "Spring Weed Control" a bottle of an ORTHO weed control product apparently labeled as ORTHO GROUNDCLEAR Super:



*See* Complaint Exhibit C. The packaging for this ORTHO weed control product displays nothing resembling a "predominantly black background," which SCOTTS claims as the first element of the "ORTHO Black Trade Dress." *See id.* ¶ 39. In the first row of ORTHO weed control products shown on Exhibit C, under the subheading "Take Control of Weeds & Bugs," are additional images of what are identified as "ORTHO GROUNDCLEAR Super Weed & Grass Killer" and "ORTHO GROUNDCLEAR Weed & Grass Killer Super Concentrate 1:"



*See* Complaint Exhibit C. Neither of these ORTHO weed control products has packaging displaying a "predominantly black background." *See id.* At the page entitled "Weeds," none of the ORTHO products shown in the inset photograph to the right of "Weeds" has packaging displaying a "predominantly black background:"



*See id.* In the table of product photographs shown below the "Weeds" heading, still more ORTHO weed control products are shown in packaging that does not display a "predominantly black background," for example:

21



*See id.*

Notably, the reproduction of the "Weeds" page from www.ortho.com that SCOTTS has attached to the Complaint at Exhibit C is incomplete, as indicated by the red "View More" button at the bottom of the page:



22

*See id.* A copy of the complete "Weeds" page from www.ortho.com is attached hereto as Exhibit 1. It shows even more ORTHO weed control products that do not depict packaging with a "predominantly black background," including:







Ortho® Weed B-Gon™ Lawn Weed Killer Ready-To-Use Refill

Ortho® Weed B-Gon™ Lawn Weed Killer + Crabgrass Control

Ortho® Weed B Gon Plus Crabgrass Control Ready-To-Use2 Trigger Sprayer







Ortho® Grass B Gon Garden Grass Killer

Ortho® Weed B Gon Chickweed, Clover & Oxalis Killer for Lawns Ready-To-Spray

Ortho® Weed B Gon Weed Killer for St. Augustinegrass Ready-To-Spray

$21.49







23

*See* www.ortho.com (Exhibit 1).[3] In short, if the product line for which SCOTTS claims trade dress protection is defined as ORTHO "weed control products," that product line plainly does not show the claimed "ORTHO Black Trade Dress" in a way that even remotely reflects a "consistent overall look."

If the Complaint is interpreted instead as alleging that the "ORTHO Black Trade Dress" is used in connection with ORTHO "control products" generally (as opposed to only ORTHO "weed control products"), there is even greater dissimilarity among the packaging of that line of products. At the page from www.ortho.com entitled "Insects" that the Complaint reproduces at Exhibit C, none of the listed ORTHO products is shown in packaging displaying a "predominantly black background," for example:



Ortho® Home Defense® MAX® Indoor Insect Barrier

From $14.99

Ortho® Home Defense® MAX® Ant, Roach & Spider1

$6.19

Ortho® Home Defense® Insect Killer for Indoor & Perimeter

From $12.49

*See id.*

---

[3] Since this web page is referenced in the Complaint and a portion thereof is attached as an exhibit thereto, the Court may consider the complete copy submitted as Exhibit 1 in connection with the present motion. *See, e.g., Gavitt v. Born,* 835 F.3d 623, 640 (6th Cir. 2016) (in ruling on a motion to dismiss, "a court may consider exhibits attached to the complaint, . . . and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein").

Finally, if the line of ORTHO-branded products for which trade dress protection is claimed is some other grouping of products (*i.e.,* neither "weed control products" nor "control products" generally), then the Complaint does not identify what the product line is. Not only does that leave SBM and the Court to guess about the scope of trade dress protection being sought in this case, but it also means that the Complaint does not allege facts plausibly showing that whatever line of products supposedly uses the "ORTHO Black Trade Dress" exhibits it in a recognizable and consistent way.

In summary, the Complaint fails to allege facts plausibly clearing the threshold requirement that the product line with which the "ORTHO Black Trade Dress" is used displays a "consistent overall look." Dismissal of the trade dress claim is therefore warranted. *Rose Art,* 235 F.3d at 173.

### D.     Counts VII And VIII Fail to State Valid Ohio State Law Claims for Trade Dress Infringement.

Count VII of the Complaint purports to assert a claim for trade dress infringement relating to the "ORTHO Black Trade Dress" under the Ohio Deceptive Trade Practices Act, Ohio Rev. Code §§ 4165.01 through 4165.04. Count VIII purports to assert a similar claim for unfair competition under Ohio common law.

The analysis of an unfair competition claim under the Lanham Act is the same as for unfair competition claims under Ohio Rev. Code § 4165.02 and Ohio common law. *ETW Corp. v. Jireh Publishing, Inc.,* 332 F.3d 915, 920 (6th Cir. 2003); *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,* 280 F.3d 619, 620 n. 2 (6th Cir. 2002) ("Both Ohio and federal courts have recognized that the same analysis applies to claims under Ohio's statutory and common law of unfair competition and the Lanham Act.") As demonstrated above, Count VI fails to state a valid claim for trade dress infringement under the Lanham Act. Accordingly, for the same reasons, SCOTTS' companion claims arising under the Ohio Deceptive Trade Practices Act (Count VII) and

under Ohio's common law of unfair competition (Count VIII) should be dismissed, too. *See Bodine Perry, PLLC v. Bodine,* 2023 WL 2734679 *7 (N.D. Ohio Mar. 31, 2023) (upon determining that Lanham Act claim should be dismissed, also dismissing claims for unfair competition and deceptive trade practices under Ohio Deceptive Trade Practices Act and Ohio common law because same reasoning applies).

**E.** **The Trademark Infringement Claim Under 15 U.S.C. § 1114(1) (Count I) Should Be Dismissed As To Scotts LLC For Lack Of Statutory Standing**

In Count I of the Complaint, SCOTTS purports to state a claim against SBM for infringement of the "Registered Red Mark" and "Registered Design Mark" under 15 U.S.C. § 1114. The plain language of 15 U.S.C. § 1114(1) provides that an infringer "shall be liable in a civil action by *the registrant* for the remedies hereinafter provided." (emphasis added). When used in the Lanham Act, the term "registrant" "embrace[s] the legal representatives, predecessors, successors and assigns of such . . . registrant." 15 U.S.C. § 1127. Here, the Complaint plainly alleges that OMS – not Scotts LLC – owns the asserted registrations, *see* Complaint ¶¶ 21, 33, and nothing in the Complaint suggests that Scotts LLC is OMS' legal representative, predecessor, successor or assign. As such, to the extent that Count I is asserted on behalf of Scotts LLC, it should be dismissed because Scotts LLC lacks statutory standing. *See Federal Treas. Enterprise Sojuzplodoimport v. SPI Spirits Ltd.,* 726 F.3d 62, 72 (2d Cir. 2013); *Knature Co., Inc. v. Duc Heung Group, Inc.,* 2021 WL 2548679 *3 (C.D. Cal. Apr. 22, 2021); *Heron Dev. Corp. v. Vacation Tours, Inc.,* 2017 WL 5957743 **8-9 (S.D. Fla. Nov. 30, 2017); *see also* 6 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 32:3 (5th ed. 2023) ("The Lanham Act is clear that only the 'registrant' has standing to seek the special evidentiary advantages and remedies accorded a federally registered mark.").

Despite the unambiguous language of § 1114(1), "[a] minority of courts have recognized that, in limited circumstances, 'an exclusive licensee's interest in the mark may be sufficient to confer standing.'" *American Customer Satisfaction Index, LLC v. Foresee Results, LLC,* 2019 WL 3342340 *4 (E.D. Mich. July 25, 2019) (quoting *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.,* 339 F. Supp. 2d 944, 959 (W.D. Mich. 2004). However, "[f]or this exception to apply, 'the exclusive license must be tantamount to an assignment where the licensee stands in the shoes of the trademark owner.'" *American Customer Satisfaction Index,* 2019 WL 3342340 *4 (quoting *Profusion Indus., LLC v. Chem-Tek Sys., Inc.,* 2016 WL 7178731 *5 (N.D. Ohio Dec. 9, 2016). Even if this minority view were assumed to be correct (which is questionable),[4] it is nevertheless unavailing to Scotts LLC because there is no allegation in the Complaint that the license under which Scotts LLC supposedly uses the asserted registered marks is exclusive, and nothing in the Complaint suggests that any such license is tantamount to an assignment.

In short, there being no basis alleged in the Complaint for Scotts LLC to assert a trademark infringement claim under § 1114(1), Count I should be dismissed as to Scotts LLC for lack of statutory standing.

## F.    The Trademark Dilution Claim (Count III) Also Should Be Dismissed As To Scotts LLC For Lack Of Statutory Standing

The plain language of 15 U.S.C. § 1125(c) makes clear that a clam for trademark dilution may be brought only by the mark's *owner.* According to the Complaint, the "Red Mark" and "Red Design Mark" are owned by OMS, not Scotts LLC. *See* Complaint ¶ 5. Rather, Scotts LLC

---

[4]       *See, e.g.,* 6 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 32:3 (Author's Comment) ("I believe that the statute and the majority of cases interpreting it create a clear and bright line rule: only the registrant of record has standing to sue for the special rights and remedies provided by Lanham Act § 32(1) [15 U.S.C. § 1114 (1)] to the owner of a registered mark. . . . I believe the minority view cases which allow an exclusive licensee to sue because it is 'almost like' or 'tantamount' to an assignee are not following the statute.")

allegedly uses the marks under license from OMS. *Id.* To the extent that the trademark dilution claim is asserted on behalf of Scotts LLC, it should be dismissed for lack of statutory standing because Scotts LLC is not the owner of the asserted marks. *See Heron Dev. Corp.,* 2017 WL 5957743 at **10-11 (holding that non-owner of mark lacks standing to sue for dilution under 15 U.S.C. § 1125(c)); 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:3 ("Standing to sue for a claim of dilution under the Lanham Act is limited to 'the owner of a famous mark.'").

## IV. CONCLUSION

For the foregoing reasons, Count III (trademark dilution under 15 U.S.C. § 1125(c)), Count VI (trade dress infringement under 15 U.S.C. § 1125(a)), Count VII (trade dress infringement under Ohio Deceptive Trade Practices Act), and Count VIII (trade dress infringement under Ohio common law) should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

In addition, Count I (trademark infringement under 15 U.S.C. § 1114 (1)) and Count III (trademark dilution under 15 U.S.C. § 1125(c)) should be dismissed as to plaintiff Scotts LLC pursuant to FED. R. CIV. P. 12(b)(6) for lack of statutory standing.

Respectfully Submitted,

*/s/ Katherine C. Ferguson*
Katherine C. Ferguson (0079207)
Lindsay M. Nelson (0095560)
Kooperman Mentel Ferguson Yaross Ltd.
250 East Town Street, Suite 200
Columbus, Ohio 43215
Telephone: (614) 344-4800
Facsimile: (614) 344-4800
kferguson@kmfylaw.com
lnelson@kmfylaw.com

Robert J. Morris (*pro hac vice* forthcoming)
Philip J. Cardinale (*pro hac vice* forthcoming)
Danielle B. Dobosz (*pro hac vice* forthcoming)
Smith Anderson Blount Dorsett Mitchell

& Jernigan, LLP
2300 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Counsel for SBM Life Sciences Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2023 a copy of the foregoing was filed electronically. Notice of this filing will be sent via the Court's electronic filing system to the following:

David M. DeVillers
Christopher M. Dolan
Joshua S. Frick
Barnes & Thornburg LLP
Email: DDeVillers@BTLaw.com
Email: CDolan@BTLaw.com
Email: Joshua.Frick@BTLaw.com
*Counsel for Plaintiff*

*/s/ Katherine Connor Ferguson*
Katherine Connor Ferguson

29