**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **THE SCOTTS COMPANY LLC, and OMS INVESTMENTS, INC.,** | |
| **Plaintiffs,** | **Case No. 2:23-cv-01541-EAS-EPD** |
| **v.** | **JURY TRIAL DEMANDED** |
| **SBM LIFE SCIENCE CORP.,** | |
| **Defendant.** | |

## FIRST AMENDED COMPLAINT

Plaintiffs, The Scotts Company LLC and OMS Investments, Inc. (collectively "Scotts" or "Plaintiffs"), for their Complaint against Defendant, SBM Life Science Corp. ("Defendant"), allege and state as follows:

### Nature of the Case

1.      Headquartered in Ohio for over 150 years, Scotts is the world's largest marketer of branded consumer lawn, garden, pesticide, and insecticide products. Scotts has developed and owns some of the industry's most widely recognized brands, including its well-known ORTHO brand control products, such as pesticides, insecticides and related products, which Scotts offers for sale and markets under a distinctive Red Mark and distinctive Red Design Mark (collectively, the "Red Marks" as defined below) and distinctive and original packaging designs, including the packaging design of certain of its ORTHO control products (the "ORTHO Black Trade Dress" as defined below), a version of which is registered with the United States Copyright Office and a copyrighted yellow pest barrier label design ("Scotts' Yellow Barrier Design" as defined below).

2.     Defendant directly competes against Scotts in the manufacture, distribution, promotion and sale of control products and complementary and related products. Defendant is manufacturing and selling control products: (1) under a red design mark that is strikingly similar to Scotts' Red Marks; (2) bearing trade dress that imitates, copies, and is strikingly and substantially similar to Scotts' distinctive and copyrighted ORTHO Black Trade Dress; and (3) bearing a design that imitates, copies, and is strikingly and substantially similar to Scotts' Yellow Barrier Design. Defendant's products bearing the infringing uses are sold at various retail outlets, including many of the same retail outlets where Scotts' products bearing its Red Marks, ORTHO Black Trade Dress, and Yellow Barrier Design are marketed and sold.

3.     As detailed below, Defendant's conduct constitutes unfair competition, infringement and dilution of Scotts' trademark rights in its Red Marks, infringement of its trademark rights and copyright in its ORTHO Black Trade Dress, and infringement of its copyright in its Yellow Barrier Design. This improper conduct is knowing, intentional, and designed to trade on the reputation that Scotts has developed through years of successful promotion and sales of its superior products under its foregoing intellectual property rights.

4.     Scotts has been, and is likely to continue to be, injured by Defendant's misconduct, and will suffer irreparable harm unless and until Defendant is enjoined from its unauthorized and infringing uses in connection with Defendant's control products in the United States.

## The Parties

5.     The Scotts Company LLC ("The Scotts Company") is an Ohio limited liability company with its principal place of business at 14111 Scottslawn Road, Marysville, Ohio 43041, and is the licensee of various intellectual property assets owned by OMS Investments, Inc., including the Red Marks that are being willfully infringed by Defendant.

2

6.      OMS Investments, Inc. ("OMS Investments") is a Delaware corporation with an office at 10250 Constellation Blvd., Suite 2800, Los Angeles, California, 90067, and is an affiliate of The Scotts Company, LLC.

7.      On information and belief, Defendant is a Delaware corporation with its principal place of business at 1001 Winstead Drive, Suite 500, Cary, North Carolina 27513.

8.      Upon investigation and on information and belief, Defendant, through its agents, representatives, or affiliates, has done, and is doing, business in the Southern District of Ohio, and has engaged in acts and/or omissions within this district, causing injury to Scotts.

### Jurisdiction and Venue

9.      This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332, 1338(a)-(b), and 1367.

10.      This Court has subject matter jurisdiction over Counts I and II of this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a) because these counts present a Federal question under the following provisions of the United States Code:

   a.   Count I (Trademark Infringement) - 15 U.S.C. § 1114;

   b.   Counts II and VI (Federal False Designation of Origin and Federal Unfair Competition) - 15 U.S.C. § 1125(a);

   c.   Count III (Federal Trademark Dilution) – 15 U.S.C. § 1125(c);

   d.   Count IX and X (Cancellation of United States Registration) – 15 U.S.C. § 1119; and

   e.   Counts XI and XII (Copyright Infringement) – 17 U.S.C. §§ 106 and 501.

11.      This Court has supplemental jurisdiction over Scotts' state law claims, Counts IV, V, VII, and VIII pursuant to 28 U.S.C. § 1367 because they form part of the same case or

3

controversy.

12.     This Court has personal jurisdiction over Defendant under Ohio Revised Code §

2307.382 because, among other things, Defendant transacts business in Ohio, contracts to supply

goods in Ohio, and has caused tortious injury by its acts in Ohio. On information and belief,

Defendant ships products with the infringing mark and trade dress throughout the United States

and to stores located in this judicial district with the expectation that products will be sold in this

judicial district. By distributing and selling its infringing products in Ohio and this judicial district,

Defendant purposefully directs activities at this forum that relate to and give rise to the claims

alleged in this Complaint.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and Local Rule

82.1 because a substantial part of the events giving rise to Scotts' claims occurred in this judicial

district and Defendant is subject to personal jurisdiction in this judicial district.

### **Background Facts**

### ***Scotts' Famous Red Marks***

14.     Throughout its long history, Scotts has developed and maintained an exceptional

national reputation for, among other products, control products and complementary and related

products.

15.     Since at least as early as 1995, Scotts has continuously and extensively engaged in

the business of manufacturing, marketing and selling control products (hereinafter the "ORTHO

Products") under the distinctive red color pictured below (the "Red Mark"):



16. Scotts has invested substantial resources developing, advertising, promoting and marketing the ORTHO Products under its Red Mark throughout the United States and establishing these goods in the minds of consumers as high-quality goods offered by Scotts. As a result, and in addition to its registered rights described below, Scotts enjoys extremely strong common law trademark rights in the Red Mark, embodying invaluable goodwill.

17. Scotts prominently uses the Red Mark directly on packaging for the ORTHO Products and in nationwide advertising and promotional materials for the Products, including but not limited to print advertisements, television advertisements, brochures, and the Internet.

18. Scotts advertises and sells its ORTHO Products under the Red Mark throughout the United States, including in retail stores in this judicial district. Scotts also markets its ORTHO Products under the Red Mark throughout the United States via the Internet, including at its website www.ortho.com.

19. Scotts' Red Mark is inherently distinctive. In addition, the Red Mark has become favorably known among consumers as used in connection with the ORTHO Products, and has become an invaluable symbol of the source of products bearing the Red Mark, of the high quality of products bearing the mark, and of consumer goodwill.

5

20.     In addition to Scotts' extensive common law trademark rights, OMS Investments, Inc. owns the following long-standing federal trademark registrations the Red Mark (collectively, the "Registered Red Mark"):

| Mark | Registration No. & Date | Date of First Use | Goods |
|---|---|---|---|
|  | 2991191 September 6, 2005 | December 31, 1995 | Class 5: insecticides, pesticides, fungicides, herbicides, rodenticides, miticides; biological insect spray concentrate for outdoor home and garden use; animal poisons, preparations for destroying vermin, insect repellents, insect repellent in topical form; flea killer, fire ant bait, fire ant granules, termite, carpenter ant and fire ant killer for domestic use; pesticide, namely, slug and snail bait for domestic use |
|  | 2991195 September 6, 2005 | December 31, 1995 | Class 5: insecticides, pesticides, fungicides, herbicides, rodenticides, miticides; biological insect spray concentrate for outdoor home and garden use; animal poisons, preparations for destroying vermin, insect repellents, insect repellent in topical form; flea killer, fire ant bait, fire ant granules, termite, carpenter ant and fire ant killer for domestic use; pesticide, namely, slug and snail bait for domestic use |

21.     These registrations are valid, subsisting, and in full force and effect. True and correct copies of documents retrieved from the United States Patent and Trademark Office's ("USPTO") online Trademark Status & Document Retrieval database ("TSDR") evidencing the current status and OMS Investments, Inc.'s ownership of the registrations are attached hereto as **Exhibit A**.

22.     Notably, United States Trademark Registration Nos. 2991191 and 2991195 for Scotts' Registered Red Mark achieved incontestable status pursuant to 15 U.S.C. § 1065.

6

Accordingly, these registrations provide conclusive evidence of the validity of the registered trademark, OMS Investments, Inc.'s ownership of the registered trademark, and OMS Investments, Inc.'s exclusive right to use the registered trademark in connection with the goods specified in the certificates of registration for the marks. 15 U.S.C. § 1115(b).

23.     In addition to Scotts' common law trademark rights based on its longstanding use of the Red Mark in United States interstate commerce, Scotts enjoys a presumption of nationwide exclusive rights to use the Red Mark dating back over seventeen years, to September 6, 2005, the registration date of United States Trademark Registration Nos. 2991191 and 2991195. 15 U.S.C. §§ 1057(b) and 1072.

24.     During its many continuous years of use of its Red Mark, Scotts has used the red pentagonal design mark pictured below (the "Red Design Mark"):



25.     Scotts first used the Red Design Mark in United States interstate commerce in connection with the ORTHO Products at least as early as August 11, 2010 and has used the mark in United States interstate commerce continuously since that date.

26.     Scotts advertises and sells its ORTHO Products under the Red Design Mark throughout the United States, including in retail stores in this judicial district. Scotts also markets its Products under the Red Design Mark throughout the United States via the Internet, including at its website www.ortho.com. Representative examples of Scotts' various uses of the Red Design

7

Mark on or in connection with the ORTHO Products are pictured below and attached as **Exhibit B**.



27.     Scotts also heavily markets the ORTHO Products under the Red Marks on social media platforms including the following:

Twitter: https://twitter.com/ortho

YouTube: https://www.youtube.com/user/orthobrand

Facebook: https://www.facebook.com/ortho/

Instagram: https://www.instagram.com/ortho

28.     Scotts has invested substantial resources developing, advertising, promoting and marketing the ORTHO Products under the Red Design Mark throughout the United States and establishing these goods in the minds of consumers as high-quality goods offered by Scotts. As a result, and in addition to its registered rights described below, Scotts enjoys extremely strong common law trademark rights in the Red Design Mark, embodying invaluable goodwill.

29.     Scotts prominently uses the Red Design Mark directly on packaging for the ORTHO Products and in nationwide advertising and promotional materials for the Products, including but not limited to print advertisements, television advertisements, brochures, and the Internet.

30.     Scotts' Red Design Mark is inherently distinctive. In addition, the Red Design Mark has become favorably known among consumers as used in connection with the ORTHO Products and has become an invaluable symbol of the source of products bearing the Red and White Design Mark, of the high quality of products bearing the mark, and of consumer goodwill.

31.     In addition to Scotts' common law trademark rights, OMS Investments, Inc. owns several long-standing federal trademark registrations for the Red Design Mark including those identified below (collectively, the "Registered Red Design Marks"):

| Mark | Registration No. & Date | Date of First Use | Goods |
|------|------------------------|-------------------|-------|
|  | 4356627 June 25, 2013 | February 1, 2011 | Class 5: Pesticides, insecticides, herbicides, fungicides, parasiticides, insect bait in the nature of insecticides for pest control purposes |
|  | 4271554 January 8, 2013 | August 11, 2010 | Class 21: rodent traps |
|  | 4564703 July 8, 2014 | March 2014 | Class 8: Hand-operated sprayers for applying, pesticides, insecticides, herbicides and fungicides |

9

| Mark | Registration No. & Date | Date of First Use | Goods |
|------|-------------------------|-------------------|-------|
| ORTHO | 4564704 July 8, 2014 | March 2014 | Class 21: Garden hose-end sprayers for applying, pesticides, insecticides, herbicides and fungicides |
| ORTHO | 3582553 March 3, 2009 | December 31, 2001 | Class 5: pesticides, insecticides, fungicides, herbicides, miticides, and parasiticides for domestic use; insect repellents |

32.     These registrations are valid, subsisting, and in full force and effect. True and correct copies of documents retrieved from the USPTO's online TSDR database evidencing the current status and OMS Investments, Inc.'s ownership of these registrations are attached hereto as **Exhibit C**.

33.     Notably, the United States Trademark Registrations for the Registered Red Design Marks have all achieved incontestable status pursuant to 15 U.S.C. § 1065. Accordingly, these registrations serve as conclusive evidence of the validity of the Registered Red Design Marks, OMS Investments, Inc.'s ownership of the registered trademarks, and OMS Investments, Inc.'s exclusive right to use the registered trademarks in connection with the goods specified in the certificates of registration for the marks. 15 U.S.C. § 1115(b).

34.     In addition to Scotts' extensive common law trademark rights developed through use in United States commerce, Scotts is entitled to a presumption of nationwide exclusive rights to use the Red Design Mark dating back almost nine years, to January 8, 2013, the registration date of United States Trademark Registration No. 4271554. 15 U.S.C. §§ 1057(b) and 1072.

10

35.     Since first using the Red Marks on and in connection with the ORTHO Products, Scotts has made at least hundreds of millions of dollars, and likely billions of dollars, in sales of its Products under the Red Marks in the United States, and spent at least tens of millions of dollars on promoting and marketing the ORTHO Products under the Red Marks on a nationwide basis. As a result of Scotts' extensive sales, investment in and promotion of the ORTHO Products under the Red Marks, as well as widespread publicity in the United States, when consumers in the United States encounter the Red Marks, they immediately associate the Red Marks with Scotts. The ORTHO products bearing the Red Marks have been in households throughout the United States for decades.

36.     In fact, the Red Marks have become famous under Section 43(a) of the Lanham Act, U.S.C. § 1125(c) well prior to Defendant's use of its Red Mark (as defined below).

### *Scotts' Distinctive ORTHO Black Trade Dress*

37.     Scotts has been, and is now, extensively engaged in the business of marketing and selling, in United States commerce, control products under the ORTHO mark in a unique and highly distinctive packaging design.

38.     Scotts has spent a significant amount of time and resources intentionally developing an inherently distinctive and non-functional design for the packaging of certain of its ORTHO control products, which consumers associate solely with Scotts and its high-quality products.

39.     The distinctive packaging of certain Scotts' ORTHO control products consists of a unique arrangement of colors, graphic elements, font styles and text, with a black background with some lighter gradations of gray, a prominent placement of a red pentagon containing a brand name in white lettering above horizontal information bars that start on the left side of the label and connect into a circular or arc design that contains an image of green plant material. One

11

information bar is yellowish/gold and the other information bar is silver. A product name is placed between the pentagon design and the information bars. Examples of this distinctive trade dress is pictured below and in **Exhibit D** attached hereto:



The trade dress embodied in the ORTHO weed control products, such as those pictured above, and in Exhibit D is collectively referred to as the "ORTHO Black Trade Dress."

40.    Scotts first used the ORTHO Black Trade Dress in connection with its weed control products in United States interstate commerce and developed intellectual property rights in it, well prior to Defendant's use of its Black Trade Dress (as defined below).

41.    The ORTHO Black Trade Dress is highly distinctive in the control industry.

42.    OMS Investments, Inc. owns the ORTHO Black Trade Dress, and the Scotts Company LLC uses the Trade Dress pursuant to a license from OMS Investments, Inc.

43.    Scotts markets and sells its control products bearing the ORTHO Black Trade Dress throughout the United States, including in retail stores in this District. Scotts also markets its products bearing the ORTHO Black Trade Dress throughout the United States via its website

12

www.ortho.com.

44. Scotts' ORTHO Black Trade Dress is inherently distinctive, has become favorably known among consumers as used in connection with Scotts' products, and has become a valuable symbol of the source of Scotts' products, of the high quality of the products, and of the goodwill associated with the Trade Dress.

45. In addition, as a result of Scotts' substantial sales and widespread use of the ORTHO Black Trade Dress, Scotts' extensive advertising and publicity for that Trade Dress, the widespread recognition of that Trade Dress by consumers, and as evidenced by Defendant's intentional copying of the ORTHO Black Trade Dress, Scotts' ORTHO Black Trade Dress has acquired secondary meaning in the relevant marketplace.

*Scotts' Copyrighted ORTHO Black Label*

46. OMS Investments, Inc. is the author and exclusive copyright owner of the ORTHO label below (the "ORTHO Black Label"):



47. Scotts' ORTHO Black Label is an original work of authorship entitled to the full protection of the Copyright Laws, 17 U.S.C. §§ 101 et seq.

48. The ORTHO Black Label is registered to OMS Investments with the United States Copyright Office (Reg. No. VA 2-363-784). A true and correct copy of the copyright registration certificate for the ORTHO Black Label is attached hereto as **Exhibit E**.

### *Scotts' Copyrighted Yellow Barrier Design*

49. Certain ORTHO Products bear images of a home interior, set off by doors, featuring yellow pest barrier lines, as pictured below ("Scotts' Yellow Barrier Design"):



50. OMS Investments, Inc. is the author and exclusive copyright owner of Scotts' Yellow Barrier Design.

51. Scotts' Yellow Barrier Design is an original work of authorship entitled to the full protection of the Copyright Laws, 17 U.S.C. §§ 101 et seq.

52. Scotts' Yellow Barrier Design is registered to OMS Investments with the United States Copyright Office (Reg. No. VA 2-350-764). A true and correct printout from the Copyright

14

Office's website showing the registered status of Scotts Yellow Barrier Design is attached hereto as **Exhibit F**.

<u>**Defendant's Infringing Acts**</u>

53.     Defendant markets and sells control products under: (1) a pentagonal red design mark (the "Defendant's Red Mark"); (2) bearing trade dress that imitates, copies, and is substantially similar to Scotts' distinctive ORTHO Black Trade Dress and ORTHO Black Label; and (3) bearing labels that copy and that are substantially similar to Scotts' Yellow Barrier Design.

***Defendant's Red Mark***

54.     Examples of Defendant's use of its Red Mark, including as used in commerce, are pictured below:





15

55. Defendant recently transitioned to the Defendant's Red Mark from a design mark that was less similar to Scotts' Red Marks and that implemented different color patterns and design elements.

56. Notwithstanding Scotts' prior common law trademark and registered trademark rights in and to the Red Marks, Defendant also filed the following applications with the United States Patent and Trademark Office ("USPTO") to register Defendant's Red Mark (collectively, "Defendant's Applications") for goods that include control products:

| Mark | Ser. No. | Filing Date | Goods |
|---|---|---|---|
|  | 90218728 | September 28, 2020 | Class 1: fertilizers; plant stimulants, namely, growth stimulants for plant; soil for growing; plant growth regulating preparations<br><br>Class 5: chemical herbicides, fungicides and insecticides<br><br>Class 31: mulch<br><br>Class 44: lawn and garden care services; landscape design and garden design services; lawn and garden care services, namely, digital diagnostic services to identify plant, turfgrass, and soil problems and prescribe solutions |
|  | 97056366 | October 1, 2021 | Class 1: organic fertilizers; organic plant stimulants, namely, organic biostimulants being plant growth stimulants; organic soil for growing; organic plant growth regulating preparations<br><br>Class 5: organic chemical herbicides, fungicides and insecticides<br><br>Class 31: organic mulch<br><br>Class 44: lawn and garden care services; landscape design and garden design |

16

| Mark | Ser. No. | Filing Date | Goods |
|---|---|---|---|
| | | | services; lawn and garden care consulting services, namely, providing diagnostic services to identify plant, turfgrass, and soil problems and prescribe solutions using digital technology |
|  | 90218625 | September 28, 2020 | Class 1: fertilizers; plant stimulants, namely, growth stimulants for plants; soil for growing; plant growth regulating preparations<br><br>Class 5: chemical herbicides, fungicides and insecticides<br><br>Class 31: mulch<br><br>Class 44: lawn and garden care services; landscape design and garden design services; lawn and garden care services, namely, digital diagnostic services to identify plant, turfgrass, and soil problems and prescribe solutions |

57.     Scotts recently opposed registration of the marks that are the subject of Defendant's applications Ser. Nos. 90218728 and 97056366 in the United States Patent and Trademark Office's Trademark Trial and Appeal Board (Opposition Proceeding Nos. 91282774 and 91285766).

58.     In addition, Defendant also owns the following recent registrations for variations of Defendant's Red Mark ("Defendant's Registered Marks") for goods that include control products:

| Mark | Reg. No. | Filing Date / Reg. Date | Goods |
|---|---|---|---|
|  | 6981944 | September 28, 2020 / February 14, 2023 | Class 1: fertilizers; plant stimulants, namely, growth stimulants for plant; soil for growing; plant growth regulating preparations<br><br>Class 5: chemical herbicides, fungicides and insecticides |

17

| Mark | Reg. No. | Filing Date / Reg. Date | Goods |
|---|---|---|---|
| | | | |
| BioADVANCED SCIENCE-BASED SOLUTIONS | 7140175 | September 28, 2020 / August 15, 2023 | Class 1: Fertilizers; plant stimulants, namely, growth stimulants for plant; soil for growing; plant growth regulating preparations Class 5: Chemical herbicides, fungicides and insecticides |

***Defendant's Black Trade Dress***

59.     Defendant also amended the packaging for several of its control products to a new design that is confusingly similar to Scotts' ORTHO Black Trade Dress and that is substantially similar to the copyrighted ORTHO Black Label. The drastic change to Defendant's current trade dress ("Defendant's Black Trade Dress") is illustrated below:

**Defendant's Prior Packaging Designs**     **Defendant's Current Packaging Design**




 

60.     Upon information and belief, prior to its first use of Defendant's Black Trade Dress, Defendant had never used a black label and/or a black background for any of its control products, and upon information and belief, began using Defendant's Black Trade Dress in an effort to capitalize on the reputation and goodwill of Scotts' ORTHO Black Trade Dress.

61.     Defendant's Black Trade Dress has a black background color with some lighter gradations of gray, a prominent placement of Defendant's pentagonal Red Mark containing a brand name in white lettering above information bars that start on the left side of the label and connect into a circular or arc design the contains an image of a green plant material. One information bar is yellowish/gold and the other information bar is silver. A product name is placed between the pentagon design and the information bars.

62.     As shown below, Defendant's Black Trade Dress is not only confusingly similar to Scotts' ORTHO Black Trade Dress, it is substantially similar to and a clear copy of the copyrighted aspects of OMS' ORTHO Black Label:




63. Defendant does not have, and has never had, any license, authorization, permission, or consent from OMS Investments to reproduce, distribute, publicly perform, publicly display, or prepare derivative works based, in whole or in part, on the ORTHO Black Trade Dress and/or the ORTHO Black Label.

64. On information and belief, Defendant's adoption of its Black Trade Dress was intended as a dogged imitation of the distinctive and unique components of Scotts' inventive and unique ORTHO Black Trade Dress.

65. Defendant markets and sells its control products in Defendant's Black Trade Dress and under Defendant's Red Mark in trade channels that are the same as Scotts' trade channels for its ORTHO Products, or that are highly similar thereto, and to consumers who are identical to or that overlap with consumers of Scotts' ORTHO Products. Indeed, Defendant's control products are frequently sold in the same stores as, and even placed alongside, Scotts' ORTHO Products.

66. Upon information and belief, Defendant designed and uses Defendant's Red Mark

20

and Defendant's Black Trade Dress with actual and constructive knowledge of Scotts' prior intellectual property rights, intending to capitalize on the reputation and goodwill of Scotts and its Marks and Trade Dress, to confuse and deceive consumers, and to unfairly compete with Scotts.

67.    Scotts and Defendant are competitors and Scotts has never authorized, licensed, or otherwise endorsed Defendant's use of Defendant's Red Mark or Defendant's Black Trade Dress.

68.    Defendant's use of Defendant's Red Mark and Defendant's Black Trade Dress in connection with the sale of control products in interstate commerce, including in Ohio in this Judicial District, has caused, and is likely to cause, confusion, mistake, and deception among the relevant purchasing public. Consumers and the trade will likely believe that Defendant's control products are associated with, or connected with, or approved or authorized by Scotts, or that Defendant's control products originate from the same source as Scotts' products, when that is not the case.

69.    Defendant's registration of the Defendant's Red Mark, in Defendant's Applications for control products, is likely to cause confusion, mistake, and deception among the relevant purchasing public. Consumers and the trade will likely mistakenly believe that Defendant's control products are associated with, or connected with, or approved or authorized by Scotts, or that Defendant's products originate from the same source as Scotts' products, when that is not the case.

70.    Defendant's continued registration of Defendant's Registered Mark for control products is likely to cause confusion, mistake, and deception among the relevant purchasing public. Consumers and the trade will likely mistakenly believe that Defendant's control products are associated with, or connected with, or approved or authorized by Scotts, or that Defendant's products originate from the same source as Scotts' products, when that is not the case.

71.    Any confusion caused by Defendant's use and/or registration of Defendant's Red

Mark and/or Defendant's Black Trade Dress for control products would result in injury and have a direct impact on Scotts' reputation and its ability to market its own products under its marks.

72.     In addition, any defect, objection, or fault found with the control products Defendant offers under Defendant's Red Mark and/or Defendant's Black Trade Dress would negatively impact and seriously injure the reputation and goodwill Scotts has established for itself through its use of its marks.

73.     Upon information and belief, Defendant's use of Defendant's Red Mark in interstate commerce has caused and is likely to cause dilution of Scotts' famous Red Marks, by lessening the capacity of the famous Marks to identify and distinguish the ORTHO Products and by tarnishing the reputation of the Red Marks, all to Scotts' detriment.

74.     All of the foregoing acts of Defendant have caused and, unless restrained by this Court, will continue to cause serious and irreparable injury and damage for which Scotts has no adequate remedy at law. Defendant has knowingly and willfully used and will continue to use the Defendant's Red Mark and Defendant's Black Trade Dress in connection with the advertisement, distribution, offering for sale, and sale of control products under Defendant's Red Mark and Defendant's Black Trade Dress with an intent to capitalize on the reputation and goodwill of Scotts and its infringed marks, to confuse and deceive consumers, and to unfairly compete with Scotts.

### *Defendant's Yellow Barrier Design*

75.     Defendant also makes unauthorized use of Scotts' Yellow Barrier Design. Defendant implemented, reproduced, distributed, and publicly displayed a yellow barrier design ("Defendants' Yellow Barrier Design") that is strikingly and substantially similar to Scotts' Yellow Barrier Design or that is a derivative of Scotts' Yellow Barrier Design on Defendants'

competing products and in essentially the same label location in which Scotts' Yellow Barrier Design is displayed on Scotts' products, as pictured here and at **Exhibit G**:

**Defendant's Product**

**Scotts' Product**

 

76.     Defendant does not have, and has never had, any license, authorization, permission, or consent from Scotts to reproduce, distribute, publicly perform, publicly display, or prepare derivative works based, in whole or in part, on Scotts' Yellow Barrier Design.

77.     Defendant's infringement of Scotts' Yellow Barrier Design perpetuates the intended impression that Defendant and its products are authorized by Scotts when that is not the case.

## COUNT I

### INFRINGEMENT OF OMS INVESTMENTS' REGISTERED RED MARKS
### 15 U.S.C. § 1114

78.     Scotts repeats the allegations in Paragraphs 1 through 77 of this Complaint as though fully set forth herein.

79.     Defendant, without the consent or authorization of OMS Investments, has used and

23

is using, in interstate commerce, the Defendant's Red Mark, which is nearly identical and confusingly similar to OMS Investments' prior Registered Red Mark and Registered Design Marks (collectively the "Registered Red Marks") in connection with control products that are identical and highly related to the ORTHO Products, and such use is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant and of Defendant's goods, with OMS Investments, or as to the origin, sponsorship, or approval of Defendant's goods.

80. The goodwill of OMS Investments' Registered Red Marks is of significant value, and OMS Investments is suffering, and will continue to suffer, irreparable harm should Defendant continue its unauthorized offering of its control products under Defendant's Red Mark.

81. The acts of Defendant in its unauthorized use of the Defendant's Red Mark in connection with control products are intended to, and will, divert to Defendant, the benefit of the reputation and goodwill symbolized by OMS Investments' Registered Red Marks, all of which belong exclusively to OMS Investments.

82. Defendant's acts constitute infringement of OMS Investments' Registered Red Design Mark under 15 U.S.C. § 1114(1).

83. Defendant's unauthorized and infringing acts, as alleged herein, constitute intentional and willful infringement of OMS Investments' rights.

84. As a result of Defendant's acts of trademark infringement, OMS Investments is suffering irreparable harm.

85. Unless and until Defendant is enjoined by this Court, Defendant will continue to commit acts of trademark infringement and will continue to confuse the public and cause irreparable harm to OMS Investments.

24

86.     OMS Investments is entitled to a permanent injunction against Defendant, as well as an award of any and all damages, costs, and/or attorney fees permitted under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT II

### FEDERAL FALSE DESIGNATION OF ORIGIN AND FEDERAL UNFAIR COMPETITION RELATING TO SCOTTS' RED MARKS
### 15 U.S.C. § 1125(a)

87.     Scotts repeats the allegations in Paragraphs 1 through 86 of this Complaint as though fully set forth herein.

88.     By making unauthorized use in interstate commerce of the Defendant's Red Mark, which is nearly identical and confusingly similar to Scotts' Red Marks, on and in connection with control products, Defendant is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant and Defendant's products with Scotts, or as to the origin, sponsorship or approval of Defendant's products.

89.     Defendant's acts constitute false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

90.     Defendant's unauthorized and infringing acts, as alleged herein, constitute intentional and willful infringement of Scotts' prior rights in the Red Marks.

91.     As a result of Defendant's acts of false designation of origin, Scotts is suffering irreparable harm.

## COUNT III

### TRADEMARK DILUTION OF BLURRING AND TARNISHMENT
### OF OMS INVESTMENTS' RED MARKS
### 15 U.S.C. § 1125 (C)

92.     Scotts incorporates the allegations set forth in Paragraphs 1 through 91 above as if fully set forth here.

93.     OMS Investments' Red Marks are famous and distinctive throughout the United States including among consumers, the trade, and the general public in the State of Ohio and in this Judicial District, and were famous long before Defendant commenced their unlawful use of Defendant's Mark on pest and weed control products.

94.     The foregoing acts of Defendant have caused, and will continue to cause, irreparable dilution of the distinctive quality of OMS Investments' Red Marks and are intended to undermine the uniqueness and distinctiveness of the Red Marks, constituting dilution by blurring of the Red Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c).

95.     The foregoing acts of Defendant have also caused, and will continue to cause, a reduction in value of OMS Investments' Red Marks because the public will wrongly associate the lack of quality and/or prestige of Defendant's control products with OMS Investments, constituting dilution by tarnishment of the Red Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

96.     Defendant's unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

97.     Defendant's actions have caused and continue to cause irreparable harm and damage to OMS Investments, for which OMS Investments has no adequate remedy at law. Unless

26

enjoined by this Court, Defendant will continue their wrongful actions, further injuring Scotts and confusing the public.

## COUNT IV

### VIOLATION OF OHIO'S DECEPTIVE TRADE PRACTICES ACT RELATING TO SCOTTS' RED MARKS

98.     Scotts incorporates the allegations set forth in Paragraphs 1 through 97 above as if fully set forth here.

99.     By making and selling in commerce control products in connection with the Defendant's Red Mark, which is confusingly similar to Scotts' Red Marks, Defendant is engaging in deceptive trade practices and violating Ohio's Deceptive Trade Practices Act as set forth in Ohio Revised Code §§ 4165.01 through 4165.04. Among other things, Defendant is causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the products sold under Defendant's Mark and as to the affiliation, connection, or association between those products and Scotts.

100.     Defendant willfully engaged in these unfair trade practices knowing them to be deceptive.

101.     Defendant's deceptive trade practices also have caused or are likely to cause damage to Scotts' business reputation and Scotts' goodwill, and unless restrained and enjoined, will continue to irreparably impair their reputation and goodwill for which there is no adequate remedy at law.

## COUNT V

## COMMON LAW UNFAIR COMPETITION RELATING TO SCOTTS' RED MARKS

102. Scotts incorporates the allegations set forth in Paragraphs 1 through 101 above as if fully set forth here.

103. By making and selling in commerce control products under the Defendant's Red Mark, Defendant is creating a likelihood of confusion, mistake, or deception as to the source, origin, or sponsorship of its products. Defendant's use of the Defendant's Red Mark in connection with Defendant's products is likely to induce consumers to mistakenly believe that Defendant's products are affiliated, sponsored, sold, approved by, or connected with Scotts.

104. Defendant's conduct has been intentional and undertaken for the purpose of deceiving consumers into believing that its goods are associated with Scotts. Defendant has acted with full knowledge of the deceptiveness of its conduct and harm to Scotts' business.

105. Defendant's conduct constitutes unfair competition under the common law of the State of Ohio.

106. Defendant's acts of unfair competition are causing Scotts to suffer irreparable harm, for which it has no adequate remedy at law. Unless and until Defendant is enjoined, Defendant will continue to compete unfairly against and cause irreparable harm to Scotts.

## COUNT VI

## FEDERAL FALSE DESIGNATION OF ORIGIN AND FEDERAL UNFAIR COMPETITION RELATING TO ORTHO BLACK TRADE DRESS
## 15 U.S.C. § 1125(a)

107. Scotts incorporates the allegations set forth in Paragraphs 1 through 106 above as if fully set forth here.

28

108.    By making unauthorized use in interstate commerce of Defendant's Black Trade Dress, which is confusingly similar to Scotts' ORTHO Black Trade Dress, Defendant is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant and Defendant's control products with Scotts, or as to the origin, sponsorship or approval of Defendant's control products.

109.    Defendant's acts constitute false designation of origin and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

110.    Defendant's unauthorized acts, as alleged herein, are intentional and willful.

111.    As a result of Defendant's unlawful acts of false designation of origin and unfair competition, Scotts is suffering irreparable harm.

## COUNT VII

### VIOLATION OF OHIO'S DECEPTIVE TRADE PRACTICES ACT RELATING TO ORTHO BLACK TRADE DRESS

112.    Scotts repeats the allegations in Paragraphs 1 through 111 of this Complaint as though fully set forth herein.

113.    By making and selling in commerce control products in Defendant's Black Trade Dress that is confusingly similar to Scotts' ORTHO Black Trade Dress, Defendant is engaging in deceptive trade practices and violating Ohio's Deceptive Trade Practices Act as set forth in Ohio Revised Code §§ 4165.01 through 4165.04. Among other things, Defendant is causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Defendant's control products sold in the Accused Trade Dress and as to the affiliation, connection, or association between those products and Scotts.

114.    Defendant willfully engaged in these unfair trade practices knowing them to be deceptive.

29

115.    Defendant's deceptive trade practices also have caused or are likely to cause damage to Scotts' business reputation and Scotts' goodwill, and unless restrained and enjoined, will continue to irreparably impair their reputation and goodwill for which there is no adequate remedy at law.

## COUNT VIII

**COMMON LAW UNFAIR COMPETITION**
**RELATING TO ORTHO BLACK TRADE DRESS**

116.    Scotts repeats the allegations in Paragraphs 1 through 115 of this Complaint as though fully set forth herein.

117.    By making and selling in commerce its control products in Defendant's Black Trade Dress, Defendant is creating a likelihood of confusion, mistake, or deception as to the source, origin, or sponsorship of its control products. Defendant's use of Defendant's Black Trade Dress in connection with Defendant's control products is likely to induce consumers to mistakenly believe that Defendant's control products are affiliated, sponsored, sold, approved by, or connected with Scotts.

118.    Defendant's conduct has been intentional and undertaken for the purpose of deceiving consumers into believing that their goods are associated with Scotts. Defendant has acted with full knowledge of the deceptiveness of their conduct and harm to Scotts' business.

119.    Defendant's conduct constitutes unfair competition under the common law of the State of Ohio.

120.    Defendant's acts of unfair competition are causing Scotts to suffer irreparable harm, for which it has no adequate remedy at law. Unless and until Defendant is enjoined, Defendant will continue to compete unfairly against and cause irreparable harm to Scotts.

## COUNT IX

## CANCELLATION OF UNITED STATES REGISTRATION NO. 6981944
## 15 U.S.C. § 1119

121.    Scotts repeats the allegations in Paragraphs 1 through 120 of this Complaint as though fully set forth herein.

122.    This is a claim for cancellation of United States Registration No. 6981944 (the '944 Registration") under 15 U.S.C. § 1119.

123.    Scotts' Red Design Mark, including but not limited to its Registered Red Design Marks, is strong and distinctive, and Scotts and its predecessors in interest and affiliates have extensively promoted and sold Scotts' products under the Mark in the United States.

124.    Notwithstanding Scotts' prior rights in and to its Red Design Mark, on September 28, 2020, Defendant filed application Ser. No. 90978837 to register a variation of Defendant's Red Mark for goods and services in Classes 1, 5, 31, and 44. At the time it filed this application, Defendant had at least constructive knowledge of Scotts' rights in its Red Design Mark.

125.    On February 14, 2023, the USPTO issued the '944 Registration for a version of Defendant's Red Mark for "fertilizers; plant stimulants, namely, growth stimulants for plant; soil for growing; plant growth regulating preparations" in Class 1 and "chemical herbicides, fungicides and insecticides" in Class 5.

126.    The mark that is the subjection the '944 Registration is confusingly similar, in appearance, sound, meaning, and commercial impression, to Scotts' Red Design Mark.

127.    The products Scotts offers under its Red Design Mark are identical and, at a minimum, closely related or similar to the goods recited in the '944 Registration and offered under the mark that is the subject of the Registration, and Scotts offers its products to identical, similar, or overlapping classes of purchasers.

31

128.     Defendant's registration of the mark that is the subject of the '944 Registration in connection with goods recited in the Registration is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendant and of the goods recited in the Registration.

129.     Defendant's registration of the mark that is the subject of the '944 Registration in connection with the goods recited in the Registration is likely to cause dilution of Scotts' famous Red Design Mark, by lessening the capacity of Scotts' Red Design Mark to identify and distinguish Scotts' goods and services and by harming the reputation of Scotts' Red Design Mark, all to Scotts' detriment.

130.     As a result, Scotts is being harmed by the continued registration of the mark that is the subject of the '944 Registration.

131.     In view of the foregoing, the '944 Registration should be cancelled in its entirety pursuant to 15 U.S.C. § 1119.

## COUNT X

### CANCELLATION OF UNITED STATES REGISTRATION NO. 7140175
### 15 U.S.C. § 1119

132.      Scotts repeats the allegations in Paragraphs 1 through 131 of this Complaint as though fully set forth herein.

133.     This is a claim for cancellation of United States Registration No. 7140175 (the '175 Registration") under 15 U.S.C. § 1119.

134.     Scotts' Red Design Mark, including but not limited to its Registered Red Design Marks, is strong and distinctive, and Scotts and its predecessors in interest and affiliates have extensively promoted and sold Scotts' products under the Mark in the United States.

32

135.    Notwithstanding Scotts' prior rights in and to its Red Design Mark, on September 28, 2020, Defendant filed application Ser. No. 90980053 to register a variation of Defendant's Red Mark for goods in Classes 1 and 5. At the time it filed this application, Defendant had at least constructive knowledge of Scotts' rights in its Red Design Mark.

136.    On August 15, 2023, the USPTO issued the '175 Registration for a version of Defendant's Red Mark for "fertilizers; plant stimulants, namely, growth stimulants for plant; soil for growing; plant growth regulating preparations" in Class 1 and "chemical herbicides, fungicides and insecticides" in Class 5.

137.    The mark that is the subject of the '175 Registration is confusingly similar, in appearance, sound, meaning, and commercial impression, to Scotts' Red Design Mark.

138.    The products Scotts offers under its Red Design Mark are identical and, at a minimum, closely related or similar to the goods recited in the '175 Registration offered under the registered mark, and Scotts offers its products to identical, similar, or overlapping classes of purchasers.

139.    Defendant's registration of the mark that is the subject of the '175 Registration in connection with the goods recited in the Registration is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendant and the goods recited in the Registration.

140.    Defendant's registration of the mark that is the subject of the '175 Registration in connection with the goods recited in the Registration is likely to cause dilution of Scotts' famous Red Design Mark, by lessening the capacity of Scotts' Red Design Mark to identify and distinguish Scotts' goods and services and by harming the reputation of Scotts' Red Design Mark, all to Scotts' detriment.

141.    As a result, Scotts is being harmed by the continued registration of the mark that is the subject of the '175 Registration.

142.    In view of the foregoing, the '175 Registration should be cancelled in its entirety pursuant to 15 U.S.C. § 1119.

**COUNT XI**

**COPYRIGHT INFRINGEMENT
RELATING TO OMS INVESTMENTS' YELLOW BARRIER DESIGN
17 U.S.C. § 106 and 501**

143.    Scotts repeats the allegations in Paragraphs 1 through 142 of this Complaint as though fully set forth herein.

144.    OMS Investments is the author and exclusive owner of all rights, title, and interest, in and to the copyright in Scotts' Yellow Barrier Design.

145.    Scotts' Yellow Barrier Design is an original work of authorship entitled to the full protection of the Copyright Laws, 17 U.S.C. §§ 101 et seq.

146.    Scotts' Yellow Barrier Design has been registered with the United States Copyright Office by OMS Investments, Inc. (Reg. No. VA0002350764). *See* **Exhibit F**.

147.    Defendant, without OMS Investments' consent or authorization, has unlawfully reproduced, distributed, publicly performed, publicly displayed, and/or prepared Defendant's Yellow Barrier Design, which is identical and/or substantially similar to Scotts' Yellow Barrier Design, and/or that is derivative of Scotts' Yellow Barrier Design.

148.    Defendant's copying of Scotts' Yellow Barrier Design constitutes infringement under 17 U.S.C. § 501 et seq., as violating the exclusive rights granted to OMS Investments by 17 U.S.C. § 106.

149.    Defendant has financially profited from its infringing activities.

150.    Defendant engaged in the aforesaid acts of infringement for its own commercial and financial benefit and has failed to compensate OMS Investments for Defendant's infringing acts.

151.    Defendant's acts of infringement have been willful, intentional, and purposeful in that, among other things, Defendant had access to Scotts' Yellow Barrier Design before engaging in its unlawful acts, and had knowledge of OMS Investments' copyright therein, thus evidencing Defendant's intentional disregard of, and indifference to, OMS Investments' rights.

152.    As a direct and proximate result of Defendant's intentionally infringing conduct, OMS Investments has suffered financial damage and has sustained damage to its goodwill among customers and potential customers.

153.    As a direct and proximate result of Defendant's intentional infringing conduct, Defendant has been unjustly enriched and OMS Investments is entitled to (among other things) Defendant's profits attributable to its infringement, including an account of such profits.

154.    As a direct and proximate result of Defendant's intentionally infringing conduct, OMS Investments is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. §505 and otherwise according to law.

155.    Unless enjoined by this Court, Defendant will continue its unlawful conduct and will cause OMS Investments to suffer additional harm, financial and otherwise (including irreparable harm). Absent injunctive relief, OMS Investments does not have an adequate remedy at law to redress the injuries that Defendant's wrongful conduct has caused and will continue to cause.

## COUNT XII

## COPYRIGHT INFRINGEMENT
## RELATING TO OMS INVESTMENTS' ORTHO BLACK LABEL
## 17 U.S.C. § 106 and 501

156. Scotts repeats the allegations in Paragraphs 1 through 155 of this Complaint as though fully set forth herein.

157. OMS Investments is the author and exclusive owner of all rights, title, and interest, in and to the copyright in the ORTHO Black Label.

158. The ORTHO Black Label is an original work of authorship entitled to the full protection of the Copyright Laws, 17 U.S.C. §§ 101 et seq.

159. The ORTHO Black Label has been registered with the United States Copyright Office by OMS Investments, Inc. (Reg. No. VA 2-363-784), as shown in the registration certificates attached hereto at **Exhibit E**.

160. Defendant, without OMS Investments' consent or authorization, has unlawfully reproduced, distributed, publicly performed, publicly displayed, and/or prepared the Defendant's Black Trade Dress, which is identical and/or substantially similar to the ORTHO Black Label, and/or that is derivative of the ORTHO Black Label.

161. Defendant's copying of the ORTHO Black Label constitutes infringement under 17 U.S.C. § 501 et seq., as violating the exclusive rights granted to OMS Investments by 17 U.S.C. § 106.

162. Defendant has financially profited from its infringing activities.

163. Defendant engaged in the aforesaid acts of infringement for its own commercial and financial benefit and has failed to compensate OMS Investments for Defendant's infringing acts.

36

164.     Defendant's acts of infringement have been willful, intentional, and purposeful in that, among other things, Defendant had access to the ORTHO Black Label before engaging in its unlawful acts, and had knowledge of OMS Investments' copyright therein, thus evidencing Defendant's intentional disregard of, and indifference to, OMS Investments' rights.

165.     As a direct and proximate result of Defendant's intentionally infringing conduct, OMS Investments' has suffered financial damage and has sustained damage to its goodwill among customers and potential customers.

166.     As a direct and proximate result of Defendant's intentional infringing conduct, Defendant has been unjustly enriched and OMS Investments' is entitled to (among other things) Defendant's profits attributable to its infringement, including an account of such profits.

167.     As a direct and proximate result of Defendant's intentionally infringing conduct, OMS Investments is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. §505 and otherwise according to law.

168.     Unless enjoined by this Court, Defendant will continue its unlawful conduct and will cause OMS Investments to suffer additional harm, financial and otherwise (including irreparable harm). Absent injunctive relief, OMS Investments does not have an adequate remedy at law to redress the injuries that Defendant's wrongful conduct has caused and will continue to cause.

**Jury Demand**

169.    Scotts demands a trial by jury on all matters and issues triable by a jury.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Scotts prays that the Court enter Judgment finding, concluding, and declaring:

A.    That Defendant's use of Defendant's Red Mark on and in connection with control products constitutes trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c), and unfair competition and deceptive trade practices under Ohio law;

B.    That Defendant's use of Defendant's Black Trade Dress on and in connection with control products constitutes false designation of origin under 15 U.S.C. § 1125(a), unfair competition and deceptive trade practices under Ohio law, and willful infringement of OMS Investments, Inc.'s copyright in the ORTHO Black Label;

C.    That Defendant's use of Defendant's Yellow Barrier Design constitutes willful infringement of OMS Investments, Inc.'s copyright in Scotts' Yellow Barrier Design;

D.    That Defendant and its owners, parent companies, subsidiary companies, related companies, successors, assigns, officers, directors, agents, employees and attorneys, and all persons or entities in active concert, participation, or privity with any of them, be permanently enjoined from:

1.    Using Defendant's Red Mark, including all formative variations, or any other names, marks or slogans in connection with control products likely to cause confusion, mistake or deception with respect to Scotts' Red Marks;

2.    Using Defendant's Black Trade Dress or any trade dress that is likely to cause confusion, mistake, or deception with Scotts' ORTHO Black Trade Dress and/or

that is a copy of or that is substantially similar to the ORTHO Black Label;

3.     Using Defendant's Yellow Barrier Design or any other design that is a copy of or that is substantially similar to Scotts' Yellow Barrier Design;

4.     Doing any other act or thing likely to induce the mistaken belief that Defendant or Defendant's goods are in any way affiliated, connected, or associated with Scotts or its goods, or doing any other act or thing likely to cause confusion with respect to Scotts' marks;

5.     Trading on the goodwill associated with Scotts' Red Marks or ORTHO Black Trade Dress and passing off its goods as those of Scotts; and

6.     Injuring Scotts' business reputation and the goodwill associated with Scotts' Red Marks and ORTHO Black Trade and from otherwise unfairly competing with Scotts in any manner whatsoever.

E.     That Defendant be ordered to expressly abandon its application to register the mark in Defendant's U.S. application Ser. No. 90218728.

F.     That Defendant be ordered to expressly abandon its application to register the mark in Defendant's U.S. application Ser. No. 97056366.

G.     That Defendant be ordered to expressly abandon its application to register the mark in Defendant's U.S. application Ser. No. 90218625.

H.     That the Court issue an order directing the United States Patent and Trademark Office to cancel Defendant's U.S. Registration No. 6981944 in its entirety.

I.     That the Court issue an order directing the United States Patent and Trademark Office to cancel Defendant's Registration No. 7140175 in its entirety.

J.     That Defendant be ordered to deliver up for destruction all materials, including but

not limited to labels, packaging, brochures, advertisements, literature, promotions, displays, catalogs, and all other matter in the custody or under the control of Defendant bearing and/or displaying Defendant's Red Mark, Defendant's Black Trade Dress, and/or any confusingly similar marks or trade dress related to control products;

K. That Defendant be ordered to deliver up for destruction all materials, including but not limited to labels, packaging, brochures, advertisements, literature, promotions, displays, catalogs, and all other matter in the custody or under the control of Defendant bearing and/or displaying Defendant's Yellow Barrier Design and/or any design that is substantially similar to Scotts' Yellow Barrier Design related to control products.

L. That Defendant be ordered to recall from all customers, vendors, sales people, and authorized agents all materials, including but not limited to, product packaging, brochures, advertisements, promotions, and all other matter bearing Defendant's Red Mark, Defendant's Black Trade Dress, and/or Defendant's Yellow Barrier Design related to control products;

M. That Defendant be ordered to notify all customers, vendors, sales people, and authorized agents of this Judgment;

N. That, pursuant to 15 U.S.C. § 1116, Defendant be directed to file with this Court and to serve on Scotts, within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

O. That Defendant be directed to provide a complete accounting to Scotts for any and all profits realized from the sale of control products bearing Defendant's Red Mark, Defendant's Black Trade Dress, and or Defendant's Yellow Barrier Design from inception up through the date of the injunction;

P.      That Scotts be awarded its actual compensatory damages, including but not limited

to, Defendant's profits and Scotts' damages, in an amount to be determined at trial;

Q.      That Defendant be ordered to pay treble damages pursuant to 15 U.S.C. § 1117 for

its knowing, intentional, and willful violations of federal law;

R.      That Scotts be awarded all reasonable attorneys' fees, costs and disbursements

incurred by Scotts as a result of this action, pursuant to 15 U.S.C. § 1117(a);

S.      That Scotts be awarded its actual damages in such amount as may be found, as

recoverable under the Copyright Act, state law, or otherwise permitted by law;

T.      That Scotts be awarded statutory damages, as recoverable under the law;

U.      That Scotts be awarded all damages available under Ohio law; and

V.      That Scotts be awarded any such other and further relief as this Court deems just

and proper.

Respectfully submitted,

**THE SCOTTS COMPANY LLC AND OMS INVESTMENTS, INC.**

Date: <u>October 16, 2023</u>                    By: <u>/s/ *David M. DeVillers*</u>
                                                David M. DeVillers (0059456)
                                                BARNES & THORNBURG LLP
                                                41 South High Street, Ste. 3300
                                                Columbus, OH 43215
                                                Telephone: (614) 628-0096
                                                Facsimile: (614) 628-1433 (fax)
                                                Email: DDeVillers@btlaw.com

                                                Christopher M. Dolan (pro hac vice pending)
                                                Joshua S. Frick (pro hac vice pending)
                                                BARNES & THORNBURG LLP
                                                One North Wacker Drive, Suite 4400
                                                Chicago, IL 60606

Telephone: (312) 357-1313
Email: cdolan@btlaw.com
Email: joshua.frick@btlaw.com

Attorneys for The Scotts Company LLC and OMS
Investments, Inc.

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing was served on all parties of record on

October 16, 2023, via the Court's CM/ECF system.

*/s/ David DeVillers*

David DeVillers
