## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| THE SCOTTS COMPANY, LLC, *et al.* | ) | Civil Action No. 2:23-cv-001541 |
| | ) | |
| **Plaintiffs,** | ) | **Judge Edmund A. Sargus** |
| | ) | **Magistrate Judge Elizabeth Preston Deavers** |
| v. | ) | |
| | ) | |
| SBM LIFE SCIENCE CORP., | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### DEFENDANT'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT

---

Pursuant to FED. R. CIV. P. 12(b)(6), Defendant SBM Life Science Corp. ("SBM") hereby moves the Court for the entry of an order dismissing Counts III, VI, VII, VIII, XII, XIII (erroneously designated as Count XII), and XIV (erroneously designated as Count IV) of the Second Amended Complaint [Doc. 44] for failure to state a claim upon which relief can be granted.

The grounds supporting this Motion are set forth in the memorandum of law submitted herewith.

Respectfully Submitted,

*/s/ Lindsay M. Nelson*
Katherine C. Ferguson (0079207)
Lindsay M. Nelson (0095560)
Kooperman Mentel Ferguson Yaross Ltd.
250 East Town Street, Suite 200
Columbus, Ohio 43215
Telephone: (614) 344-4800
kferguson@kmfylaw.com
lnelson@kmfylaw.com

Robert J. Morris (*pro hac vice* forthcoming)
Philip J. Cardinale (*pro hac vice* forthcoming)
Danielle B. Dobosz (*pro hac vice* forthcoming)
Smith Anderson Blount Dorsett Mitchell & Jernigan, LLP
2300 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-1220
*Counsel for SBM Life Science Corp.*

## COMBINED TABLE OF CONTENTS AND SUMMARY OF ARGUMENT

**Page**

**TABLE OF AUTHORITIES** .............................................................................................**vi**

**I.** **INTRODUCTION** ..............................................................................................**1**

**II.** **ALLEGATIONS OF SECOND AMENDED COMPLAINT ("SAC")**...............**2**

    **A.** **The Asserted Marks** .............................................................................**2**

    **B.** **The "ORTHO Black Trade Dress"** .....................................................**4**

    **C.** **The "ORTHO Black Label"** ................................................................**6**

    **D.** **Allegations Concerning BIOADVANCED Extended Control Brush Killer Product Claims** ...................................................................................................**7**

**III.** **LAW AND ARGUMENT** ..................................................................................**7**

    **A.** **Legal Standard On Motion To Dismiss** ..............................................**7**

    **B.** **Count III Fails To State A Viable Claim For Trademark Dilution** ......**8**

> _Summary:_ A trademark qualifies for protection against dilution under Section 43(c) of the Lanham Act only if it is "famous." 15 U.S.C. 1125(c)(1); _see Kibler v. Hall,_ 843 F.3d 1068, 1083 (2016). A mark is famous if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine whether a mark possesses the requisite degree of recognition to qualify as famous, courts consider: (i) the duration, extent and reach of advertising and publicity around the mark; (ii) amount, volume, and extent of product sales under the mark; (iii) actual recognition of the mark; and (iv) whether the mark is federally registered. _Id._ (i)-(iv); _see Kibler,_ 843 F.3d at 1083. Count III should be dismissed because the SAC fails to allege facts plausibly showing that the asserted trademarks are "famous."

        **1.** **Only Marks That Are "Household Names" Can Be Considered "Famous"** ..**8**

> _Summary:_ A trademark is famous only if it is a "household name," which means that "when the general public encounters the mark in almost any context, it associates the term, at least initially, with the mark's owner." _Kibler,_ 843 F.3d at 1083. Examples of marks that are famous are COCA-COLA soft drinks, BUDWEISER beer, CAMEL cigarettes, and BARBIE dolls.

2.   The SAC Lacks Factual Allegations Sufficient To Support The First Factor Considered In Determining Whether A Mark Is "Famous" (Duration, Extent And Geographic Reach Of Advertising And Publicity Of Mark) ................ 9

3.   The SAC Lacks Factual Allegations Sufficient To Support The Second "Fame" Factor (Amount, Volume, and Geographic Extent Of Goods Sold Under Mark) ........................................................................................ 12

4.   The SAC Lacks Factual Allegations Sufficient To Support The Third "Fame" Factor (Extent Of Actual Recognition Of Mark) ........................................... 14

5.   Regarding The Fourth "Fame" Factor, The Mere Fact That A Mark Is Registered Is Not Sufficient To Establish That It Is "Famous" .................. 15

6.   Summary: The SAC Does Not Allege Facts Plausibly Showing That Either Of The Asserted Marks Is A "Household Name" ........................................ 15

C.   Count VI Fails To State A Viable Claim Under The Lanham Act For Unfair Competition Relating To The "ORTHO Black Trade Dress" ................................................. 16

1.   The SAC Does Not Identify The Claimed Trade Dress Adequately ............ 16

*Summary:* "To recover for trade dress infringement under § 43(a) of the Lanham Act, a party must first identify what particular elements or attributes comprise the protectable trade dress." *Tumblebus Inc. v. Cramer,* 399 F.3d 764, 768 (6th Cir. 2005); 1 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 8.3 ("All courts agree that the elements of the alleged trade dress must be clearly listed and described."). Count VI should be dismissed because the SAC does not identify the asserted "ORTHO Black Trade Dress" sufficiently to enable defendant or the Court to ascertain what the elements of the claimed trade dress are or how the claimed trade dress is allegedly distinctive.

2.   The SAC Does Not Allege Facts Plausibly Showing The Claimed Trade Dress Is Distinctive ........................................................................................ 20

*Summary:* Count VI should be dismissed because the SAC fails to allege facts plausibly showing that the claimed trade dress is distinctive, which also is required to qualify trade dress as protectable. *See Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,* 280 F.3d 619, 629 (6th Cir. 2002).

3.   The SAC Does Not Allege Facts Plausibly Showing That The Product Line Bearing The Claimed Trade Dress Has A Consistent Overall Look ............ 21

*Summary:* Count VI also should be dismissed because the SAC seeks trade dress protection for some unspecified line of ORTHO "control products," yet it does not allege facts plausibly showing that the product line bearing the claimed trade dress has a "consistent overall look." *Rose Art Indus., Inc. v. Swanson,* 235

F.3d 165, 173 (3rd Cir. 2000); *see* 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:5.50 ("When the alleged trade dress consists of a certain look or style of different packaging for a number of different products, it is more difficult to prove that there is a common denominator among those packages which identifies plaintiff as the source. Plaintiff must prove that its alleged trade dress has a 'consistent overall look.'").

**D.**      **Counts VII and VIII Fail To State Valid Ohio State Law Claims** ................ **26**

     **1.**      **Counts VII and VIII Are Preempted By The Copyright Act** ............ **27**

*Summary:* The claims for unfair competition under the Ohio Deceptive Trade Practices Act and Ohio common law relating to the "ORTHO Black Trade Dress" (Counts VII and VIII) are preempted under 17 U.S.C. § 301. *See Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446 (6th Cir. 2001).

     **2.**      **Counts VII and VIII Fail To State Viable Claims For Relief** ............ **30**

*Summary:* The Ohio state law claims for unfair competition relating to the "ORTHO Black Trade Dress" fail to state viable claims for relief for the same reasons that Count VI fails to state a valid claim for infringement of the "ORTHO Black Trade Dress" under the Lanham Act. *ETW Corp. v. Jireh Publishing, Inc.,* 332 F.3d 915, 920 (6th Cir. 2003).

**E.**      **Count XII Fails To State A Viable Claim For Copyright Infringement Relating To The "ORTHO Black Label"** ................................................ **30**

     **1.**      **Governing Legal Framework** ................................................ **31**

     **2.**      **Since No Element Of The "ORTHO Black Label" Has Requisite Originality To Merit Copyright Protection, Any Copyright Claimed In The "ORTHO Black Label" Is Limited To Those Aspects Of Its Combination And Arrangement Of Non-Protectible Elements That Are Original** ............ **32**

*Summary:* It is axiomatic that copyright protects only against "copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). Elements of a work that are not original to the author, or expressions that are standard, stock, or common to a particular subject matter or medium, are not protectible under copyright law. *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC* 958 F.3d 532, 537. Here, no discrete element of the "ORTHO Black Label" is sufficiently original to warrant copyright protection. Thus, to the extent any claim of originality can be made concerning the "ORTHO Black Label," it is limited to aspects of its combination and arrangement of non-protectible elements that are original. *See id.,* 958 F. 3d at 538; *Satava v. Lowry,* 323 F.3d 805, 811-12 (9th Cir. 2003). Such protection is known as "thin"

copyright, *Enchant Christmas,* 958 F.3d at 538, and it affords protection that is "'thin' at best." *High Five Threads, Inc. v. Michigan Farm Bureau,* 2021 WL 1809835 *3 (W.D. Mich. May 6, 2021).

3.    **"Thin Copyright" Protects Against Only Virtually Identical Copying, Which The SAC Does Not Plausibly Show** ...................................................................... **35**

*Summary:* Where an asserted work has only "thin copyright" protection, infringement arises only if there is "virtually identical copying" of the asserted work's protected features. *Enchant Christmas,* 958 F.3d at 538; *Satava,* 323 F.3d at 812. Here, ordinary side-by-side comparison of the "ORTHO Black Label" and the accused SBM labels reveals no "virtually identical copying."

F.    **Count XIII (Erroneously Designated In The SAC As Count XII) Fails To State A Viable Claim For False Advertising Under 15 U.S.C. § 1125(a)** .............................. **39**

*Summary:* To state a claim for false advertising, a plaintiff must allege facts plausibly showing, *inter alia,* that "the defendant made false or misleading statements of fact concerning either its or own or another's product." *Ashley Furn. Indus., inc. v. American Signature, Inc.,* 2015 WL 12999664 *6 (S.D. Ohio Mar. 12, 2015). In the absence of factual allegations plausibly showing the falsity of the challenged statements, the SAC's false advertising claim is "nothing more than the type of "'unadorned the defendant-unlawfully-harmed-me' accusations that *Iqbal* deemed insufficient." *Barber v. Charter Township of Springfield, Mich.,* 412 F.4tth 382, 394 (6th Cir. 2022) (citation omitted).

G.    **Count XIV (Erroneously Designated In The SAC As Count XIV) Fails To State A Claim For False Advertising Under The Ohio Deceptive Trade Practices Act** ......... **40**

*Summary:* The claim for false advertising under the Ohio Deceptive Trade Practices Act fails to state a claim for the same reason that Count XIII fails to state claim under Section 43(a) of the Lanham Act. *See Robins v. Global Fitness Holdings, Inc.,* 838 F. Supp. 2d 631, 649 (N.D. Ohio 2012) (courts analyze claims under the Ohio Deceptive Trade Practices Act the same as analogous claims under the Lanham Act).

IV.    **CONCLUSION** ....................................................................................................... **41**

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,*
    280 F.3d 619 (6th Cir. 2002) ................................................................ 20, 30

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*
    185 F.3d 606 (6th Cir. 1999) ............................................................... 39

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................. 3, 7, 8, 14, 21, 40

*Ashley Furn. Indus., Inc. v. American Signature, Inc.,*
    2015 WL 12999664 (S.D. Ohio Mar. 12, 2015) ............................... 39

*Audi AG v. D'Amato,*
    469 F.3d 534 (6th Cir. 2006) ............................................................... 9

*Avery Dennison Corp. v. Sumpton,*
    189 F.3d 868 (9th Cir. 1999) ............................................................... 9

*Barber v. Charter Township of Springfield, Mich.,*
    31 F.4th 382 (6th Cir. 2022) ............................................................... 40

*Bd. Of Regents v. KST Elec., Ltd.,*
    550 F. Supp. 657 (W.D. Tex. 2008) ................................................... 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................... 7, 8, 10, 14, 40

*Black & Decker Corp. v. Positec USA, Inc.,*
    2015 WL 1543262 (N.D. Ill. Mar. 31, 2015) ................................. 12, 14

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.,*
    2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) ................................. 15

*Bodine Perry, PLLC v. Bodine,*
    2023 WL 2734679 (N.D. Ohio Mar. 31, 2023) ............................... 30

*Boisson v. Banian, Ltd.,*
    273 F.3d 262 (2nd Cir. 2001) ............................................................. 33

*Brookwood Funding, LLC v. Avant Credit Corp.,*
    2015 WL 11504556 (N.D. Ga. July 28, 2015) ................................. 8

*Coach Servs., Inc. v. Triumph Learning LLC,*
    668 F.3d 1356 (Fed. Cir. 2012) ............................... 8, 9, 12, 13, 14, 15

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.,*
    2015 WL 12731929 (C.D. Calif. May 8, 2015) ............................... 20

*Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn Mayer Inc.,*
    2020 WL 68775178 (C.D. Cal. Oct. 23, 2020) ........................................ 10

*Enchant Christmas Light Maze & Market, Ltd. v. Glowco, LLC,*
    958 F.3d 532 (6th Cir. 2020) ........................................ 31, 32, 34, 35, 39

*ETW Corp. v. Jireh Publishing, Inc.,*
    332 F.3d 915 (6th Cir. 2003) ........................................ 30

*EVIG, LLC v. Mister Brightside, LLC,*
    2023 WL 5717291 (D. Nev. Sept. 5, 2023) ........................................ 17, 18

*Fair Wind Sailing, Inc. v. Dempster,*
    764 F.3d 303 (3d Cir. 2014) ........................................ 16, 17, 19

*FC Online Marketing, Inc. v. Burke's Martial Arts, LLC,*
    2015 WL 4162757 (E.D.N.Y. July 8, 2015) ........................................ 20

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991) ........................................ 31, 32, 34

*Gavitt v. Born,*
    835 F.3d 623 (6th Cir. 2016) ........................................ 24

*General Motors Corp. v. Lanard Toys, Inc.,*
    468 F.3d 405 (6th Cir. 2006) ........................................ 16

*Global Brand Holdings, LLC v. Church & Dwight Co.,*
    2017 WL 6515419 (S.D.N.Y. Dec. 19, 2017) ........................................ 12, 14, 15

*Green Crush LLC v. Paradise Splash I, Inc.,*
    2018 WL 4940825 (C.D. Calif. May 3, 2018) ........................................ 20

*Halper v. Sony/ATV Music Publishing, Inc.,*
    2019 WL 994524 (6th Cir. Feb. 15, 2019) ........................................ 31

*Heller, Inc. v. Design Within Reach, Inc.,*
    2009 WL 2486054 (S.D.N.Y. Aug. 14, 2009) ........................................ 9

*Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.,*
    270 F.3d 298 (6th Cir. 2001) ........................................ 16

*High Five Threads, Inc. v. Michigan Farm Bureau,*
    2021 WL 1809835 (W.D. Mich. May 6, 2021) ........................................ 32, 34, 35, 39

*Hua-Cheng Pan v. Kohl's Dept. Stores, Inc.,*
    2013 WL 5181144 (S.D. Ohio Sept. 12, 2013) ........................................ 27, 29, 30

*In re E.I. duPont de Nemours & Co. C-8 Personal Injury Litig.,*
    87 F.4th 315 (6th Cir. 2023) ........................................ 40

vi

*International Code Council, Inc. v. UpCodes, Inc.,*
  43 F.4ᵗʰ 46 (2d Cir. 2022) .................................................................................39

*Kibler v. Hall,*
  843 F.3d 1068 (6th Cir. 2016) ...........................................................................8, 9

*Kim Seng Co. v. J & A Importers, Inc.,*
  810 F. Supp. 2d 1046 (C.D. Calif. 2011) ............................................................33

*Kohus v. Mariol,*
  328 F.3d 848 (6ᵗʰ Cir. 2003) .............................................................................31

*Landscape Forms, Inc. v. Columbia Cascade Co.,*
  113 F.3d 373 (2nd Cir. 1997) ............................................................................21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
  387 F.3d 522 (6ᵗʰ Cir. 2004) .............................................................................32

*Luv N' Care Ltd. v. Regent Baby Prods. Corp.,*
  841 F. Supp. 2d 753 (S.D.N.Y. 2012) .................................................................9

*Lyles v. Capital-EMI Music, Inc.,*
  2013 WL 6000991 (S.D. Ohio Nov. 12, 2013) ...............................................35, 39

*Mellintine v. Ameriquest Mortgage Co.,*
  515 Fed. Appx. 419 (6th Cir. 2013) ....................................................................8

*Mike Vaughn Custom Sports, Inc. v. Piku,*
  15 F. Supp. 3d 735 (E.D. Mich. 2014) .......................................................16, 19, 20

*Mosaic Brands, Inc. v. Ridge Wallet, LLC,*
  2020 WL 6821013 (C.D. Cal. Oct. 29, 2020) .....................................................18

*Novel v. Zapor,*
  2016 WL 6603291 (S.D. Ohio Mar. 22, 2016) ....................................................3

*Papasan v. Allain,*
  478 U.S. 265 (1986) ..........................................................................................7

*Parts.com, LLC v. Yahoo! Inc.,*
  996 F. Supp. 2d 933 (S.D. Cal. 2013) ................................................................10

*Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.,*
  732 F.3d 645 (6th Cir. 2013) .............................................................................7

*Plumeus, Inc. v. Intersog LLC,*
  2013 WL 5609331 (N.D. Ill. Oct. 11, 2013) .......................................................10

*Robins v. Global Fitness Holdings, Inc.,*
  838 F. Supp. 2d 631, 649 (N.D. Ohio 2012) .......................................................40

vii

*Rose Art Indus. v. Swanson,*
    235 F.3d 165 (3d Cir. 2000) .................................................................... 21, 26

*Satava v. Lowry,*
    323 F.3d 805 (9th Cir. 2003) .......................................................... 32, 34, 35, 39

*Sleep Sci. Partners, v. Lieberman,*
    2010 WL 1881770 (N.D. Cal. May 10, 2010) ............................................. 18

*Stagecraft Costuming, Inc. v. HouseHaunters LLC,*
    2011 WL 13202911 (S.D. Ohio Feb. 2, 2011) ........................................... 20

*Stromback v. New Line Cinema,*
    384 F.32d 283 (6th Cir. 2004) ............................................................... 27, 28

*Sugarfina, Inc. v. Sweet Pete's LLC,*
    2017 WL 4271133 (C.D. Cal. Sept. 25, 2017) ........................................... 18

*Taylor v. Victoria's Secret Stores, Inc.,*
    2011 WL 13097641 (W.D. Tenn. Sept. 29, 2011) ................................. 35, 39

*TCPIP Holding, Inc. v. Haar Communications, Inc.,*
    244 F.3d 88 (2nd Cir. 2001) ....................................................................... 9

*Thane Int'l, Inc. v. Trek Bicycle Corp.,*
    305 F.3d 894 (9th Cir. 2002) ....................................................................... 9

*TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N. Am., LLC,*
    292 F. Supp. 3d 864 (N.D. Iowa 2018) ........................................ 8, 12, 14, 15

*Tumblebus Inc. v. Cramer,*
    399 F.3d 754 (6th Cir. 2005) ..................................................................... 16

*Varsity News Network, Inc. v. Carty Web Strategies, Inc.,*
    2017 WL 7201873 (C.D. Cal. Aug. 30, 2017) ........................................... 14

*Walker Wear LLC v. Off-White LLC,*
    624 F. Supp. 3d 424 (S.D.N.Y. 2022) ....................................................... 10

*Wrench LLC v. Taco Bell Corp.,*
    256 F.3d 446 (6th Cir. 2001) ...................................................... 27, 28, 29, 30

*Yankee Candle Co. v. Bridgewater Candle Co.,*
    259 F.3d 25 (1st Cir. 2001) ................................................................... 21, 33

**Statutes**

15 U.S.C. § 1125(a) ........................................................................................................ 1, 16

15 U.S.C. § 1125(c) ..................................................................................................... 1, 8, 13

15 U.S.C. § 1125(c)(1) ......................................................................................................... 8

15 U.S.C. § 1125(c)(2)(A) ................................................................................. 8, 9, 12, 14, 15

17 U.S.C. § 103 ................................................................................................................. 27

17 U.S.C. § 103(a) ............................................................................................................. 30

17 U.S.C. § 103(b) ............................................................................................................. 34

17 U.S.C. § 106 ............................................................................................................ 27, 28

17 U.S.C. § 106(1) ............................................................................................................. 28

17 U.S.C. § 106(2) ............................................................................................................. 28

17 U.S.C. § 106(3) ............................................................................................................. 28

17 U.S.C. § 106(5) ............................................................................................................. 28

17 U.S.C. § 301(a) ........................................................................................................ 27, 30

Ohio Rev. Code § 4165 ...................................................................................................... 30

Ohio Rev. Code § 4165.01 ................................................................................................. 26

Ohio Rev. Code § 4165.04 ................................................................................................. 26

**Regulations**

37 C.F.R. § 202.1 .............................................................................................................. 33

**Rules**

FED R. CIV. P. 8(a)(2) ........................................................................................................ 40

FED R. CIV. P. 12(b)(6) ............................................................................................... 7, 35, 41

**Other Authorities**

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ....................................... 15, 16, 21

## I.     INTRODUCTION

This is an action concerning trademarks, trade dress, and advertising relating to consumer lawn and garden products.

Plaintiffs The Scotts Company, LLC ("Scotts LLC") and OMS Investments, Inc. ("OMS") – whom the Second Amended Complaint [Doc. 44] ("SAC") refers to collectively as "Scotts"[1] – allege that they market and sell ORTHO brand "control products" ("such as pesticides, insecticides, and related products") under two designs that the SAC calls the "Red Mark" and the "Red Design Mark." In Count III, SCOTTS purports to assert a claim against SBM for dilution of those marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). This claim should be dismissed, however, because the SAC fails to allege facts plausibly showing that the "Red Mark" and "Red Design Mark" are "famous," as Section 43(c) requires.

SCOTTS also alleges that it markets and sells "control products" under what the SAC calls the "ORTHO Black Trade Dress," which SCOTTS claims is being infringed by the packaging for certain products offered and sold by SBM. SCOTTS purports to assert claims against SBM for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count VI); unfair competition under the Ohio Deceptive Trade Practices Act (Count VII); and unfair competition under Ohio common law (Count VIII). The SAC also asserts a related claim against SBM for copyright infringement relating to a product label referred to as the "ORTHO Black Label," which the SAC cites as an example of the "ORTHO Black Trade Dress" (Count XII). As demonstrated below, the Lanham Act claim concerning the "ORTHO Black Trade Dress" (Count VI) should be dismissed because (1) it fails to identify the claimed trade dress sufficiently; (2) it fails to allege facts plausibly showing that the claimed trade dress is distinctive; and (3) it fails to allege facts plausibly showing that the line of products marketed and sold under the claimed trade dress exhibits a consistent overall look, which is required to support the trade dress protection sought. The state law claims concerning the "ORTHO Black Trade Dress" (Counts VII and VIII) should be dismissed

---

[1]      (When this brief refers to the Second Amended Complaint's use of the defined term "Scotts," it is shown in capital letters (*i.e.,* SCOTTS) to differentiate the Second Amended Complaint's defined term "Scotts" (which comprises both Scotts LLC and OMS) from the individual plaintiff Scotts LLC.

1

because (1) they are preempted by copyright law; and (2) like the Lanham Act claim, they fail to allege viable claims for relief. The copyright claim concerning the "ORTHO Black Label" (Count XII) also should be dismissed because any copyright protection for the label is "thin" and, as such, is infringed only by virtually identical copying, which the SAC fails to plausibly show.

In Count XIII (erroneously designated in the SAC as Count XII), the SAC purports to assert a claim for false advertising under Section 43(a) of the Lanham Act relating to certain statements by SBM relating to its BIOADVANCED Extended Control Brush Killer. This claim should be dismissed because the SAC fails to allege facts plausibly showing that the challenged claims are false. For the same reason, Count XIV (erroneously identified in the SAC as Count IV), which is a piggyback claim under the Ohio Deceptive Trade Practices Act, fails to state a viable claim for relief and should be dismissed.

## II. ALLEGATIONS OF SECOND AMENDED COMPLAINT ("SAC")

Plaintiff The Scotts Company, LLC ("Scotts LLC") is an Ohio limited liability company based in Ohio. SAC ¶ 6. Plaintiff OMS Investments, Inc. ("OMS") is a Delaware corporation with an office in California. *Id.* ¶ 7. The SAC refers to Scotts LLC and OMS collectively as SCOTTS, *id.* p. 1, which – according to the SAC – is a "marketer of branded consumer lawn, garden and pesticide products." *Id.* ¶ 1.

### A. The Asserted Marks

In Counts I through V of the SAC, SCOTTS purports to assert federal and state law claims relating to certain trademarks allegedly used by SCOTTS in the marketing and sale of what the SAC refers to as "control products." The SAC does not explain what "control products" are, but it lists "pesticides, insecticides, and related products" as examples. *See id.* ¶ 1.

One of the trademarks asserted as the basis for these claims is a plain red rectangle that the SAC calls the "Red Mark":



*Id.* ¶ 16. Scotts allegedly has used the "Red Mark" since 1995 in marketing and selling "control products" under the ORTHO brand. *Id.* According to the SAC, two federal trademark registrations issued for the "Red Mark" in 2005. *Id.* ¶ 21.

The other trademark asserted in this case is a red house-shaped design bearing the word ORTHO in white lettering, referred to in the SAC as the "Red Design Mark":



*Id.* ¶ 25. Scotts allegedly has used the "Red Design Mark" in connection with ORTHO "control products" since August 11, 2010. *Id.* ¶ 26. The First Amended Complaint alleges that four federal trademark registrations issued for the "Red Design Mark" in 2013 and 2014. *See id.* ¶ 32.[2]

The SAC proclaims that the asserted trademarks are "famous" under Section 43(c) of the Lanham Act, *id.* ¶ 37, but the SAC's allegations in support are largely conclusory, with few allegations that are factual. In deciding a motion to dismiss, distinguishing allegations of *fact* from those that are *conclusory* is critical. *See, e.g., Novel v. Zapor,* 2016 WL 6603291 *3 (S.D. Ohio Mar. 22, 2016) ("Under *Iqbal,* when presented with a motion to dismiss, the Court first determines which of Plaintiff's allegations are factual and entitled to a presumption of truth, and which are 'conclusory' and not entitled to such a presumption.").

The *factual* allegations offered in support of the First Amended Complaint's assertion that the "Red Mark" is "famous" under Section 43(c) of the Lanham Act consist of the following:

- Since 1995, Scotts has continuously engaged in the business of manufacturing, marketing and selling ORTHO "control products" under the "Red Mark." *See id.* ¶ 16.

- Scotts prominently uses the "Red Mark" directly on packaging for ORTHO "control products" and in nationwide advertising and promotional materials for such products, including but not limited to print advertisements, television advertisements, brochures, and the Internet. *See id.* ¶ 18.

---

[2] The SAC's allegations about the "Red Design Mark" also include a federal registration for a rectangular ORTHO design. *Id.* ¶ 32. This registration issued in 2009, and it claims the rectangular design registered thereunder was first used in 2001. As both of those dates precede the claimed first use of the "Red Design Mark" in 2010, *see id.* ¶ 26, it is unclear how this rectangular design constitutes an example of the later-used "Red Design Mark."

- SCOTTS advertises and sells ORTHO "control products" under the "Red Mark" throughout the United States. SCOTTS also markets ORTHO "control products" under the "Red Mark" via the Internet, including at its website www.ortho.com. *See id.* ¶ 19.

The *factual allegations* in support of the legal conclusion that the "Red Design Mark" is "famous" are largely identical. *See id.* ¶¶ 26-32. The only differences are: (1) that the "Red Design Mark" was not used until August 11, 2010 (*see id.* ¶ 26); and (2) that SCOTTS markets ORTHO "control products" bearing the "Red Design Mark" on social media platforms such as Twitter, YouTube, Facebook, and Instagram (*see id.* ¶ 28).

The SAC's remaining allegations in support of the legal conclusion that the asserted trademarks are "famous" are *conclusory*. Those allegations, which lack factual enhancement, include:

- SCOTTS has "invested substantial resources" advertising and marketing ORTHO control products under the "Red Mark" and "Red Design Mark" and "establishing these goods in the minds of consumers as high-quality goods offered by SCOTTS." *See id.* ¶¶ 17, 29.

- Since 1995, SCOTTS has spent "at least tens of millions of dollars" promoting ORTHO control products under the "Red Mark" and the "Red Design Mark." During that period, SCOTTS has made "at least hundreds of millions of dollars, and likely billions of dollars," in sales of ORTHO products under the asserted marks. *See id.* ¶ 36.

- The "Red Mark" and "Red Design Mark" are "inherently distinctive." *Id.* ¶¶ 20, 31.

- The "Red Mark" and "Red Design Mark" have "become favorably known among consumers as used in connection with [ORTHO control products]" and have become "invaluable symbol[s] of the source of products bearing the [marks], of the high quality of products bearing the mark[s], and of consumer goodwill." *Id.* ¶¶ 20, 31.

**B.  The "ORTHO Black Trade Dress"**

In Counts VI through VIII, SCOTTS purports to assert claims relating to certain trade dress used in the marketing and sale of "control products" under the ORTHO brand. Following is the SAC's complete description of what it calls the "ORTHO Black Trade Dress":

The distinctive packaging of certain SCOTTS' ORTHO control products consists of a unique arrangement of colors, graphic elements, font styles and texts, with a black background with some lighter gradations of gray, a prominent placement of a red pentagon containing a brand name in white lettering above horizontal information bars that start on the left side of the label and connect into a circular or arc design that contains an image of green plant material. One information bar is yellowish/gold and the other information bar is silver. A product name is placed between the pentagon design and the information bars.

4

*Id.* ¶ 39. An image provided at paragraph 40 of the SAC allegedly depicts an example of the "ORTHO Black Trade Dress:"



*See id.* ¶ 40. According to the SAC, examples of the "ORTHO Black Trade Dress" also appear at Exhibit D thereto. *Id.* Exhibit D, however, appears to be a reproduction of an Amazon.com page for the same ORTHO GROUNDCLEAR Vegetation Killer Concentrate product depicted in the SAC at paragraph 40. *See id.* Exhibit D, ¶ 40.

Notably, what SCOTTS claims in the SAC as the "ORTHO Black Trade Dress" is rather different from the "ORTHO Black Trade Dress" as it was originally described in the Complaint, which defined the "ORTHO Black Trade Dress" as follows:

> The distinctive packaging of certain SCOTTS' ORTHO products consists of a unique arrangement of colors, graphic elements, font styles and text, including, but not limited to, a predominantly black background, a prominent placement of SCOTTS' Red Design Mark at the top of the Trade Dress of, horizontal information bar designs and the locations and relative sizes of the branding and product name elements, product descriptions and imagery on the Trade Dress.

Complaint [Doc. 1] ¶ 39. With even a cursory inspection, it is clear that the examples of the "ORTHO Black Trade Dress" provided by SCOTTS in the Complaint display trade dress features quite different from the "ORTHO Black Trade Dress" as it is reformulated in the SAC:

  

*See id.* ¶ 39, Exhibit D. For example, these examples of the "ORTHO Black Trade Dress" provided in the Complaint have no "black background with some lighter gradations of gray," no "circular or arc design that contains an image of green plant material," and no element that is silver. *See* SAC ¶ 40. Why SCOTTS jettisoned the Complaint's description of what it called its allegedly "unique and highly distinctive packaging design" and selected a completely different description in the SAC is unknown. *See* Complaint ¶ 37; SAC ¶ 38.

### C.  The "Ortho Black Label"

In Count XII, the SAC purports to assert a claim for copyright infringement relating to what is referred to as the "ORTHO Black Label":



*Id.* ¶ 46. This is largely indistinguishable from the product label identified in the SAC as an example of the "ORTHO Black Trade Dress." *See id.* ¶ 40; Exhibit D.

6

### D. Allegations Concerning BIOADVANCED Extended Control Brush Killer Product Claims

In Count XIII (erroneously designated by SCOTTS as Count XII), the SAC purports to assert a false advertising claim under Section 43(a) of the Lanham Act concerning certain statements relating to SBM's BIOADVANCED Extended Control Brush Killer product. SCOTTS asserts conclusory that the claims that the product "kills tough brush down to the root for up to 12 months," that it "protects for up to 12 months," and that users of the product "get up to 365 days of control" are false. *Id.* ¶ 83. Notably, however, the SAC alleges no facts plausibly showing the falsity of those claims.

## III. LAW AND ARGUMENT

### A. Legal Standard On Motion To Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Papasan v. Allain,* 478 U.S. 265, 283 (1986). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The factual matter alleged, taken as true, "must be enough to raise a right to relief above the speculative level" and "nudge [the] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 555, 570. To meet the plausibility standard, a plaintiff must demonstrate more than a "sheer possibility that a defendant has acted unlawfully" and, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

While factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the non-moving party's favor, the court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *See Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.,* 732 F.3d 645, 649 (6th Cir. 2013). Further, a "formulaic recitation of the elements of a cause of action will not do," *Twombly,* 550 at 555, nor will labels or "naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."

*Id.* at 679. "The bare assertion of legal conclusions is not enough to constitute a claim for relief." *Mellintine v. Ameriquest Mortgage Co.,* 515 Fed. Appx. 419, 423 (6th Cir. 2013).

### B. Count III Fails To State A Viable Claim For Trademark Dilution

In Count III of the SAC, SCOTTS purports to assert a claim alleging dilution of the "Red Mark" and the "Red Design Mark" under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

A trademark qualifies for protection against dilution under §43(c) only if it is "famous." 15 U.S.C. 1125(c)(1); *see Kibler v. Hall,* 843 F.3d 1068, 1083 (6th Cir. 2016). Importantly, "whether a mark is 'famous' is a legal conclusion and, therefore, the court does not simply accept Plaintiff's recitation of that element of its dilution case." *Brookwood Funding, LLC v. Avant Credit Corp.,* 2015 WL 11504556 *4 (N.D. Ga. July 28, 2015). "Rather, under *Twombly* and *Iqbal,* [p]laintiff must allege facts which makes such a conclusion plausible." *Id.; see also TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N. Am., LLC,* 292 F. Supp. 3d 864, 873 (N.D. Iowa 2018) (plaintiff "must allege facts demonstrating that fame is not only possible, but plausible").

Section 43(c) provides that a mark is "famous" only if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). To determine whether a mark possesses the requisite degree of recognition to qualify as famous, courts consider the following factors: (i) the duration, extent and reach of advertising and publicity around the mark; (ii) the amount, volume, and extent of product sales under the mark; (iii) actual recognition of the mark; and (iv) whether the mark is federally registered. *Id.* (i)-(iv); *see Kibler,* 843 F.3d at 1083.

### 1. *Only Marks That Are "Household Names" Can Be Considered "Famous"*

Establishing fame for purposes of a trademark dilution claim is "difficult." *Kibler,* 843 F.3d at 1083. As the Sixth Circuit has pointed out, "[c]ourts have interpreted the [Lanham] Act to require the mark to be a 'household name.' *Kibler,* 843 F.3d at 1083 (quoting *Coach Servs., Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 1373 (Fed. Cir. 2012)). This means that "when the general public encounters the mark in almost any context, it associates the term, at least initially, with the mark's owner." *Kibler,* 843 F.3d at

8

1083 (quoting *Audi AG v. D'Amato,* 469 F.3d 534, 547 (6th Cir. 2006). Consequently, courts have limited the class of marks eligible for anti-dilution protection to those that are "truly prominent and renowned" and "almost universally recognized by the general public." *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 875 (9th Cir. 1999); *Heller, Inc. v. Design Within Reach, Inc.,* 2009 WL 2486054 *3 (S.D.N.Y. Aug. 14, 2009).

Examples of famous marks are COCA-COLA soft drinks, BUDWEISER beer, CAMEL cigarettes, and BARBIE dolls. *TCPIP Holding, Inc. v. Haar Communications, Inc.,* 244 F.3d 88, 99 (2d Cir. 2001); *It's a 10,* 2013 WL 6834804 * 8; *Luv N' Care Ltd. v. Regent Baby Prods. Corp.,* 841 F. Supp. 2d 753, 758 (S.D.N.Y. 2012). For comparison, well-known marks such as COACH, TREK, and the University of Texas Longhorns have been found *not* to meet the rigorous fame standard. *See Coach,* 668 F.3d at 1373; *Bd. Of Regents v. KST Elec., Ltd.,* 550 F. Supp. 657, 674 (W.D. Tex. 2008); *Thane Int'l, Inc. v. Trek Bicycle Corp.,* 305 F.3d 894, 911 (9th Cir. 2002).

Here, the SAC states the naked legal conclusion that the asserted marks are "famous," *see* SAC ¶¶ 36, 95, but it fails to allege sufficient facts to plausibly show that they are "household names" qualifying as "famous" under Section 43(c).

> **2.    *The SAC Lacks Factual Allegations Sufficient To Support The First Factor Considered In Determining Whether A Mark Is "Famous" (Duration, Extent And Geographic Reach Of Advertising And Publicity Of Mark)***

Regarding the first factor considered under Section 43(c) (the duration, extent and geographic reach of advertising and publicity of the mark), *see* 15 U.S.C. §1125(c)(2)(A), the SAC's allegations are conclusory and lacking in factual detail. According to the SAC's broadbrush allegations, SCOTTS has marketed and sold ORTHO "control products" under the "Red Mark" since 1995 and under the "Red Design Mark" since 2010; SCOTTS uses the marks on packaging for such products and in nationwide advertising and promotional materials for those products; SCOTTS advertises and sells such products under the marks throughout the United States; and SCOTTS markets the products under the "Red Design Mark" via the Internet and on social media. *See id.* ¶¶ 16, 18-19, 26-28, 30. No detail is provided, however, about the actual extent, duration or reach of SCOTTS' use, marketing, advertising or other publicity involving the

marks. Thus, for example, the SAC alleges *no facts* about any particular marketing, advertising or publicity featuring the asserted marks; alleges *no facts* about when any such marketing, advertising or publicity took place; alleges *no facts* showing how any such marketing, advertising or publicity actually fostered recognition of the asserted marks among the general public; alleges *no facts* showing the frequency or consistency of any such marketing, advertising or publicity; and alleges *no facts* showing that any such marketing, advertising or publicity actually generated recognition of the marks among the general public.

The SAC's vague statement that SCOTTS has "invested substantial resources" in advertising and promoting the "Red Mark" and "Red Design Mark" (*Id.* ¶¶ 17, 29) is unavailing, because such a threadbare, conclusory allegation is not sufficient under *Twombly* to establish that the marks are "famous." *See, e.g., Walker Wear LLC v. Off-White LLC,* 624 F. Supp. 3d 424, 431 (S.D.N.Y. 2022) (allegation that plaintiff "invested substantial time and money in the marks" is a mere conclusion that is not a proper factual basis for a finding of fame); *Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn Mayer Inc.,* 2020 WL 68775178 *9 (C.D. Cal. Oct. 23, 2020) (plaintiff's conclusory allegation that it "devoted substantial time, effort, and resources to the development and extensive promotion" of asserted mark held insufficient to survive a motion to dismiss); *Plumeus, Inc. v. Intersog LLC,* 2013 WL 5609331 *2 (N.D. Ill. Oct. 11, 2013) (allegation that plaintiff "invested substantial resources" in "numerous national and international marketing campaigns" held insufficient to state a plausible claim); *Parts.com, LLC v. Yahoo! Inc.,* 996 f. Supp. 2d 933-940-41 (S.D. Cal. 2013) (plaintiff's conclusory allegation that it "'expended a significant amount of resources' to 'promote[] . . . [the] mark throughout the United States'" held insufficient to satisfy applicable pleading standard).

The statement in the SAC that SCOTTS has "spent at least tens of millions of dollars on promoting and marketing the ORTHO Products under the Red Marks on a nationwide basis" is merely a rehash of the conclusory allegations at paragraphs 17 and 29 that SCOTTS has "invested substantial resources" in promoting the marks. *See* SAC ¶ 36. First, *no facts* are alleged about *when* those estimated "tens of millions" of advertising dollars were supposedly spent. According to the SAC, the "Red Mark" has been in use since 1995, so the advertising expense figure cited by SCOTTS presumably is a total that accrued over 28 years,

yet nothing is alleged about when during that period those expenses were incurred. Given that the SAC also does not identify when the "Red Mark" and the "Red Design Mark" supposedly became "famous," a mere estimate of total advertising expenses incurred at some point over a period of almost three decades does not permit any plausible inference that the asserted marks are now "household names" eligible for protection under Section 43(c).

Second, *no facts* are alleged about *how* the advertising dollars alleged were actually spent. Thus, not only does the SAC fail to identify any particular marketing or promotional effort that the alleged advertising dollars were spent on or the duration or frequency of any such efforts, there also is no allegation that even a single advertising dollar was spent on "look for advertising" or similar efforts designed to make the "Red Marks" themselves widely recognized by the general American consuming public.

Third, *no facts* are even provided about *which* of the "Red Marks" the alleged advertising expenditures related to. The "Red Mark" supposedly was first used in 1995, but the "Red Design Mark" allegedly was not first used until 2010, fifteen years later. The SAC, however, wholly fails to distinguish dollars spent as early as 1995 on promoting products under the "Red Mark" from dollars spent in 2010 or later to promote products bearing the more recent "Red Design Mark." Thus, based on the SAC's conclusory allegations, some (or, possibly, all) of SCOTTS' estimated "tens of millions" of advertising dollars were spent before the "Red Design Mark" even came into use and, therefore, had no bearing on its recognition among the general consuming public. Or, perhaps, most of the advertising dollars alleged were spent to promote products bearing the "Red Design Mark" and, therefore, did nothing to promote the general consuming public's recognition of the "Red Mark." Without at least minimal detail showing how the alleged advertising expenditures incurred by SCOTTS at some point over the past three decades supposedly related to each of the marks claimed to be "famous," the SAC's conclusory allegation about an undifferentiated total of advertising expenses incurred sometime during the past 28 years does not plausibly permit any inference that either the "Red Mark" or the "Red Design Mark" is famous – especially since the dates they were allegedly first used are 15 years apart.

In short, in the absence of *any* factual enhancement, the SAC's conclusory estimate of total advertising dollars spent over a 28-year period on products under the "Red Mark" or the "Red Design Mark" falls far short of placing the marks into the highly select group of "household names" eligible for protection under Section 43(c). In any event, even if the First Amended Complaint's conclusory estimate of almost three decades of advertising expenses were accorded some weight, millions of dollars spent on advertising – without much more – still does not qualify a mark as "famous." For example, in *Black & Decker Corp. v. Positec USA, Inc.,* 2015 WL 1543262 (N.D. Ill. Mar. 31, 2015), evidence of $150 million spent on advertising did not establish that the trade dress for a line of power tools was "famous" within the meaning of Section 43(c). *See id.* **34-35. In *Coach Services,* not even advertising expenditures of between $30 million and $60 million per year were sufficient to establish that the COACH brand was "famous" under Section 43(c). *See* 668 F.3d at 1367.[3] The reason is that whether a mark is "famous" is not "a dollar test." *Global Brand Holdings, LLC v. Church & Dwight Co.,* 2017 WL 65151419 *5 (S.D.N.Y. Dec. 19, 2017). Indeed, "[d]eciding otherwise . . . would allow any company to protect its trademarks as 'famous' merely by virtue of a large advertising budget or high revenues. This is not the law." *Id.* Federal anti-dilution protection is reserved for the small number of marks with "*wide* recognition by the *general consuming public,*" it is not available to every mark with a big advertising budget. *Id.* (emphasis in original). For this reason, too, SCOTTS' broadbrush estimate of advertising expenses it incurred at some point over a period of almost three decades does not qualify either the "Red Mark" or the "Red Design Mark" as "household names."

### 3. The SAC Lacks Factual Allegations Sufficient To Support The Second "Fame" Factor (Amount, Volume, and Geographic Extent Of Sales Of Goods Under Mark)

With respect to the second factor under Section 43(c) (amount, volume, and geographic extent of sales of goods under the mark), *see* 15 U.S.C. § 1125(c)(2)(A), the SAC alleges that ORTHO "control products" are sold under the asserted marks throughout the United States. *Id.* ¶¶ 19, 27. However, *no facts*

---

[3]  Although *Black & Decker* and *Coach* arose in contexts other than a motion to dismiss, they nevertheless "are informative of the high standard of fame [under Section 43(c)] and, therefore, the type of allegations needed to state a plausible claim." *TrueNorth,* 292 F. Supp. 3d at 872 n.3.

are alleged identifying specific products that have been sold under either the "Red Mark" or the "Red Design Mark," *no facts* are alleged specifying when or how long any such product has been sold under either mark, and *no facts* are alleged regarding the quantity of any such product sold under either mark in any given year.

The only information that is provided relating to this factor is the SAC's allegation that SCOTTS "has made hundreds of millions of dollars, and likely billions of dollars, in sales of Products under the Red Marks in the United States. . . ." *Id.* ¶ 36. This conclusory, back-of-the-envelope estimate of sales revenues is unavailing, however. First, as with the alleged estimate of advertising expenditures, the estimate of sales revenues alleged in the SAC is presumably a total accrued over the 28 years since use of the "Red Mark" supposedly began. *No facts* are alleged, however, about how much revenue SCOTTS received in product sales under either the "Red Mark" or the "Red Design Mark" in any given year. The SAC also does not provide information about any trend in such sales revenues that might reflect on the degree of the asserted marks' recognition among the general consuming public. It is thus impossible to plausibly infer that the SAC's fuzzy estimate of total revenues generated through sales of products under the asserted marks since 1995 somehow makes the marks "household names."

Second, *no facts* are alleged about *which* of the asserted marks the alleged sales revenues relate to. Since the "Red Design Mark" supposedly was not used until 2010, some portion of the alleged estimated total of sales revenues arose before the "Red Design Mark" was ever used and thus could have no conceivable bearing on its recognition among the general consuming public. Because revenues for sales of products under the "Red Mark" are lumped together with sales revenues for products under the "Red Design Mark," the SAC's conclusory allegation about total revenues for sales of products under both asserted marks does not support a plausible inference that *either* the "Red Mark" or the "Red Design Mark" is a "household name" eligible for protection under Section 43(c).

Regardless, as with advertising expenses, sales revenues do not automatically qualify a mark as "famous." In *Black & Decker,* $20 billion in sales of power tools was insufficient to establish that a claimed trade dress was "famous" for purposes of 15 U.S.C. § 1125(c). *See* 2015 WL 1543262 **34-35. In *Coach*

13

*Services,* even annual sales of approximately $3.5 billion did not establish that the COACH brand was "famous." *See* 668 F.3d at 1367.[4] Because "fame" is not "a dollar test," high revenues do not make a mark a "household name" eligible for anti-dilution protection under 43(c) without substantial additional facts plausibly showing that the mark is widely recognized among the general consuming public – facts that are not alleged here. *See Global Brand Holdings, LLC,* 2015 WL 6515419 *5.

### 4. The SAC Lacks Factual Allegations Sufficient To Support The Third "Fame" Factor (Extent Of Actual Recognition Of Mark)

Turning to the third factor under Section 43(c) (extent of actual recognition of the mark), *see* 15 U.S.C. § 1125(c)(2)(A), the SAC does not allege facts plausibly showing actual recognition of the "Red Mark" or the "Red Design Mark" among the United States consuming public. The SAC points to no unsolicited media coverage of the marks or other relevant public commentary about them. It likewise references no consumer surveys showing public recognition of the marks, nor does it cite any other facts suggesting their actual recognition among the general consuming public. The SAC also alleges no facts indicating that either the "Red Mark" or the "Red Design Mark" is recognized by the general consuming public as a designation of source of the goods of the marks' owner, OMS. *See* SAC ¶ 6 (alleging marks are owned by OMS).

The SAC's lone attempt to allege public recognition of the asserted marks is the formulaic, unadorned allegation that each of the asserted marks "has become known among consumers as used in connection with ORTHO Products," and "has become an invaluable symbol of the source of products bearing [the marks], of the high quality products bearing the mark[s], and of consumer goodwill." *Id.* ¶¶ 20, 31. This threadbare allegation, however, is a mere conclusion not entitled to the presumption of truth and, as such, does not plausibly show that the marks are "famous." *See, e.g., Varsity News Network, Inc. v. Carty Web Strategies, Inc.,* 2017 WL 7201873 *7 (C.D. Cal. Aug. 30, 2017) (holding insufficient under *Twombly* and *Iqbal* plaintiff's allegations that "consumers have come to recognize the [mark] as

---

[4] As noted above, while *Black & Decker* and *Coach* arose in contexts other than a motion to dismiss, they are instructive regarding the type of allegations needed to state a plausible claim that a mark is "famous" under Section 43(c). *See TrueNorth,* 292 F. Supp. 3d at 872 n.3.

14

representative of high quality, superior, and effective products and services offered by [plaintiff]" and that "[t]he [mark] has become a valuable asset of [plaintiff] as well as a symbol of its goodwill and positive reputation"); *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.,* 2013 WL 6670584 *7 (S.D.N.Y. Mar. 29, 2013) (allegation that mark has "great value and secondary meaning upon consuming public" is conclusion not entitled to presumption of truth). In any event, even if it were accepted to be true, the allegation that the asserted marks have "become known among consumers" comes nowhere close to establishing the type of widespread recognition among the general consuming public required to establish that the marks are "famous." *See Global Brand Holdings, LLC,* 2017 WL 6515419 *5 ("consumer recognition" is not the same as an allegation of wide recognition by the general consuming public).

### 5. *Regarding The Fourth "Fame" Factor, The Mere Fact That A Mark Is Registered Is Not Sufficient To Establish That It Is "Famous"*

The fourth factor under 43(c) considers whether the mark is registered. *See* 15 U.S.C. § 1125(c)(2)(A). While the SAC alleges that the "Red Mark" and "Red Design Mark" are federally registered, this fact alone is not sufficient to establish that they are plausibly famous for purposes of a trademark dilution claim. *See TrueNorth Companies,* 292 F. Supp. 3d at 874. After all, as the Federal Circuit has pointed out, "[o]ne cannot logically infer fame from the fact that a mark is one of the millions on the Federal Register." *Coach,* 668 F.3d at 1374 (quoting 4 J. McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:104 at 24-310 (4th ed. 2011)).

### 6. *Summary: The SAC Does Not Allege Facts Plausibly Showing That Either Of The Asserted Marks Is A "Household Name"*

In summary, the SAC fails to allege facts plausibly showing that either the "Red Mark" or the "Red Design Mark" is "famous" for purposes of a trademark dilution claim. Measured against the factors that courts use to assess whether a mark is "famous," the few facts alleged in the SAC do not plausibly show that either of the asserted marks is a "household name" like COCA-COLA or BUDWEISER that the general consuming public immediately associates with OMS, the marks' owner. *See* SAC Complaint ¶ 6 ("Red Mark" and "Red Design Mark" are owned by OMS). Accordingly, the trademark dilution claim in Count III should be dismissed.

15

### C. Count VI Fails To State A Viable Claim For Unfair Competition Under The Lanham Act Relating To The "ORTHO Black Trade Dress"

In Count VI, SCOTTS asserts a claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), alleging infringement of the "ORTHO Black Trade Dress." To state a claim for infringement of unregistered trade dress under Section 43(a) of the Lanham Act, a plaintiff must allege that: (1) its trade dress is protectable; (2) the trade dress is primarily nonfunctional; and (3) there is a likelihood of confusion between its trade dress and the competing good's trade dress. *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.,* 270 F.3d 298, 308 (6th Cir. 2001); *Mike Vaughn Custom Sports, Inc. v. Piku,* 15 F. Supp. 3d 735, 745 (E.D. Mich. 2014). As shown below, the SAC fails to allege facts plausibly showing that the "ORTHO Black Trade Dress" constitutes protectable trade dress and, therefore, should be dismissed.

#### 1. The SAC Does Not Identify The Claimed Trade Dress Adequately

"To allege that trade dress is protectable, 'plaintiffs should detail exactly what their trade dress consists of.'" *Mike Vaughn Custom Sports,* 15 F. Supp. 3d at 745-46 (E.D. Mich. 2014); *see also Tumblebus Inc. v. Cramer,* 399 F.3d 754, 768 (6th Cir. 2005) ("To recover for trade-dress infringement under § 43(a) of the Lanham Act, a party must first identify what particular elements or attributes comprise the protectable trade dress.") This requires the plaintiff "to articulat[e] the specific elements which comprise its distinct dress." *Fair Wind Sailing, Inc. v. Dempster,* 764 F.3d 303, 308 (3d Cir. 2014); *see* 1 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 8.3 ("All courts agree that the elements of the alleged trade dress must be clearly listed and described."). As the Sixth Circuit has emphasized, a plaintiff's articulation of the specific elements of its claimed trade dress is critical because "[w]ithout such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market." *General Motors Corp. v. Lanard Toys, Inc.,* 468 F.3d 405, 415 (6th Cir. 2006) (quotation omitted). Moreover, without an appropriately specific definition of the elements comprising the asserted trade dress, a defendant is deprived of adequate notice of the overall look the plaintiff wishes to protect. *Fair Wind Sailing,* 764 F.3d at 310.

16

Here, the SAC states that the "ORTHO Black Trade Dress" consists of:

> [A] unique arrangement of colors, graphic elements, font styles and text, with a black background with some lighter gradations of gray, a prominent placement of a red pentagon containing a brand name in white lettering above horizontal information bars that start on the left side of the label and connect into a circular or arc design that contains an image of green plant material. One information bar is yellowish/gold and the other information bar is silver. A product name is placed between the pentagon design and the information bars.

SAC ¶ 40.

As noted above,[5] the SAC's description of the "ORTHO Black Trade Dress" is substantially different from the Complaint's description of the same supposedly "unique and highly distinctive design." *Cf.* Complaint ¶ 39; SAC ¶ 40. Why SCOTTS chose to define its "ORTHO Black Trade Dress" one way in its initial pleading and then to define it totally differently in a later pleading is unexplained, but one feature that both of definitions have in common is that they are both unworkably vague. In the SAC's description, the opening phrase ("[t]he distinctive packaging . . . consists of a unique arrangement of colors, graphic elements, font styles and text") could describe the packaging for virtually every consumer product imaginable, from HOSTESS TWINKIES pastries to PENNZOIL motor oil to TIDE laundry soap:

  

As the above images demonstrate, the SAC's description of the claimed trade dress as "consist[ing] of a unique arrangement of colors, graphic elements, font styles and text" is so general that it gives SBM and the Court no notice of the scope of protection being claimed.

The description's use of "with" to introduce the subsidiary list of claimed elements also gives SBM and the Court inadequate notice of SCOTTS' trade dress claim because "it does not clearly delineate the boundaries of protection that [SCOTTS] is claiming." *EVIG, LLC v. Mister Brightside, LLC,* 2023 WL

---

[5]     *See supra* pp. 5-6.

5717291 *5 (D. Nev. Sept. 5, 2023). Indeed, the use of such open-ended language in describing asserted trade dress is particularly unfair because "[w]hen a party pleads a list of elements with a non-limiting qualifier, they are leaving the door open to redefine the purportedly protected elements at a later stage of the litigation." *Id.* Consequently, "[c]ourts have often dismissed trade dress claims for failing to provide a complete list of elements where the list of alleged trade dress elements is preceded by a non-limiting qualifier." *Mosaic Brands, Inc. v. Ridge Wallet, LLC,* 2020 WL 6821013 *6 (C.D. Cal. Oct. 29, 2020) (dismissing trade dress claim using "including" to introduce list of elements); *see Sugarfina, Inc. v. Sweet Pete's LLC,* 2017 WL 4271133 *4 (C.D. Cal. Sept. 25, 2017) (dismissing trade dress claim using phrase "may include"); *Sleep Sci. Partners, v. Lieberman,* 2010 WL 1881770 *3 (N.D. Cal. May 10, 2010) (dismissing trade dress claim using "including, but not limited to" to list claimed elements).

Notably, the SAC's use of "with" to introduce the subsidiary list of claimed elements of the claimed trade dress is a direct substitute for the words "including, but not limited to" in the Complaint's list. *See* Complaint ¶ 39. The word "with," however, is just as problematic as "including, but not limited to," because "with" also leaves the door open for SCOTTS to redefine the claimed trade dress later in the case to suit its litigation position. This is not merely a hypothetical danger here. After all, since SCOTTS has already resorted once to a wholesale reformulation of what it claims as its "ORTHO Black Trade Dress" in an effort to avoid dismissal, the choice to use the open-ended word "with" in the SAC's list of the elements of the claimed trade dress is clearly designed to secure for SCOTTS, if the need arises, the opportunity to modify yet again what it claims as the "ORTHO Black Trade Dress."

When the SAC finally attempts to list some of the discrete elements claimed as part of the "ORTHO Black Trade Dress," the description of those elements is too murky and imprecise to communicate what they really are, ultimately producing many more questions than answers. When the description refers to a "black background with some lighter gradations of gray," what does the word "background" refer to? A product container? A portion of a product container? A product container label? What does "some lighter gradations of gray" mean? And how could a "black background" have "some lighter gradations of gray?" After all, a "black background" is black; if a background has "some lighter gradations of gray," then it is

not a "black background." What "horizontal information bars" might be is anyone's guess, since nothing in the SAC specifies what they are. Compounding the insufficiency of the textual description, nowhere in the SAC are any facts alleged plausibly showing how the listed elements, individually or together, are claimed to be "highly distinctive" or "inherently distinctive," nor are there any facts alleged plausibly showing how the combination of elements is claimed to be "unique." *Id.*

The product image included at paragraph 40 of the SAC as an example of the claimed trade dress does not dispel the confusion created by the textual description. The SAC makes no effort to connect this image to the textual description to illustrate what the asserted trade dress is claimed to be or how it is allegedly distinctive or unique. As a result, SCOTTS effectively leaves SBM and the Court to scour the image to try to identify elements that are only vaguely identified in the textual description and to interpret for themselves as best they can what the scope of the claimed trade dress might be and how SCOTTS might claim it to be distinctive and unique.

In sum, the SAC fails to give adequate notice of SCOTTS' claim concerning the "ORTHO Black Trade Dress." The statement that it "consists of a unique arrangement of colors, graphic elements, font styles and text" is so general that it provides no notice at all of what the asserted trade dress is claimed to be. When the SAC attempts to give a description of its discrete elements, the list it provides is incomplete on its face, because introducing the list with the open-ended word "with" means that there may be additional unidentified elements of the claimed trade dress beyond those listed. With respect to the elements of the "ORTHO Black Trade Dress" that the SAC manages to list, they are not described with sufficient specificity for SBM or the Court to ascertain what they refer to or how the claimed trade dress is claimed to be distinctive or unique. The vagueness of the SAC's description of the listed elements is not salvaged by the inclusion of an image supposedly exemplifying the claimed trade dress, because the SAC fails to point out where any of those listed elements is depicted in the image. The result is a wholesale failure by SCOTTS to identify the "ORTHO Black Trade Dress" sufficiently to give adequate notice of the scope of protection being claimed, which warrants the claim's dismissal. *See Mike Vaughn,* 15 F. Supp. 3d at 746; *Fair Wind Sailing,* 764 F.3d at 310.

19

2.      *The SAC Does Not Allege Facts Plausibly Showing The Claimed Trade Dress Is Distinctive*

Not only does the SAC fail to adequately describe the elements of the "ORTHO Black Trade Dress" adequately, it also fails to state *facts* plausibly showing that the claimed trade dress is "distinctive," which also is required to qualify trade dress as protectable. *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,* 280 F.3d 619, 629 (6th Cir. 2002).

The SAC's allegations that the "ORTHO Black Trade Dress is highly distinctive in the control industry" (¶ 42); that SCOTTS spent "a significant amount of time and resources intentionally developing an inherently distinctive . . . design for the packaging of certain of its ORTHO control products" (¶ 39); and that customers associate "ORTHO Black Trade Dress" "solely with SCOTTS and its high-quality products" (¶ 39) are all conclusory statements that do not plausibly show that the claimed trade dress is distinctive. *See, e.g., Mike Vaughn Custom Sports,* 15 F. Supp. 3d at 748 (statement that trade dress is "distinctive in the minds of customers" is conclusory); *FC Online Marketing, Inc. v. Burke's Martial Arts, LLC,* 2015 WL 4162757 *10 (E.D.N.Y. July 8, 2015) (allegations that trade dress is "distinctive," that it "serves to identify [the plaintiff]," and that it is "widely recognized" are conclusory and not entitled to presumption of truth); *Stagecraft Costuming, Inc. v. HouseHaunters LLC,* 2011 WL 13202911 *5 (S.D. Ohio Feb. 2, 2011) (statements that trade dress is distinctive, well-known to consumers, and has become associated with plaintiff are conclusory). The SAC's general allegations of "substantial sales and widespread use of the ORTHO Black Trade Dress" (¶ 48) and "extensive advertising and publicity" (¶ 48) likewise are mere unsupported, conclusory assertions not entitled to the presumption of truth. *See, e.g., Deckers Outdoor Corp. v. Fortune Dynamic, Inc.,* 2015 WL 12731929 *5 (C.D. Calif. May 8, 2015) (statements that plaintiff made "substantial sales" of goods bearing design and spent "substantial time, effort and money" promoting and advertising goods bearing design are conclusory). The SAC's allegations of copying relating to the "ORTHO Black Trade Dress" (*see* ¶¶ 48, 69) also are threadbare, conclusory statements devoid of factual support. *See Green Crush LLC v. Paradise Splash I, Inc.,* 2018 WL 4940825 *5 (C.D. Calif. May 3, 2018)

20

(conclusory allegations of intentional copying not sufficient to allege that trade dress has acquired secondary meaning).

In sum, when the SAC's allegations are properly screened to eliminate conclusory, unsupported allegations that are not entitled to the presumption of truth, as *Iqbal* requires, the SAC does not allege facts plausibly showing that the "ORTHO Black Trade Dress" is distinctive.

### 3. *The SAC Does Not Allege Facts Plausibly Showing That The Product Line Bearing The Claimed Trade Dress Has A Consistent Overall Look*

Where a plaintiff seeks trade dress protection for the packaging for a series or line of products, "[the] concern for protecting competition is acute." *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 380 (2nd Cir. 1997). More particularly, "trade dress claims across a line of products present special concerns in their ability to artificially limit competition, as such claims are generally broader in scope than claims relating to an individual item." *Yankee Candle Co. v. Bridgewater Candle Co.,* 259 F.3d 25, 42 (1st Cir. 2001). Accordingly, to claim trade dress protection for the packaging of a series or line of products, a plaintiff "must first demonstrate that the series or line has a recognizable and consistent overall look." *Rose Art Indus., Inc. v. Swanson,* 235 F.3d 165, 173, (3rd Cir. 2000); *see* 1 McCarthy on Trademarks and Unfair Competition § 8:5.50 ("When the alleged trade dress consists of a certain look or style of different packaging for a number of different products, it is more difficult to prove that there is a common denominator among those packages which identifies plaintiff as the source. Plaintiff must prove that its alleged trade dress has a 'consistent overall look.'"). The appearance of the packaging across the product line packaging need not be identical, but any variations in the packaging must not alter the design's distinctive characteristics, and the claimed trade dress must convey "a single and continuing commercial expression." *Rose Art,* 235 F.3d at 173.

Here, the SAC indicates that trade dress protection is claimed for "the packaging design of certain of its ORTHO control products." *See* SAC ¶ 1; *see also id.* ¶ 40 (the "ORTHO Black Trade Dress" is "distinctive packaging of certain Scotts' ORTHO control products"). The SAC fails, however, to clearly identify the product line or series of products that supposedly uses the claimed trade dress. In some

21

passages, the SAC indicates that the "ORTHO Black Trade Dress" is used in connection with SCOTTS' "weed control products," *see id.* ¶¶ 40-41, but in others the SAC suggests that the claimed trade dress is used in connection with "control products" generally, *see id.* ¶¶ 38, 44, which the SAC says include "pesticides, insecticides and related products." *See id.* ¶ 1. Absent a sufficient identification of the product line or series of products that supposedly uses the "ORTHO Black Trade Dress," the SAC fails to establish that there is a "consistent overall look" across the plurality of products using it and thereby deprives SBM and the Court of adequate notice of the scope of trade dress protection being claimed.

If one were to interpret the SAC liberally as alleging that SCOTTS uses the claimed "ORTHO Black Trade Dress" in connection with ORTHO "weed control products," then SCOTTS' own allegations make clear that the "ORTHO Black Trade Dress" does not exhibit a "recognizable and consistent overall look" across that product line. Indeed, the images of the ORTHO weed control products from www.ortho.com that are reproduced at Exhibit B of the SAC display wide variations in trade dress. For example, at Exhibit B there appears next to the title "Spring Weed Control" a bottle of an ORTHO weed control product apparently labeled as ORTHO GROUNDCLEAR Super Weed & Grass Killer:



*See* SAC, Exhibit B. The packaging for this ORTHO weed control product displays no element that could be considered a "black background with some lighter gradations of gray." It also has no elements that could be interpreted as yellowish/gold or silver "horizontal information bars," nor does it display a circular or arc design containing an image of green plant material. *See id.*

Turning to the page from www.ortho.com reproduced at Exhibit B entitled "Weeds," numerous ORTHO weed control products are shown in packaging that does not depict the "ORTHO Black Trade Dress," for example:

  

Ortho® WeedClear™ Lawn Weed Killer (North)      Ortho® Groundclear® Year Long Vegetation Killer     Ortho® Groundclear® Weed & Grass Killer

*See id.* None of these products displays any element that could be considered a "black background with some lighter gradations of gray." Further, they display no elements that could constitute yellowish/gold or silver "horizontal information bars," nor do they have a circular or arc element containing an image of green plant material.

SCOTTS alleges in the SAC that "the trade dress embodied in the ORTHO weed control products. . . in Exhibit D" is the "ORTHO Black Trade Dress." *Id.* ¶ 40. Exhibit D appears to be a page from Amazon.com for ORTHO GROUNDCLEAR Vegetation Killer Concentrate, the same product shown in the First Amended Complaint at paragraph 40. *See id.* ¶ 40, Exhibit D. It also depicts numerous ORTHO weed control products in the GROUNDCLEAR product line in packaging that varies significantly from the "ORTHO Black Trade Dress" as it is described in the SAC, for example:

 

*Id.* Exhibit D. These products from the GROUNDCLEAR product line display no element that could be interpreted as a "black background with some lighter gradations of gray," no elements that could constitute

yellowish/gold or silver "horizontal information bars," and no circular or arc element containing an image of green plant material.

Moreover, the Amazon.com page reproduced at Exhibit D of the SAC contains a specific note for what it identifies as "a newer model" of the ORTHO GROUNDCLEAR Vegetation Killer Concentrate product that the SAC cites as an example of the "ORTHO Black Trade Dress:"



*Id.* Exhibit D. This note is a link to an Amazon.com page for ORTHO GROUNDCLEAR Vegetation Killer Concentrate2:[6]



Although the appearance of this newer-version ORTHO GROUNDCLEAR Vegetation Killer Concentrate2 product shares *some* of the features of the ORTHO GROUNDCLEAR Vegetation Killer Concentrate product identified in the SAC as an example of the "ORTHO Black Trade Dress," it does not fall within

---

[6]     *See*          https://www.amazon.com/Ortho-GroundClear-Vegetation-Killer-Concentrate2-dp-B075R64ZNJ/dp/B075R64ZNJ/ref=dp_ob_title_garden (copy attached hereto as Exhibit 1). Since this Amazon.com product page is specifically referenced in the material Scotts has attached to the SAC, and since the appearance of the product depicted therein is clearly central to the claims regarding the "ORTHO Black Trade Dress," the Court may consider the product page submitted as Exhibit 1 in connection with the present motion. *See, e.g., Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (in ruling on a motion to dismiss, "a court may consider exhibits attached to the complaint, . . . and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein").

SAC's definition of the "ORTHO Black Trade Dress." For example, it displays no element that could constitute a second "horizontal information bar," nor does it have an element that could be interpreted as a "horizontal information bar" that is silver. Thus, not only does this product demonstrate further that the "ORTHO Black Trade Dress" has no consistent overall look across the ORTHO weed control product line, it shows that the "ORTHO Black Trade Dress" is not even used in a consistent way on the GROUNDCLEAR Vegetation Killer Concentrate weed control products specifically cited by SCOTTS as an example of the "ORTHO Black Trade Dress." In short, if the product line for which SCOTTS claims trade dress protection is defined as ORTHO "weed control products," the ORTHO weed control product line does not exhibit the claimed "ORTHO Black Trade Dress" in a way that even remotely reflects a "consistent overall look." If the product line sought to be protected is narrowed to ORTHO GROUNDCLEAR products, the SAC still fails to plausibly show that they exhibit the "ORTHO Black Trade Dress" consistently. And if the product line sought to be protected is narrowed further to the ORTHO GROUNDCLEAR Vegetation Killer products exemplified at paragraph 40 of the SAC, it still does not plausibly show consistent overall use of the claimed trade dress across those products.

If the SAC is interpreted instead as alleging that the "ORTHO Black Trade Dress" is used in connection with ORTHO "control products" generally (as opposed to only ORTHO "weed control products"), there is even greater dissimilarity among the product line's packaging. At the page from www.ortho.com entitled "Insects" that the SAC reproduces at Exhibit B, none of the listed ORTHO products has packaging containing what could be considered a "black background with some lighter gradations of gray," for example:




Ortho® Home Defense® MAX® Indoor Insect Barrier

Ortho® Home Defense® MAX® Bed Bug, Flea & Tick Killer with Comfort Wand

*See id.* These products also display no elements that could constitute yellowish/gold or silver "horizontal information bars," nor do they have a circular or arc element containing an image of green plant material.

Finally, if the line of ORTHO products for which trade dress protection is claimed is some other grouping of products (*i.e.,* neither "weed control products" nor "control products" generally), then the SAC fails to identify what that product line is. Not only does that leave SBM and the Court to guess about the scope of trade dress protection being sought in this case, but it also means that the SAC fails to allege facts plausibly showing that whatever line of products supposedly uses the "ORTHO Black Trade Dress" exhibits it in a recognizable and consistent way.

In summary, the SAC fails to allege facts plausibly clearing the threshold requirement that the product line with which the "ORTHO Black Trade Dress" is used displays a "consistent overall look." Dismissal of the trade dress claim is therefore warranted. *Rose Art,* 235 F.3d at 173.

### D. Counts VII And VIII Fail to State Valid Ohio State Law Claims.

Count VII of the SAC purports to assert a claim relating to the "ORTHO Black Trade Dress" under the Ohio Deceptive Trade Practices Act, Ohio Rev. Code §§ 4165.01 through 4165.04. Count VIII purports to assert a similar claim for unfair competition under Ohio common law. These claims should be dismissed because (1) they are preempted by the Copyright Act, and (2) they fail to state viable causes of action.

26

      **1.**      *The State Law Trade Dress Infringement Claims Asserted In Counts VII and VIII Are Preempted By The Copyright Act*

The SAC alleges that OMS has registered with the U.S. Copyright Office what SCOTTS refers to as the "ORTHO Black Label:"



*See* SAC ¶¶ 46, 49. According to the SAC, the "ORTHO Black Label" is "a version" of the "ORTHO Black Trade Dress." *Id.* ¶ 1.

The Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in [17 U.S.C. § 106] and that "come within the subject matter of copyright. . . ." 17 U.S.C. § 301(a). In the Sixth Circuit, "a state common law or statutory claim is preempted if: (1) the work is within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102 [and] 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001); *Hua-Cheng Pan v. Kohl's Dept. Stores, Inc.,* 2013 WL 5181144 *8 (S.D. Ohio Sept. 12, 2013). In view of SCOTTS' own claim of copyright in the "ORTHO Black Label," the state law unfair competition claims relating to the "ORTHO Black Trade Dress" are preempted by the Copyright Act.

Under the first prong of the Sixth Circuit's preemption test, the "subject matter requirement of [17 U.S.C. § 301(a)] is satisfied if a work fits within the general subject matter of Sections 102 and 103 of the Copyright Act, regardless of whether it qualifies for copyright protection." *Stromback v. New Line Cinema,*

384 F.3d 283, 300 (6th Cir. 2004). Here, the "ORTHO Black Label" *is* the "ORTHO Black Trade Dress." *See* SAC ¶ 1. Inasmuch as SCOTTS alleges that the "ORTHO Black Label" is "an original work of authorship entitled to the full protection of the Copyright Laws" and has registered it in the U.S. Copyright Office, *id.* ¶ 51, SCOTTS' own allegations place the so-called "unique arrangement of colors, graphic elements, font styles and text" that constitute "ORTHO Black Trade Dress" squarely within the scope of copyright. Indeed, in prior briefing, SCOTTS has explicitly conceded that "the ORTHO Black Trade Dress is the proper subject of copyright protection." Plaintiff's Memorandum in Opposition to Defendant's Partial Motion to Dismiss [Doc. 30], p. 19. Thus, there is no dispute that the "subject matter" prong of the preemption test is satisfied. *See Stromback,* 384 F.3d at 300-01.

With respect to the "equivalency" prong of preemption test, the state law claims asserted in Counts VII and VIII concern SCOTTS' claim to have exclusive rights to market and sell products that display the "ORTHO Black Trade Dress" or trade dress that is similar thereto. As such, those state law claims directly implicate rights that are equivalent to the exclusive rights arising under 17 U.S.C. § 106 to display the "ORTHO Black Trade Dress" publicly, to make copies of the "ORTHO Black Trade Dress," to distribute copies of the "ORTHO Black Trade Dress," and to prepare derivative works based upon the "ORTHO Black Trade Dress." *See* 17 U.S.C. § 106(1), (2), (3), (5).

Further, as the Sixth Circuit has instructed, "[e]quivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights." *Wrench LLC,* 256 F.3d at 456. The activity alleged to constitute unfair competition by SBM, *i.e.,* marketing and sale of products displaying the "ORTHO Black Trade Dress" or trade dress similar thereto, would potentially implicate the same exclusive rights under 17 U.S.C. § 106 listed above. Indeed, the SAC alleges that the same activity by SBM constitutes infringement of the "ORTHO Black Trade Dress" and infringement of the "ORTHO Black Label" copyright. *See id.* ¶ 123 (alleging that "making and selling in commerce control products in [SBM's accused trade dress] that is confusingly similar to SCOTTS' ORTHO Black Trade Dress" constitutes violation of Ohio Deceptive Trade Practices Act); ¶ 127 (alleging that "making and selling in commerce control products in [SBM's accused trade dress]" constitutes Ohio common law unfair

28

competition; ¶ 170 (alleging that reproduction, distribution, display, and preparation of [SBM's accused trade dress] constitutes infringement of copyright in "ORTHO Black Label); *see also* ¶ 64 alleging that SBM's packaging has adopted "a new design that is confusingly similar to SCOTTS' ORTHO Black Trade Dress *and* that is substantially similar to the copyrighted ORTHO Black Label"). As the underlying activity by SBM is the same for all three claims, the Ohio common law and Ohio Deceptive Trade Practices Act claims are equivalent to the copyright infringement claim. *See Hua-Cheng Pan,* 2013 WL 5181144 *8 (finding Ohio common law unfair competition claim and Ohio Deceptive Trade Practices Act claim equivalent to copyright infringement claim in case alleging trade dress infringement).

In prior briefing, SCOTTS has asserted that its trade dress claims under Ohio state law are not preempted because they have an "extra element," in that they require proof of likelihood of confusion. *See* Plaintiffs' Memorandum in Opposition to Defendant's Partial Motion to Dismiss [Doc. 30], pp. 19-20. On this point, however, the Sixth Circuit has explained:

> [I]f an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, *provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.*

*Wrench LLC,* 256 F.3d at 456 (emphasis added). In other words, an extra element in a state law claim upsets equivalency between a state law claim and a claim for infringement of any of the exclusive rights under the Copyright Act only if the extra element makes the state law claim "qualitatively different from a copyright infringement claim." *Id.* Here, the SAC does not allege that SBM engaged in any activity violating the Ohio Deceptive Trade Practices Act or Ohio unfair competition law other than copying the "ORTHO Black Trade Dress" (*see* ¶¶ 67-68), deriving a similar trade dress from the "ORTHO Black Trade Dress," (*id.*), and publicly displaying and selling products bearing trade dress similar to the "ORTHO Black Trade Dress." (¶ 70). Further, based on these allegations, the source of any likelihood of confusion is the same activity – which is essentially a claim for copyright infringement. Thus, in the context of the SAC, any "extra element" arising in SCOTTS' claims under Ohio law would not make them "qualitatively different" from a claim for

infringement of the exclusive rights in the "ORTHO Black Trade Dress" under copyright. *See Hua-Cheng Pan,* 2013 WL 5181144 *8.

As both the "subject matter" and "equivalency" prongs are satisfied, the state law claims relating to the "ORTHO Black Trade Dress" in Counts VII and VIII are preempted by 17 U.S.C. § 301(a) and should be dismissed. *See Wrench LLC,* 256 F.3d at 453; *Hua-Cheng Pan,* 2013 WL 5181144 **7-8 (dismissing claims alleging Ohio common law unfair competition and violation of Ohio Rev. Code § 4165 as preempted by 17 U.S.C. § 103(a)).

### 2. *Counts VII and VIII Fail To State Viable Claims For Relief*

The analysis of an unfair competition claim under the Lanham Act is the same as for unfair competition claims under the Ohio Deceptive Trade Practices Act and Ohio common law. *ETW Corp. v. Jireh Publishing, Inc.,* 332 F.3d 915, 920 (6th Cir. 2003); *Abercrombie,* 280 F.3d at 620 n. 2 ("Both Ohio and federal courts have recognized that the same analysis applies to claims under Ohio's statutory and common law of unfair competition and the Lanham Act."). As demonstrated above, Count VI fails for numerous reasons to state a valid claim for trade dress infringement under the Lanham Act. Accordingly, for the same reasons, SCOTTS' companion claims arising under the Ohio Deceptive Trade Practices Act (Count VII) and under Ohio's common law of unfair competition (Count VIII) fail to state viable claims for relief, too. *See Bodine Perry, PLLC v. Bodine,* 2023 WL 2734679 *7 (N.D. Ohio Mar. 31, 2023) (upon determining that Lanham Act claim should be dismissed, also dismissing claims for unfair competition and deceptive trade practices under Ohio Deceptive Trade Practices Act and Ohio common law because same reasoning applies).

### E. Count XII Fails To State A Viable Claim For Copyright Infringement Relating To The ORTHO Black Label

In Count XII, the SAC asserts a copyright infringement claim against SBM relating to the "ORTHO Black Label." As shown below, however, the "ORTHO Black Label" is not composed of any element that has the requisite originality to merit copyright protection. (Indeed, the SAC does not allege that any individual element of the "ORTHO Black Label" is protected by copyright.) As such, any copyright in the

"ORTHO Black Label" is restricted to its overall combination and arrangement of unprotectible elements, which the courts refer to as a "thin" copyright. A "thin" copyright can be infringed only by "virtually identical copying," which the SAC does not plausibly show. Count XII, therefore, should be dismissed.

### 1. Governing Legal Framework

To state a claim for copyright infringement, a plaintiff must allege facts plausibly showing "(1) ownership of a valid copyright, and (2) copying by the defendant." *Halper v. Sony/ATV Music Publishing, LLC,* 2019 WL 994524 * 2 (6th Cir. Feb. 15, 2019) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)). "Not all 'copying' is actionable, however: it is a constitutional requirement that a plaintiff bringing an infringement claim must prove 'copying of constituent elements of the work that are *original*.'" *Kohus v. Mariol,* 328 F.3d 848, 853 (6th Cir. 2003) (emphasis added) (quoting *Feist,* 499 U.S. at 361). As the Sixth Circuit has recognized, "[a] plaintiff may demonstrate that original elements of its work were copied through direct or indirect evidence." *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC,* 958 F.3d 532, 536 (6th Cir. 2020). In the absence of direct evidence of copying, a plaintiff must rely upon indirect evidence, through which it "may establish an inference of copying by showing (1) access to the allegedly infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Enchant Christmas,* 958 F.3d at 536 (quoting *Kohus,* 328 F.3d at 853-54 (quotation omitted)).

In the SAC, no facts are alleged plausibly showing direct copying of the "ORTHO Black Label" by SBM. Therefore, Count XII states a viable claim for copyright infringement only if it alleges facts plausibly showing (1) that SBM had access to the "ORTHO Black Label" and (2) that the "ORTHO Black Label" and the accused SBM labels are substantially similar. *See Enchant Christmas,* 958 F.3d at 536. In the Sixth Circuit, whether disputed works are "substantially similar" is determined under a two-step approach. *Id.* at 537. The first step requires the court to identify which aspects of the asserted work, if any, are protected by copyright. *Id.* Second, the court must determine whether the accused work (or any element thereof) is substantially similar to the asserted work (or a protected element thereof). *Id.* When this rubric

31

is applied to the allegations of the First Amended Complaint, it is clear that the accused SBM product labels do not infringe any copyright in the "ORTHO Black Label."

> **2. Since No Element Of The "ORTHO Black Label" Has Requisite Originality To Merit Copyright Protection, Any Copyright Claimed In The "ORTHO Black Label" Is Limited To Those Aspects Of Its Combination And Arrangement Of Non-Protectible Elements That Are Original**

The first step of the Sixth Circuit's "substantial similarity" test "filter[s] out the unoriginal, unprotectible elements – elements that were not independently created by the inventor, and that possess no minimal degree of creativity." *Enchant Christmas,* 958 F.3d at 537. "Although the amount of creative input by the author required to meet the originality standard is low, it is not negligible." *Satava v. Lowry,* 323 F.3d 805, 810 (9th Cir. 2003) (citing *Feist,* 499 U.S. at 362). Further, under the *scenes a faire* doctrine, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectible under copyright law." *Enchant,* 958 F.3d at 537. Determining whether portions of an asserted work are protectible under copyright is a question of law. *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 534 (6th Cir. 2004); *High Five Threads, Inc. v. Michigan Farm Bureau,* 2021 WL 1809835 *3 (W.D. Mich. May 6, 2021).

In this case, the SAC does not allege that any discrete element of the "ORTHO Black Label" is sufficiently original to warrant copyright protection. This is entirely understandable, because the features of the "ORTHO Black Label" that are highlighted in the SAC are standard or stock expressions that do not qualify for copyright protection. *See* SAC ¶ 40 (listing elements of "ORTHO Black Trade Dress" embodied in "ORTHO Black Label"). For ease of reference, here is the "ORTHO Black Label" that is the subject of Count XII:



SAC ¶ 49. "[H]orizontal information bars," a pentagon, and "a circular or arc design" are all basic geometric shapes which are not sufficiently original to warrant copyright protection. *See Yankee Candle Co.,* 259 F.3d at 35 (basic geometric shapes are not subject to copyright); 37 C.F.R. § 202.1 ("familiar symbols and designs" are not subject to copyright). Similarly, a "black background with some lighter gradations of gray," yellowish/gold and silver coloring on "horizontal information bars," red coloring on a pentagon, and letters that are colored white are not protectible in copyright. *See Boisson v. Banian, Ltd.,* 273 F.3d 262, 271 (2nd Cir. 2001); 37 C.F.R. § 202.1 ("coloring" is not subject to copyright). Titles and lettering also are not protectible in copyright. *See* 37 C.F.R. § 202.1 ("words," "names," "titles," and "typeface as typeface" are not subject to copyright). Within the context of a label for a "weed control" product such as the "ORTHO Black Label," an "image of green plant material" is an unquestionably common, standard element that flows naturally from the label's subject matter, so it also is not subject to copyright protection. *See, e.g., Kim Seng Co. v. J & A Importers, Inc.,* 810 F. Supp. 2d 1046, 1057 (C.D. Calif. 2011) (photograph of common Vietnamese dish on Vietnamese rice stick food package held not protectible under copyright). In short, no individual element of the "ORTHO Black Label" has the requisite originality to merit protection in copyright.

To the extent that the SAC makes any claim of originality concerning the "ORTHO Black Label," it appears to be its allegation that the "Black ORTHO Trade Dress" that the work exemplifies "consists of a unique arrangement of colors, graphic elements, font styles and text. . . ." SAC ¶ 40. "[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and the selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava,* 323 F.3d at 811 (citing *Feist,* 499 U.S. at 358 ("[T]he principal focus should be on whether the selection, coordination and arrangement are sufficiently original to merit protection.")). "Commonplace" or "typical" combinations of unprotectible elements do not qualify for copyright protection. *Satava,* 323 F.3d at 810.

Here, whether the combination and arrangement of unprotectable elements in the "ORTHO Black Label" involves sufficient originality to warrant some copyright protection, or whether the "ORTHO Black Label" is merely a commonplace assemblage of elements typical for a "weed control" product label, is questionable. However, even if some aspects of the combination and arrangement of the unprotectable elements in the "ORTHO Black Label" were deemed sufficiently original to enjoy copyright protection, any copyright protection is limited to those aspects of the combination and arrangement of elements that are original to the author. *See Enchant Christmas,* 958 F.3d at 538; *Satava,* 323 F.3d at 812; *High Five Threads,* 2021 WL 1809835 *3; *see also Feist,* 499 U.S. at 359 (copyright in compilation work protects only author's original contribution); 17 U.S.C. § 103(b) (copyright in a compilation work "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work"). Such protection is known as "*thin*" copyright. *E.g., Enchant Christmas,* 958 F.3d at 538 (combination of unprotectable elements, if original, receives only "'thin copyright' protection"); *Satava,* 323 F.3d at 811-12 (same). In other words, since such a copyright is restricted to the author's contribution to the combination and arrangement of unprotectible elements and does not extend to the elements themselves, it affords protection that is "'*thin*' at best." *High Five Threads,* 2021 WL 1809835 *3 (emphasis added).

### 3. *"Thin Copyright" Protects Against Only "Virtually Identical Copying," Which The SAC Does Not Plausibly Show*

Having filtered out the discrete elements of the "ORTHO Black Label" as unprotectible, such that any copyright in the "ORTHO Black Label" is restricted to any original aspects of its combination and arrangement of such elements, the next question is whether any protectible features forming a "thin copyright" in the "ORTHO Black Label" are substantially similar to elements found in SBM's labels accused of infringement. *See Enchant Christmas,* 958 F.3d at 538-39.

Generally speaking, "[t]wo works are substantially similar when 'they are so alike that the later (unprotected) work can fairly be regarded as appropriating the original expression of the earlier (protected) work." *Id.* (citation omitted). Importantly, however, when "thin copyright" is at issue, a higher standard is used to evaluate "substantial similarity." Where an asserted work has only "thin copyright" protection, substantial similarity between the asserted work and the accused work arises only if there is "*virtually identical copying*" of the asserted work's protected features. *E.g., Enchant Christmas,* 538 F.3d at 538 (emphasis added); *Satava,* 323 F.3d at 812; *High Five Threads,* 2021 WL 1809835 *4. Thus, a "thin copyright" is infringed only by "virtually identical copying" of features of the asserted work that are entitled to protection. *See Enchant Christmas,* 958 F.3d at 538; *Satava,* 323 F.3d at 812.

"Courts consider substantial similarity from the viewpoint of the intended audience, which is normally the lay public, or the ordinary reasonable person." *Id.* (quotations and citations omitted). The question of substantial similarity may be addressed by the court on a motion to dismiss. *See, e.g., Lyles v. Capital-EMI Music, Inc.,* 2013 WL 6000991 *4 (S.D. Ohio Nov. 12, 2013); *Taylor v. Victoria's Secret Stores, Inc.,* 2011 WL 13097641 *5 (W.D. Tenn. Sept. 29, 2011) ("Federal courts routinely resolve copyright infringement suits on Rule 12(b)(6) motions.").

In this case, the SAC makes no allegation that the SBM labels accused of infringement exhibit virtually identical copying of any original aspects of the combination or arrangement of the elements of the "ORTHO Black Label." Nor can any such claim be made, because ordinary side-by-side comparison of the

accused SBM labels and the "ORTHO Black Label" reveals no virtually identical copying of any original aspect of the "ORTHO Black Label's" combination or arrangement of elements.

Below are the "ORTHO Black Label" (left) and SBM's label for BIOADVANCED 365 Weed & Grass Killer Ready-To-Use (right) as they are depicted in the SAC:

 

*Id.* ¶ 64. The differences in the two labels are numerous and obvious to the ordinary observer. For instance:

- The entire lower right quarter of the "ORTHO Black Label" is a photograph with a curved border. The photograph displays a gravel patio area. The label for BIOADVANCED 365 Weed & Grass Killer Ready-To-Use displays no such element.

- The "ORTHO Black Label" has a circle ringed in mustard yellow near the center of the label. The SBM label has no circle in its center, and it has no circle ringed in mustard yellow.

- Where the "ORTHO Black Label" displays a photo of a gravel patio, the label for BIOADVANCED 365 Weed & Grass Killer Ready-To-Use displays a circle ringed in silver along with a second partially-overlapping white circle containing bold black text. The "ORTHO Black Label" has no silver-ringed circle element. The mustard yellow-ringed circle appearing in the near the center of the "ORTHO Black Label" is smaller than the silver-ringed circle at the lower right of the BIOADVANCED 365 Weed & Grass Killer Ready-To-Use label.

- The BIOADVANCED 365 Weed & Grass Killer Ready-To-Use label's silver-ringed circle contains an image of a plant with pavers in the background and the plant's roots in dark brown soil in the foreground. Superimposed over the plant, pavers, and soil are translucent arrows indicating the plant's absorption of the product's active ingredients through its leaves down to its roots. The smaller mustard yellow-ringed circle in the "ORTHO Black Label" displays a plant against a plain white background, with no pavers, soil, roots, or arrows.

36

- In the "ORTHO Black Label," a silver stripe and a mustard yellow stripe are displayed above the label's horizontal center line. The label for BIOADVANCED 365 Weed & Grass Killer Ready-to-Use has no such elements in its upper half.

- In the label for BIOADVANCED 365 Weed & Grass Killer Ready-To-Use, a metallic gold stripe and a silver stripe appear below the label's horizontal center line where the "ORTHO Black Label" shows small text containing product composition information, warnings, and instructions for use. No such text appears in the BIOADVANCED 365 Weed & Grass Killer Ready-To-Use label.

- In the upper third of the label for BIOADVANCED 365 Weed & Grass Killer Ready-To-Use, there is a metallic gold "365" that is in larger font than any other lettering on the label, and metallic gold lines radiate outward from "365" toward the label's upper edges. The "ORTHO Black Label" contains no such elements.

- Near the top of the "ORTHO Black Label" appears a red house with highlighting suggesting it is being lit from the upper left. The house displays the word ORTHO in stylized capital letters. At the top of the label for BIOADVANCED 365 Weed & Grass Killer Ready-To-Use is a "home plate" design that is solid red, with no highlighting, that displays the word BIOADVANCED in stylized font.

- The color of the background of the "ORTHO Black Label" appears to transition gradually from dark gray at the top of the label to a lighter gray above the label's horizontal center line where it meets the mustard yellow stripe and gravel patio photo. The label for BIOADVANCED 365 Weed & Grass Killer Ready-To-Use displays no such color transition.

- The label for BIOADVANCED 365 Weed & Grass Killer Ready-To-Use shows a silver corona of light emanating from behind and around the silver-ringed circle at the label's lower right. The "ORTHO Black Label" shows no such corona of light.

The list of differences in the combination and arrangements of elements in the "ORTHO Black Label" and the accused BIOADVANCED 365 Weed & Grass Killer Ready-To-Use could continue, but the point is clear: from the viewpoint of an ordinary observer, the accused BIOADVANCED 365 Weed & Grass Killer Ready-To-Use label does not show "virtually identical copying" of any original combination or arrangement of elements in the "ORTHO Black Trade Dress."

The other SBM label depicted in the SAC (shown at right below) likewise shows no "virtually identical copying:"




*See* SAC ¶ 64. As this side-by-side view reveals, the combination and arrangement of the elements of the

BIOADVANCED Extended Control Brush Killer Concentrate label differ from the combination and

arrangement of the elements in the "ORTHO Black Label" in almost the same variety and number of ways

listed above concerning the label for BIOADVANCED 365 Weed & Grass Killer Ready-To-Use. The

BIOADVANCED Extended Control Brush Killer Concentrate label does not have the metallic gold "365"

element depicted in the upper third of the BIOADVANCED 365 Weed & Grass Killer Ready-To-Use label,

but the BIOADVANCED Extended Control Brush Killer Concentrate label has in that area a silver stripe

bearing the bold capitalized words "EXTENDED CONTROL." No such element appears in the upper half

of the "ORTHO Black Label." The label for BIOADVANCED Extended Control Brush Killer Concentrate

does not have a white circle in its lower right like the label for BIOADVANCED 365 Weed & Grass Killer

Ready-To-Use, but the BIOADVANCED Extended Control Brush Killer Concentrate label has a circle at

its lower right that is deep yellow with bold black lettering. The "ORTHO Black Label" has no such

element. In short, the wide variety and large number of the BIOADVANCED Extended Control Brush

Killer Concentrate label's substantial differences from how the "ORTHO Black Label" combines and

arranges its constituent elements – such as, for example, the element in the lower right of the "ORTHO

Black Label" containing the gravel patio photograph, the mustard yellow-ringed circle at the center of the

"ORTHO Black Label" showing a plant against a solid white background, and the placement of mustard yellow and silver stripes at or above the horizontal center line of the "ORTHO Black Label" – show that the BIOADVANCED Extended Control Brush Killer Concentrate label is not a virtually identical copy of the "ORTHO Black Label."

In summary, because the SAC does not plausibly show virtually identical copying of any original aspect of the combination or arrangement of elements in the "ORTHO Black Label," the "thin copyright" in the "ORTHO Black Label" is not infringed. *Enchant Christmas,* 538 F.3d at 538; *Satava,* 323 F.3d at 812; *High Five Threads,* 2021 WL 1809835 *4. Dismissal of Count XII is therefore warranted. *See Lyles,* 2013 WL 6000991 **6-7 (granting motion to dismiss copyright infringement claim based on absence of substantial similarity); *Taylor,* 2011 WL 13097641 *8 (same).

### F. COUNT XIII (ERRONEOUSLY DESIGNATED IN THE SAC AS COUNT XII) DOES NOT STATE A VIABLE CLAIM FOR FALSE ADVERTISING UNDER 15 U.S.C. § 1125 (a)

In Count XIII (erroneously designated by SCOTTS as Count XII), the SAC purports to assert a claim under Section 43(a) of the Lanham Act alleging false advertising by SBM in connection with its BIOADVANCED Extended Control Brush Killer product. To state a claim for false advertising, a plaintiff must allege facts plausibly showing, *inter alia,* that "the defendant made false or misleading statements of fact concerning either its own or another's product." *Ashley Furn. Indus., Inc. v. American Signature, Inc.,* 2015 WL 12999664 *6 (S.D. Ohio Mar. 12, 2015) (citing *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.,* 185 F.3d 606, 613 (6th Cir. 1999)); *see International Code Council, Inc. v. UpCodes, Inc.,* 43 F.4th 46, 56 (2d Cir. 2022) ("To state a false advertising claim under Section 43(a), a plaintiff must first plausibly allege the falsity of the challenged statement."). Here, dismissal of the false advertising claim is warranted because no facts are alleged plausibly showing that the statements challenged by SCOTTS are false.

The advertising challenged in the SAC are claims that SBM's BIOADVANCED Extended Control Brush Killer kills brush "for up to 12 months," that the product "protects for up to 12 months," and that the products users "get up to 365 days of control." *See* ¶¶ 83, 180. Critically, however, no facts are alleged

plausibly showing that these statements are false. Instead of alleging (for example) that testing or technical analysis has revealed that the product does not actually control listed brush for 12 months, the SAC attempts to allege the falsity of the challenged statements with SCOTTS' conclusory, *ipse dixit* assertion that "[o]n information and belief and based on a reasonable investigation, [SBM's] Brush Killer Product does not provide consumers with [SBM's] claimed weed control protection for up to 12 months or 365 days." *Id.* ¶ 84. Unsupported by any facts, SCOTTS' mere say-so does not plausibly show that the challenged statements are false. As *Iqbal* teaches, while "detailed factual allegations" are not required by Rule 8(a)(2), "'naked assertion[s]' devoid of 'further factual enhancement'" will not do. 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555, 557). Rather, "Rule 8(a)(2) requires a plaintiff to allege facts 'providing not only fair notice of the nature of the claim, but also grounds on which the claim rests.'" *In re E.I. duPont de Nemours & Co. C-8 Personal Inj. Litig.,* 87 F.4th 315, 320 (6th Cir. 2023) *(*quoting *Twombly,* 550 U.S. at 555 n. 3). Here, SCOTTS' mere disagreement with the challenged advertising statements, offered without a scintilla of factual support, falls far short of providing facts plausibly showing grounds upon which the claim rests. Indeed, in the absence of factual allegations from which it could be inferred that the challenged statements are false, SCOTTS' false advertising claim "amounts to nothing more than the type of 'unadorned the defendant-unlawfully-harmed-me' accusations that *Iqbal* deemed insufficient." *Barber v. Charter Township of Springfield, Mich.,* 31 F.4th 382, 394 (6th Cir. 2022) (citation omitted).

### G. COUNT XIV (ERRONEOUSLY DESIGNATED IN THE SAC AS COUNT IV) FAILS TO STATE A VIABLE CLAIM FOR FALSE ADVERTISING UNDER THE OHIO DECEPTIVE TRADE PRACTICES ACT.

In Count XIV (erroneously designated by SCOTTS as Count IV), the SAC purports to assert a companion claim for false advertising under the Ohio Deceptive Trade Practices Act. As noted above, courts analyze claims under the Ohio Deceptive Trade Practices Act the same as analogous claims under the Lanham Act. *See Robins v. Global Fitness Holdings, Inc.,* 838 F. Supp. 2d 631, 649 (N.D. Ohio 2012). As the SAC fails to state a claim for false advertising under the Lanham Act, the companion claim for false advertising under the Ohio Deceptive Trade fails to state a claim, as well, and should be dismissed.

### IV.     CONCLUSION

For the foregoing reasons, Count III (trademark dilution under Section 43(c) of the Lanham Act), Count VI (trade dress infringement under Section 43(a) of the Lanham Act), Count VII (trade dress infringement under the Ohio Deceptive Trade Practices Act), Count VIII (trade dress infringement under Ohio common law), Count XII (copyright infringement), Count XIII (false advertising under Section 43(a) of the Lanham Act), and Count XIV (false advertising under the Ohio Deceptive Trade Practices Act) should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Inasmuch as SCOTTS now has amended its pleading twice, dismissal of these claims with prejudice is appropriate.

Respectfully Submitted,

*/s/ Lindsay M. Nelson*
Katherine C. Ferguson (0079207)
Lindsay M. Nelson (0095560)
Kooperman Mentel Ferguson Yaross Ltd.
250 East Town Street, Suite 200
Columbus, Ohio 43215
Telephone: (614) 344-4800
Facsimile: (614) 344-4800
kferguson@kmfylaw.com
lnelson@kmfylaw.com

Robert J. Morris (*pro hac vice* forthcoming)
Philip J. Cardinale (*pro hac vice* forthcoming)
Danielle B. Dobosz (*pro hac vice* forthcoming)
Smith Anderson Blount Dorsett Mitchell
& Jernigan, LLP
2300 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Counsel for SBM Life Science Corp.*

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on February 20, 2024 a copy of the foregoing was filed electronically. Notice of this filing will be sent via the Court's electronic filing system to the following:

David M. DeVillers
Christopher M. Dolan
Joshua S. Frick
Barnes & Thornburg LLP
Email: DDeVillers@BTLaw.com
Email: CDolan@BTLaw.com
Email: Joshua.Frick@BTLaw.com
*Counsel for Plaintiff*


         */s/ Lindsay M. Nelson*
         Lindsay M. Nelson