**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| THE SCOTTS COMPANY LLC, and OMS INVESTMENTS, INC., | |
| Plaintiffs, | Case No. 2:23-cv-01541-EAS-EPD |
| v. | JURY TRIAL DEMANDED |
| SBM LIFE SCIENCE CORP., | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S PARTIAL MOTION TO DISMISS SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

I.  THE COURT SHOULD DENY DEFENDANT'S MOTION ........................................... 2

    A.  Motion to Dismiss Standard ......................................................................... 2

    B.  Scotts Has Adequately Pleaded Its Claim For Trademark Dilution Of The Red Marks Under 15 U.S.C. §1125(c) (Count III) ..................................... 3

**Summary:** Defendant only alleges that Scotts did not include sufficient factual allegations in the Second Amended Complaint ("SAC") to support its allegation that the Red Marks are famous. However, the SAC is filled with factual allegations concerning the fame of the Red Marks, which plausibly show the Marks are famous.

        1.  Under the Lanham Act, a mark is famous when it is "widely recognized by the general consuming public of the United Sates." ....................................................................... 3

**Summary:** The Lanham Act specifies that a mark is famous when it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." § 1125(c)(2)(A). Courts consider the following four factors when considering whether an asserted mark possesses the requisite degree of recognition to qualify as famous: (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark is federally registered. 15 U.S.C. § 1125(c)(2)(A); *Kibler v. Hall*, 843 F.3d 1068 (6th Cir. 2016). The SAC includes more than sufficient factual allegations regarding ***each*** factor to plausibly show the Red Marks are famous.

        2.  The SAC Includes Sufficient Factual Allegations To Plausibly Show The Red Marks Are Famous ........................................... 4

            a.  The SAC includes detailed factual allegations concerning the duration, extent, and geographic reach of advertising and publicity of the mark ............................................. 5

            b.  The SAC includes detailed factual allegations concerning the amount, volume, and geographic extent of Scotts' sales of goods under the Red Marks ............................................. 8

            c.  The SAC includes detailed factual allegations concerning the extent of actual recognition of the Red Marks ..................... 9

i

        d.      It is undisputed that the Red Marks are federally
                registered, and thus support Scotts' allegation the Marks
                are famous.................................................................................11

C.      Scotts has Adequately Pleaded a Claim for Unfair Competition
        Relating to the ORTHO Black Trade Dress (Count VI)...................................11

**Summary:** Defendant attacks Scotts' trade dress claims on three bases, each of which is
without merit: (1) that the SAC does not sufficiently identify the trade dress; (2) that the
SAC does not "allege facts plausibly showing that the product line bearing the claimed
trade dress has a consistent overall look;" and (3) that the SAC lacks sufficient facts
plausibly showing the trade dress is distinctive. However, the ORTHO Black Trade Dress
is sufficiently and clearly defined in the SAC, the products bearing the Trade Dress are
clearly identified in the SAC, and the allegations that the Trade Dress is distinctive are well
supported.

        1.      The SAC sufficiently identifies the ORTHO Black Trade Dress ........12

**Summary:** "Trade dress refers to the image and overall appearance of a product. It
embodies that arrangement of identifying characteristics or decorations connected with a
product, whether by packaging or otherwise, that makes the source of the product
distinguishable from another and promotes its sale." *Innovation Ventures, LLC v. N2G
Distribg., Inc.*, 763 F.3d 524, 536 (6th Cir. 2014). While a trade dress may protect the
"overall look" of a product, the discrete elements which make up the claimed trade dress
should be separated out and identified. *See Gen. Motors Corp. v. Lanard Toys, Inc.*, 468
F.3d 405, 415 (6th Cir. 2006). Paragraph 40 of the SAC specifically identifies and describes
the features of the ORTHO Black Trade Dress, including the colors, graphic elements, font
styles, and the arrangement of those elements. Moreover, the SAC includes an image of an
example of the Trade Dress. The SAC's identification of the trade dress uses the closed
term "consisting of" before listing the elements and therefore it is not "open" or vague.

        2.      The SAC sufficiently identifies the ORTHO Black Trade Dress
                and Scotts' products bearing the Trade Dress......................................15

**Summary:** Defendant's argument that Scotts does not sufficiently identify the product line
or series of products that use the ORTHO Black Trade Dress is a contrived and faulty
argument. It is based on the false premise that Scotts, by stating that the trade dress is used
on "control products" or "weed control products," must mean that it is used on all of Scotts'
control products or weed control products. The SAC clearly states that the ORTHO Black
Trade Dress is on "certain" of its control products and specifies that it is used on the weed
control products shown in paragraph 40 of the SAC. In addition, contrary to Defendant's
assertions, the SAC does not allege trade dress across a line or series of products, but
instead asserts trade dress used in its specific "GroundClear" products shown in paragraph

40 of the SAC. Because trade dress across a line or series of products is not alleged, no heightened pleading requirement applies.

3.      The SAC sufficiently alleges the distinctiveness of the ORTHO Black Trade Dress .................................................................... 16

        a.      Legal Standard ........................................................... 17

        b.      The SAC alleges that the ORTHO Black Trade Dress is both inherently distinctive and that it has secondary meaning. ..................................................................... 18

**Summary:** The SAC specifically alleges that the ORTHO Black Trade Dress is inherently distinctive, that it is unique to Scotts and, therefore, that it is not merely descriptive or generic for control products. This is more than sufficient to plead inherent distinctiveness. *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 583 (2d Cir. 1993). In addition, the SAC contains significant detailed factual allegations that allege secondary meaning of the Trade Dress.

D.      Scotts Has Adequately Pleaded Its Ohio State Law Claims Relating to the ORTHO Black Trade Dress (Counts VII and VIII) .................................... 22

        1.      The Copyright Act does not preempt Scotts' Ohio state law claims .......................................................................... 22

**Summary:** Defendant asks the Court to dismiss Scotts' Ohio state law claims asserting claims for violation of Ohio's Deceptive Trade Practices Act Ohio Rev. Code §§ 4165.01 through 4165.04 (Count VII) and for common law unfair competition relating to Scotts ORTHO Black Trade Dress (collectively, the "State Law Trade Dress Claims") on the ground that the Claims are preempted by the Copyright Act. However, because Scotts' State Law Trade Dress Claims require an element in addition to those required for a claim under the Copyright Act, namely a likelihood of confusion, the claims are not preempted by the Copyright Act and should not be dismissed. *Slep-Tone Entertainment Corp. v. Arrowood*, No. 2:10–cv–592, 2011 WL 4482082 at *4 (S.D. Ohio Sept. 26, 2011) (denying motion to dismiss holding Copyright Act does not preempt Ohio state law trademark claims): *see also* 1 McCarthy on Trademarks and Unfair Competition § 6:15.50 (5th ed.) (Likelihood of confusion is an essential 'extra element' of a trademark-based claim: a substantially different element not found in copyright law).

        2.      Scotts' State Law Trade Dress Claims state claims for relief .............. 26

**Summary:** Because Scotts properly pleaded its Lanham Act false designation of origin and unfair competition claims relating to the ORTHO Black Trade Dress (Count VI), the SAC necessarily satisfies the pleading requirements for its State Law Trade Dress Claims

(Counts VII and VIII). *Off. Pillowtex LLC v. Hollander Home Fashions Corp.*, 479 F. Supp. 2d 744, 756 (S.D. Ohio 2007).

E.  **Scotts Has Adequately Pleaded Its Copyright Infringement Claims Relating To The ORTHO Black Label** ...............................................................**26**

     1.  **Legal Standard** .........................................................................**27**

     2.  **The copyright in the ORTHO Black Label is not "thin"** ....................**28**

**Summary:** As the Sixth Circuit recently confirmed, copyright laws protect "all manner of works—mundane and lofty, commercial and non-commercial, even the dull and workaday—so long as they satisfy the modest imperatives of originality." *Premier Dealer Services, Inc. v. Allegiance Administrators, LLC*, No. 23-3394, 2024 WL 771552, at *4 (6th Cir. Feb. 26, 2024). Regardless of the protectability of all of the constituent elements of the ORTHO Black Label, the design of the label as a whole, including the selection and combination of the constituent elements, their layout and their relation to one another, is protectable. Indeed, the appearance of the label as a whole is an original design comprising an original selection and arrangement of elements. *See Faessler v. U.S. Playing Card Co.*, No. 105CV581, 2007 WL 490171, at *12 (S.D. Ohio Feb. 9, 2007)(rejecting argument that playing cars that melded both unprotectable and creative elements were only entitled to thin copyright). Accordingly, the label is not entitled to only "thin" copyright protection. Rather, it is entitled to copyright protection for the overall work.

     3.  **Defendant's Black Trade Dress is substantially similar to the ORTHO Black Label** ...............................................................................**31**

**Summary:** Defendant's Black Trade Dress copies the protectable features of the ORTHO Black Label. The overall similarities are so striking that it would be apparent to an ordinary observer that Defendant copied the overall appearance of the label. This copying of protectable elements of the label constitutes unauthorized copying of the ORTHO Black Label, and thus copyright infringement. Defendant incorrectly asserts that the Sixth Circuit applies a standard of "virtually identical copying" rather than "substantial similarity" in cases where the copyright protection is determined to be "thin." At a minimum, Defendant's label violates Plaintiff's ORTHO Black Label copyright because it is an impermissible creation of a derivative work under 17 U.S.C. §1062. Given the substantial similarities between the labels as both described and shown in the SAC, at a minimum, the SAC has adequately plead factual allegations that support a reasonable inference of substantial similarity between the two labels and that defendant copied or created a derivative work from the protectable elements of the ORTHO Black label. Therefore, Scotts has adequately plead actionable copyright infringement. *See W.H. Midwest, LLC v. A.D. Baker Homes, Inc.*, No. 2:18-CV-1387, 2019 WL 4645497, at *3 (S.D. Ohio Sept. 24, 2019) (Copyright infringement claim in architectural plans and drawings adequately plead

where the plaintiff alleged that the defendant's drawing contained elements that were nearly identical to or copies of those found in the plaintiff's work and included pictures of the allegedly infringing work.)

**F.     Scotts Has Adequately Pleaded Its Claim for False Advertising Under 15 U.S.C. § 1125(a) (Count XIII)** ........................................................................33

**Summary:** Defendant only alleges that the SAC does not include plead factual allegations "plausibly showing" that Defendant's statements concerning its Brush Killer Product identified in the SAC are false. However, Defendant ignores the clear unambiguous language of the SAC, which explicitly identifies the multiple statements Defendant makes about its Brush Killer Product and alleges they are false and/or misleading. As such, the SAC provides more than "fair notice" to Defendant of the grounds on which Scotts' false advertising claim rests and a plausible inference of wrongdoing, which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Marie, 771 F. 3d at 364 (*quoting Twombly*, 550 U.S. at 555); 16630 *Southfiled*, 727 F.3d at 504; Iqbal, 556 U.S. at 678. This is all that is required at this early stage in the case. The issue to be litigated is whether the Challenged Statements are in fact false and/or misleading. Scotts is not required at this early stage to prove the Statements are false and/or misleading, it must only allege facts sufficient to create a plausible expectation that discovery may reveal evidence to support the claim. *Twombly*, 550 U.S. at 556.

**G.     Scotts Has Adequately Pleaded Its Claim for False Advertising Under the Ohio Deceptive Trade Practices Act (Count XIV)** ......................................34

**Summary:** Because Scotts properly pleaded its false advertising claim under the Lanham Act (Count XIII), Scotts' allegations necessarily satisfy the pleading requirements for its false advertising claim under the Ohio Deceptive Trade Practices Act. *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 784–85 (S.D. Ohio 2009) ("an analysis appropriate for a determination of liability under [S]ection 43(a) of the Lanham Act is also appropriate for determining liability under the Ohio Deceptive Trade Practices Act.").

**II.  CONCLUSION** ........................................................................................................ **35**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ...........................................................................2, 34

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
  537 F.2d 4 (2d Cir. 1976) ...................................................................................17

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*,
  280 F.3d 619 (6th Cir. 2002) .........................................................................17, 20

*Abli, Inc. v. Stand. Brands Paint Co*.,
  323 F. Supp. 1400 (C.D. Cal. 1970) ...................................................................28

*Allard Enter., Inc. v. Advanced Programming Res., Inc.*,
  146 F.3d 350 (6th Cir. 1998) ..............................................................................24

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*,
  185 F. 3d 606 (6th Cir. 1999) .............................................................................33

*AmBrit, Inc. v. Kraft, Inc.*,
  812 F.2d 1531 (11th Cir. 1986) ..........................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................. *passim*

*Audi AG v. D'Amato*,
  469 F.3d 534 (6th Cir. 2006) ................................................................................3

*AutoZone, Inc. v. Tandy Corp.*,
  373 F.3d 786 (6th Cir. 2004) ................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................2, 3, 33, 34

*Best v. AT & T Mobility, LLC*,
  No. 1:12-CV-564, 2015 WL 1125539 (S.D. Ohio Mar. 12, 2015)........................26

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*,
  No. 11 Civ. 8921, 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) (*see* Mot. p. 15) ...............................................................................................................11

*Brands, Inc. v. Ridge Wallet, LLC,*
  2020 WL 6821013 (C.D.Cal. Oct. 29, 2020) ......................................................................14

*Clark v. Walt Disney Co.*,
  642 F. Supp. 2d 775 (S.D. Ohio 2009) ..............................................................................35

*Coach Servs., Inc. v. Triumph Learning LLC*,
  668 F.3d 1356 (Fed. Cir. 2012)............................................................................................8

*Constructive Eating, Inc. v. Masontops, Inc.*,
  2:19-cv-10619, 2021 WL 719701 (E.D. Mich. Feb. 23, 2021) ...........................................26

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
  No. CV 15-769 PSG (SSX), 2015 WL 12731929 (C.D. Cal. May 8, 2015) ..................21, 22

*Drop Dead Co. v. S. C. Johnson & Son, Inc.*,
  326 F.2d 87 (9th Cir. 1963) ..............................................................................................28

*Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco*,
  LLC, 958 F.3d 532 (6th Cir. 2020)..............................................................................29, 30

*EVIG, LLC v. Mister Brightside, LLC*
  *2023 WL 5717291* (D. Nev. Sept. 5, 2023)........................................................................14

*Fabia v. Fulmer Helmets, Inc.*,
  628 F.3d 278 (6th Cir. 2010) ...............................................................................................2

*Faessler v. U.S. Playing Card Co.*,
  No. 105CV581, 2007 WL 490171 (S.D. Ohio Feb. 9, 2007) ..............................................31

*FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*,
  No. 14-CV-3685 SJF SIL, 2015 WL 4162757 (E.D.N.Y. July 8, 2015)...............................21

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).....................................................27

*FMC Corp. v. Control Sols., Inc.*,
  369 F. Supp. 2d 539 (E.D. Pa. 2005) .................................................................................28

*Gavitt v. Born*,
  835 F.3d 623 (6th Cir. 2016) ...............................................................................................2

*Gen. Motors Corp. v. Lanard Toys, Inc.*,
  468 F.3d 405 (6th Cir. 2006) ..................................................................................12, 14, 18

*Good L Corp. v. Fasteners for Retail, Inc.*,
  No. 3:18-CV-00489, 2019 WL 1429252 (M.D. Tenn. Mar. 28, 2019) .................................13

*Green Crush LLC v. Paradise Splash I, Inc.*,
No. SACV1701856CJCJDEX, 2018 WL 4940825 (C.D. Cal. May 3, 2018) ........................22

*Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*,
270 F.3d 298 (6th Cir. 2001) ............................................................................17

*High Five Threads, Inc. v. Michigan Farm Bureau*,
No. 1:20-CV-604, 2021 WL 1809835 (W.D. Mich. May 6, 2021) ........................................30

*Hua-Cheng Pan v. Kohl's Dept. Stores, Inc.*,
2013 WL 5181144 (S.D. Ohio Sept. 12, 2013) ............................................................24, 25

*Innovation Ventures, LLC v. N2G Distribg., Inc.*,
763 F.3d 524 (6th Cir. 2014) ............................................................................12

*Inwood Labs., Inc. v. Ives Labs., Inc.*,
456 U.S. 844 (1982) ......................................................................................17

*Kibler v. Hall*,
843 F.3d 1068 (6th Cir. 2016) ..........................................................................4

*Kohus v. Mariol*,
328 F.3d 848 (6th Cir. 2003) ..........................................................................27, 32

*Marie v. Am. Red Cross*,
771 F. 3d 344 (6th Cir. 2014) ..........................................................................2, 3, 34

*Mike Vaughn Custom Sports, Inc. v. Piku*,
15 F. Supp. 3d 735 (E.D. Mich. 2014) ................................................................21

*Music City Metals Co., Inc. v. Jingchang Cai*,
No. 3:17-cv-766, 2017 WL 4641866 (M.D. Tenn. Oct. 17, 2017) ........................................26

*Off. Pillowtex LLC v. Hollander Home Fashions Corp.*,
479 F. Supp. 2d 744 (S.D. Ohio 2007) ................................................................26

*Paddington Corp. v. Attiki Importers & Distributors, Inc.*,
996 F.2d 577 (2d Cir. 1993) ............................................................................17, 19

*Premier Dealer Services, Inc. v. Allegiance Administrators, LLC*,
No. 23-3394, 2024 WL 771552 (6th Cir. Feb. 26, 2024) ................................................28

*Reed Elsevier, Inc. v. TheLaw.net Corp.*,
269 F. Supp. 2d 942 (S.D. Ohio 2003) ................................................................4

*S.C. Johnson & Son v. Turtle Wax, Inc.*,
No. 89C5792, 1989 WL 134802 (N.D. Ill. Oct. 17, 1989) ................................................28

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003) .....................................................................................28, 29, 30

*Sherwin-Williams Co. v. JP Intern. Hardware, Inc.*,
   988 F. Supp. 2d 815 (N.D. Ohio 2013)....................................................................................17

*Sleep Sci. Partners v. Lieberman*,
   2010 WL 1881770 (N.D.Cal. May 10, 2020) ..........................................................................14

*Slep-Tone Entm't Corp. v. Arrowood*,
   2011 WL 4482082, No. 2:10–cv–592 (S.D. Ohio Sept. 26, 2011)......................23, 24, 25, 26

*Stagecraft Costuming, Inc. v. HouseHaunters L.L.C.*,
   No. 1:10-CV-197, 2011 WL 13202911 (S.D. Ohio Feb. 2, 2011) ..........................................21

*Stromback v. New Line Cinema*,
   384 F.3d 283 (6th Cir. 2004) ...................................................................................................23

*Sugarfina, Inc. v. Sweet Pete's, LLC*,
   2017 WL 4271133 (C.D. Cal. Sept 25, 2017) ..........................................................................14

*TSDC, LLC v. Galvan*,
   No. 1:14-CV-02699, 2015 WL 1800589 (N.D. Ohio Apr. 16, 2015) ........................................4

*Varsity News Network, Inc. v. Carty Web Strategies, Inc.*,
   CV 17-2574.................................................................................................................................10

*W.H. Midwest, LLC v. A.D. Baker Homes, Inc.*,
   No. 2:18-CV-1387, 2019 WL 4645497 (S.D. Ohio Sept. 24, 2019) ........................................33

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
   529 U.S. 205 (2000)....................................................................................................................17

*Worthington Foods v. Kellogg Co.*,
   732 F. Supp. 1417 (S.D. Ohio 1990) ........................................................................................35

*Wrench LLC v. Taco Bell Corp.*,
   256 F.3d 446 (6th Cir. 2001) ....................................................................................................23

*X–IT Products, LLC v. Walter Kidde Portable Equipment, Inc.*,
   155 F.Supp.2d 577 (E.D.Va. 2001) ....................................................................................28, 31

**Statutes**

15 U.S.C. § 1125(a) ..........................................................................................................................1, 33

15 U.S.C. § 1125(c) ...................................................................................................................1, 4, 10

17 U.S.C. §1062....................................................................................................................................32

17 U.S.C. §106 ................................................................................................................23

17 U.S.C. §301(a) ...........................................................................................................23

Ohio Deceptive Trade Practices Act ...............................................................24, 25, 26, 34, 35

**Other Authorities**

Rule 8(a)(2) ......................................................................................................................2

Rule 12 ..............................................................................................................................1

Rule 12(b)(6) .................................................................................................................2, 4

Plaintiffs, The Scotts Company LLC and OMS Investments, Inc. (collectively, "Plaintiffs" or "Scotts") hereby submit this Opposition to Defendant SBM Life Science Corp.'s ("Defendant") Partial Motion to Dismiss (ECF 45, the "Motion"), which seeks to dismiss the following counts in Scotts' Second Amended Complaint ("SAC") (ECF 44):

**Count III:** Trademark dilution of blurring and tarnishment of OMS Investments' Red Marks under 15 U.S.C. § 1125(C)

**Count VI:** False designation of origin and federal unfair competition relating to the ORTHO Black Trade Dress under 15 U.S.C. ¶ 1125(a)

**Count VII:** Violation of Ohio's Deceptive Trade Practices Act relating to the ORTHO Black Trade Dress

**Count VIII:** Common law unfair competition relating to the ORTHO Black Trade Dress

**Count XII:** Copyright infringement relating to OMS Investments' ORTHO Black Label under 17 U.S.C. §§ 106 and 501

**Count XIII:** False advertising relating to Defendant's Brush Killer Product under 15 U.S.C. § 1125(a)

**Count XIV:** Violation of Ohio's Deceptive Trade Practices Act relating to Defendant's Brush Killer Product

Defendant labeled its Motion as a motion to dismiss under Rule 12, but Defendant's arguments are procedurally out of place and march well beyond what Rule 12 allows. Specifically, Defendant advances several merits-based arguments. However, Defendant's Motion can challenge only whether Scotts' allegations state claims for relief (which they do). Defendant's arguments are also substantively wrong under the most fundamental principles of trademark, copyright, and false advertising law, and Defendant ignores many of Scotts' factual allegations in the SAC. Defendant thus asks the Court to issue a ruling that would far exceed the bounds of Rule 12 and that would rely on incorrect legal principles and an incomplete review of the allegations in the SAC.

1

Accordingly, The Court should deny Defendant's motion, allow Scotts to proceed with its claims, and require Defendant to defend on the merits.

## I. THE COURT SHOULD DENY DEFENDANT'S MOTION

### A. Motion to Dismiss Standard

Dismissal is only proper under Rule 12(b)(6) where the plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 8(a)(2), a plaintiff is only required to provide a short and plain statement of the claim that, "at a minimum, 'will give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Marie v. Am. Red Cross*, 771 F. 3d 344, 364 (6th Cir. 2014) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a 12(b)(6) motion to dismiss, a plaintiff must merely "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (*quoting Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. 544, 556 (2007)). The Sixth Circuit has stated that "[s]o long as we can 'draw the reasonable inference that the defendant is liable for the misconduct alleged,' . . . a plaintiff's claims must survive a motion to dismiss." *Fabia v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When considering a Rule 12(b)(6) motion to dismiss, the court must presume all the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Gavitt v. Born*, 835 F.3d 623, 639-40 (6th Cir. 2016). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Importantly, the Court need not determine

2

from the pleading whether the plaintiff can ultimately prove the facts alleged, instead the Court analyzes whether the pleading is sufficient to create a plausible expectation that discovery may reveal evidence to support the pleaded claims. *Twombly*, 550 U.S. at 556.

**B.      Scotts Has Adequately Pleaded Its Claim For Trademark Dilution Of The Red Marks Under 15 U.S.C. §1125(c) (Count III)**

To state a claim for trademark dilution of the Red Marks, Scotts must allege (1) that the Red Marks are famous; (2) that the marks are distinctive; (3) that Defendant's use of its junior Red Mark was in commerce; (4) such use began subsequent to the Red Marks becoming famous, and (5) such use caused dilution of the Red Marks' distinctive quality. *Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir. 2006); *citing AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 802 (6th Cir. 2004)). Scotts has alleged each element, and has done so in compliance with *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In its Motion, Defendant asserts only that Scotts did not plead factual allegations sufficient to allege fame. (Mot. pp. 8-15.) However, the SAC is filled with factual allegations supporting Scotts' allegation that the Red Marks are famous that provide more than "fair notice" to Defendant of the grounds on which Scotts' allegation of fame rests. This is all that is required at this early stage in the case. *Marie*, 771 F. 3d at 364 (*quoting Twombly*, 550 U.S. at 555). Defendant not only ignores many of the factual allegations in the SAC, but also improperly seeks to force Scotts to allege each and every fact, at a granular level of detail, that could possibly support Scotts' allegation that the Red Marks are famous, and thus essentially prove the Marks are famous in the SAC.

**1.      Under the Lanham Act, a mark is famous when it is "widely recognized by the general consuming public of the United Sates."**

The Lanham Act specifies that a mark is famous when it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." § 1125(c)(2)(A). Courts consider the following four factors when assessing fame: (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark is federally registered. 15 U.S.C. § 1125(c)(2)(A); *Kibler v. Hall*, 843 F.3d 1068 (6th Cir. 2016).

In its Motion, Defendant engages in a detailed analysis of each of these factors, and thus analyzes the ultimate merits of Scotts' allegation that the Red Marks are famous. (Mot. pp. 8-15.) However, whether Scotts can ultimately establish its dilution claim by proving the Red Marks are famous, is not the issue to be decided on a motion to dismiss. Rather, the issue is whether Scotts has included sufficient factual allegations in the SAC to plausibly support its claim that the Marks are famous. *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 947 (S.D. Ohio 2003) ("In the Rule 12(b)(6) context, the merits of the claim are not supposed to be considered")*; see also TSDC, LLC v. Galvan*, No. 1:14-CV-02699, 2015 WL 1800589, at *3 (N.D. Ohio Apr. 16, 2015) (denying motion to dismiss even though plaintiff allegedly failed to plead the existence of fame of the asserted mark).

As detailed below, Scotts set forth numerous detailed factual allegations supporting its allegation that the Red Marks are famous.

### 2.      The SAC Includes Sufficient Factual Allegations To Plausibly Show The Red Marks Are Famous

In the SAC, Scotts provides detailed factual allegations supporting each of four factors courts consider when determining if an asserted mark is famous.

a. **The SAC includes detailed factual allegations concerning the duration, extent, and geographic reach of advertising and publicity of the mark**

The SAC includes several detailed factual allegations regarding Scotts' lengthy and extensive advertising and promotion of the Red Marks including the following:

- Since at least as early as 1995, Scotts has continuously and extensively engaged in the business of manufacturing, marketing and selling control products (hereinafter the "ORTHO Products") under the Red Mark. (SAC 44, ¶ 16.)

- During its many continuous years of use of its Red Mark, Scotts has used the Red Design Mark. (*Id*. ¶ 25.)

- Scotts first used the Red Design Mark in United States interstate commerce in connection with the ORTHO Products at least as early as August 11, 2010 and has used the mark in United States interstate commerce continuously since that date. (*Id*. ¶ 26.)

- Scotts has invested substantial resources developing, advertising, promoting and marketing the ORTHO Products under the Red Marks throughout the United States and establishing these goods in the minds of consumers as high-quality goods offered by Scotts. (*Id*. ¶¶ 17 and 29.)

- Scotts prominently uses the Red Marks directly on packaging for the ORTHO Products and in nationwide advertising and promotional materials for the Products, including but not limited to print advertisements, television advertisements, brochures, and the Internet. (*Id*. ¶¶18 and 30.)

- Scotts advertises and sells its ORTHO Products under the Red Marks throughout the United States, including in retail stores in this judicial district. Scotts also markets its ORTHO Products under the Red Mark throughout the United States via the Internet, including at its website www.ortho.com. (*Id*. ¶ 19 and 27.)

- Scotts also heavily markets the ORTHO Products under the Red Marks on social media platforms. (*Id*. ¶ 28.)

- The Red Design Mark has become favorably known among consumers as used in connection with the ORTHO Products and has become an invaluable symbol of the source of products bearing the Mark, of the high quality of products bearing the mark, and of consumer goodwill. (*Id*. ¶ 31.)

- Since first using the Red Marks on and in connection with the ORTHO Products, Scotts has . . . spent at least tens of millions of dollars on promoting and marketing the ORTHO Products under the Red Marks on a nationwide basis. (*Id*. ¶ 36.)

These allegations are more than sufficient to establish Scotts' longstanding and extensive promotion of the Red Marks for the purpose of the SAC, creating a plausible inference that the Marks are famous and the allegations are sufficient to create a plausible expectation that discovery may reveal evidence to support the pleaded claims. As such, the allegations are sufficient. *Iqbal*, 556 U.S. at 678

In its Motion, Defendant provides a laundry list of highly detailed and granular factual allegations it suggests should have been included in the SAC. (Mot. pp. 9-12.) These proposed allegations include showing any marketing "actually fostered recognition of" the Red Marks; facts "showing the frequency or consistency" of marketing featuring the Red Marks; facts showing that and marketing "actually generated recognition of the marks among the general public;" and facts detailing how Scotts "actually spent" "tens of millions" on advertising. *Id*. These proposed allegations relating to intent, actual consumer perception, and specific marketing activities are clearly not necessary and Defendant provides no case law indicating that they are necessary. *Id*.

Even the few cases Defendant does cite are inapposite and not from this Circuit. For example, unlike the pleading in *Walker Wear LLC v. Off-White LLC* that "failed to plead any information about [plaintiff's] advertising budget," the SAC contains allegations concerning the amount Scotts has spent on advertising its products under the Red Marks (*see* SAC ¶ 35). 624 F. Supp. 3d 424, 429 (S.D.N.Y. 2022). Likewise, the allegations in the SAC are substantially more detailed than both the allegations in *Plumeus, Inc. v. Intersog LLC*, that alleged only that it had "invested substantial resources" in "numerous national and international marketing campaigns," and the allegations in *Parts.com, LLC v. Yahoo! Inc.,* that included only "the bare bones assertion that Plaintiff has 'expended a significant amount of resources' to 'promote[ ] ... [the] mark

throughout the United States.'" No. 13–CV–1078 JLS, 2013 WL 5609331 *2 (N.D. Ill. Oct. 11, 2013); 996 f. Supp. 2d 933-940-41 (S.D. Cal. 2013).

Similarly, unlike the plaintiff in *Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn Mayer Inc.* that alleged it merely had "devoted substantial time, effort, and resources to the development and extensive promotion," in the SAC, Scotts includes detailed allegations concerning the lengthy time it has used and promoted the Red Marks, the nationwide advertising of the products it offers under the Red Marks, where it has promoted the goods, and the dollar amount it has spent on such advertising (SAC ¶¶16-19, 25-30 and 36). No.: CV 20-4822, 2020 WL 68775178 *9 (C.D. Cal. Oct. 23, 2020).

Defendant also relies on two cases that analyze the issue of fame in procedural contexts very different than a motion to dismiss, and thus are not relevant. First, Defendant cites *Black & Decker Corp. v. Positec USA, Inc.*, in which the court analyzed the issue of fame in the context of a motion for summary judgment. No. 11-CV-5426, 2015 WL 1543262, at *34 (N.D. Ill. Mar. 31, 2015). Given the procedural posture of that case, which Defendant acknowledges differs from this case, the Court had the benefit of a full evidentiary record, and the plaintiff had the burden to present sufficient evidence to establish its asserted trade dress is famous, (not merely facts that create a plausible inference the trade dress is famous). *Id*. Here, Defendant's cherry-picking of one fact the court considered in granting summary judgment in the defendant's favor (i.e. plaintiffs' expenditure of $150 million promoting the asserted trade dress) does not support Defendant's contention that Scotts' factual allegations in the SAC are inadequate. (Mot. p. 12.) Moreover, the *Black & Decker* court based its determination on the fact that the plaintiffs made "an insufficient showing as to how recognized their trade dress is among 'the general consuming public'" and not merely on the narrow issue of insufficient advertising expenditures. 2015 WL 1543262, at *34.

7

Defendant also cites to *Coach Servs., Inc. v. Triumph Learning LLC,* 668 F.3d 1356, 1368 (Fed. Cir. 2012), to argue that additional factual allegations are required at this time concerning Scotts' advertising expenditures. (Mot. p. 12.) Defendant's reliance on this case is misplaced as it was not decided in the context of a motion to dismiss. Instead, the Court reviewed an appeal of the United States Patent and Trademark Office's Trademark Trial and Appeal Board's ("TTAB") dismissal of an opposition proceeding after the parties had engaged in discovery, submitted testimony, submitted trial briefs, and made oral argument to the TTAB. 668 F.3d at 1356 (2012).[1] Accordingly, the court's determination was on the merits and based on an evidentiary record. At this juncture, Scotts is only required to allege facts that plausibly support its allegation the Red Marks are famous.

> **b.** **The SAC includes detailed factual allegations concerning the amount, volume, and geographic extent of Scotts' sales of goods under the Red Marks**

The SAC includes sufficiently detailed factual allegations of the amount, volume and geographic extent of Scotts' sales of goods under the Red Marks including the following:

- Scotts advertises and sells its ORTHO Products under the Red Mark throughout the United States, including in retail stores in this judicial district. (SAC ¶ 19.)

- Since first using the Red Marks on and in connection with the ORTHO Products, Scotts has made at least hundreds of millions of dollars, and likely billions of dollars, in sales of its Products under the Red Marks in the United States. (*Id*. 36.)

These allegations provide more than sufficient factual detail to establish Scotts' substantial nationwide sales of its goods under the Red Marks.

---

[1] Attached hereto as **Exhibit A** is a printout of the TTAB docket for the opposition proceeding at issue in *Coach Servs.* showing the extensive pleadings and record on which the TTAB based its ruling in the proceeding. Also included in Exhibit A is the TTAB's ruling in the opposition

Defendant again lists a series of overly detailed, granular allegations it suggests should be included in the SAC, which would essentially require that Scotts include a financial statement with its pleading to detail the sale of its products by year, by product, and by mark. (Mot. p. 12-13.) Defendant even suggests Scotts should have included information concerning "any trend in" Scotts' sales revenue. (*Id*.) Defendant fails to provide any case law supporting its assertion that evidence and detail of this level is required at the pleading stage. (*Id*.)

Furthermore, the cases Defendant does cite are again inapposite on the issue because, as detailed above, the Courts analyzed the issues in completely different procedural contexts with much more complete evidentiary records. (Mot. p. 14.) Here, there is no legitimate argument that Scotts has not adequately pleaded facts to support this factor.

> **c.**     **The SAC includes detailed factual allegations concerning the extent of actual recognition of the Red Marks**

The SAC includes several sufficiently detailed factual allegations concerning the actual recognition of the Red Marks by the general consuming public of the United States as a designation of the source of the ORTHO Products Scotts offers under the Marks including the following:

- Scotts has invested substantial resources developing, advertising, promoting and marketing the ORTHO Products under its Red Mark throughout the United States and establishing these goods in the minds of consumers as high-quality goods offered by Scotts. As a result, and in addition to its registered rights described below, Scotts enjoys extremely strong common law trademark rights in the Red Mark, embodying invaluable goodwill. (SAC ¶ 17.)

- The Red Marks have become favorably known among consumers as used in connection with the ORTHO Products, and has become an invaluable symbol of the source of products bearing the Red Mark, of the high quality of products bearing the mark, and of consumer goodwill. (*Id*. ¶¶ 20 and 31.)

- Scotts has invested substantial resources developing, advertising, promoting and marketing the ORTHO Products under the Red Design Mark throughout the United States and establishing these goods in the minds of consumers as high-quality goods offered by Scotts. As a result, and in addition to its registered rights described below, Scotts enjoys extremely

9

strong common law trademark rights in the Red Design Mark, embodying invaluable goodwill. (*Id*. ¶ 29.)

- As a result of Scotts' extensive sales, investment in and promotion of the ORTHO Products under the Red Marks, as well as widespread publicity in the United States, when consumers in the United States encounter the Red Marks, they immediately associate the Red Marks with Scotts. The ORTHO products bearing the Red Marks have been in households throughout the United States for decades. (*Id*. ¶ 36.)

- In fact, the Red Marks have become famous under Section 43(a) of the Lanham Act, U.S.C. § 1125(c) well prior to Defendant's use of its Red Mark. (*Id*. ¶ 37.)

- OMS Investments' Red Marks are famous and distinctive throughout the United States including among consumers, the trade, and the general public in the State of Ohio and in this Judicial District, and were famous long before Defendant commenced their unlawful use of Defendant's Mark on pest and weed control products. (*Id*. ¶ 103.)

These detailed allegations are far more than what Defendant describes as a "lone attempt to allege public recognition" of the Red Marks, and provide more than sufficient factual information to support the plausibility of the fame of the Marks, and specifically widespread public recognition of the Marks. (Mot. 14).

The cases Defendant cites concerning this factor are distinguishable from the facts alleged in the SAC. First, Defendant relies on *Varsity News Network, Inc. v. Carty Web Strategies, Inc.*, CV 17-2574 PSG (Ex), 2017 WL 7201873 *7 (C.D. Cal. Aug. 30, 2017) (*see* Mot. p. 14), however, in that case, the counterclaim allegations regarding fame consisted of only of the following:

> "[a]s a result of the extensive, exclusive, and continued use of the CWS Mark in connection with the promotion, sale, and providing of its services, consumers have come to recognize and identify the CWS Mark as representative of high quality, superior, and effective products and services offered by CWS. The CWS Mark has become a valuable asset of CWS as well as a symbol of its goodwill and positive reputation."

2017 WL 7201873 at *7. The counterclaimant in *Varsity News* failed to include allegations that "it advertises the CWS Mark across the entire United States, it has done so for an extended period of time, the CWS Mark is recognized outside a niche market, or that it is federally registered." *Id.* As a result, the court stated "in the absence of this factual support" it could not conclude the asserted

mark is sufficiently famous to support a dilution claim. *Id.* The SAC, however, includes each of these allegations concerning the Red Marks, and therefore is distinguishable and more than sufficient.

Defendant's reliance on *Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921, 2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) (*see* Mot. p. 15), is similarly misplaced. (Mot. p. 15.) The court in that case stated that counterclaimant's allegations its marks "fostered wide renown [sic] with the trade and public" and have "great value and secondary meaning among the consuming public" were "conclusions not entitled to a presumption of truth." *Id.* However, the Court's ultimate finding that the counterclaimant failed to adequately plead fame was based on the fact that the allegations demonstrated only recognition in a niche market, and not by the general consuming public of the United States as required to demonstrate fame. *Id.* In contrast, the SAC includes clear allegations the Red Marks have attained widespread recognition with the general public nationwide. (*See e.g.* SAC, ¶¶ 17, 20, 29, 31, 36, 37, 103.)

> **d.      It is undisputed that the Red Marks are federally registered, and thus support Scotts' allegation the Marks are famous**

The SAC includes a list of the many trademark registrations on the Principal Register of the United States Patent and Trademark Office that OMS owns for the Red Marks. (SAC ¶¶ 21 and 32.) Defendant does not dispute this fact.

In summary, the SAC includes sufficiently detailed factual allegations supporting each of the four factors courts consider when determining whether a mark is famous. Therefore, Scotts has adequately pleaded the Red Marks are famous.

**C.      Scotts has Adequately Pleaded a Claim for Unfair Competition Relating to the ORTHO Black Trade Dress (Count VI)**

Defendant attacks the trade dress claims on three bases, each of which is without merit: (1) that the SAC does not sufficiently identify the trade dress; (2) that the SAC does not "allege facts plausibly showing that the product line bearing the claimed trade dress has a consistent overall look;" and (3) that the SAC lacks sufficient facts plausibly showing that the trade dress is distinctive. In each argument, Defendant blatantly ignores the allegations of the SAC that do not fit Defendant's narrative; and, in certain instances disingenuously mischaracterizes the clear allegations in a convoluted manner to try to make the SAC appear deficient. As discussed in more detail below, the ORHTO Black Trade Dress is sufficiently and clearly defined in the SAC, the products bearing the trade dress are clearly identified in the SAC and the allegations that the trade dress is distinctive are well supported.

### 1. The SAC sufficiently identifies the ORTHO Black Trade Dress

"Trade dress refers to the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, that makes the source of the product distinguishable from another and promotes its sale." *Innovation Ventures, LLC v. N2G Distribg., Inc*., 763 F.3d 524, 536 (6th Cir. 2014). While a trade dress may protect the "overall look" of a product, the discrete elements which make up the claimed trade dress should be separated out and identified. *See Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 415 (6th Cir. 2006). However, the complaint needs only to identify what particular elements or attributes comprise the protectable trade dress. For example, in *Gen. Motors Corp. v. Lanard Toys, Inc.*, the Sixth Circuit found the following trade dress identification of a vehicle design to be sufficient: "the exterior appearance and styling of the vehicle design which includes the grille, slanted and raised hood, split windshield, rectangular doors, squared edges, etc." *Id.* at 415-16.

12

The SAC specifically identifies and describes the features of the ORTHO Black Trade Dress in paragraph 40.  Paragraph 40 first describes the types of features of the trade dress as "a unique arrangement of colors, graphic elements, font styles and text."  It then specifically identifies those colors, graphic elements, font styles and texts and it also describes relative position of those features to one another, reciting that the trade dress features consist of "a black background with some lighter gradiations of gray," "a prominent placement of a red pentagon containing a brand name in white lettering above horizontal information bars that start on the left side of the label and connect into a circular or arc design that contains an image of green plant material," "one information bar is yellowish/gold and the other information bar is silver," and "a product name is placed between the pentagon design and the information bars."  (SAC ¶ 40.)

To add further clarity, paragraph 40 contains an image of the trade dress showing the features of the trade dress that are described in that paragraph.  *Good L Corp. v. Fasteners for Retail, Inc.*, No. 3:18-CV-00489, 2019 WL 1429252, at *3 (M.D. Tenn. Mar. 28, 2019) (trade dress sufficiently identified based by a list of elements and photo of the product).  The SAC's identification of the Black ORTHO Trade Dress through both a written description and an image accompanying that written description clearly and sufficiently identifies the particular elements or attributes that comprise the protectable trade dress.

Defendant argues first that the description of the trade dress in the SAC is "different" from the initial Complaint's description of the trade dress. (Mot. pp 17-18.) The fact that it is "different" is both unremarkable and inconsequential, though Defendant's desire to point out the differences is a bit curious.  Indeed, as Defendant acknowledges, the SAC was amended to provide additional specificity to the trade dress description *in response to a Motion to Dismiss (ECF 5) in which the Defendant contended that the original description of the trade dress was "vague" and too*

13

*"general" to provide adequate notice.* (ECF. 5, 17-18.) In its amendment of the SAC in response, Scotts more precisely and more narrowly identified its trade dress, providing the clarity purportedly sought by the initial Motion to Dismiss. The fact that the SAC is "different" from the original Complaint in no way renders the trade dress definition impermissibly vague.

Defendant next argues that the trade dress definition is vague because it is "open-ended." (Mot. p. 18.) Contrary to the Defendant's arguments, the SAC identifies the trade dress features in a "closed" manner, using the phrase "consists of" prior to describing the features of the trade dress. SAC ¶ 40. Defendant's argument that the SAC's use of the term "with" before describing the black background somehow renders the description of the trade dress as open ended is nonsensical. (Mot. p. 18.) It is also unsupported by the case law upon which Defendant relies. Indeed, each of Defendant's cited cases involved use of some form of the term "include", which is not used in the trade dress description in the SAC. *EVIG, LLC v. Mister Brightside, LLC 2023 WL 5717291* \*5 (D. Nev. Sept. 5, 2023) ("includes"); Mosaic *Brands, Inc. v. Ridge Wallet, LLC,* 2020 WL 6821013 \*6 (C.D.Cal. Oct. 29, 2020)("including"); *Sugarfina, Inc. v. Sweet Pete's, LLC*, 2017 WL 4271133 \*4 (C.D. Cal. Sept 25, 2017)("may include"); *Sleep Sci. Partners v. Lieberman,* 2010 WL 1881770 \*3 (N.D.Cal. May 10, 2020)("include" and "including"). Furthermore, even if the use of "with" could be perceived as an open-ended description, it is inconsequential because in the Sixth Circuit, when trade secret identifications contain open ended language, the Court will simply ignore that open-ended language rather than find the trade dress to be invalid. *See Gen. Motors Corp.,* 468 F.3d at 416 (6th Cir. 2006).

Defendant next attacks the identification of the trade dress as "too murky and imprecise." (Mot. p. 18.) In doing so, it feigns confusion as to the plain words and phrases used in the SAC to postulate inane questions like "what does the word 'background' refer to?" (*Id*.) Defendant again

14

feigns confusion asking "what horizontal information bars" refer to, despite the fact that the SAC specifically describes the horizontal information bars as the "yellowish gold" and "silver" information bars that "start on the left side of the label and connect into a circular or arc design that contains an image of green plant material" and despite the fact that the horizontal information bars are readily identified in the image of the trade dress at paragraph 40 of the SAC. (*Id*.; SAC ¶ 40.)  Defendant's pretends confusion over the clear description does not make it impermissibly vague and exposes the trivial nature of Defendant's objections.  The description and image set forth in the SAC provide sufficient identification of the trade dress.

Accordingly, the description of the ORTHO Black Trade Dress in the SAC is sufficient to notify Defendant and the Court of the basis of Scotts' claims including the elements that comprise the Trade Dress.

### 2. The SAC sufficiently identifies the ORTHO Black Trade Dress and Scotts' products bearing the Trade Dress

Defendant's argument that Scotts does not sufficiently identify the product line or series of products that use the ORTHO Black Trade Dress is a contrived and faulty argument.  (Mot. pp. 21-22.)  It is based on the false premise that Scotts, by stating that the trade dress is used on "control products" or "weed control products," must mean that it is used on *all* of Scotts' control products or weed control products.  The SAC makes no such allegation.  Instead, the SAC clearly states that the ORTHO Black Trade Dress is on "***certain***" of its control products and specifies that it is used on the weed control products shown in paragraph 40 and in Exhibit D, making it clear that Scotts does not contend that all of its control products bear the trade dress. (SAC ¶¶1, 39, 40.) The SAC's inclusion of control products, such as those shown in Exhibit B, that clearly do not use the ORTHO Black Trade Dress in connection with its non-trade dress claims does not create ambiguity.

Defendant's references to such products are blatant attempts to sew confusion despite the clarity of the SAC.

Defendant further tries to muddy the waters by contending that because Exhibit D, a printed page of an Amazon listing for ORTHO GroundClear Vegetation Killer Concentrate, happens to also show others of Scotts' products in packaging without the ORTHO Black Trade Dress, it somehow creates ambiguity as to what products contain or do not contain the trade dress.  (Mot. pp. 23-24.)  These products, which Defendant reproduces on page 23 its motion, are copied from the section "What do customers buy after viewing this item?" of the Amazon listing and are clearly not the products to which the SAC refers. Furthermore, Defendant's own arguments that certain products shown in Exhibit D lack the trade dress actually demonstrates that Defendant in fact is not confused, nor is there ambiguity, as to which of Scotts' products bear the ORTHO Black Trade Dress. As with Defendant's attacks on the trade dress description, its feigned confusion concerning which products bear or do not bear the trade dress does not render the pleading insufficient. Nor is there a requirement that a Scotts identify in its pleading every product that bears or does not bear the asserted trade dress.

Defendant further misconstrues the allegations of the SAC as asserting trade dress across a product line or series of products, thereby subjecting Scotts to additional pleading requirements. (Mot. p. 21). This is a red herring. The SAC does not allege trade dress across a line or series of products. Instead, it asserts trade dress used in its specific "GroundClear" products shown in paragraph 40 and Exhibit D.  Because trade dress across a line or series of products is not alleged, no such heightened pleading requirement applies.

      **3.**      **The SAC sufficiently alleges the distinctiveness of the ORTHO Black Trade Dress**

Defendant also moved to dismiss the trade dress infringement claims on the basis that Scotts' pleading of distinctiveness is insufficient, dismissing Scotts' detailed allegations as "conclusory." As set forth below, the SAC contains significant factual allegations that the ORTHO Black Trade Dress is both inherently distinctive and that it has secondary meaning.

### a.    Legal Standard

Product packaging trade dress rights can be proven upon a showing of either inherent distinctiveness or secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.,* 529 U.S. 205, 212 (2000); *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 309 (6th Cir. 2001). Product packaging trade dress that is not considered inherently distinctive can be protected if it obtains secondary meaning which occurs when consumers have come to associate the trade dress with a single source. *Inwood Labs., Inc. v. Ives Labs., Inc*., 456 U.S. 844, 851 n.11 (1982); *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 635 (6th Cir. 2002).

Courts in the Sixth Circuit apply the principles of the so-called Abercrombie & Fitch taxonomy used to evaluate distinctiveness of word marks to trade dress. Under this guide, word marks are inherently distinctive when they are "arbitrary ('Lucky Strike' cigarettes), fanciful ('Kodak' film), or suggestive ('Tide' laundry detergent)." *See Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10-11 (2d Cir. 1976). While product packaging does not necessarily fit within this guide, a unique and arbitrary product packaging "normally is taken by the consumer to indicate origin." *Sherwin-Williams Co. v. JP Intern. Hardware, Inc.*, 988 F. Supp. 2d 815, 817-18, 820 (N.D. Ohio 2013) (holding packaging for paintbrush keeper made up of an arrangement of various design elements, colors and terms to be inherently distinctive.); *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 583 (2d Cir. 1993) (Explaining that where the

choices that a producer has for packaging its products are, almost unlimited, typically a trade dress will be arbitrary or fanciful and thus inherently distinctive unless the trade dress is customary in the industry or descriptive); *see e.g. AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1536 (11th Cir. 1986) (Packaging of Klondike bar consisting of a square size, bright coloring, pebbled texture, polar bear and sunburst images, and distinctive style of printing was not a basic shape or common design and was inherently distinctive.)

To determine whether a trade dress has acquired secondary meaning, the court may consider the following evidence: (1) direct consumer testimony, (2) consumer surveys, (3) exclusivity, length, and manner of use, (4) amount and manner of advertising, (5) amount of sales and number of customers, (6) established place in the market, and (7) proof of intentional copying. *Gen. Motors Corp. v. Lanard Toys, Inc*., 468 F.3d 405, 418 (6th Cir. 2006); *see also* 2 McCarthy on Trademarks and Unfair Competition § 15:30 (5th ed.)(identifying "length of use;" "amount and type of advertising and promotion;" "amount of sales;" "recognition by the trade, by the media and by potential customers: and "little or no third party use" as types of evidence (among others) most often used to prove secondary meaning).

> **b.** **The SAC alleges that the ORTHO Black Trade Dress is both inherently distinctive and that it has secondary meaning.**

Specifically, with respect to inherent distinctiveness, the paragraphs 39 and 45 of the SAC alleges inherent distinctiveness. Paragraph 39 states "Scotts has spent a significant amount of time and resources intentionally developing an inherently distinctive and non-functional design for the packaging of certain of its ORTHO control products."  (SAC ¶39.) Paragraph 40 further alleges that the ORTHO Black Trade Dress is a "unique arrangement of colors, graphic elements, font styles and text." (*Id*. ¶40.) Paragraphs 42 and 47 confirm the uniqueness of the Scotts ORTHO Black Trade Dress stating "[t]he ORTHO Black Trade Dress is highly distinctive in the control

18

industry" (SAC ¶42) and that "Scotts' competitors other than Defendant can and do use non-infringing trade dress on their competing control products." (SAC ¶47.)

Accordingly, the SAC sufficiently alleges that the ORTHO Black Trade Dress is inherently distinctive, that it is unique to Scotts and, therefore, that it is not merely descriptive or generic for control products. This is more than sufficient to plead inherent distinctiveness. *Paddington Corp.*, 996 F.2d at 583 (Arbitrary of fanciful product packaging trade dress is inherently distinctive unless the trade dress is customary in the industry or descriptive).

The SAC further contains significant detailed factual allegations that allege secondary meaning of the ORTHO Black Trade Dress:

- "Scotts is the world's largest marketer of branded consumer lawn, garden, pesticide, and insecticide products." (SAC ¶1.)

- Consumers associate the distinctive packaging of Scott's ORTHO control products "solely with Scotts and its high quality products." (*Id*. ¶39.)

- "Scotts first used the ORTHO Black Trade Dress in connection with its weed control products in United States interstate commerce and developed protectable and enforceable intellectual property rights in it, well prior to Defendant's use of its Black Trade Dress." (*Id*. ¶41.)

- "The ORTHO Black Trade Dress is highly distinctive in the control industry." (*Id*. ¶42.)

- "Scotts markets and sells its control products bearing the ORTHO Black Trade Dress throughout the United States." (*Id*. ¶44.)

- "Scotts also markets its products bearing the ORTHO Black Trade Dress throughout the United States via its website www.ortho.com." (*Id*. ¶44.)

- "Scotts' ORTHO Black Trade Dress is inherently distinctive, has become favorably known among consumers as used in connection with Scotts' products, and has become a valuable symbol of the source of Scotts' products, of the high quality of the products, and of the goodwill associated with the Trade Dress". (*Id*. ¶45.)

- "As a result of Scotts' substantial sales and widespread use of the ORTHO Black Trade Dress, Scotts' extensive advertising and publicity for that Trade Dress, the widespread recognition of that Trade Dress by consumers, and as evidenced by Defendant's intentional

copying of the ORTHO Black Trade Dress, Scotts' ORTHO Black Trade Dress has acquired secondary meaning in the relevant marketplace." (*Id*. ¶48.)

- The SAC also sets forth detailed allegations of Defendant's intentional copying of the ORTHO Black Trade Dress, including images showing Defendant's prior label and its new label that copied the ORTHO Black Trade Dress. (*Id*. ¶¶64 to 69.)
The SAC both pleads that consumers associate the distinctive packaging of Scotts' ORTHO control products "solely with Scotts and its high quality products" and it contains substantial factual allegations that plausibly support the existence of secondary meaning. Specifically, as outlined above, the SAC contains factual allegations concerning the exclusivity, length, and manner of Scotts' use of the ORTHO Black Trade Dress, the extensive advertising of the ORTHO Black Trade Dress including its nationwide marketing, the substantial sales of products bearing the ORTHO Black Trade Dress, Scotts' position in the marketplace as world's largest marketer of branded consumer lawn, garden, pesticide, and insecticide products, and details clearly showing Defendant's intentional copying of the ORTHO Black Trade Dress.  These allegations are more than sufficient to allege secondary meaning in the trade dress.

The cases relied upon by Defendant are each drastically different from the facts here; and, some of the cases actually support a finding that distinctiveness is sufficiently plead.  For example, *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619 (6th Cir. 2002), involved an appeal of decision on a motion for summary judgment, not a motion to dismiss.  In that case, the Sixth Circuit reversed a finding that the trade dress lacked secondary meaning. The Court explained that the only evidence concerning secondary meaning was an admission of intentional copying, which, without any contrary evidence, was sufficient to show that the asserted trade dress had secondary meaning.  *Id.* at 639-640. This is completely distinguishable from this cases where discovery had just begun.

Further, Defendant's reliance on *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 748 (E.D. Mich. 2014), is misplaced. This case involved product design trade dress, which can never be inherently distinctive, unlike the product packaging trade dress at issue in this case. Moreover, in that case, the only allegation of distinctiveness was that the trade dress was "famous and distinctive in the minds of consumers." *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 746 (E.D. Mich. 2014). Those allegations are significantly and substantively more conclusory and less factual than the SAC's allegations concerning sales and marketing throughout the United States, and the intentional copying by Defendants.

The complaints in both *FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, No. 14-CV-3685 SJF SIL, 2015 WL 4162757 (E.D.N.Y. July 8, 2015) and *Stagecraft Costuming, Inc. v. HouseHaunters L.L.C.*, No. 1:10-CV-197, 2011 WL 13202911 (S.D. Ohio Feb. 2, 2011) likewise lacked any factual allegations supporting the assertion that the trade dress had secondary meaning. *FC Online Mktg., Inc*., 2015 WL 4162757 at *10 ("[T]he amended complaint is bereft of any factual allegations, other than plaintiff's conclusory allegations, from which it may reasonably be inferred that plaintiff's "Web Presence" has acquired secondary meaning in the relevant market."); *Stagecraft Costuming, Inc.*, 2011 WL 13202911 at *5 ("Stagecraft merely states that the costume is distinctive well known to consumers and has become associated with Stagecraft.")

In *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.,* No. CV 15-769 PSG (SSX), 2015 WL 12731929 (C.D. Cal. May 8, 2015), the Court dismissed the trade dress claim primarily because the plaintiff failed to even allege that consumers recognized the trade dress as the source of the Plaintiff's goods and also because the Plaintiff's allegations concerning intentional copying (and other factors relating to secondary meaning) were conclusory. *Id*. at *5. In contrast, the SAC here clearly alleges that consumers associate the ORTHO Black Trade dress "solely with Scotts

and its high quality products" (SAC ¶ 39) and that it "has become favorably known among consumers as used in connection with Scotts' products" (*Id*. ¶45). The SAC also sets forth detailed allegations showing Defendant's change in its labeling to intentionally copy Scotts' ORTHO Black Trade Dress. (*Id*. ¶¶ 64, 65.)

Similar to the *Deckers* case, in *Green Crush LLC v. Paradise Splash I, Inc*., No. SACV1701856CJCJDEX, 2018 WL 4940825 (C.D. Cal. May 3, 2018), the plaintiff "failed to allege that the consumers associate the purported trade dress with Plaintiff" and included only conclusory allegations concerning intentional copying (as well as other conclusory allegations). Id. at *5. Again, the SAC does not contain those deficiencies.

As described above, the SAC's detailed factual allegations concerning the exclusivity, length, and manner of Scotts' use of the ORTHO Black Trade Dress, the extensive advertising of the ORTHO Black Trade Dress including its nationwide marketing, the substantial sales of products bearing the ORTHO Black Trade Dress, Scotts' position in the marketplace as world's largest marketer of branded consumer lawn, garden, pesticide, and insecticide products, and details clearly showing Defendant's intentional copying of the ORTHO Black Trade Dress more than plausibly support the allegation that the ORTHO Black Trade Dress has secondary meaning.

**D.    Scotts Has Adequately Pleaded Its Ohio State Law Claims Relating to the ORTHO Black Trade Dress (Counts VII and VIII)**

**1.    The Copyright Act does not preempt Scotts' Ohio state law claims**

Defendant asks the Court to dismiss Scotts' Ohio state law claims asserting claims for violation of Ohio's Deceptive Trade Practices Act Ohio Rev. Code §§ 4165.01 through 4165.04 (Count VII) and for common law unfair competition relating to Scotts ORTHO Black Trade Dress (collectively, the "State Law Trade Dress Claims") on the ground that the Claims are preempted by the Copyright Act. However, because Scotts' State Law Trade Dress Claims require an element

in addition to those required for a claim under the Copyright Act, Counts VII and VIII are not preempted by the Copyright Act and should not be dismiss from this case.

Section 301(a) of the Copyright Act states that the Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright ... and come within the subject matter of copyright." 17 U.S.C. § 301(a). To meet this standard, a state law claim must (1) involve a work that falls within the scope of the "subject matter of copyright" as defined in Sections 102 and 103 of the Copyright Act, and (2) the state law protections asserted by the plaintiff "must be exactly equivalent to any one of the exclusive rights granted to the holder of a copyright in the work at issue under Section 106 of the Copyright Act." *Slep-Tone Entm't Corp. v. Arrowood*, 2011 WL 4482082 at *4, No. 2:10–cv–592 (S.D. Ohio Sept. 26, 2011) (*quoting Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) and *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004). However, as is the case with Scotts State Law Trade Dress Claims, when a state law claim includes an "extra element" that distinguishes the claim from a copyright infringement claim, the claim is not preempted by the Copyright Act. *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 456 (6th Cir. 2001) (explaining that there is no equivalency for a state law that has an "extra element" that "changes the nature of the action so that it is qualitatively different from a copyright infringement claim").

Although the ORTHO Black Trade Dress is the proper subject of copyright protection, this fact alone does not result in the preemption Scotts' State Law Trade Dress Claims by the Copyright Act.[2] Scotts' State Law Trade Dress Claims each include an "extra element" in that both claims

---

[2] Defendant incorrectly equates the ORTHO Black Trade Dress, which is the subject of Scotts' State Law Trade Dress Claims, with the ORTHO Black Label, which is the subject of Scotts' copyright infringement claim in Count XII of the SAC. The ORTHO Black Trade Dress, described in Paragraph 40 of the SAC is not limited to the specific depiction in the image of the Trade Dress in that Paragraph, but rather encompasses that depiction and any other trade dress that fits the description of the ORTHO Black Trade Dress. On the other hand, the ORTHO Black Label, is

include a likelihood of confusion element. Ohio Rev.Code § 4165.02(A)(1),(2),(7); *Allard Enter., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 355 (6th Cir. 1998) (trademark infringement requires likelihood of confusion); *Slep-Tone Entertainment Corp. v. Arrowood*, No. 2:10–cv–592, 2011 WL 4482082 at *4 (S.D. Ohio Sept. 26, 2011) (denying motion to dismiss holding Copyright Act does not preempt Ohio state law trademark claims); *see also* 1 McCarthy on Trademarks and Unfair Competition § 6:15.50 (5th ed.) (Likelihood of confusion is an essential 'extra element' of a trademark-based claim: a substantially different element not found in copyright law).

In its Motion, Defendant contends that an "extra element" does not exist in Scotts' State Law Trade Dress Claims because Scotts "does not allege that [Defendant] engaged in any activity violating the Ohio Deceptive Trade Practices Act or Ohio unfair competition law other than copying the 'ORTHO Black Trade Dress" (see ¶¶ 67-68), deriving a similar trade dress from the "ORTHO Black Trade Dress," (id.), and publicly displaying and selling products bearing trade dress similar to the "ORTHO Black Trade Dress." (Mot. pp. 29-30.) Defendant's assertion overlooks the key differences between Scotts copyright and trade dress claims, namely that Scotts' trade dress claim addresses Defendant's infringing sale of its control products bearing the ORTHO Black Trade Dress, and not merely the copying and sale of the Trade Dress and/or the ORTHO Black Label alone.

This distinction is illustrated by the very case Defendant cites for this point, *Hua-Cheng Pan v. Kohl's Dept. Stores, Inc.*, 2013 WL 5181144 *8 (S.D. Ohio Sept. 12, 2013). In that case, the Court analyzed a copyright infringement claim and trade dress claim under the Lanham Act and Ohio state law involving a copyrighted "ornamental sculpture." *Id*. The plaintiff in *Hua-Cheng*

---

limited to the exact image covered by OMS Investments' copyright registration for the Label pictured in Paragraph 49 of the SAC.

alleged the defendant's sale of a similar sculpture infringed the plaintiff's copyright and trade dress rights in its sculpture. *Id*. While the Court dismissed the plaintiff's trade dress claims under the Ohio Deceptive Trade Practices Act and Ohio common law as being preempted by the Copyright Act, the court based its ruling on the fact that the plaintiff "does not allege [defendant]… engaged in any practices constituting unfair competition other than making and selling knock-offs of the copyrighted Work" and thus the plaintiff's trade dress claims "fail to alter qualitatively the nature of the litigation sufficiently to distinguish them from" the copyright infringement claim. *Id*.

The facts of this case as alleged in the SAC differ in an important aspect. Specifically, unlike the claims at issue in *Hua-Cheng*, Scotts' copyright claim involves Defendant's clear copying of the ORTHO Black Trade Dress, and its trade dress claims involve Defendant's copying of the ORTHO Black Trade Dress, applying that confusingly similar copy to Defendant's control products, and offering those products for sale in direct competition to Scott's products. As such, Scotts' trade dress claims under Ohio state law clearly include an "extra element" that qualitatively alters the nature of the trade dress claims from Scott's copyright claim.

Therefore state trademark infringement law is not 'equivalent' to federal copyright and is not preempted by federal copyright law. The addition of the extra element of likelihood of confusion to Scotts State Law Trade Dress Claims makes the claims "qualitatively different than any of the exclusive rights in the Copyright Act." *Slep-Tone*, 2011 WL 4482082 at *5. Even Defendant admits that its complained-of conduct that forms the basis of Scotts' State Law Trade Dress Claims only "potentially implicates the same exclusive rights" under the Copyright Act. (Mot. p. 28.) Moreover, Scotts' State Law Trade Dress Claims are premised on Defendant's sale and marketing of products bearing Defendant's Black Trade Dress, thereby creating a likelihood of confusion in the marketplace, and not solely on Defendant's copying of the ORTHO Black

Trade Dress, which further demonstrate that preemption is not appropriate. *See Music City Metals Co., Inc. v. Jingchang Cai*, No. 3:17-cv-766, 2017 WL 4641866 at *11 (M.D. Tenn. Oct. 17, 2017) (denying motion to dismiss based on Copyright Act preemption state law trademark claims based on more than the reproduction of a creative work).

As a result, Scotts' State Law Trade Dress Claims are not preempted by the Copyright Act, and should not be dismissed. *Slep-Tone*, 2011 WL 4482082 at *5; *Constructive Eating, Inc. v. Masontops, Inc.*, 2:19-cv-10619, 2021 WL 719701 at *15 (E.D. Mich. Feb. 23, 2021) (holding Copyright Act does not preempt state law unfair competition and consumer protection act claims because the claims "include 'extra elements' such as unfair competition, confusion and deception").

### 2. Scotts' State Law Trade Dress Claims state claims for relief

As detailed in Section D above, Scotts properly pleaded its Lanham Act false designation of origin and unfair competition claims relating to the ORTHO Black Trade Dress (Count VI). Consequently, Scotts' necessarily satisfies the pleading requirements for its State Law Trade Dress Claims (Counts VII and VIII). *Off. Pillowtex LLC v. Hollander Home Fashions Corp.*, 479 F. Supp. 2d 744, 756 (S.D. Ohio 2007); *see Best v. AT & T Mobility, LLC*, No. 1:12-CV-564, 2015 WL 1125539, at *7 (S.D. Ohio Mar. 12, 2015) ("[T]he Ohio Deceptive Trade Practices Act (ODTPA) is substantially similar to the Lanham Act and when adjudicating claims under the ODTPA, Ohio courts shall apply the same analysis applicable to claims commenced under the analogous federal law") (cleaned up).

### E. Scotts Has Adequately Pleaded Its Copyright Infringement Claims Relating To The ORTHO Black Label

Defendant's attack on the copyright claim, Count XII, has at least three principle flaws. First, as discussed in more detail below, Defendant improperly characterizes Scotts' copyrights in

26

its label as "thin" by relying on flawed analogies to cases involving completely different subject matter. Second, piggybacking on that flawed analysis, Defendant wrongfully asserts that only "virtually identical copying" is actionable. Because the copyright in the ORTHO Black Label is not "thin," actionable copying is not limited to just "virtually identical" copying and includes copying of the protectable elements of the label including without limitation the layout and arrangement of the features of the label. Third, Defendant's "analysis" of the substantial similarities of the works focuses on the differences, tellingly ignores the numerous similarities between the works.

### 1.      Legal Standard

To succeed in a copyright infringement action, a plaintiff must establish that it owns the copyrighted work, and that the defendant copied it. *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). In particular, the plaintiff must show that a defendant copied the "elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Consequently, before comparing similarities between two works a court should first identify and eliminate those elements that are unoriginal and therefore unprotected.

Copying can be shown either through direct evidence of copying or through an inference of copying by showing "(1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Kohus v. Mariol*, 328 F.3d 848, 853–54 (6th Cir. 2003).  In order to determine whether there is substantial similarity between two works, courts in this circuit apply a two-step test. The first step is "to filter out the unoriginal, unprotectable elements." *Id.* at 855.   The second step is to determine "whether the allegedly infringing work is 'substantially similar' to protectable elements of the artist's work." *Id.*  Where the filtration step leaves only few protectable elements, the copyright protection is said to be "thin"

or in other words, the scope of protection is "narrow." *Satava v. Lowry*, 323 F.3d 805, 813 (9th Cir. 2003). Whether there is a substantial similarity is to be judged from the perspective of an ordinary reasonable person. *Id.*

### 2.    The copyright in the ORTHO Black Label is not "thin"

As the Sixth Circuit recently confirmed, copyright laws protect "all manner of works—mundane and lofty, commercial and non-commercial, even the dull and workaday—so long as they satisfy the modest imperatives of originality." *Premier Dealer Services, Inc. v. Allegiance Administrators, LLC*, No. 23-3394, 2024 WL 771552, at *4 (6th Cir. Feb. 26, 2024)(affirming finding that loyalty certificates were sufficiently original to be protected by copyright). Labels have long been understood to be copyright protected subject matter. *Drop Dead Co. v. S. C. Johnson & Son, Inc*., 326 F.2d 87, 93 (9th Cir. 1963) (Holding a plaintiff's copyright of its PLEDGE label valid); *Abli, Inc. v. Stand. Brands Paint Co*., 323 F. Supp. 1400, 1403 (C.D. Cal. 1970)("It is clear that labels published in connection with the sale or advertisement of articles of merchandise may be protected by copyright."); *FMC Corp. v. Control Sols., Inc*., 369 F. Supp. 2d 539, 572 (E.D. Pa. 2005) (Finding copyright in pesticide product label to be valid and likely infringed stating "labels containing more than a mechanical lists of ingredients manifest the amount of creativity necessary to enjoy copyright protection"). Furthermore, labels, as a whole are copyrightable even if many of the elements on the label are not protectable. *X–IT Products, LLC v. Walter Kidde Portable Equipment, Inc.*, 155 F.Supp.2d 577, 609–11 (E.D.Va. 2001) (labels as a whole are copyrightable even if individual component parts, such as words, are not); *S.C. Johnson & Son v. Turtle Wax, Inc.*, No. 89C5792, 1989 WL 134802, at *1–2 (N.D. Ill. Oct. 17, 1989) (finding a whole label containing reddish vertical pin striping on a yellowish background

and a large dark area with a ribbon extending below the company name copyrightable and not restricting the plaintiff's copyright claim to textual elements of the plaintiff's label).

Regardless of the protectability of *all* of the constituent elements of the ORTHO Black Label, the design of the label as a whole, including the selection and combination of the constituent elements, their layout and their relation to one another, is protectable. Furthermore, the ORTHO Black Label is registered with the Copyright Office (Reg. No. VA 2-363-784).  (SAC ¶52, Ex. E.)

As a threshold issue, Defendant incorrectly asserts that the Sixth Circuit applies a standard of "virtually identical copying" rather than "substantial similarity" in cases where the copyright protection is determined to be "thin."  (Mot. p. 35).  Defendant cites to *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco*, LLC, 958 F.3d 532, 538 (6th Cir. 2020) in support of that contention. However, *Enchant Christmas* applies the traditional analysis for evaluating infringement of first filtering out unprotectable elements and then evaluating whether there is *substantial similarity* not *"virtually identical copying"*. *Id.* at 537-539. The Court explained that "two works are substantially similar when they are so alike that the later (unprotected) work can fairly be regarded as appropriating the original expression of the earlier (protected) work." *Id.* at 539 (internal quotations omitted).  Although the *Enchant Christmas* decision does quote the "virtually identical copying language used by the Ninth Circuit in *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003), it does not adopt that standard. Defendants have not cited any case in which the Sixth Circuit applied the "virtually identical copying" standard.

Nor is there a reason for this Circuit to resort to the adoption of such a rule.  The filtration and substantial similarity test already takes into account the degree to which a work is protectable before the comparison of the works occur. Indeed, most if not all works are comprised to some degree of both protectable and unprotectable elements; and, therefore they fall somewhere on a

continuum of protectability.  The filtration and substantial similarity test used by the Sixth Circuit provides flexibility to evaluate all works on that continuum without needlessly applying a binary categorization of "thin" or "not thin."

Defendant's attempt to categorize the copyright protection in the ORTHO Black Label as "thin" relies on cases that do not involve the selection and arrangement of features to create a product label.  (Mot. pp. 30-31.)  The *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC* and *Satva v. Lowry* cases cited by Defendant both involved lifelike three dimensional reproductions of animals.  In both of those cases, the courts reasoned that the representation of animals as they appear in nature was not protectable because they constituted ideas first expressed in nature that were "the common heritage of humankind."  However, the particular collection of unprotected elements such as the animals' pose, attitude and gesture, muscle structure, facial expression, coat and textures were protectable by "thin copyright." *Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003); *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco*, LLC, 958 F.3d 532, 538 (6th Cir. 2020). The *High Five Threads, Inc. v. Michigan Farm Bureau* case relied upon by Defendant involved a "basic line drawing of two hands" to represent the shape of the state of Michigan. The court explained that the "popular idea of using ones' hands to indicate the shape of Michigan" was a generic idea that could not be protected, even if the particular expression of that idea was entitled to thin copyright. *High Five Threads, Inc. v. Michigan Farm Bureau*, No. 1:20-CV-604, 2021 WL 1809835, at *3 (W.D. Mich. May 6, 2021).

In contrast, the ORTHO Black Label is entirely dissimilar to the animal sculptures or Michigan hand drawing at issue in the cited cases. The ORTHO Black Label is neither a representation of an animal occurring in nature nor is it a representation of a generic idea.  Instead, it is an original design composed of a unique arrangement of colors, graphic elements, font styles

and text shown and described in the SAC and thus is protectable. (SAC ¶ 49.) While the label contains features such as individual words, shapes and particular colors that may not be protectable on their own, the design of the label as a whole is protectable. *X–IT Products, LLC*, 155 F.Supp.2d at 609–11. And, just as an individual word in a book or note in a song are not protectable, but the unique arrangement and presentation of those words or notes that make up a story or a song are protectable, so too is the original design of the label.

Nor, is the protection of the label at issue "thin" so that protection is limited to virtually identical copying. Unlike the animal sculptures, in which the whole subject of the work was an animal found in nature or the Michigan hand drawing, in which the whole subject of the work was a generic idea, the ORTHO Black label as a whole is not an unprotectable idea that is only afforded limited protection to a particular presentation. Indeed, the appearance of the label as a whole is an original design comprising an original selection and arrangement of elements. *See Faessler v. U.S. Playing Card Co.,* No. 105CV581, 2007 WL 490171, at *12 (S.D. Ohio Feb. 9, 2007)(rejecting argument that playing cars that melded both unprotectable and creative elements were only entitled to thin copyright).

Accordingly, the label is not entitled to only "thin" copyright protection. Rather, it is entitled to copyright protection for the overall work.

### 3. Defendant's Black Trade Dress is substantially similar to the ORTHO Black Label

Defendant's Black Trade Dress copies the protectable features of the ORTHO Black Label. (SAC ¶¶ 67, 170. Like the ORTHO Black Label, Defendant's Black Trade Dress has a black background color with some lighter gradiations of gray, a prominent placement of red pentagon shape containing a brand name in white lettering positioned near the top of the label and above information bars that start on the left side of the label and connect into a circular or arc design the

contains an image of a green plant material. *Id.* Like in the ORTHO Black Label, one information bar is yellowish/gold and the other information bar is silver. *Id.* Like in the ORTHO Black Label, the yellowish/gold information bar is wider than the sliver information bar and positioned above it. *Id.* And, like in the ORTHO Black Label, a product name is placed between the pentagon design and the information bars. *Id.* The overall similarities are so striking that it would be apparent to an ordinary observer that Defendant copied the overall appearance of the label. This copying of protectable elements and composition of the label constitutes unauthorized copying of the ORTHO Black Label, and thus copyright infringement.

At a minimum, Defendant's label violates Plaintiff's ORTHO Black Label copyright because it is an impermissible creation of a derivative work under 17 U.S.C. §1062, as alleged in paragraphs 67 and 170 of the SAC.  17 U.S.C. §1062. ("[T]he owner of a copyright under this title has the exclusive rights ... to prepare derivative works based upon the copyrighted work [.]"); *Kohus v. Mariol*, 328 F.3d 848, 858 (6th Cir. 2003) ("[A] work will be considered a derivative work only if it would be considered an infringing work if the material that it has derived from a pre-existing work had been taken without the consent of a copyright proprietor of such pre-existing work.") *quoting* 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 3.01.

Defendant argues that the works are dissimilar, by improperly focusing solely on the differences in the two labels, rather than comparing all of the protectable aspects of the label, both similar and dissimilar, from the perspective of an ordinary observer.  Given the substantial similarities between the labels as both described and shown in the SAC, at a minimum, the SAC has adequately plead factual allegations that support a reasonable inference of substantial similarity between the two labels and that defendant copied or created a derivative work from the

protectable elements of the ORTHO Black label. Therefore, Scotts has adequately plead actionable copyright infringement. *See W.H. Midwest, LLC v. A.D. Baker Homes, Inc.*, No. 2:18-CV-1387, 2019 WL 4645497, at *3 (S.D. Ohio Sept. 24, 2019) (Copyright infringement claim in architectural plans and drawings adequately plead where the plaintiff alleged that the defendant's drawing contained elements that were nearly identical to or copies of those found in the plaintiff's work and included pictures of the allegedly infringing work.) Accordingly, Defendant's Motion to Dismiss the Copyright claim concerning the ORTHO Black Label should be denied.

**F.      Scotts Has Adequately Pleaded Its Claim for False Advertising Under 15 U.S.C. § 1125(a) (Count XIII)**

To state a claim for false advertising under the Lanham Act, Scotts must allege (1) Defendant made false or misleading statements of fact concerning its own product; (2) the statements actually or tend to deceive a substantial portion of the intended audience; (3) the statements are material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to Scotts. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F. 3d 606, 613 (6th Cir. 1999). Scotts alleged each element of its false advertising claim in the SAC, and did so in compliance with *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In its Motion, Defendant asserts only that Scotts did not plead factual allegations "plausibly showing" that Defendant's statements concerning its BIOADVANCED Extended Control Brush Killer product ("Defendant's Brush Killer Product") identified in the SAC are false. (Mot. pp. 39-40.) However, Defendant ignores the clear unambiguous language of the SAC, which explicitly

identifies the following statements Defendant makes about its Brush Killer Product and alleges they are false and/or misleading (collectively, the "Challenged Statements"):

- Defendant's Brush Killer Product "kills tough brush down to the root for up to 12 months;"

- Defendant's Brush Killer Product "protects for up to 12 months;" and

- Consumers "get up to 365 days of control" with the Product.

(SAC ¶ 83-84.) Scotts' false advertising claim is not, as Defendant characterizes it, a "mere disagreement with the challenged advertising statements, offered without a scintilla of factual support." (Mot. p. 40.) As stated in the SAC, Scotts alleges, based on "information and belief and based on a reasonable investigation" that the Challenged Statements are false and/or misleading, are material in that they will likely influence consumers' purchasing decisions, and that Defendant's dissemination of the Challenged Statements is damaging and will continue to cause harm and damage. (SAC ¶¶ 84-85.) As such, the SAC provides more than "fair notice" to Defendant of the grounds on which Scotts' false advertising claim rests and a plausible inference of wrongdoing, which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Marie*, 771 F. 3d at 364 (*quoting Twombly*, 550 U.S. at 555); *16630 Southfiled,* 727 F.3d at 504; *Iqbal*, 556 U.S. at 678. This is all that is required at this early stage in the case.

The issue to be litigated is whether the Challenged Statements are in fact false and/or misleading. Scotts is not required at this early stage to prove the Statements are false and/or misleading, it must only allege facts sufficient to create a plausible expectation that discovery may reveal evidence to support the claim. *Twombly*, 550 U.S. at 556.

### G. Scotts Has Adequately Pleaded Its Claim for False Advertising Under the Ohio Deceptive Trade Practices Act (Count XIV)

As set forth above in Section F, Scotts properly pleaded its false advertising claims under the Lanham Act (Count VIII). As a result, Scotts' allegations necessarily satisfy the pleading requirements for its false advertising claim under the Ohio Deceptive Trade Practices Act. *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 784–85 (S.D. Ohio 2009) ("an analysis appropriate for a determination of liability under [S]ection 43(a) of the Lanham Act is also appropriate for determining liability under the Ohio Deceptive Trade Practices Act.") (*quoting Worthington Foods v. Kellogg Co.*, 732 F. Supp. 1417, 1431 (S.D. Ohio 1990)).

## II.    CONCLUSION

For the foregoing reasons, Scotts respectfully requests that this Court deny Defendant's Partial Motion to Dismiss. If the Court rules otherwise, in whole or in part, Scotts intends to seek leave of Court to amend its pleading in response to the Court's ruling.

Respectfully submitted,

**THE SCOTTS COMPANY LLC AND OMS INVESTMENTS, INC.**

Date: <u>March 12, 2024</u>

By: <u>/s/ *David M. DeVillers*</u>
David M. DeVillers (0059456)
BARNES & THORNBURG LLP
41 South High Street, Ste. 3300
Columbus, OH 43215
Telephone: (614) 628-0096
Facsimile: (614) 628-1433 (fax)
Email: DDeVillers@btlaw.com

Christopher M. Dolan (*pro hac vice* forthcoming)
Lawrence E. James (admitted *pro hac vice*)
Joshua S. Frick (admitted *pro hac vice*)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: (312) 357-1313

Email: cdolan@btlaw.com
      lee.james@btlaw.com
      joshua.frick@btlaw.com

Attorneys for Plaintiffs The Scotts Company LLC
and OMS Investments, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on all parties of record on March

12, 2024, via the Court's CM/ECF system.

*/s/ David DeVillers*

David DeVillers

37