**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **THE SCOTTS COMPANY, LLC,** *et al.* | ) | **Civil Action No. 2:23-cv-001541** |
| | ) | |
| **Plaintiffs,** | ) | **Judge Edmund A. Sargus** |
| | ) | **Magistrate Judge Elizabeth Preston Deavers** |
| **v.** | ) | |
| | ) | |
| **SBM LIFE SCIENCE CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**DEFENDANT'S REPLY IN SUPPORT OF PARTIAL
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

---

Respectfully Submitted,

*/s/ Lindsay M. Nelson*
Katherine C. Ferguson (0079207)
Lindsay M. Nelson (0095560)
Kooperman Mentel Ferguson Yaross Ltd.
250 East Town Street, Suite 200
Columbus, Ohio 43215
Telephone: (614) 344-4800
Facsimile: (614) 344-4801
kferguson@kmfylaw.com
lnelson@kmfylaw.com

Robert J. Morris (*pro hac vice* forthcoming)
Philip J. Cardinale (*pro hac vice* forthcoming)
Danielle B. Dobosz (*pro hac vice* forthcoming)
Smith Anderson Blount Dorsett Mitchell
& Jernigan, LLP
2300 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Counsel for SBM Life Science Corp.*

## COMBINED TABLE OF CONTENTS AND SUMMARY OF ARGUMENT

Page

**TABLE OF AUTHORITIES** ……………..…………………………………………….. v

**I.    INTRODUCTION** ……………..…………………………..………………………….. 1

**II.   LAW AND ARGUMENT** ...……………………………………………………….. 2

**A. SCOTTS Fails To Show That Count III States A Viable Claim For Dilution** ………………………………..…………………………….. 2

*Summary:* SCOTTS concedes that a mark is "famous" under Section 43(c) of the Lanham Act only if it is "widely recognized by the general consuming public as a designation of the sources of the goods or services of the mark's owner" and that establishing fame is "difficult." *See* 15 U.S.C. § 1125(c)(2)(A); *Kibler v. Hall*, 843 F.3d 1068, 1083 (6th Cir. 2016). Once legal conclusions and naked, unsupported assertions cited by SCOTTS are filtered out, *see Novel v. Zapor*, 2016 WL 6603291 *3 (S.D. Ohio Mar. 22, 2016), the Second Amended Complaint's few factual allegations are insufficient to plausibly show that either of the "Red Marks" is "famous."

**1. Many Of The Allegations SCOTTS Cites In Support Of The Dilution Claim Are Conclusory, Undeveloped Assertions Or Legal Conclusions That Should Be Disregarded** ……………………………… 3

*Summary:* Virtually all of the allegations that SCOTTS cites in support of the dilution claim are conclusory allegations and legal conclusions that courts routinely reject for the purposes of Rule 12(b)(6). *See, e.g., Holding Co. of the Villlages, Inc. v. Little John's Movers & Storage, Inc.,* 2017 WL 631549 *4 (M.D. Fla. Dec. 11, 2017); *Antiaging Inst. of Calif. v. Solonova, LLC,* 2015 WL 12792028 *2 (C.D. Cal. Nov. 19, 2015).

**2. The Factual Allegations Of The Second Amended Complaint Do Not Plausibly Show That Either Of The "Red Marks" Is Famous** ……………………………………………………………... 7

*Summary:* Once conclusory statements and legal conclusions are filtered out, as required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Second Amended Complaint's factual allegations are insufficient to plausibly show that either of the "Red Marks" is famous.

**B. SCOTTS Fails To Show That Count VI States A Claim Under The Lanham Act For Unfair Competition Relating To The "ORTHO Black Trade Dress"** ………………..…..…………………….…………………..….. 11

i

1. **S**COTTS **Does Not Show That The Second Amended Complaint Identifies The Claimed Trade Dress Sufficiently** …….….…………………….. 11

*Summary:* S COTTS fails to provide a "precise expression of the character and scope" of the claimed trade dress as required by the Sixth Circuit and therefore deprives SBM of "adequate notice of the overall look the plaintiff wishes to protect." *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405 (6th Cir. 2006); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 310 (3d Cir. 2014).

2. **S**COTTS **Fails to Demonstrate That The Second Amended Complaint Alleges Facts Plausibly Showing That The "ORTHO Black Trade Dress" Is Distinctive** …………………….…..……………… 15

*Summary:* S COTTS concedes it can pursue claims alleging infringement of the "ORTHO Black Trade Dress" only if the asserted trade dress is distinctive. The distinctiveness requirement is satisfied if the trade dress is inherently distinctive or has acquired secondary meaning. *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,* 280 F.3d 619, 635 (6th Cir. 2002). After conclusory, unsupported allegations and legal conclusions are filtered out, as *Iqbal* requires, the Second Amended Complaint does not allege facts sufficient to plausibly show that the asserted trade dress is inherently distinctive. The Second Amended Complaint also fails to allege facts sufficient to plausibly show that the asserted trade dress has acquired secondary meaning under the factors set forth in *General Motors. See* 468 F.3d at 418.

3. **S**COTTS **Does Not Show That The Product Line Bearing The Claimed Trade Dress Has A Consistent Overall Look** …..……………..… 21

*Summary:* S COTTS admits that it seeks trade dress protection for some range of products beyond those shown in paragraph 40 and Exhibit D of the Second Amended Complaint, yet it fails to identify the product line or series of products for which trade dress protection is sought. The Second Amended Complaint fails to allege facts plausibly showing that the product line or series of products bearing the claimed trade dress exhibit a "consistent overall look," which warrants dismissal. *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 173 (3rd Cir. 2000).

C. **S**COTTS **Does Not Show That Counts VII and VIII State Valid Claims Under Ohio Law** …………………………………………..……..………..… 22

1. **S**COTTS' **Arguments Do Not Rescue Counts VII and VIII From Preemption By The Copyright Act** ……………………………………..… 22

*Summary:* S COTTS fails to show that the "extra element" it claims "changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Wrench LLC v. Taco Bell Corp.* 256 F.3d 446, 453 (6th Cir. 2001). Because the activity

underlying SCOTTS' state law claims is the alleged copying, display and distribution of a work that is indisputably within the scope of copyright law, SCOTTS' state law claims alleging trade dress infringement are preempted. *See* 17 U.S.C. § 301.

**2. SCOTTS Fails To Show That Counts VII and VIII State Viable Claims For Relief** ……………..…………………………………………… 28

*Summary:* SCOTTS' state trade dress infringement claims fail to state a claim for the reasons stated in Section II.B.

**D. SCOTTS Does Not Show That Count XII States A Viable Claim For Copyright Infringement Relating To The "ORTHO Black Label"** ……..………… 28

**1. SCOTTS' Response To The Motion To Dismiss Makes Clear That Any Copyright Applicable To The "ORTHO Black Label" Is "Thin"** …………………………………………………………………….. 28

*Summary:* SCOTTS does not identify any original individual element of the "ORTHO Black Label" that it claims is protectable by copyright. Any copyright that SCOTTS might claim in the "ORTHO Black Label" is therefore restricted to its original contribution to the selection and arrangement of the label's non-protectable elements. 17 U.S.C. § 103(b). Copyright protection in a compilation of non-protectable elements is deemed to be "thin." *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, 538 F.3d 532 (6th Cir. 2020). More particularly, a pesticide label that is a compilation of non-protectable elements, like the "ORTHO Black Label," has been found subject only to "thin" copyright protection. *See Kittrich Corp. v. United Indus. Corp.,* 2018 WL 11472385 *3 (C.D. Calif. Nov. 15, 2018).

**2. "Thin" Copyright Is Infringed Only By Virtually Identical Copying** …………..……………………………………………………. 30

*Summary:* In *Enchant Christmas,* the Sixth Circuit cited with approval the holding in *Satava v. Lowry,* 323 F.3d 805 (9th Cir. 2003) that "*thin copyright 'protects against only virtually identical copying.*'" *See* 538 F.3d at 537 (emphasis added). The Sixth Circuit also pointed out that the Supreme Court recognized in *Feist Publications, Inc. v. Rural Tel. Servs. Co.,* 499 U.S. 340 (1999) that "the thin copyright in a factual compilation means that, '[n]otwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, *so long as the competing work does not feature the same selection and arrangement.*'" *Enchant Christmas,* 538 F.32d at 538 (quoting *Feist,* 499 U.S. at 349) (emphasis added). SCOTTS argues that the Sixth Circuit's references to *Satava* and *Feist* were purely gratuitous and should be ignored, but SBM submits that they highlight the applicability of the "virtually identical copying" standard for assessing whether an accused work is substantially

similar to a work in which copyright is "thin." Such a reading of *Enchant Christmas* is consistent with federal authority nationwide holding that "thin" copyright protects against only virtually identical copying.

    **3. The Second Amended Complaint Does Not Allege Facts Showing Virtually Identical Copying** …………………..…………………… 33

*Summary:* As shown by the detailed side-by-side label analysis in SBM's opening brief, SBM's accused labels do not reflect virtually identical copying of any allegedly protectable aspect of the "ORTHO Black Trade Dress." SCOTTS does not demonstrate that the Second Amended Complaint alleges facts plausibly showing virtually identical copying.

**E. SCOTTS Fails To Show That The Second Amended Complaint States A Viable Claim Under The Lanham Act For False Advertising** ………......... 35

*Summary:* "To state a false advertising claim under Section 43(a), a plaintiff must first plausibly allege the falsity of the challenged statement." *International Code Council, Inc. v. UpCodes, Inc.,* 43 F.4th 46, 56 (2d Cir. 2022). The Second Amended Complaint fails to allege facts plausibly showing that the advertising statement at issue are false, which warrants the false advertising claim's dismissal. *See In re E.I. duPont de Nemours & Co. C-8 Personal Inj. Litig.,* 87 F.4th 315, 320 (6th Cir. 2023) ("Rule 8(a)(2) requires a plaintiff to allege facts 'providing not only fair notice of the nature of the claim, but also grounds on which the claim rests." (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 n.3 (2007)).

**F. SCOTTS Also Fails To Show That The Second Amended Complaint States A Viable State Law Claim For False Advertising** ………............ 36

*Summary:* The Second Amended Complaint also fails to state a viable claim for false advertising under Ohio law for the reasons stated in Section II.E.

**III.  CONCLUSION** ………………………………………………………….…............ 36

*Summary:* For the reasons set forth herein and in SBM's opening brief, Counts III, VI, VII, VIII, XII, XIII (erroneously designated in the SAC as Count XII), and XIV (erroneously designated in the SAC as Count IV) should be dismissed pursuant to Rule 12(b)(6). SCOTTS has already amended its pleading twice. SCOTTS states in its response brief that it intends to amend in the event any claim is dismissed, but no proposed amendment is identified. Under such circumstances, dismissal with prejudice is appropriate.

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                                               **Page**

*16630 Southfield L.P. v. Flagstar Bank, F.S.B.,*
    727 F.3d 502 (6th Cir. 2013) …………………….………………………….…… 1, 19, 35

*A&E Television Networks, Inc. v. Big Fish Entertainment, LLC,*
    2023 WL 4053871 (S.D.N.Y. June 16, 2023) …….……………………….................. 29

*Abercrombie & Fitch Co. v. Hunting World, Inc.,*
    537 F.2d 4 (2d Cir. 1976) …………………………………………………………. 16

*Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.,*
    280 F.3d 619 (6th Cir. 2002) ………………………………………………………. 15

*Acculmage Diagnostics Corp. v. Terarecon, Inc.,*
    260 F. Supp. 2d 941 (N.D. Cal. 2003) ……………….…………………………………. 16

*Advanta-STAR Auto. Res. Corp. of Am. V. Search Optics, LLC,*
    672 F. Supp. 3d 1035 (S.D. Calif. May 9, 2023) ……………………………………….… 33

*Aero AG Holdings, LLC v. Huggoes Fashion LLC,*
    2022 WL 6244439 (S.D.N.Y. July 5, 2022) ……….………………………….…........... 8, 9

*Antiaging Inst. of Calif. v. Solonova, LLC,*
    2015 WL 12792028 (C.D. Cal. Nov. 19, 2015) …….………………………….…............ 4, 5

*APP Group (Canada) Inc. v. Rudsak USA Inc.,*
    2024 WL 89120 (2d Cir. Jan. 9, 2024) …………………………………………………. 18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ……………………………………………………….…... 1, 7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) …………………………………………………….…... 1, 20, 35

*Black & Decker Corp. v. Positec USA, Inc.,*
    2015 WL 1543262 (N.D. Ill. Mar. 31, 2015) …………………………………………….. 9

*Blacks in Technology Int'l v. Blacks in Technology LLC,*
    2022 WL 3974504 (N.D. Tex. Aug. 31, 2022) ……………………………………….. 5, 6

*Board of Regents, Univ. of Tex. Sys. ex rel. Univ. of Tex. at Austin*
    *v. KST Elec., Ltd.,* 550 F. Supp. 2d 657 (W.D. Tex. 2008) ……………………………….. 11

*Boarding Sch. Review, LLC v. Delta Career Educ. Corp.,*
    2013 WL 6670584 (S.D.N.Y. Mar. 29, 2013) ……...……………………………...…..… 5

*Bodine Perry, PLLC v. Bodine,*
    2023 WL 2734679 (N.D. Ohio Mar. 31, 2023) …...………………………………..... 28

*Braun Inc. v. Dynamics Corp. of Am.,*
   975 F.2d 815 (Fed. Cir. 1992) ………………………………………………………... 17

*Brookwood Funding, LLC v. Avant Credit Corp.,*
   2015 WL 11504556 (N.D. Ga. July 28, 2015) ……………………………...………… 3

*Bubble Genius LLC v. Smith,*
   239 F. Supp. 3d 586 (E.D.N.Y. 2017) …………………………………………………….. 17

*Christenson v. FLTI,*
   2013 WL 5781276 (D. Or. Oct. 23, 2013) ………………………………………………… 33

*Coach Servs., Inc. v. Triumph Learning LLC,*
   668 F.3d 1356 (Fed. Cir. 2012) …………………………………………………………… 9

*Color Me Mine Enterprises, Inc. v. Southern States Mktg. Inc.,*
   2012 WL 12887744 (C.D. Cal. May 18, 2012) …………………………………………… 5

*Constructive Eating, Inc. v. Masontops, Inc.,*
   2021 WL 719701 (E.D. Mich. Feb. 23, 2021)…………………………………………… 27, 28

*Craft Smith, LLC v. EC Design, LLC,*
   969 F.3d 1092 (10th Cir. 2020) ……………………………………..…………………… 29, 30

*Design Basics, LLC v. Signature Const., Inc.,*
   994 F.3d 879 (7th Cir. 2021) ……………………………………………………………….. 33

*Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn Mayer Inc.,*
   2020 WL 68775178 (C.D. Cal. Oct. 23, 2020) …...……………………………………… 4

*Enchant Christmas Light Maze & Market, Ltd. v. Glowco, LLC,*
   958 F.3d 532 (6th Cir. 2020) …………………………………………… 29, 30, 31, 32, 33, 34

*Ets-Hokin v. Skyy Spirits, Inc.,*
   323 F.3d 763 (9th Cir. 2003) ……………………………………………………………….. 33

*EVIG, LLC v. Mister Brightside, LLC,*
   2023 WL 5717291 (D. Nev. Sept. 5, 2023) ……………………………………………….. 13

*Fair Wind Sailing, Inc. v. Dempster,*
   764 F.3d 303 (3d Cir. 2014) …………..…………………………………...………… 11, 15

*FC Online Marketing, Inc. v. Burke's Martial Arts, LLC,*
   2015 WL 4162757 (E.D.N.Y. July 8, 2015) …………………………...………… 4, 16, 18

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340 (1991) …………………………..…………………………………… 29, 32

*Gavitt v. Born,*
   835 F.3d 623 (6th Cir. 2016) ……………………………………………………………... 19

*General Motors Corp. v. Lanard Toys, Inc.,*
    468 F.3d 405 (6th Cir. 2006)……………………………………………….. 11, 14, 15, 17, 18, 19, 20

*Global Brand Holdings, LLC v. Church & Dwight Co.,*
    2017 WL 6515419 (S.D.N.Y. Dec. 19, 2017) ……………………………………….................. 8

*Hangzhou Aoshang E-Commerce Co., Ltd. v. 008fashion,*
    2020 WL 11401648 (N.D. Ill. Aug. 10, 2020) …………………………………………..…… 33

*Harner v. Wong Corp.,*
    2013 WL 11549284 (D.N.M. Oct. 31, 2013) …………………………………….................. 30

*Harper & Row Publishers, Inc. v. Nation Enters.,*
    471 U.S. 539 (1985) ………………………………………………………………..…… 32

*High Five Threads, Inc. v. Michigan Farm Bureau,*
    2021 WL 1809835 (W.D. Mich. May 6, 2021) ……………………………......……. 30, 31, 33

*Holding Co. of the Villages, Inc. v. Little John's Movers & Storage, Inc.,*
    2017 WL 631549 (M.D. Fla. Dec. 11, 2017) …………………………………………………. 3, 6

*Hua-Cheng Pan v. Kohl's Dept. Stores, Inc.,*
    2013 WL 5181144 (S.D. Ohio Sept. 12, 2013) …………….......……………………… 25, 26, 28

*In re Darvocet, Darvon, and Propoxyphene Prods. Liab. Litig.,*
    756 F.3d 917 (6th Cir. 2014) …………………………………………………………… 19, 35

*In re E.I. duPont de Nemours & Co. C-8 Personal Inj. Litig.,*
    87 F.4th 315 (6th Cir. 2023) ……..……………………………………………………..... 35

*International Code Council, Inc. v. UpCodes, Inc.,*
    43 F.4th 46 (2d Cir. 2022) ……………………………………………………………… 35

*It's a 10, Inc. v. Beauty Elite Group, Inc.,*
    2013 WL 6834804 (S.D. Fla. Dec. 23, 2013) ……..…………………………………….. 2

*JFeld LLC v. Blanket Lovers,*
    2021 WL 2302447 (C.D. Cal. Apr. 29, 2021) …………………………………………… 3

*Jocke v. City of Medina,*
    2023 WL 5167326 (6th Cir. Aug. 11, 2023) …………………………………………… 7

*Kibler v. Hall,*
    843 F.3d 1068 (6th Cir. 2016) …..……………………………………………… 2, 9, 10

*Kittrich Corp. v. United Indus. Corp.,*
    2017 WL 10434389 (C.D. Cal. Oct. 18, 2017) …………………………………….....… 15

*Kittrich Corp. v. United Indus. Corp.,*
    2018 WL 11472385 (C.D. Calif. Nov. 15, 2018) …..……………………….......... 30, 31, 32, 33, 34

vii

*Lego A/S v. Best-Lock Const. Toys, Inc.*,
    404 F. Supp. 3d 583 (D. Conn. 2019) …………………………………………………....… 33

*Lolicel (Pty) Ltd. v. Sanmar International [USA] Inc.*,
    2023 WL 3134599 (S.D. Cal. Apr. 27, 2023) ……………………………………….....… 16

*Luv N' Care Ltd. v. Regent Baby Prods. Corp.*,
    841 F. Supp. 2d 753 (S.D.N.Y. 2012) ……………………………………………………… 2

*McGurr v. North Face Apparel Corp.*,
    2021 WL 4706984 (C.D. Cal. Aug. 27, 2021) …………………………………....………. 3, 4

*Mike Vaughn Custom Sports, Inc. v. Piku*,
    15 F. Supp. 3d 735 (E.D. Mich. 2014) ……………..………………………………... 14, 15, 16, 18

*Mosaic Brands, Inc. v. Ridge Wallet, LLC*,
    2020 WL 6821013 (C.D. Cal. Oct. 29, 2020) ……..……………………………………… 13

*Music City Metals Co. v. Jingchang Cai*,
    2017 WL 4641866 (M.D. Tenn. Oct. 17, 2017) ....…………………………………………… 28

*Nationwide Van Lines, Inc. v. Transworld Movers Inc.*,
    2020 WL 4873713 (S.D. Fla. July 27, 2020) …………………………………………..……… 4

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*,
    783 F.3d 527 (5th Cir. 2015) ……………………………………………………………... 17, 18

*Novel v. Zapor*,
    2016 WL 6603291 (S.D. Ohio Mar. 22, 2016) …………………………………………..… 1

*Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*,
    732 F.3d 645 (6th Cir. 2013) …………………………………………………………..…… 1

*Plum Markets, LLC v. Compass Group USA, Inc.*,
    2021 WL 323791 (N.D. Ill. Feb. 1, 2021) ………………………………………………… 15, 16

*Plumeus, Inc. v. Intersog LLC*,
    2013 WL 5609331 (N.D. Ill. Oct. 11, 2013) …..……………………………..…………………….. 4

*Real View, LLC v. 20-20- Techs., Inc.*,
    683 F. Supp. 2d 147 (D. Mass. 2010) ………………………………………………….. 33

*Reed v. Chambersburg Area School Dist.*,
    951 F. Supp. 2d 706 (M.D. Pa. 2013) ……………..…………………………………............ 5

*Robins v. Global Fitness Holdings, Inc.*,
    838 F. Supp. 2d 631 (N.D. Ohio 2012) …………………………………………………… 35

*Rose Art Indus. v. Swanson*,
    235 F.3d 165 (3d Cir. 2000) ………………………………………………………….... 21, 23

*Satava v. Lowry,*
    323 F.3d 805 (9th Cir. 2003) …………………….…………………………… 29, 30, 31, 32, 33

*Schifer Pub., Ltd. v. Chronicle Books, LLC,*
    2004 WL 2583817 (E.D. Pa. Nov. 12, 2004) …………………………………………... 33

*Slep-Tone Entertainment Corp. v. Arrowood,*
    2011 WL 4482082 (S.D. Ohio Sept. 26, 2011) …….....…………………………………… 27

*SMJ Group, Inc. v. 417 Lafayette Restaurant LLC,*
    2006 WL 2516519 (S.D.N.Y. Aug. 30, 2006) …….....……………………………..... 9

*SMS Group Inc. v. Pharmaaid Corp.,*
    2023 WL 6929653 (E.D.N.Y. Oct. 19, 2023)……………………………………… 30, 33

*Stagecraft Costuming, Inc. v. HouseHaunters LLC,*
    2011 WL 13202911 (S.D. Ohio Feb. 2, 2011) …….....………………………………..... 18

*Stewart v. Kendall,*
    2022 WL 49190 (W.D. Okla. Jan. 5, 2022) …….....…………………………….......... 1

*TCPIP Holding, Inc. v. Haar Communications, Inc.,*
    244 F.3d 88 (2d Cir. 2001) …………....………………………………..…………. 2, 8

*Tracey Tooker & TT Ltd. v. Whitworth,*
    211 F. Supp. 3d 429 (S.D.N.Y. 2016) ………………………………………………... 13

*Tropic Ocean Airways, Inc. v. Floyd,*
    598 Fed. Appx. 608 (11th Cir. 2014) ……………………………………………… 18

*TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N. Am., LLC,*
    292 F. Supp. 3d 864 (N.D. Iowa 2018) …………………………………………..... 9

*TSDC, LLC v. Galvan,*
    2015 WL 1800589 (N.D. Ohio Apr. 16, 2015) ...…………………………………….... 10

*Varsity News Network, Inc. v. Carty Web Strategies, Inc.,*
    2017 WL 7201873 (C.D. Cal. Aug. 30, 2017) ……………………………………... 6, 18

*Walker Wear LLC v. Off-White LLC,*
    624 F. Supp. 3d 424 (S.D.N.Y. 2022) …………………………………………........ 4

*Walkie Check Prods., LLC v. ViacomCBS, Inc.,*
    2023 WL 5154416 (S.D.N.Y. Aug. 10, 2023) ...……………………………........... 29

*WFTV, Inc. v. Maverik Prod. Ltd. Liability Co.,*
    2013 WL 3119461 (M.D. Fla. June 18, 2013) ……………………………….................. 5

*Wrench LLC v. Taco Bell Corp.,*
    256 F.3d 446 (6th Cir. 2001) …………………………………………... 23, 24, 25, 26, 28

**Statutes**

15 U.S.C. § 1125(c)(2)(A) …………………………………………….......................... 2, 8

17 U.S.C. § 102 …………………………………………………………………... 23

17 U.S.C. § 103 …………………………………………………………………... 23

17 U.S.C. § 103(b) …………………………………………………………….… 29

17 U.S.C. § 106 ………………………………………………………………... 23, 24

17 U.S.C. § 106(1) …..…………………………………………………………… 24

17 U.S.C. § 106(2) …..…………………………………………………………… 24

17 U.S.C. § 106(3) …..…………………………………………………………... 24, 26

17 U.S.C. § 106(5) …..…………………………………………………………… 24, 26

**Rules**

Fed. R. Civ. P. 8(a)(2) …………………………………………………………....  35

Fed. R. Civ. P. 12(b)(6) …………………………………………………… 1, 2, 36

**Other Authorities**

McCarthy on Trademarks and Unfair Competition …………………………..…………….. 16, 19

Nimmer on Copyright ……………………………………………………………… 33

## I. **INTRODUCTION**

In response to SBM's motion to dismiss, SCOTTS[1] acknowledges – as it must – that a claim survives a Rule 12(b)(6) motion to dismiss only if the plaintiff "plead[s] enough '*factual* matter' to raise a 'plausible' inference of wrongdoing," *16630 Southfield L.P. v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 504 (6th Cir. 2013) (emphasis added) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)), and that a claim is "plausible" only if "the plaintiff pleads *factual* content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (emphasis added).  *See* Plaintiff's Memorandum in Opposition to Defendant's Partial Motion to Dismiss Second Amended Complaint [Dkt. 48] ("Pl. Mem.") p. 2.

SCOTTS ignores, however, that a court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.,* 732 F.3d 645, 649 (6th Cir. 2013). SCOTTS likewise ignores the Supreme Court's admonitions that a "formulaic recitation of the elements of a cause of action will not do," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), nor will labels or "naked assertions devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678. Indeed, SCOTTS pays no mind at all to *Iqbal*'s teaching that the critical first step in deciding a Rule 12(b)(6) motion is determining which allegations are *factual* and entitled to a presumption of truth and which are conclusory and not entitled to such a presumption. *See* 556 U.S. at 680-81; *Novel v. Zapor,* 2016 WL 6603291 *3 (S.D. Ohio Mar. 22, 2016) (distinguishing allegations of *fact* from those that are *conclusory* to begin Rule 12(b)(6) analysis); *Stewart v. Kendall,* 2022 WL 49190 *1 (W.D. Okla. Jan. 5, 2022) ("In assessing plausibility, the Court first disregards conclusory allegations and 'next consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." (citation omitted)).

---

[1]   As in SBM's opening brief, when this reply uses the Second Amended Complaint's defined term "Scotts," it is shown in capital letters (*i.e.,* SCOTTS) to differentiate the defined term "Scotts" (which comprises both plaintiffs The Scotts Company, LLC ("Scotts LLC") and OMS Investments, Inc. ("OMS")) from Scotts LLC and OMS individually.

In short, throughout its response to SBM's motion to dismiss, SCOTTS embraces the aspects of *Iqbal* and *Twombly* that it finds helpful to its position, but it flatly disregards those that are not. In doing so, SCOTTS erroneously urges the Court to accept as true allegations in the Second Amended Complaint ("SAC") that are naked, unsupported assertions and even legal conclusions, neither of which are appropriate for consideration under Rule 12(b)(6). When analysis of the SAC is properly confined to *factual* allegations entitled to the presumption of truth, as *Iqbal* requires, it is clear that SCOTTS' defense of its claims is unavailing and that SBM's motion to dismiss should be granted.

## II.     LAW AND ARGUMENT

### A.     SCOTTS Fails To Show That Count III States A Viable Claim for Trademark Dilution.

In response to SBM's motion to dismiss, SCOTTS concedes that a mark is "famous" under Section 43(c) of the Lanham Act only if it is "widely recognized by the general consuming public as a designation of the source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).; *see* Pl. Mem. p. 4. SCOTTS does not dispute that establishing fame for purposes of a trademark dilution claim is "difficult," *Kibler v. Hall,* 843 F.3d 1068, 1083 (6th Cir. 2016), and SCOTTS takes no issue with the Sixth Circuit's observation that "[c]ourts have interpreted the [Lanham] Act to require the mark to be a 'household name,'" *id.,* such as COCA-COLA soft drinks, BUDWEISER beer, or BARBIE dolls.[2]

However, disputing how the criteria courts use to determine whether a mark is "famous" should apply to the SAC, SCOTTS tries to rescue its trademark dilution claim from dismissal by asserting that "the [SAC] is filled with factual allegations supporting the allegation that the Red Marks are famous." Pl. Mem. p. 3. SCOTTS' efforts are not successful, though. When the allegations that SCOTTS cites as support for the dilution claim are screened properly to filter out legal conclusions and naked, unsupported assertions, it is readily apparent that the few *facts* alleged in the SAC are insufficient to plausibly show that either of the

---

[2]     *See TCPIP Holding, Inc. v. Haar Communications, Inc.,* 244 F.3d 88, 99 (2d Cir. 2001); *It's a 10, Inc. v. Beauty Elite Group, Inc.,* 2013 WL 6834804 * 8 (S.D. Fla. Dec. 23, 2013); *Luv N' Care Baby Prods. Corp.,* 841 F. Supp. 2d 753, 758 (S.D.N.Y. 2012).

"Red Marks" has sufficiently wide recognition among the general consuming public to be a "household name" eligible for protection under Section 43(c).

> **1. Many Of The Allegations SCOTTS Cites In Support Of The Dilution Claim Are Conclusory, Undeveloped Assertions Or Legal Conclusions That Should Be Disregarded**

SCOTTS asks the Court to assume as true a plethora of what it calls "detailed factual allegations" that, when screened as *Iqbal* requires, are actually just conclusory assertions or legal conclusions masquerading as factual allegations that the Court should not consider in assessing the sufficiency of the dilution claim:

- "OMS Investments' Red Marks are famous . . . throughout the United States including among consumers, the trade, and the general public in the State of Ohio and in this Judicial District . . . ." *See* SAC ¶ 103; *see also id.* ¶ 37 (cited at Pl. Mem. p. 10).

An allegation that a mark is "famous" is a "conclusory allegation[] insufficient to support a dilution claim." *Holding Co. of the Villages, Inc. v. Little John's Movers & Storage, Inc.,* 2017 WL 631549 *4 (M.D. Fla. Dec. 11, 2017). "Indeed, 'whether a mark is 'famous' is a legal conclusion and therefore, on a motion to dismiss, the court does not simply accept Plaintiff's recitation of that element [of] its dilution case. Rather, under *Twombly* and *Iqbal,* Plaintiff must allege facts which makes such a conclusion plausible.'" *Id.* (quoting *Brookwood Funding, LLC v. Avant Credit Corp.,* 2015 WL 11504556 *4 (N.D. Ga. July 28, 2015); *see also, e.g., JFeld LLC v. Blanket Lovers,* 2021 WL 2302447 *4 (C.D. Cal. April 29, 2021) ("That a mark is famous is a legal conclusion and the plaintiff must support the claim with evidence or allegations demonstrating fame."). SCOTTS' conclusory assertion that the "Red Marks" are "famous" thus should not be considered in assessing whether the SAC alleges sufficient *facts* to state a claim for dilution.

- "OMS' Red Marks are . . . distinctive throughout the United States . . . ." *See* SAC ¶ 103 (cited at Pl. Mem. p. 10).

The naked allegation that a mark is "distinctive" is conclusory and should not be accepted by a court as true. *See, e.g., McGurr v. North Face Apparel Corp.,* 2021 WL 4706984 *3 (C.D. Cal. Aug. 27, 2021) ("[T]he Court need not 'accept conclusory allegations that [plaintiff's] mark is distinctive. Rather,

the pleadings must allege facts sufficient to support a plausible inference of distinctiveness."); *Nationwide Van Lines, Inc. v. Transworld Movers Inc.,* 2020 WL 4873713 **2-3 (S.D. Fla. July 27, 2020) (finding allegation that asserted mark is distinctive is conclusory); *FC Online Marketing, Inc. v. Burke's Martial Arts, LLC,* 2015 WL 4162757 *10 (E.D.N.Y. July 8, 2015) (allegation that trade dress is "distinctive" is conclusory and not entitled to presumption of truth). Here, SCOTTS' assertion that the "Red Mark" and the "Red Design Mark" are "distinctive" is accompanied by no *factual* allegations supporting a plausible inference of distinctiveness. It is therefore conclusory and should not be assumed as true for purposes of the instant motion to dismiss.

- SCOTTS has "invested substantial resources" advertising and marketing ORTHO control products under the "Red Marks" and "establishing these goods in the minds of consumers as high-quality goods offered by SCOTTS." *See* SAC ¶ 17; *see also id.* ¶ 29 (cited at Pl. Mem. pp. 5, 9-10).

This threadbare allegation is routinely rejected as conclusory and insufficient to plausibly show that a mark is famous. *See, e.g., Walker Wear LLC v. Off-White LLC,* 624 F. Supp. 3d 424, 431 (S.D.N.Y. 2002) (allegation that plaintiff "invested substantial time and money in the marks" is a mere conclusion that is not a proper factual basis for a finding of fame); *Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn Mayer Inc.,* 2020 WL 68775178 *9 (C.D. Cal. Oct. 23, 2020) (plaintiff's allegation that it "devoted substantial time, effort and resources to the development and extensive promotion" of asserted mark held conclusory and insufficient to state a claim for dilution); *Plumeus, Inc. v. Intersog LLC,* 2013 WL 5609331 *2 (N.D. Ill. Oct. 11, 2013) (allegation that plaintiff "invested substantial resources" in "numerous national and international advertising campaigns" held insufficient to state a plausible claim for dilution). Here, SCOTTS' unadorned allegation that it "invested substantial resources" in advertising and marketing products under the "Red Mark" and "Red Design Mark" is not a *factual* allegation sufficient to plausibly show that either of the asserted marks is "famous."

- SCOTTS enjoys "extremely strong common law trademark rights" in the "Red Marks."  *See* SAC¶¶ 17, 29 (cited at Pl. Mem. pp. 9-10).

An allegation that a mark confers on its owner common law trademark rights merely states a legal conclusion. *See, e.g., Antiaging Inst. of Calif. v. Solonova, LLC,* 2015 WL 12792028 *2 (C.D. Cal. Nov.

19, 2015) (allegation that "[m]ark includes common law trademark rights" is a legal conclusion); *WFTV, Inc. v. Maverik Prod. Ltd. Liability Co.,* 2013 WL 3119461 *12 (M.D. Fla. June 18, 2013) (plaintiff's allegation that it "owns common law trademark rights" is a legal conclusion). Here, SCOTTS' allegations that it "enjoys extremely strong common law trademark rights" in the "Red Marks" merely recite a legal conclusion that does not plausibly show that the asserted marks are famous.

- The "Red Marks" embody "invaluable goodwill." *See* SAC ¶¶ 17, 29 (cited at Pl. Mem. p. 9).

The bare allegation that a mark carries "invaluable goodwill" is conclusory and is not entitled to a presumption of truth for purposes of Rule 12(b)(6). *See, e.g., Reed v. Chambersburg Area School Dist.,* 951 F. Supp. 2d 706, 727-728 (M.D. Pa. 2013) (allegation that marks "carry extensive goodwill" is conclusory and insufficient to allege fame); *see also Boarding Sch. Review, LLC v. Delta Career Educ. Corp.,* 2013 WL 6670584 *7 (S.D.N.Y. Mar. 29, 2013) (allegation that mark has "great value and secondary meaning upon consuming public" is conclusion not entitled to presumption of truth).

- When consumers in the United States encounter the "Red Mark" and "Red Design Mark," they immediately associate the "Red Mark" and "Red Design Mark" with SCOTTS. *See* SAC ¶ 36 (cited at Pl. Mem. p. 10).

An unadorned allegation of consumer recognition of a mark is conclusory and should be disregarded for purposes of Rule 12(b)(6). *See, e.g., Blacks in Technology Int'l v. Blacks in Technology LLC,* 2022 WL 3974504 *3 (N.D. Tex. Aug. 31, 2022) (allegation that marks "have gained widespread recognition throughout the United States and are so well known that consumers associate the Marks with BIT LLC" held "entirely conclusory"); *Color Me Mine Enterprises, Inc. v. Southern States Mktg. Inc.,* 2012 WL 12887744 *2 (C.D. Cal. May 18, 2012) (allegations that mark "enjoys a high degree of consumer recognition and has become a famous mark" are "conclusory"). Here, the SAC's naked assertion that consumers associate the "Red Marks" with SCOTTS is not supported by any *factual* allegations actually showing any such association. As such, it is merely a conclusory allegation that does not plausibly show that either of the asserted marks is famous.

- "The Red Design Mark has become favorably known among consumers as used in connection with the ORTHO Products and has become an invaluable symbol of the source of products bearing the Mark [and] of the high quality of products bearing the mark . . . ." *See* SAC ¶ 31 (cited at Pl. Mem. p. 5).

A naked assertion that a mark is recognized among consumers as an identifier of source or quality is likewise conclusory. *See, e.g., Holding Co. of the Villages,* 2017 WL 6319549 *4 (finding allegation that marks are known "as designators for the source of goods and services provided by Plaintiff and its affiliates" is conclusory); *Blacks in Tech.,* 2022 WL 3974504 *3 (allegation that marks "are so well known that consumers associate the Marks with BIT LLC" held "entirely conclusory"); *Varsity News Network, Inc. v. Carty Web Strategies, Inc.,* 2017 WL 7201873 *7 (C.D. Cal. Aug. 30, 2017) (allegation that "consumers have come to recognize the [mark] as representative of high quality, superior, and effective products and services offered by [plaintiff]" held insufficient under *Twombly* and *Iqbal*).  Here, the SAC's allegation that the Red Design Mark is "favorably known among consumers" as an "invaluable symbol" of the source of products bearing the mark or their quality is supported by no *factual* allegations plausibly showing such recognition by consumers.  It therefore is not entitled to the presumption of truth under Rule 12(b)(6).

- SCOTTS has "spent at least tens of millions of dollars on promoting and marketing the ORTHO Products under the Red Marks" and "has made hundreds of millions of dollars, and likely billions of dollars, in sales of Products under the Red Marks." *See* SAC ¶ 36 (cited at Pl. Mem. pp. 5, 8).

As SBM explains in its opening brief, *see* Defendant's Partial Motion to Dismiss Second Amended Complaint [Dkt. 45] ("SBM Mem."), pp. 10-12, 13-14, this sketchy allegation is just a rehash of the conclusory allegation that SCOTTS has "invested substantial resources" in advertising and promoting the marks. The "Red Mark" has been in use since 1995, and the "Red Design Mark" has been in use since 2011, yet *no facts* are alleged about *when* during the past 28 years the "tens of millions of dollars" in promotional expenses were supposedly incurred or *when* the "hundreds of millions of dollars" of sales revenues were supposedly received. There also are *no facts* alleged as to *how* the advertising dollars alleged were actually spent.  Further, *no facts* are even provided to specify *which* of the "Red Marks" the alleged advertising expenses and sales revenues supposedly relate to.  In the absence of at least minimal supporting detail

6

(which SCOTTS has enjoyed more than ample opportunity to provide or explain), SCOTTS' unadorned, back-of-the-envelope estimates about advertising expenditures and sales revenues over a period of nearly three decades are just "naked assertions devoid of further factual enhancement" that are not entitled to the presumption of truth in the Rule 12(b)(6) analysis. *See Iqbal,* 556 U.S. at 678; *Jocke v. City of Medina,* 2023 WL 5167326 *4 (6th Cir. Aug. 11, 2023).

### 2. *The Factual Allegations Of The SAC Do Not Plausibly Show That Either Of The "Red Marks" Is Famous.*

Once the SAC's many threadbare, conclusory assertions and legal conclusions are filtered out, as *Iqbal* requires, the *factual* allegations offered by SCOTTS in support of the claim that the "Red Marks" are "famous" amount to merely the following:

- SCOTTS has marketed and sold ORTHO "control products" under the "Red Mark" since 1995 and has marketed and sold ORTHO "control products" under the "Red Design Mark" since August 2010. *See* SAC ¶¶ 16, 26.

- SCOTTS prominently uses the "Red Marks" on packaging for ORTHO "control products" and in nationwide advertising and promotional materials for such products, including but not limited to print advertisements, television advertisements, brochures, and the Internet. *See id.* ¶¶ 18, 30.

- SCOTTS advertises and sells ORTHO "control products" under the "Red Marks" throughout the United States. *See id.* ¶¶ 19, 29.

- SCOTTS markets ORTHO "control products" under the "Red Marks" via the Internet, including at its website www.ortho.com. *See id.* ¶¶ 19, 27. SCOTTS also markets ORTHO "control products" under the "Red Design Mark" on social media platforms such as Twitter, YouTube, Facebook, and Instagram. *See id.* ¶ 28.

- The "Red Marks" are federally-registered. *See id.* ¶¶ 21, 32.

The First Amended Complaint alleges *nothing* about how SCOTTS' estimated advertising expenses were actually spent, *nothing* about any particular marketing activities relating to the "Red Marks," *nothing* about the timing, extent, or actual effectiveness of any such marketing in generating consumer recognition of the marks, and *nothing* linking its estimated sales revenues to consumer recognition. SCOTTS claims – with no supporting authority – that factual allegations showing that its "marketing 'actually generated recognition of the marks among the general public'" are "clearly not necessary." Pl. Mem. p. 6. That

SCOTTS cites no authority for this assertion is not surprising, because it ignores the very language of Section 43(c) specifying that "a mark is famous if it is widely recognized by the general consuming public as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Thus, contrary to SCOTTS' view, *factual* allegations plausibly showing actual recognition of the asserted marks by the general consuming public as a designation of source are essential because they go directly to the "key ingredient of fame." *See Aero AG Holdings, LLC v. Huggoes Fashion LLC,* 2022 WL 6244439 *18 (S.D.N.Y. July 5, 2022) (quotation and citation omitted).  The absence of *factual* allegations in the SAC plausibly showing that the "Red Marks" are widely recognized among the general consuming public is a fatal defect in SCOTTS' dilution claim. *See id.* (dismissing dilution claim under Rule 12(b)(6) where plaintiff alleged use of mark for over 30 years and $30 million in sales but "failed to plausibly allege 'a sufficient level of public recognition'" (citation omitted)); *TCPIP,* 244 F.3d at 99-100 (holding evidence of thirty years of use of THE CHILDREN'S PLACE, including operation of 228 stores in 27 states with $280 million in sales, insufficient to show "fame" for purposes of motion for preliminary injunction motion where plaintiff failed to submit factual information enabling court to determine the extent of public recognition of mark).

Even if some weight were given to the SAC's naked assertions about total advertising expenditures and sales revenues relating to the "Red Marks" over the past 28 years, they still do not plausibly show that the "Red Marks" are so well-known to the general consuming public to qualify as "famous." Without any supporting authority, SCOTTS grouses that it need not allege any detail other than its back-of-the-envelope estimates of advertising expenses and sales revenues, *see* Pl. Mem. pp. 6, 9, but (as SCOTTS notably does not dispute) whether a mark is "famous" is not "a dollar test." *Global Brand Holdings, LLC v. Church & Dwight Co.,* 2017 WL 65151419 *5 (S.D.N.Y. Dec. 19, 2017). The SAC's failure to allege *facts* connecting SCOTTS' advertising expenses and sales revenues to actual consumer recognition of the "Red Marks" is a critical omission. *See, e.g., TCPIP,* 244 F.3d at 99-100 (evidence of $280 million in sales and "tens of millions of dollars" in advertising, with no information provided about "how many millions, when expended, or how effectively," held insufficient to show extent of public recognition of asserted mark);

*Aero,* 2022 WL 6244439 *18 ($30 million in sales not sufficient to plausibly allege sufficient public recognition of asserted mark); *see also SMJ Group, Inc. v. 417 Lafayette Restaurant LLC,* 2006 WL 2516519 *4 (S.D.N.Y. Aug. 30, 2006) ("Neither continuous use nor a high volume of sales is sufficient to establish a claim for dilution.").

Evidently seeking to deflect attention from its failure to identify *factual* allegations in the SAC sufficient to plausibly show that either of the "Red Marks" is "famous," SCOTTS attempts to cast *Coach Servs., Inc. v. Triumph Learning, Inc.,* 668 F.3d 1356 (Fed. Cir. 2012), and *Black & Decker, Inc. v. Positec USA, Inc.,* 2015 WL 1543262 (N.D. Ill. Mar. 31, 2015), as "not relevant" because they arose in contexts other than a motion to dismiss. *See* Pl. Mem. pp. 7-8. As SBM points out in its opening brief, *see* SBM Mem. p. 14 n. 4, these decisions are recognized as "informative of the high standard of fame under [Section 43(c)] and, therefore, the type of allegations needed to state a plausible claim." *See TrueNorth Cos., L.C. v. TruNorth Warranty Plans of N. Am.,* 292 F. Supp. 3d 864, 872 n. 3 (N.D. Iowa 2018). Thus, even though they arose in contexts other than a motion to dismiss, *Coach* and *Black & Decker* serve as useful examples of the Sixth Circuit's observation that establishing "fame" for purposes of a dilution claim is "difficult." *Kibler,* 843 F.3d at 1083. They also illustrate that advertising expenses and sales revenues even higher than those alleged by SCOTTS do not automatically make a mark "famous" for purposes of Section 43(c).

SCOTTS also strains to distinguish allegations in the SAC from one fact or another it cherry-picks out of the decisions cited in SBM's opening brief where dilution claims were dismissed under Rule 12(b)(6). *See* Pl. Mem. pp. 6-7, 10-11. Those decisions, however, demonstrate how other courts have found threadbare and conclusory most of the allegations that SCOTTS invokes as support for its dilution claim (*e.g.,* that the "Red Marks" are "famous,"[3] that it "invested substantial resources" in advertising and promoting the "Red Marks,"[4] that the "Red Marks" have "become known among consumers as used in

---

[3]  *See* SBM Mem. p. 8; *see also supra,* p. 3.

[4]  *See* SBM Mem. p. 10; *see also supra* p. 4.

connection with ORTHO Products,"[5] and that the "Red Marks" have "become an invaluable symbol . . . of consumer goodwill"[6]) – aspects of those decisions that SCOTTS does not dispute. Further, even as SCOTTS claims – rather illogically – that its own eye-of-the-needle distinctions of cases dismissing dilution claims under Rule 12(b)(6) somehow suggest that its own meager factual allegations *do* state a claim, SCOTTS fails to direct the Court to even a single decision finding that factual allegations such as those provided in the SAC are sufficient to state a claim for dilution.[7] In the absence of relevant supporting authority, SCOTTS' assertions that it has adequately pleaded that the "Red Marks" are "famous" are thus no more than empty *ipse dixit* and, as such, should be disregarded.

In summary, SCOTTS fails to show that Count III states a viable claim for dilution. Most of the allegations that SCOTTS cites as support for its dilution claim are naked, unsupported assertions or legal conclusions masquerading as factual allegations that are not entitled to the presumption of truth for purposes of a Rule 12(b)(6) motion. When those allegations are filtered out, as *Iqbal* requires, the few *factual* allegations offered by SCOTTS in support of its dilution claim do not plausibly show that either of the "Red Marks" is so widely-recognized among the U.S. general consuming public as to be a "household name," as Section 43(c) requires. *See Kibler,* 843 F.3d at 1083. Indeed, and tellingly, SCOTTS never attempts to make an argument that its meager allegations plausibly place the "Red Marks" among "those truly famous marks

---

[5]  *See* SBM Mem. pp. 14-15; *see also supra* p. 5.

[6]  *See* SBM Mem. pp. 14-15; *see also supra* pp. 5-6.

[7]  The only decision cited by SCOTTS in which a court declined to dismiss a claim for dilution is *TSDC, LLC v. Galvan,* 2015 WL 1800589 (N.D. Ohio Apr. 16, 2015), in which (according to SCOTTS) the court "den[ied a] motion to dismiss even though plaintiff allegedly failed to plead the existence of fame of the asserted mark." Pl. Mem. p. 4. This decision is of no help to SCOTTS' position. In denying a motion for judgment on the pleadings under Rule 12(c) (not a motion to dismiss, as SCOTTS incorrectly describes the case), the court wrote that "TSDC's Complaint need not quote specific language from the Federal Trademark Act in order to survive Defendant's motion for judgment on the pleadings." 2015 WL 1800589 *3. Here, SBM has made no argument that the sufficiency of SCOTTS' dilution claim hinges on the quotation of specific statutory language. The *TSDC* court also held that "the factual allegations in TSDC's Complaint [were] sufficient to support all elements of the dilution claims," *id.,* but the decision provides virtually no information about exactly what the allegations were that the court found sufficient to state a dilution claim. *See id.* The decision thus perhaps illustrates the unremarkable proposition that a Rule 12(c) motion for judgment on the pleadings concerning a dilution claim is appropriately denied when the plaintiff states factual allegations sufficient to support all elements of the claim, but it provides no guidance as to whether the few factual allegations in the SAC state a viable claim for dilution.

like BUDWEISER beer, CAMEL cigarettes, BARBIE Dolls, and the like" for which Section 43(c) is reserved. *Board of Regents, Univ. of Tex. Sys. ex rel. Univ. of Tex. at Austin v. KST Elec., Ltd.,* 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008). SCOTTS' dilution claim should be dismissed.

**B.** SCOTTS **Fails To Show That Count VI States A Claim Under The Lanham Act For Unfair Competition Relating To The "ORTHO Black Trade Dress."**

In its opening brief, SBM demonstrates that Count VI fails to state a viable claim for trade dress infringement under Section 43(a) of the Lanham Act for at least three reasons: (1) it does not identify the "ORTHO Black Trade Dress" sufficiently to give adequate notice of the scope of trade dress protection being asserted, *see* SBM Mem. pp. 16-19; (2) it does not allege facts plausibly showing that the "ORTHO Black Trade Dress" is distinctive, *see id.* pp. 20-21; and (3) it does not allege facts plausibly showing that the product line bearing the "ORTHO Black Trade Dress" has a consistent overall look. *See id.* pp. 21-26. In view of SCOTTS' failure to rebut these major deficiencies in Count VI, its dismissal is appropriate.

**1. SCOTTS *Does Not Show That The SAC Identifies The Claimed Trade Dress Sufficiently.***

SCOTTS agrees with SBM that "the discrete elements that make up the claimed trade dress should be separated and identified." Pl. Mem. p. 12. SCOTTS also concedes that the SAC must "identify what particular elements or attributes comprise the protectable trade dress." *Id.* The primary authority cited by SCOTTS on this point is *General Motors Corp. v. Lanard Toys, Inc.,* 468 F.3d 405 (6th Cir. 2006). There, the Sixth Circuit emphasized that a plaintiff's articulation of the specific elements of its claimed trade dress is critical because "[w]ithout such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market." *Id.* at 415 (quotation omitted). Moreover, without an appropriately specific definition of the elements comprising the asserted trade dress, a defendant is deprived of adequate notice of the overall look the plaintiff wishes to protect. *Fair Wind Sailing, Inc. v. Dempster,* 764 F.3d 303, 310 (3d Cir. 2014).

In response to the motion to dismiss, SCOTTS falls far short of demonstrating that it has provided a "precise expression" of the character and scope of the "ORTHO Black Trade Dress" adequate to notify

11

SBM and the Court of the look it seeks to protect.  Rather than addressing forthrightly the many defects identified by SBM in the SAC's textual description of the "ORTHO Black Trade Dress," *see, e.g.,* SBM Mem. pp. 17-19, SCOTTS accuses SBM of "feign[ing] confusion" about the scope of the asserted trade dress and cavalierly dismisses the issues raised by SBM as "inane questions." Pl. Mem. p. 14. Indeed, instead of taking advantage of the opportunities provided by the motion to dismiss and by multiple amendments to its pleading to clarify and refine the murky and imprecise formulation of the asserted trade dress, SCOTTS tries simply to wish away the vagueness of its allegations with its *ipse dixit* proclamation that the SAC "provide[s] sufficient identification of the trade dress." *Id.* p. 15. Thus, choosing to give no substantive response to the numerous deficiencies in the SAC's description of the "ORTHO Black Trade Dress," SCOTTS leaves SBM and the Court to guess what the scope of the claimed trade dress might be and how SCOTTS might claim it is protectable. *See, e.g.,* SBM Mem. pp. 18-19 (posing questions about "ORTHO Trade Dress" that SCOTTS labels as "inane" instead of addressing substantively).

SCOTTS also does nothing in response to the motion to dismiss to dismiss to dispel the vagueness infecting the textual description of the "ORTHO Black Trade Dress" through its use of open-ended language to identify the features being claimed as elements of the asserted trade dress.  For the Court's reference, the SAC's complete textual description of the asserted trade dress reads as follows:

> 40.     The distinctive packaging of certain SCOTTS' ORTHO control products consists of a unique arrangement of colors, graphic elements, font styles and text, with a black background with some lighter gradations of gray, a prominent placement of a red pentagon containing a brand name in white lettering above horizontal information bars that start on the left side of the label and connect into a circular or arc design that contains an image of green plant material.  One information bar is yellowish/gold and the other information bar is silver. A product name is placed between the pentagon design and the information bars.

SAC ¶ 40. SCOTTS claims that this description "identifies the trade dress features in a 'closed' manner, using the term 'consists of' prior to describing the features of the trade dress." Pl. Mem. p. 14. While it is true that the words "consists of" appear in the description "*prior to* describing the features of the trade dress" (emphasis added), this point is of no consequence because the placement of those words do not actually limit the features being claimed as the asserted trade dress. The words "consists of" introduce the

opening portion of the description declaring that the claimed trade dress "consists of a unique arrangement of colors, graphic elements, font styles and text." This is merely a list of a number of general *categories* of trade dress elements that might be claimed, and – as such – it provides no notice at all regarding the specific features that are being claimed as the asserted trade dress. *See, e.g., Tracey Tooker & TT Ltd. v. Whitworth,* 211 F. Supp. 3d 429, 434 (S.D.N.Y. 2016) (description of asserted trade dress as "unique elements of style, shape, angle, height, width and/or slant" of hats denotes *categories* of elements rather than protectable trade dress).

When the SAC's description lists elements within those categories that purportedly are being claimed as the "ORTHO Black Trade Dress" (*e.g.,* a "black background," a "red pentagon," etc.), no limiting qualifier such as "consisting of" is to be found. Instead, the list of claimed elements is introduced using "with," which Scotts chose as a direct substitute for the open-ended phrase "including, but not limited to" in the original formulation of the asserted trade dress in the Complaint. *See* Complaint [Dkt. 1] ¶ 39. Fairly read, "with" is just as open-ended a qualifier as "including," because – like "including" – "with" allows for the possibility that there are additional features of the asserted trade dress not being presently listed, which unfairly leaves the door open for Scotts to redefine the claimed elements of the trade dress later in the litigation to suit its needs. *See EVIG, LLC v. Mister Brightside, LLC,* 2023 WL 5717291 *5 (D. Nev. Sept. 5, 2023).  For this reason, "[c]ourts have often dismissed trade dress claims for failing to provide a complete list of elements where the alleged list of elements is preceded by a non-limiting qualifier." *Mosaic Brands, Inc. v. Ridge Wallet, LLC,* 2020 WL 6821013 *6 (C.D. Cal. Oct. 29, 2020).

Scotts attempts to dismiss the notion that "with" functions as a non-limiting qualifier as "nonsensical," Pl. Mem. p. 14, but Scotts refuses to explain what it meant when it used "with" to list the claimed features of the asserted trade dress, nor does Scotts offer even a hint why it did not list the claimed features using the limiting qualifier "consisting of."  In responding to the motion to dismiss, Scotts easily could have told SBM and the Court that it intended "with" to be every bit as limiting a modifier of the list of claimed features as "consisting of."  Or Scotts could have disclaimed the non-limiting effect of "with" in its list of the claimed features of the asserted trade dress by assuring SBM and

the Court that the SAC's textual description fully sets forth all of the claimed features of the "ORTHO Black Trade Dress." SCOTTS declines to provide such clarification, though. Instead, apparently intent on retaining maneuvering room to revise the features of the claimed trade dress as the case develops, SCOTTS once again leaves SBM and the Court with an unworkably vague description in the SAC from which they must try to divine for themselves the actual scope of trade dress protection being asserted.[8]

According to SCOTTS, the image at paragraph 40 of the SAC is provided as an example of the claimed trade dress "[t]o add further clarity." Pl. Mem. p. 13. However, instead of using the image to provide SBM and the Court reasonable notice of the scope of the trade dress being asserted, SCOTTS does nothing to connect the image with the textual description of the "ORTHO Black Trade Dress" to illustrate what it is claimed to be and how it is supposedly distinctive or unique. Thus, in yet another respect, SCOTTS once again leaves SBM and the Court on their own to guess where they might find in the image features that are only vaguely described in the SAC's textual description and to try to interpret for themselves what SCOTTS might claim as the scope of the asserted trade dress. *See Mike Vaughn Custom Sports, Inc. v. Piku,* 15 F. Supp. 3d 735, 747 (E.D. Mich. 2014) ("The images do not rescue plaintiff's trade dress claim because the Court cannot distill from the images what the plaintiff claims as protected trade dress . . . .").

In sum, while the filing of multiple amended pleadings has afforded SCOTTS ample opportunity to provide SBM and the Court with much-needed clarification about the scope and the character of the trade dress protection it seeks, SCOTTS continues simply to brush off the issues raised by SBM as "trivial" and "inane" and, refusing to address the troubling deficiencies in its allegations, attempts to respond to the motion to dismiss with merely an *ipse dixit* proclamation that its description of the "ORTHO Black Trade

---

[8]   Citing to *General Motors,* SCOTTS asserts that confusion arising from its use of the non-limiting qualifier "with" is "inconsequential" because courts in the Sixth Circuit "will simply ignore that open-ended language rather than find the trade dress to be invalid." Pl. Mem. p. 14. In *General Motors,* the Sixth Circuit disregarded "etc." at the end of the description of the asserted trade dress because it "did not define any further element to be included in the trade dress." 468 F.3d at 416. *General Motors* did not, however, consider the unfairness of introducing a list of claimed trade dress elements with a non-limiting qualifier such as "including" or "with," and it did not instruct courts simply to ignore such language, as SCOTTS suggests. In any event, ignoring the word "with" in the SAC's textual description of the asserted trade dress would not be the same as the Sixth Circuit's choice to ignore "etc." at the end of the *General Motors* description, because simply plucking "with" out of SCOTTS' description would make it an even messier jumble that still would not define the claimed features of "ORTHO Black Trade Dress" adequately.

Dress" is sufficient. *See* Pl. Mem. 15. SCOTTS' empty say-so, however, does not magically cure its failure to set forth a "precise expression of the scope and character of the claimed trade dress," as *General Motors* requires. *See* 468 F.3d at 415. Because the SAC does not identify the asserted trade dress sufficiently to give SBM or the Court reasonable notice of the scope of trade dress protection being claimed, a critical flaw that SCOTTS fails to explain, dismissal of Count VI is warranted. *See Mike Vaughn,* 15 F. Supp. 3d at 746; *Fair Wind Sailing, Inc.,* 764 F.3d at 310.

### 2.  SCOTTS *Fails To Demonstrate That The SAC Alleges Facts Plausibly Showing That The "ORTHO Black Trade Dress" Is Distinctive*

SCOTTS admits that it can pursue claims alleging infringement of the "ORTHO Black Trade Dress" only if the asserted trade dress is distinctive. *See* Pl. Mem. p. 17; *see Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc..* 280 F.3d 619, 635 (6th Cir. 2002) ("The first step in qualifying trade dress for protection under § 43(a) is proving distinctiveness."). For a claim relating to product packaging trade dress such as the "ORTHO Black Trade Dress," the distinctiveness requirement is satisfied if the asserted trade dress is inherently distinctive or that it has acquired secondary meaning. *See* Pl. Mem. p. 17; *Abercrombie,* 280 F.3d at 635. Contrary to SCOTTS' argument, the SAC fails on both points.

First, the SAC does not state *facts* plausibly showing that the "ORTHO Black Trade Dress" is inherently distinctive. Merely stating that the claimed trade dress is "inherently distinctive" (¶¶ 39, 45) or "highly distinctive in the control industry" (¶ 42) is insufficient to allege inherent distinctiveness. *See, e.g., Plum Markets, LLC v. Compass Group USA, Inc.,* 2021 WL 323791 *2-3 (N.D. Ill. Feb. 1, 2021) (plaintiff's "allegation that its 'design, layout, and décor are inherently distinctive and unique to the Plum brand' is too conclusory and too broad to properly plead that its trade dress is distinctive"); *Kittrich Corp. v. United Indus. Corp.,* 2017 WL 10434389 *6 (C.D. Cal. Oct. 18, 2017) (unsupported allegation that "the trade dress is distinctive in the market [sic] for bio-pesticides" held conclusory); *Mike Vaughn Custom Sports,* 15 F. Supp. 3d at 748 (statement that trade dress is "distinctive in the mind of customers" is conclusory); *FC Online Marketing,* 2015 WL 4162757 *10 (allegation that trade dress is "distinctive" is conclusory and not entitled to presumption of truth). SCOTTS' assertion that the ORTHO Black Trade Dress is a "unique

15

arrangement of colors, graphic elements, font styles and text" (SAC ¶ 40), with no concrete facts alleged as to *how* it is supposedly unique, also is a conclusory statement that should be disregarded. *See, e.g., Acculmage Diagnostics Corp. v. Terarecon, Inc.,* 260 F. Supp. 2d 941, 949 (N.D. Cal. 2003) ("To state a claim for trade dress infringement, plaintiff must plead with specificity how the [alleged trade dress is] unique and inherently distinctive."). After all, "[s]imply using conclusory words like "unique" and "recognizable" does not make it so." *Plum Markets,* 2021 WL 323791 *2. The allegation that SCOTTS' competitors "can and do use non-infringing trade dress on their competing control products" is of no consequence, because the mere fact that competitors use different trade dress does not plausibly show that the "ORTHO Black Trade Dress" is itself inherently distinctive. *See, e.g., Lolicel (Pty) Ltd. v. Sanmar International [USA] Inc.,* 2023 WL 3134599 *6 (S.D. Cal. Apr. 27, 2023) ("Allegations that the trade dress is distinct, without more, [are] insufficient to support an inference of distinctiveness.").[9] In short, none of the allegations cited by SCOTTS states *facts* sufficient to plausibly show that the "ORTHO Black Trade Dress" is inherently distinctive.

Second, SCOTTS also fails to allege *facts* in the SAC plausibly showing that the "ORTHO Black Trade Dress" has acquired secondary meaning. Turning to the *General Motors* factors cited by SCOTTS for determining the existence of secondary meaning,[10] the SAC alleges no direct consumer testimony or consumer surveys reflecting any association of the "ORTHO Black Trade Dress" with SCOTTS. There are

---

[9]     Under the heading "Legal Standard," SCOTTS alludes briefly to the taxonomy commonly used to evaluate the distinctiveness of word marks, *see Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2d Cir. 1976). *See* Pl. Mem. pp. 17-18. SCOTTS makes no effort, however, to apply the *Abercrombie* framework to the "ORTHO Black Trade Dress." As SCOTTS concedes, product packaging does not readily fit within the *Abercrombie* framework. *See* Pl. Mem. p. 17; *see also* 2 MCCARTHY ON TRADEMARKS § 11:2 ("Use of the spectrum of descriptive, suggestive, arbitrary and fanciful is largely confined to word marks. It is usually not suitable for nonword designations such as shapes and images making up trade dress."). Moreover, while SCOTTS tosses out the word "arbitrary" a couple of times in its brief, it points to no *factual* allegations in the SAC upon which the claimed trade dress could be classified as "arbitrary." Nor can it do so, because the SAC does not allege facts plausibly showing that the claimed trade dress, or any aspect thereof, is non-customary in the relevant market.

[10]   The *General Motors* factors for determining secondary meaning are: "(1) direct consumer testimony, (2) consumer surveys, (3) exclusivity, length, and manner of use, (4) amount and manner of advertising, (5) amount of sales and number of customers, (6) established place in the market, and (7) proof of intentional copying." 468 F.3d at 418.

16

thus no facts alleged under the first and second of the *General Motors* factors that could plausibly show secondary meaning. *See* 468 F.3d at 418.

Regarding the third factor, "exclusivity, length, and manner of use," *see id.,* the SAC does not allege how long SCOTTS supposedly has used the "ORTHO Black Trade Dress," nor does it allege that SCOTTS' use of the "ORTHO Black Trade Dress" has been exclusive. The only facts alleged in the SAC concerning "manner of use" are that SCOTTS supposedly markets and sells products bearing the claimed trade dress throughout the United States and markets them on its website. (¶ 44). The SAC is otherwise silent as to the third *General Motors* factor.

As to the fourth factor, "amount and manner of advertising," *see* 468 F.3d at 418, the SAC refers cursorily to SCOTTS' extensive advertising and publicity" for the "ORTHO Black Trade Dress" (¶ 48), but this is merely a conclusory assertion, devoid of any factual development, and should be disregarded.  *See, e.g., Bubble Genius LLC v. Smith,* 239 F. Supp. 3d 586, 598-99 (E.D.N.Y. 2017) (plaintiff's allegation about substantial investment in "promoting, advertising and soliciting sales" is conclusory statement that does not satisfy *Iqbal*). Moreover, although the SAC alleges that products bearing the "ORTHO Black Trade Dress" are marketed on SCOTTS' website (¶ 44), nothing is alleged suggesting that any marketing stressed the elements of the claimed trade dress. *See Braun Inc. v. Dynamics Corp. of Am.,* 975 F.2d 815-826-27 n. 22 (Fed. Cir. 1992) (finding $5.5 million in advertising expenditures irrelevant to secondary meaning in the absence of "evidence establishing that the advertising effectively created secondary meaning" in alleged trade dress); *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.,* 783 F.3d 527, 544-45 (5th Cir. 2015) ("The relevant question 'is not the *extent* of the promotional efforts, but the *effectiveness* in altering the meaning of [a mark] to the consuming public.'" (citation omitted)).

Under the fifth *General Motors* factor, "amount of sales and customers," 468 F.3d at 418, the SAC alleges nothing about the number of customers who have purchased products bearing the claimed trade dress, and it makes a single conclusory reference to "substantial sales." (¶ 48). In the absence of supporting detail, however, this vague statement does not plausibly show secondary meaning.  *See APP Group (Canada) Inc. v. Rudsak USA Inc.,* 2024 WL 89120 *3 (2d Cir. Jan. 9, 2024) (allegation that trade dress

represents plaintiff's "best-selling styles year after year" insufficient to show sales success for purposes of establishing secondary meaning); *Tropic Ocean Airways, Inc. v. Floyd,* 598 Fed. Appx. 608, 612 (11ᵗʰ Cir. 2014) (allegation that mark promoted "through substantial advertising and marketing and sales of its aviation and airline services," with no factual content, held insufficient to allege secondary meaning).

Turning to the sixth *General Motors* factor, "established place in the market," 468 F.3d at 418, the only relevant *factual* allegation in the SAC is that "Scotts is the world's largest marketer of branded consumer lawn, garden, pesticide, and insecticide products." (¶ 1). The remaining allegations cited by Scotts are all conclusory statements that do not plausibly show that the asserted trade dress has acquired secondary meaning. These include the SAC's allegations that the "ORTHO Black Trade Dress is highly distinctive in the control industry" (¶ 42); that customers associate the "ORTHO Black Trade Dress" "solely with Scotts and its high-quality products" (¶ 39); and that the "ORTHO Black Trade Dress . . . has become a valuable symbol of the source of Scotts' products, of the high quality of the products, and of the goodwill associated with the Trade Dress." (¶ 45). *See, e.g., Mike Vaughn Custom Sports,* 15 F. Supp. 3d at 748 (E.D. Mich. 2014) (statement that trade dress is "distinctive in the minds of customers" is conclusory); *FC Online Marketing,* 2015 WL 4162757 *10 (allegation that trade dress "serves to identify [the plaintiff]" and that it is "widely recognized" are conclusory and not entitled to presumption of truth); *Stagecraft Costuming, Inc. v. HouseHaunters LLC,* 2011 WL 13202911 *5 (S.D. Ohio Feb. 2, 2011) (statements that trade dress is well-known to consumers and has become associated with plaintiff are conclusory); *Varsity News Network,* 2017 WL 7201873 *7 (allegation that "consumers have come to recognize the [mark] as representative of high quality, superior, and effective products and services offered by [plaintiff]" conclusory).

Regarding the seventh *General Motors* factor, "proof of intentional copying," 468 F.3d at 418, the SAC does not "set forth detailed allegations of [SBM's] intentional copying," as Scotts claims. Critically, the SAC's allegations of intentional copying are stated on "information and belief." *See* SAC ¶¶ 65, 69. Such allegations must be viewed skeptically, because allegations stated on information and belief and without factual support "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly*

18

condemned and told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. Partnership.* 727 F.3d at 506. Indeed, "[t]he mere fact that someone believes something to be true does not create a plausible inference it is true." *In re Darvocet, Darvon, and Propoxyphene Prods. Liab. Litig.,* 756 F.3d 917, 931 (6th Cir. 2014). A plaintiff "must plead facts that create a permissible inference of wrongdoing," *id.* (internal quotation and citation omitted), yet the SAC fails to plead facts permitting a reasonable inference of intentional copying to be alleged on information and belief. For example, while SCOTTS alleges that SBM "amended the packaging for several of its control products to a new design that is confusingly similar to SCOTTS' ORTHO Black Trade Dress," ¶ 64, the images that are reproduced in the SAC and that SCOTTS cites in its brief at page 20 as SBM's "prior label" and "new label" do not even involve the same products. *See* SAC ¶ 64. Rather, as shown in Exhibit 1, they are labels for different products with different ingredients.[11] As such, they provide no factual support permitting a reasonable inference of intentional copying, and the SAC pleads no other *facts* that move the inference of intentional copying that SCOTTS purports to state "on information and belief" across the line from merely "conceivable" to "plausible." *See Twombly,* 550 U.S. at 570 (facts alleged must show that plaintiff's claim crosses "the line from conceivable to plausible").

In sum, SCOTTS fails to allege *facts* sufficient to plausibly show that the "ORTHO Black Trade Dress" has acquired secondary meaning under the *General Motors* factors. The SAC contains no factual allegations concerning the first and second factors ("direct consumer testimony" and "consumer surveys"). With respect to the third factor ("exclusivity, length, and manner of use"), the SAC is silent regarding the length of time that SCOTTS has used the "ORTHO Black Trade Dress," and it is devoid of any allegations

---

[11]   The product labels shown in the top row of paragraph 64 of the SAC are for BIOADVANCED Weed & Grass Killer Super Concentrate (Glufosinate-Ammonium 11.33%) (shown by SCOTTS under "Defendant's Prior Packaging Design") and BIOADVANCED 365 Weed & Grass Killer Concentrate (Glufosinate-Ammonium 10%, 11.08 Ammonium-Nonanoate, 3.18% Imazethapyr-Ammonium) (shown by SCOTTS under "Defendant's Current Packaging Design"). The labels shown in the lower row of paragraph 64 of the SAC are for BIOADVANCED All-In-One Lawn Weed & Crabgrass Killer I Ready-To-Use (Quinclorac 1.61%, 2,4-D dimethylene salt 4.85%, Dicamba, dimethylamine salt 0.45%) (shown by SCOTTS under "Defendant's Prior Packaging Design") and BIOADVANCED Extended Control Brush Killer Concentrate (8.8% Triclopyr, triethylamine salt) (shown by SCOTTS under "Defendant's Current Packaging Design"). Inasmuch as these labels are shown in the SAC and referenced by SCOTTS in its response brief, the images submitted as Exhibit 1 are appropriate for consideration in connection with the instant motion. *See Gavitt v. Born,* 835 F.3d 623, 640 (6th Cir. 2016).

regarding the exclusivity of any such use. The only facts alleged in the SAC regarding manner of use are that SCOTTS supposedly markets and sells products bearing the "ORTHO Black Trade Dress" throughout the United States and markets those products on its website. The SAC's only allegations regarding the fourth and fifth factors ("amount and manner of advertising" and "amount of sales and customers") are mere conclusory statements that should be disregarded under *Iqbal*. The sole factual allegation in the SAC regarding the sixth factor ("established place in the market") is that SCOTTS is the world's largest marketer of control products. The SAC's thin allegations on the seventh factor ("proof of intentional copying") are presented entirely "on information and belief," with no facts alleged that support an inference of intentional copying. Thus, the total of the SAC's factual allegations on the *General Motors* secondary meaning factors are (1) that SCOTTS is a big company, (2) that it sells products nationwide bearing the "ORTHO Black Trade Dress," (3) that it markets those products on its website, and (4) that it believes SBM copied its trade dress – which falls far short of plausibly showing that the asserted trade dress is viewed by consumers as an indicator of the source of SCOTTS' products.

As with the trademark dilution claim, SCOTTS stretches mightily to distinguish allegations in the SAC from a fact or two that it cherry-picks from the decisions cited in SBM's opening brief where a plaintiff failed to state facts plausibly showing that its asserted trade dress was distinctive. *See* Pl. Mem. pp. 18-22. Those decisions were cited by SBM to demonstrate how other courts have found conclusory and threadbare most of the allegations that SCOTTS cites regarding the distinctiveness of its claimed trade dress, and SCOTTS notably takes no issue with those aspects of those decisions. Moreover, even as SCOTTS strains to distinguish those decisions on their facts, the narrow distinctions it offers are largely meaningless. After all, just because the SAC's allegations arguably differ from the cited decisions in one minor respect or another does not mean that the SAC alleges facts plausibly showing that the "ORTHO Black Trade Dress" is distinctive.

To the contrary, as discussed above, SCOTTS fails to demonstrate that the SAC alleges *facts* plausibly showing that the claimed trade dress is inherently distinctive or that it has acquired secondary meaning. The trade dress infringement claim accordingly should be dismissed.

### 3. SCOTTS Does Not Show That The Product Line Bearing The Claimed Trade Dress Has A Consistent Overall Look

SCOTTS does not dispute that a plaintiff claiming trade dress protection for the packaging of a series or line of products "must first demonstrate that the series or line has a recognizable and consistent overall look." *See Rose Art Indus., Inc. v. Swanson,* 235 F.3d 165, 173 (3rd Cir. 2000); *see* 1 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:5.50 ("When the alleged trade dress consists of a certain look or style of different packaging for a number of different products, it is more difficult to prove that there is a common denominator among those packages which identifies plaintiff as the source. Plaintiff must prove that its alleged trade dress has a 'consistent overall look.').

As SBM shows in its opening brief, *see* SBM Mem. pp. 21-22, the SAC states that SCOTTS seeks trade dress protection for "the packaging design of certain of its ORTHO control products,"[12] but it does not identify the product line or series of products that supposedly use the claimed dress. The SAC thus fails to allege facts plausibly showing that there is a "consistent overall look" across the plurality of products that bear the "ORTHO Black Trade Dress," which warrants dismissal of the trade dress infringement claim. *Rose Art,* 235 F.3d at 173.

In response to the motion to dismiss, SCOTTS confirms that the SAC seeks trade dress protection for some plurality of ORTHO products,[13] but SCOTTS informs SBM and the Court through its response that it "does not allege trade dress across a line or series of products." Pl. Mem. p. 16. Rather, according to SCOTTS, the SAC "asserts trade dress used in its specific "GroundClear" products shown in paragraph 40 and Exhibit D." *Id.* Thus, SCOTTS continues, "[b]ecause trade dress across a line or series of products is not alleged, no such heightened pleading requirement applies." *Id.*

---

[12]  SAC ¶¶ 1, 40.

[13]  *See* Pl. Mem. p. 15 ("[T]he [SAC] clearly states that the ORTHO Black Trade Dress is on *certain* of its control products." (emphasis in original)).

In a truly stunning reversal, however, SCOTTS announces elsewhere in its response that its trade dress claim actually is *not* limited to the specific "GroundClear" products shown in paragraph 40 and Exhibit D of the SAC:

> The ORTHO Black Trade Dress, described in Paragraph 40 of the SAC is not limited to the depiction of the image of the Trade Dress in that Paragraph, but rather encompasses that depiction and any other trade dress that fits the description of the ORTHO Trade Dress.

*Id.* p. 23 n. 2. Thus, contrary to its specific representation to escape the burden to plausibly allege facts showing a "consistent overall look" across the line of products bearing the claimed trade dress, SCOTTS confirms that it actually seeks trade dress protection in this case for products *beyond* the specific "GroundClear" products shown in paragraph 40 and Exhibit D. However, as in the SAC, SCOTTS does not identify the line or series of products for which trade dress protection is sought, which – once again – unfairly leaves SBM and the Court to guess about the true scope of the trade dress being asserted in this case. Further, SCOTTS' admission that it really does seek trade dress protection for some unknown range of products besides the specific "GroundClear" products identified in paragraph 40 and Exhibit D confirms that the SAC is defective in that it alleges *no* facts plausibly showing that whatever line or series of products supposedly use the "ORTHO Black Trade Dress" exhibits it in a recognizable and consistent way.

In summary, SCOTTS' response to the motion to dismiss communicates that trade dress protection is being sought in this case for some unspecified line or series of products that are not identified in the SAC, yet SCOTTS fails to point out any factual allegations in the SAC plausibly showing that whatever line or series of products use the "ORTHO Black Trade Dress" display a "consistent overall look." SCOTTS' response thus confirms that dismissal of the trade dress claim is appropriate. *Rose Art,* 235 F.3d at 173.

## C. SCOTTS Does Not Show That Counts VII And VIII State Valid Claims Under Ohio Law

### 1. *SCOTTS' Arguments Do Not Rescue Counts VII And VIII From Preemption By The Copyright Act*

SBM has moved to dismiss the SAC's claims relating to the "ORTHO Black Trade Dress" under the Ohio Deceptive Trade Practices Act (Count VII) and Ohio's common law of unfair competition (Count VIII) on the ground that they are preempted by the Copyright Act. Under Sixth Circuit law, "a state

common law or statutory claim is preempted if: (1) the work is within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102 [and] 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001).

In response to SBM's motion to dismiss, SCOTTS concedes that "the ORTHO Black Trade Dress is the proper subject of copyright protection."[14] Thus, as to both of the SAC's state law claims for trade dress infringement, SCOTTS agrees that the first prong of the *Wrench LLC* preemption test – the "subject matter" prong – is satisfied. With respect to the preemption test's second prong – the "equivalency" prong – SCOTTS asserts that the Ohio state law claims "each include an 'extra element' in that both claims include a likelihood of confusion element," so – in SCOTTS' view – they are not equivalent to a claim for infringement of the exclusive rights specified in the Copyright Act and, therefore, are not preempted.[15] Contrary to SCOTTS' contention, however, the "equivalency prong" of the *Wrench LLC* preemption test is satisfied, too.

The Sixth Circuit has instructed that "[e]quivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights [under copyright]." *Wrench LLC,* 256 F.3d at 456 (citation omitted).  The Ohio state law claims asserted in Counts VII and VIII concern SCOTTS' claim to have exclusive rights to market and sell products displaying the "ORTHO Black Trade Dress."  As such, they directly implicate rights equivalent to the exclusive rights under 17 U.S.C. § 106 to display the "ORTHO Black Trade Dress" publicly, to make and distribute copies of the "ORTHO Black Trade Dress," and to prepare derivative works based on the "ORTHO Black Trade Dress."  *See* 17 U.S.C. § 106(1), (2), (3), (5).  The very same activity is alleged to constitute unfair competition by SBM, *i.e.,* copying the "ORTHO Black Trade Dress;"[16] deriving similar trade dress from the "ORTHO Black Trade Dress;"[17] and publicly displaying and selling products that display trade dress similar to the "ORTHO

---

[14]  Pl. Mem. p. 23.

[15]  Pl. Mem. pp. 23-24.

[16]  *See, e.g.,* SAC ¶¶ 64, 65, 67, 69, 71.

[17]  *See, e.g., id.* ¶¶ 64, 65, 67, 69, 71.

Black Trade Dress."[18]  Since the activities by SBM that are alleged to constitute violations of the Ohio Deceptive Trade Practices statute and the Ohio common law of unfair competition are the same as activities that would implicate exclusive rights under copyright in the "ORTHO Black Trade Dress," equivalency is present.  *See Wrench LLC,* 256 F.3d at 456.

Equivalency is not affected in this case because claims under the Ohio Deceptive Trade Practices statute and Ohio unfair competition law may require proof of likelihood of confusion.  Regarding the impact of an "extra element" on the "equivalency prong" of the preemption test, the Sixth Circuit has explained:

> [I]f an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, *provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim*.

*Wrench LLC,* 256 F.3d at 456 (emphasis added).  In other words, an extra element in a state law claim upsets equivalency between a state law claim and a claim for infringement of any of the exclusive rights under the Copyright Act only if the extra element makes the state law claim "qualitatively different from a copyright infringement claim."  *Id.*  In this case, SCOTTS does not allege that SBM engaged in any activity or conduct violating the Ohio Deceptive Trade Practices statute or Ohio unfair competition law other than copying the "ORTHO Black Trade Dress," deriving a similar trade dress from the "ORTHO Black Trade Dress," and publicly displaying and selling products bearing trade dress similar to the "ORTHO Black Trade Dress."  Rather, the conduct by SBM alleged as the basis for the Ohio state law claims is the same as conduct that would implicate the exclusive rights under copyright law in the "ORTHO Black Trade Dress.  Moreover, based on SCOTTS' allegations, the source of any likelihood of confusion that might make out the "extra element" cited by SCOTTS is SBM's alleged copying of the "ORTHO Black Trade Dress," SBM's alleged preparation of a trade dress derived from the "ORTHO Black Trade Dress," and SBM's display and sale of products bearing trade dress similar to the "ORTHO Black Trade Dress" – which is

---

[18]  *See, e.g., id.* ¶ 70.

essentially the same as a claim for copyright infringement.  Thus, in the context of the allegations of the SAC, any "extra element" of likelihood of confusion arising in claims under the Ohio Deceptive Trade Practices statute or Ohio unfair competition law does not make them "qualitatively different" from a claim for infringement of the exclusive rights in the "ORTHO Black Trade Dress" under copyright.  *See Hua-Cheng Pan v. Kohl's Dept. Stores, Inc.,* 2013 WL 5181144 *8 (S.D. Ohio Sept. 12, 2013) (finding Ohio common law unfair competition claim and Ohio Deceptive Trade Practices Act claims equivalent to copyright infringement in case alleging trade dress infringement).  The "extra element" cited by SCOTTS therefore does not exempt Counts VII and VIII from preemption by the Copyright Act.

SCOTTS' attempt to distinguish *Hua-Cheng Pan* from the instant matter is unavailing.  In *Hua-Cheng Pan,* plaintiff asserted claims against Kohl's Department Stores for, *inter alia,* copyright infringement, trade dress infringement, unfair competition under Ohio law, and violation of the Ohio Deceptive Trade Practices Act arising from its marketing and sale of a holiday glitter globe copyrighted by plaintiff. 2015 WL 5181144 *1. On Kohl's motion to dismiss plaintiff's Ohio state law claims under the Copyright Act's preemption provision, the court found that the glitter globe that was the subject of plaintiff's claims was within the subject matter of copyright, so the "real issue" before the court was "whether [p]laintiff's unfair competition claims [were] equivalent to those under the Copyright Act." *Id.* *8. Since plaintiff did not allege that Kohl's "engaged in any practices constituting unfair competition other than making and selling copies of the copyrighted work," the court found that plaintiff's unfair competition claims did not "alter qualitatively the nature of the litigation sufficiently to distinguish them from his copyright infringement claim." *Id.* Because the underlying activity at issue – Kohl's infringement upon plaintiff's copyrighted work – was the same for all three claims (copyright infringement, Ohio unfair competition, and violation of the Ohio Deceptive Trade Practices Act), the court held the Ohio state law claims were preempted by the Copyright Act. *Id.*

According to SCOTTS, the present case differs from *Hua-Cheng Pan* because SCOTTS' copyright claim supposedly is limited to copying of the "ORTHO Black Trade Dress," while its trade dress infringement claims involve not only copying the "ORTHO Black Trade Dress," but also SBM's sale of

products bearing a copy of the "ORTHO Black Trade Dress" in competition with Scotts. *See* Pl. Mem. p. 25. Scotts' argument, however, is without merit.  First, Scotts mischaracterizes its own copyright claim, because the SAC makes clear that it is not limited to alleged copying of the "ORTHO Black Trade Dress." Indeed, the SAC alleges that SBM "has unlawfully reproduced, distributed, publicly performed, publicly displayed, and/or prepared" trade dress that is alleged to copy the "ORTHO Black Trade Dress." *See* SAC ¶ 170. Thus, by its terms, Scotts' copyright infringement claim reaches more activity than alleged copying of the "ORTHO Black Trade Dress." Second, and irrespective of any artificial limitation that Scotts might try to place on the scope of its copyright claim, the activity that Scotts argues constitutes trade dress infringement (*i.e.,* SBM's sale of products bearing the accused trade dress) implicates the copyright owner's exclusive rights in public display and distribution of the "ORTHO Black Trade Dress."  *See* 17 U.S.C. § 106(3) (distribution), (5) (public display).  As noted, "[e]quivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights" under copyright. *Wrench LLC,* 256 F.3d at 456.  Since SBM's sale of products bearing the accused trade dress would implicate 17 U.S.C. §§ 106(3) and (5), the trade dress infringement claims are qualitatively the same as a copyright infringement claim relating to the "ORTHO Black Trade Dress."

The authorities cited by Scotts do not compel a different conclusion.  *Slep-Tone Entertainment Corp. v. Arrowood,* 2011 WL 4482082 (S.D. Ohio Sept. 26, 2011) involved a karaoke records distributor's trademark infringement claims arising from defendant's unauthorized display of the distributor's trademarks during karaoke performances using the distributor's recordings.  *Id.* **1, 4. Defendant argued that the distributor's unfair competition claims under Ohio state law and the Ohio Deceptive Trade Practices statute were preempted by the Copyright Act because the distributor's karaoke song recordings fell within the scope of copyright. *Id.* *4. The distributor's Ohio state law claims, however, focused on the display of its trademarks during karaoke performances, not on the underlying songs. *Id.* The court accordingly found the subject matter of the Ohio state law claims did not fall within the scope of copyright and, therefore, did not meet the "subject matter" prong of the preemption test. *Id.* Here, by contrast, there is no dispute that Scotts' Ohio state law claims fall squarely within the scope of copyright and satisfy the "subject matter

prong." Regarding the "equivalency prong," the *Slep-Tone* court found that the likelihood of confusion element of claims under Ohio unfair competition law and the Ohio Deceptive Trade Practices statute constituted an "extra element" that made the nature of the action different from a claim for copyright infringement, but – importantly – the source of the confusion alleged by the distributor was the defendant's display of the distributor's trademarks, not any conduct that implicated any exclusive rights under copyright law in the underlying songs. *Id.* *4. In this case, unlike *Slep-Tone,* the only alleged source of any confusion at issue in the Ohio state law claims is conduct that implicates exclusive rights under copyright law in the "ORTHO Black Trade Dress," so any requirement to prove such confusion does not qualitatively alter the nature of the state law claims from a claim for infringement of exclusive rights in the "ORTHO Black Trade Dress" under copyright law.

Another case relied upon by SCOTTS, *Constructive Eating, Inc. v. Masontops, Inc.,* 2021 WL 719701 (E.D. Mich. Feb. 23, 2021), involved claims for common law and statutory unfair competition arising under *Michigan* law, *see id.* *15, which is not at issue here. The plaintiff in that case apparently raised an argument that its Michigan state law claims were not subject to preemption because they involved an "extra element," but the court did not consider the issue, holding merely that the defendant did not "offer[] any persuasive reason why the Court should dismiss the state law claims." *Id.* SCOTTS also cites *Music City Metals Co. v. Jingchang Cai,* 2017 WL 4641866 (M.D. Tenn. Oct. 17, 2017), but it involved *Tennessee* law, not the Ohio state law claims at issue in this case. *See id.* *10. In *Music City Metals*, the court mentioned the "extra element" aspect of the preemption test, but it gave the point no analysis or discussion. *Id.* The court instead declined to find preemption of the Tennessee law claims at issue because – unlike here – they were premised on a broader range of conduct than activities regulated by copyright law. *Id.*

In summary, the "extra element" cited by SCOTTS does not qualitatively alter the Ohio state law claims at issue from a claim for copyright infringement concerning the "ORTHO Black Trade Dress." Those claims are therefore preempted by the Copyright Act and should be dismissed. *Wrench, LLC,* 256 F.3d at 456; *Hua-Cheng Pan,* 2015 WL 5181144 *8.

### 2. Scotts Fails To Show That Counts VII And VIII State Viable Claims For Relief

Scotts agrees with SBM that the analysis of an unfair competition claim under the Lanham Act is the same as for unfair competition claims under the Ohio Deceptive Trade Practices statute and Ohio common law. *See* Pl. Mem. p. 26. Accordingly, for the same reasons that the SAC fails in Count VI to state a valid claim for trade dress infringement under the Lanham Act, Scotts' companion claims arising under the Ohio Deceptive Trade Practices Act (Count VII) and Ohio common law (Count VIII) fail to state viable claims for relief and should be dismissed. *Bodine Perry, PLLC v. Bodine,* 2023 WL 2734679 *7 (N.D. Ohio Mar. 31, 2023).

### D. Scotts Does Not Show That Count XII States A Viable Claim For Copyright Infringement Relating To The "ORTHO Black Label"

#### 1. Scotts' Response To The Motion To Dismiss Makes Clear That Any Copyright Applicable To The "ORTHO Black Label" Is "Thin"

Notably, Scotts does not contend that any individual element of the "ORTHO Black Label" is sufficiently original to enjoy copyright protection. Rather, in response to the motion to dismiss, Scotts concedes that any copyright protection it can claim in the "ORTHO Black Label" is restricted to "the design of the label as a whole, including the selection and combination of the constituent elements, [and] their layout and their relation to one another . . . ." Pl. Mem. p. 29. Such a work "formed by the collection and assembling of preexisting materials . . . that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship" is known as a "compilation," 17 U.S.C. § 101, and it is a fundamental principle in copyright law that copyright protection in a compilation is limited to those aspects of the combination and arrangement of elements that are original to the author. 17 U.S.C. § 103(b) (copyright in compilation "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work"); *see Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991) (copyright in compilation protects only author's original contribution); *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC,* 958 F.3d 532, 538 (6th Cir. 2020).

28

SCOTTS fails to identify which aspects of the selection, combination, and arrangement of elements in the "ORTHO Black Label" it claims as its original contribution, which determines the extent of any copyright protection to which it might be entitled. 17 U.S.C. § 103(b). However, even if it were assumed that SCOTTS could somehow make a legitimate claim that all aspects of the selection, combination, and arrangement of the elements of the "ORTHO Black Label" are original to it (which is doubtful), the copyright protection applicable to its compilation of preexisting material in the label still would be merely a "*thin*" copyright.  *E.g., Enchant Christmas,* 958 F.3d at 538 (combination of unprotectable elements, if original, receives only "'thin copyright' protection"); *Satava v. Lowry,* 323 F.3d 805, 813 (9th Cir. 2003) (same); *Walkie Check Prods., LLC v. ViacomCBS, Inc.,* 2023 WL 5154416 *11 (S.D.N.Y. Aug. 10, 2023) (copyright protection in a compilation is considered "thin"); *A&E Television Networks, Inc. v. Big Fish Entertainment, LLC,* 2023 WL 4053871 *9 (S.D.N.Y. June 16, 2023) (same); *Craft Smith, LLC v. EC Design, LLC,* 969 F.3d 1092, 1104 (10th Cir. 2020) ("the protection available for a compilation is "thin" (quotation omitted)).

According to SCOTTS, SBM "improperly labels the copyright protection applicable to the "ORTHO Black Label" as 'thin'" because it "relies on cases that do not involve the selection and arrangement of features to create a product label." Pl. Mem. pp. 23-24. Attempting to distinguish *Enchant Christmas* and *Satava* because they "involved lifelike three dimensional reproductions of animals" and *High Five Threads, Inc. v. Michigan Farm Bureau,* 2021 WL 1809835 (W.D. Mich. May 6, 2021) because it involved what SCOTTS calls "a basic line drawing of two hands," SCOTTS posits that the "ORTHO Black Label" is entirely dissimilar because "it is an original design composed of a unique arrangement of colors, graphic elements, font styles and text . . . ." Pl. Mem. pp. 30-31. This is a distinction without a difference. As SCOTTS recognizes, the "ORTHO Black Label" "contains features such as individual words, shapes and particular colors that may not be protectable on its own," Pl. Mem. p. 31, and SCOTTS concedes that any copyright protection it can claim concerns "the appearance of the label as a whole . . . comprising an original selection and arrangement of elements." *Id.*  The fact that SCOTTS' compilation of unprotectable elements happens to be a product label, as opposed to a three-dimensional animal rendering or line drawing, does not

magically expand the scope of copyright protection over the "ORTHO Black Label" beyond the "thin" copyright that attaches to other compilations of unprotectable elements. *See, e.g., SMS Group Inc. v. Pharmaaid Corp.,* 2023 WL 69296563 *2  (E.D.N.Y. Oct. 19, 2023) ("thin" copyright applicable to photographs of pump dispensers used as online advertising); *Harner v. Wong Corp.,* 2013 WL 11549284 *1 (D.N.M. Oct. 31, 2013) ("thin" copyright applicable to advertisements for computer repair services); *Craft Smith, LLC,* 969 F.3d at 1105 ("thin" copyright applicable to selection, coordination, and arrangement of text and artwork found in daily planner).

In fact, "thin" copyright has been held applicable to a pesticide label just like the "ORTHO Black Label." *See Kittrich Corp. v. United Indus. Corp.,* 2018 WL 11472385 *3 (C.D. Calif. Nov. 15, 2018). In that case, Kittrich – a manufacturer and seller of pesticides – asserted a copyright infringement claim against several competitors, alleging they had "changed the packaging of their pesticide products to more closely approximate the look of [Kittrich's] product packaging." *Id.* *1. On defendants' motion to dismiss, the court noted that Kittrich had not "identified any protectable elements" of its copyrighted label or "an original, protectable combination of protectable elements." *Id.* *3. However, the court observed, "[e]ven if Kittrich's particular arrangement of elements, such as the placement of a picture of insects on the right side of the label and the use of the color green in the top portion of the label, were sufficiently original to merit some copyright protection," *it would be entitled only to "thin" protection.*" *Id.* Here, too, whatever SCOTTS may claim as its original contribution to the selection and arrangement of unprotectable elements in the "ORTHO Black Label," the copyright protection in its compilation of such elements in the "ORTHO Black Label" is unquestionably "thin."

### 2.  *"Thin" Copyright Is Infringed Only By Virtually Identical Copying*

As SBM pointed out in its opening brief, *see* SBM Mem. p. 35, when "thin" copyright is at issue, substantial similarity between the asserted work and the accused work arises only if there is *virtually identical copying* of the asserted work's protected features. *E.g., Enchant Christmas,* 958 F.3d at 538; *Satava,* 323 F.3d at 812; *High Five Threads,* 2021 WL 1809835 *4.

In response to SBM's partial motion to dismiss the First Amended Complaint (which was fully briefed when SCOTTS filed a last-minute motion for leave to amend), SCOTTS did not contest that "virtual identical copying" is the correct standard for assessing substantial similarity where copyright protection in an asserted work is "thin."[19] Now, seizing the opportunity to reverse course after mooting SBM's fully-briefed motion to dismiss through the filing of the SAC, SCOTTS argues that "virtually identical copying" is not the applicable standard for copyright protection over compilation works in which the copyright is "thin." *See* Pl. Mem. pp. 29-30. This argument, however, misreads the Sixth Circuit's opinion in *Enchant Christmas*. It also is at odds with the weight of authority nationwide.

*Enchant Christmas* involved a plaintiff's claim of infringement of the copyright in its three-dimensional holiday light sculptures of animals and ice crystals. *See* 958 F.3d at 535. Noting the Supreme Court's fundamental instruction that "copyright is limited to those aspects of the work – termed 'expression' – that display the stamp of the author's originality," *id.* at 537 (quoting *Harper & Row Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 5476 (1985)), the Sixth Circuit quoted with approval *Satava*'s teaching that "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Enchant Christmas,* 958 F.3d at 537 (quoting *Satava,* 323 F.3d at 810). Accordingly, observing that the asserted works "depict[ed] an animal or natural phenomenon the way in which it would be found in nature," *Enchant Christmas,* 958 F.3d at 537, the Sixth Circuit reasoned that "qualities of Enchant's sculptures that are inherent in the chosen subject – animal sculpture – are not subject to copyright protection." *Id.* However, because an artist may protect the original expression he contributes to a work, the Sixth Circuit pointed out that "a collection of unprotected elements . . . may earn "'thin copyright' protection," if original." *Id.* (citation omitted). As support for that proposition, the Sixth Circuit cited *Satava,* which it described as "stating that *a thin copyright 'protects against only virtually identical copying.'*" *Id.* at 538 (emphasis added). This was followed by a citation to *Feist,* in which the Sixth Circuit noted that the Supreme Court had "recogniz[ed] that the thin copyright in a factual compilation means that,

---

[19]    *See* Plaintiff's Memorandum in Opposition to Defendant's Partial Motion to Dismiss [Doc. 30], pp. 23-25.

31

'[n]otwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the *same selection and arrangement*.'" *Enchant Christmas,* 538 F.3d at 538 (quoting *Feist,* 499 U.S. at 349) (emphasis added). To SCOTTS, these references to *Satava* and *Feist* by the Sixth Circuit in *Enchant Christmas* were purely gratuitous and should be ignored. SBM disagrees. SBM submits, rather, that the Sixth Circuit's intentional citation in *Enchant Christmas* to *Satava*'s teaching that "thin copyright protects against only virtually identical copying," which it then bolstered by citing to *Feist*'s similar teaching about the scope of protection inherent in "thin" copyright, demonstrates that "virtually identical copying" is the correct standard to evaluate whether an accused work is substantially similar to a compilation in which copyright is "thin."

This reading of *Enchant Christmas* is consistent with federal authority nationwide holding that the "thin" copyright in a compilation of non-protectable elements protects against only "virtually identical copying." *E.g., Satava,* 323 F.3d at 810 (sculpture); *Kittrich,* 2018 WL 11472385 *3 (pesticide label); *Ets-Hokin v. Skyy Spirits, Inc.,* 323 F.3d 763 (9th Cir. 2003) (photographs); *Lego A/S v. Best-Lock Const. Toys, Inc.,* 404 F. Supp. 3d 583, 614 (D. Conn. 2019) (dolls); *SMS Group,* 2023 WL 6929653 *4-5 (advertising photos); *Design Basics, LLC v. Signature Const., Inc.,* 994 F.3d 879, 891 (7th Cir. 2021) (suburban, single-family home designs); *Real View, LLC v. 20-20- Techs., Inc.,* 683 F. Supp. 2d 147, 152 (D. Mass. 2010) (screen display and user interface of computer program); *Advanta-STAR Auto. Res. Corp. of Am. V. Search Optics, LLC,* 672 F. Supp. 3d 1035, 1049 (S.D. Calif. May 9, 2023) (automobile comparisons); *Hangzhou Aoshang E-Commerce Co., Ltd. v. 008fashion,* 2020 WL 11401648 *13 (N.D. Ill. Aug. 10, 2020) (giraffe silhouette used on clothing); *Schifer Pub., Ltd. v. Chronicle Books, LLC,* 2004 WL 2583817 *9 (E.D. Pa. Nov. 12, 2004) (photographs); *Christenson v. FLTI,* 2013 WL 5781276 *3 (D. Or. Oct. 23, 2013) (written manuscript).[20] SCOTTS tellingly does not cite any authority to the contrary.

---

[20] The copyright treatise cited in SCOTTS' brief supports this view. *See* 4 M. Nimmer & D. Nimmer, NIMMER ON COPYRIGHT § 13.03[A] ("It would seem to follow analytically that more similarity is required when less protectible matter is at issue. Thus, if substantial similarity is the normal measure required to demonstrate infringement, 'supersubstantial' similarity must pertain when dealing with 'thin' works.").

### 3.  The SAC Does Not Allege Facts Showing Virtually Identical Copying

As discussed above, any copyright applicable to SCOTTS' selection and arrangement of elements of the "ORTHO Black Label" is most certainly "thin," so any copyright therein is infringed only by virtually identical copying of the label's protected features. *See Enchant Christmas,* 538 F.3d at 538; *Satava,* 323 F.3d at 812; *High Five Threads,* 2021 WL 1809835 *4.

Regarding the evaluation of "virtual identical copying," *Kittrich* is once again instructive.  In that case, upon finding that any copyright protection applicable to Kittrich's pesticide label was "thin," the court noted that "[t]hin copyright 'protects against only virtually identical copying.'" 2018 WL 11472385 *3 (quoting *Satava,* 323 F.3d at 812).  "Thus," the court observed, "even assuming [Kittrich] had adequately alleged a protectable combination of unprotectable elements on its pesticide labels, it must also allege that Defendant labels are virtually identical," but "[t]he copying alleged in the [pleading did] not meet that high standard."  *Id.*  Examining the accused and copyrighted labels, the court commented:

> Defendants' labels display a picture of insects within a different frame or border, which is itself displayed lower on the bottle than [Kittrich's] displays. Although both bottles use a shade of green toward the top of the label and white on the remainder, Defendants' green color block uses different shades and shapes than [Kittrich's] labels. Although the shade of green used for the word "Eco" in the two labels is very similar, the word appears in different locations, fonts, orientations, and relative sizes on the parties' respective labels.

*Id.*  The court concluded that "[t]he combinations of elements, therefore, even if protectable, are not 'virtually identical,' and are not substantially similar."  *Id.*  As this analysis shows, where a pesticide label such as the "ORTHO Black Label" contains no individual protectable elements, such that any copyright protection that may apply concerns only the label's selection and arrangement of unprotectable elements, the "thin" copyright therein can be infringed only by "virtual identical copying," which is assessed through side-by-side comparison of the accused label with the protected features of the asserted label.

Following the lead of the *Kittrich* court, SBM's opening brief provides an extensive side-by-side comparison of the composition and arrangement of the "ORTHO Black Label" with the accused labels for BIOADVANCED 365 Weed & Grass Killer and BIOADVANCED Extended Control Brush Killer.  *See* SBM Mem. pp. 36-39.  As that comparison clearly demonstrates, neither of the accused BIOADVANCED

33

labels plausibly shows, when viewed from the perspective of an ordinary observer, "virtually identical copying" of the selection and arrangement of the features of the "ORTHO Black Label."  Puzzlingly, SCOTTS claims that SBM's comparison "improperly focuses solely on the differences in the two labels, rather than comparing all of the protectable aspects of the label, both similar and dissimilar, from the perspective of an ordinary observer." Pl. Mem. p. 32. Aside from the fact that SCOTTS cites no authority for this objection, it is nonsensical because SCOTTS has never identified what it claims "all of the protectable aspects" of the "ORTHO Black Label" to be. In any event, in the district court's analysis that the Sixth Circuit affirmed in *Enchant Christmas,* the district court catalogued numerous "substantial differences" between the accused and copyrighted works. *See* 958 F.3d at 539. SBM's side-by-side comparison of its accused labels with the "ORTHO Black Label" is thus consistent with *Enchant Christmas.* Moreover, as SCOTTS ignores, SBM's side-by-side comparison documents so many differences between the "ORTHO Black Label" and its accused labels simply because they are so different, with so many significant differences to document.

In stark contrast with SBM's detailed side-by-side label analysis, the cursory comparison provided by SCOTTS in its response to the motion to dismiss merely regurgitates the SAC's vague formulation of the "ORTHO Black Trade Dress" and – ironically – mentions not even one of the labels' myriad dissimilarities. *See* Pl. Mem. pp. 31-32.  Moreover, SCOTTS makes no effort to argue from its side-by-side comparison of the labels that it plausibly shows virtual identical copying of the selection and arrangement of the elements of the "ORTHO Black Label."  *See id.*  Indeed, SCOTTS' argument in its response is merely that the accused BIOADVANCED labels are derivatives of the "ORTHO Black Label," *id.,* which comes nowhere close to the "virtual identical copying" required for infringement of SCOTTS' "thin" copyright.

In summary, failing to identify any individual protectable element of the "ORTHO Black Label," any copyright that SCOTTS might claim in the label is restricted to its original contribution to the label's selection and arrangement of its non-protectable elements. Such copyright protection is "thin" and is infringed only by virtual identical copying, which the SAC fails to show.  Dismissal of the copyright infringement claim relating to the "ORTHO Black Label" (Count XII) is warranted.

34

**E. SCOTTS Fails To Show That The SAC States A Viable Claim For False Advertising**

As SBM shows in its opening brief, *see* SBM Mem. pp. 39-40, the false advertising claim at Count XIII of the SAC (erroneously designated in the SAC as Count XII) fails to state a viable claim under Section 43(a) of the Lanham Act because it does not allege facts plausibly showing that the accused advertising claims are false. This is a critical deficiency that requires dismissal. *See International Code Council, Inc. v. UpCodes, Inc.,* 43 F.4th 46, 56 (2d Cir. 2022) ("To state a false advertising claim under Section 43(a), a plaintiff must first plausibly allege the falsity of the challenged statement.").

The lone passage of the SAC that SCOTTS claims to allege the falsity of the challenged advertising claims is the statement at paragraph 84 that "[o]n information and belief and based on a reasonable investigation, Defendant's Brush Killer Product does not provide consumers with Defendant's claimed weed control protection for up to 12 months or 365 days." This allegation, however, is insufficient because it alleges *no facts* plausibly showing that the challenged statements are false. Rather, it simply states SCOTTS' *belief* – without pleading any supporting facts – that the challenged statements are false. As noted above, "[t]he mere fact that someone believes something to be true does not create a plausible inference it is true." *In re Darvocet, Darvon, and Propoxyphene Prods. Liab. Litig.,* 756 F.3d at 931. Indeed, in view of the total absence of allegations identifying supporting facts, SCOTTS' allegation "on information and belief" that the challenged claims are false is "precisely the kind[] of conclusory allegation[] that *Iqbal* and *Twombly* condemned and told [courts] to ignore when evaluating a complaint's sufficiency," especially since the "reasonable investigation" that SCOTTS alludes to in the SAC is information within SCOTTS' exclusive control. *16630 Southfield Ltd. Partnership,* 727 F.3d at 506.

Contrary to SCOTTS' claim that "the SAC provides more than 'fair notice' . . . of the grounds on which SCOTTS' false advertising claim rests," Pl. Mem. p. 34, the SAC actually provides *no* notice of any fact upon which the challenged statements are alleged to be false. Dismissal of the false advertising claim is therefore required. *See In re E.I. duPont de Nemours & Co. C-8 Personal Inj. Litig.,* 87 F.4th 315, 320 (6th Cir. 2023) ("Rule 8(a)(2) requires a plaintiff to allege facts 'providing not only fair notice of the nature of the claim, but also grounds on which the claim rests.'" (quoting *Twombly,* 550 U.S. at 555 n.3).

**F.  SCOTTS Also Fails To Show That The SAC States A Viable State Law Claim For False Advertising**

SCOTTS agrees with SBM that the analysis of a false advertising claim under the Lanham Act is the same as for a false advertising claim under the Ohio Deceptive Trade Practices statute. *See* Pl. Mem. pp. 34-35. Accordingly, for the same reasons that the SAC fails to state a valid claim for false advertising under the Lanham Act, SCOTTS' companion false advertising claim arising under the Ohio Deceptive Trade Practices Act set out in Count XIV (erroneously designated in the SAC as Count IV) fails to state viable a claim for relief and should be dismissed. *Robins v. Global Fitness Holdings, Inc.,* 838 F. Supp. 2d 631, 649 (N.D. Ohio 2012).

**III.  CONCLUSION**

For the foregoing reasons and the reasons set forth in SBM's opening brief, Count III (trademark dilution under Section 43(c) of the Lanham Act), Count VI (trade dress infringement under Section 43(a) of the Lanham Act), Count VII (trade dress infringement under the Ohio Deceptive Trade Practices Act), Count VIII (trade dress infringement under Ohio common law), Count XII (copyright infringement), Count XIII (false advertising under Section 43(c) of the Lanham Act) (erroneously designated in the SAC as Count XII), and Count XIV (false advertising under the Ohio Deceptive Trade Practices Act) (erroneously designated in the SAC as Count IV) should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Because SCOTTS has already amended its pleading twice, and because its response to the motion to dismiss identifies no specific amendments it wishes to make, entry of dismissal with prejudice would serve the interests of justice appropriately.

Respectfully Submitted,

*/s/ Lindsay M. Nelson*
Katherine C. Ferguson (0079207)
Lindsay M. Nelson (0095560)
Kooperman Mentel Ferguson Yaross Ltd.
250 East Town Street, Suite 200
Columbus, Ohio 43215
Telephone: (614) 344-4800
Facsimile: (614) 344-4800

kferguson@kmfylaw.com
lnelson@kmfylaw.com

Robert J. Morris (*pro hac vice* forthcoming)
Philip J. Cardinale (*pro hac vice* forthcoming)
Danielle B. Dobosz (*pro hac vice* forthcoming)
Smith Anderson Blount Dorsett Mitchell
& Jernigan, LLP
2300 Wells Fargo Capitol Center
150 Fayetteville Street
Raleigh, North Carolina 27601
Telephone: (919) 821-1220
Facsimile: (919) 821-6800

*Counsel for SBM Life Science Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2024 a copy of the foregoing was filed electronically. Notice of this filing will be sent via the Court's electronic filing system to the following:

David M. DeVillers
Christopher M. Dolan
Joshua S. Frick
Barnes & Thornburg LLP
Email: DDeVillers@BTLaw.com
Email: CDolan@BTLaw.com
Email: Joshua.Frick@BTLaw.com
*Counsel for Plaintiff*

/s/ Lindsay M. Nelson
Lindsay M. Nelson