UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**THE SCOTTS COMPANY LLC,** *et al.***,**

        **Plaintiffs,**

                                  **Case No 2:23-cv-1541**

   **v.**                                    **Judge Edmund A. Sargus, Jr.**

                                          **Magistrate Judge Elizabeth P. Deavers**

**SBM LIFE SCIENCE CORP.,**

        **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant SBM Science Corp.'s Partial Motion to Dismiss Second Amended Complaint. (Def. Mot., ECF No. 45.) For the reasons stated below, the Court **GRANTS in part** and **DENIES in part** SBM's Motion.

## BACKGROUND

Colors and shapes, when combined in distinctive ways in certain contexts, signal messages to all of us. Take the signs drivers see along the road, for example. A red octagon? STOP. The outline of an airplane on a green sign on the side of a road? An airport is up ahead. A red, white, and blue shield, with "70" in the middle? The famous I-70 interstate passing through some of our nation's historic towns and cities.

Consumers are no different. Over time, certain combinations of colors and shapes may take special place in the minds of consumers, and the law affords businesses the right to protect the impressions they seek to create. This action concerns whether one company has used another's colors and shapes unlawfully.

## I. Factual Background

Scotts is the world's largest marketer of branded consumer lawn, garden, pesticide, and insecticide products. (Sec. Am. Compl., ECF No. 44, at ¶ 1.) Some of those products come from its "ORTHO" brand. This action concerns four aspects of ORTHO's branding: (1) a distinctive Red Mark; (2) a distinctive Red Design Mark; (3) the packaging design Scotts refers to as the "ORTHO Black Trade Dress"; and (4) a copyrighted yellow pest barrier label referred to as the "Scotts' Yellow Barrier Design." (*Id.*)

Defendant SBM Life Science Corp. is one of Scotts' competitors. (*Id.* ¶ 2.) Scotts alleges that SBM is "manufacturing and selling control products: (1) under a red design mark that is strikingly similar to Scotts' Red Marks; (2) bearing trade dress that imitates and infringes Scotts' distinctive ORTHO Black Trade Dress; (3) bearing a design that imitates, copies, and is strikingly and substantially similar to Scotts' ORTHO Black Label; and (4) bearing a design that imitates, copies, and is strikingly and substantially similar to Scotts' Yellow Barrier Design." (*Id.*) Scotts also alleges that SBM makes false and/or misleading statements about one of SBM's products, the BIOADVANCED Extended Control Brush Killer Product. (*Id.* ¶ 3.)

These actions, according to Scotts, constitute unfair competition, infringement, and dilution of Scotts' intellectual property rights, and false advertising. (*Id.* ¶ 4.) Scotts alleges that such conduct is knowing, intentional, and designed to trade on Scotts' reputation. (*Id.*)

### A. Red Marks

Scotts alleges that it has developed and maintained a strong reputation for its control products under its distinctive "Red Mark." (*Id.* ¶ 15.) It has invested substantial resources developing and promoting its ORTHO Products with the Red Mark since 1995. (*Id.* ¶¶ 16–17.) Through its actions, it established a consumer perception that the ORTHO Products are high-quality goods. (*Id.*) It sells ORTHO Products under the Red Mark throughout the United States

and advertises through print, television, brochures, and the internet. (*Id.* ¶¶ 18–19.) Scotts alleges that the Red Mark "has become favorably known among consumers as used in connection with the ORTHO Products, and has become an invaluable symbol of the source of products bearing the Red Mark, of the high quality of products bearing the mark, and of consumer goodwill." (*Id.* ¶ 20.) Plaintiff OMS Investments owns certain federal trademark registrations for the Red Mark. (*Id.* ¶¶ 21–24.)

The Red Mark, a rectangular red box, has been altered to form a red pentagon with the "ORTHO" label on it:



(*Id.* ¶ 25.) Scotts refers to this as the "Red Design Mark," and it has advertised and sold its products under said mark throughout the United States since 2010. (*Id.* ¶¶ 25–27.) Scotts markets its products under the Red Design Mark through social media and print, television advertisements. (*Id.* ¶¶ 28, 30.) Scotts invested substantial resources to develop, advertise, promote, and market its ORTHO Products under the Red Design Mark. (*Id.* ¶ 29.) It, like the Red Mark, is distinctive and known favorably among consumers. (*Id.* ¶ 30–31.) Plaintiff OMS Investments owns certain federal trademark registrations for the Red Design Mark. (*Id.* ¶¶ 32–35.)

Scotts alleges that, since first using the Red Marks, it has made "at least hundreds of millions of dollars, and likely billions of dollars, in sales of its Products under the Red Marks." (*Id.* ¶ 36.) And Scotts has spent at least tens of millions of dollars on promoting its products under the Red Marks across the country. (*Id.*) Scotts alleges that its extensive sales, investment in, and promotion of its products under the Red Marks, and publicity in the United States, have caused

consumers to associate the Red Marks with Scotts. (*Id.*)

## B. ORTHO Black Trade Dress

Like its Red Marks, Scotts alleges that it has spent significant time and resources developing its "ORTHO Black Trade Dress," which it uses as a distinctive design for packaging some of its control products. (*Id.* ¶¶ 38–40.) Scotts describes its ORTHO Black Trade Dress as follows:

> The distinctive packaging of certain Scotts' ORTHO control products consists of a unique arrangement of colors, graphic elements, font styles and text, with a black background with some lighter gradations of gray, a prominent placement of a red pentagon containing a brand name in white lettering above horizontal information bars that start on the left side of the label and connect into a circular or arc design that contains an image of green plant material. One information bar is yellowish/gold and the other information bar is silver. A product name is placed between the pentagon design and the information bars.

(*Id.* ¶ 40.)

Scotts provides pictorial examples in its Second Amended Complaint:



(*Id.*)

Scotts alleges that this trade dress is highly distinctive in the control industry. (*Id.* ¶ 42.) The ORTHO Black Trade Dress has become favorably known among consumers as used in connection with Scotts' products, as it has been used on control products sold throughout the United States. (*Id.* ¶¶ 44–45.) The sales of products with the ORTHO Black Trade Dress are substantial. (*Id.* ¶ 48.)

### C. Yellow Barrier Design

Scotts uses images of a home interior, set off by doors, featuring yellow lines where pests could be:



(*Id.* ¶ 53.) These yellow lines are barriers ("Yellow Barrier Design"). (*Id.*) OMS is the author and exclusive copyright owner of the Yellow Barrier Design. (*Id.* ¶ 54.)

### D. Alleged Improper Use and Misrepresentations by SBM

Scotts alleges that SBM improperly copies and uses Scotts' marks. Specifically, Scotts alleges that SBM markets and sells its products under a pentagonal red design mark similar to Scotts' Red Marks, uses trade dress that imitates and infringes Scotts' distinctive ORTHO Black

5

Trade Dress, uses a design similar to the ORTHO Black Label, and uses a design that imitates, copies, and is similar to the Yellow Barrier Design. (*Id.* ¶¶ 58–65.)

SBM's black trade dress uses a black background, slight gradations of gray, a prominent placement of its red pentagonal brand name, horizontal information bars that start on the left side of a label and connect into a circular or arc design with an image of a green plant, and one information bar is yellowish/gold while the other is silver. (*Id.* ¶¶ 66–67.) Scotts provides the following visual:

 

(*Id.* ¶ 67.) Scotts alleges that this was intended as an imitation of the ORTHO Black Trade Dress. (*Id.* ¶ 69.) SBM sells its products under its similar black trade dress and red mark throughout the same channels as Scotts, resulting in confusion to consumers, thus harming Scotts. (*Id.* ¶¶ 70–79.) Scotts alleges similar injuries arising from SBM's use of a similar design to the Yellow Barrier Design. (*Id.* ¶¶ 80–82.)

Scotts also alleges that SBM misrepresents the efficacy of its products. Scotts alleges that, despite SBM's advertising, SBM's Extended Control Brush Killer product does not provide its alleged protection for up to 12 months or 365 days. (*Id.* ¶¶ 83–85.)

## II.    Procedural Background

Scotts filed its Second Amended Complaint on February 5, 2024, alleging fourteen counts:

**Count I**:        Infringement of OMS Investments' Registered Red Marks (15 U.S.C. § 1114)

**Count II**:       Federal False Designation of Origin and Federal Unfair Competition Relating to Scotts' Red Marks (15 U.S.C. § 1125(a))

**Count III**:      Trademark Dilution of Blurring and Tarnishment of OMS Investments' Red Marks (15 U.S.C. § 1125(c))

**Count IV**:       Violation of Ohio's Deceptive Trade Practices Act Relating to Scotts' Red Marks

**Count V**:        Common Law Unfair Competition Relating to Scotts' Red Marks

**Count VI**:       Federal False Designation of Origin and Federal Unfair Competition Relating to ORTHO Black Trade Dress (15 U.S.C. § 1125(a))

**Count VII**:      Violation of Ohio's Deceptive Trade Practices Act Relating to ORTHO Black Trade Dress

**Count VIII**:     Common Law Unfair Competition Relating to ORTHO Black Trade Dress

**Count IX**:       Cancellation of United States Registration No. 6981944 (15 U.S.C. § 1119)

**Count X**:        Cancellation of United States Registration No. 7140175 (15 U.S.C. § 1119)

**Count XI**:       Copyright Infringement Relating to OMS Investments' Yellow Barrier Design (17 U.S.C. §§ 106 and 501)

**Count XII**:      Copyright Infringement Relating to OMS Investments' ORTHO Black Label (17 U.S.C. §§ 106 and 501)

**Count XIII**:     False Advertising Relating to Defendant's Brush Killer Product (15 U.S.C. § 1125(a))

**Count XIV**:      Violation of Ohio's Deceptive Trade Practices Act Relating to Defendant's Brush Killer Product

(Am. Compl., ECF No. 44.)

SBM moves to dismiss Counts III, VI, VII, VIII, XII, XIII, and XIV.  (Def. Mot., ECF No.

45.)[1]  Scotts responded in opposition (Pl. Resp., ECF No. 48), and SBM replied to the motion to dismiss (ECF No. 49).  This matter is now ripe for the Court's review.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted.  While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 697 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (clarifying plausibility standard articulated in *Twombly*).  Further, "[a]lthough for purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* at 678 (quoting *Twombly,* 550 U.S. at 555) (internal quotations omitted).

## ANALYSIS

SBM moves to dismiss seven counts of Scotts' fourteen-count Second Amended Complaint: Counts III, VI, VII, VIII, XII, XIII, and XIV.  The Court addresses each Count below.

## I.    Count III: Trademark Dilution of Blurring and Tarnishment of OMS Investments' Red Marks (15 U.S.C. § 1125(c))

SBM argues that Count III fails to state a claim for trademark dilution involving the Red Marks.  While trademark dilution claims require multiple elements, SBM only contests the first—

---

[1] SBM previously filed motions to dismiss Scotts' Complaint and First Amended Complaint. (ECF Nos. 5, 19.)  Because Scotts' Second Amended Complaint supersedes his prior allegations, SBM's first and second motions to dismiss are **DENIED as moot**.

whether these marks are "famous."

Section 43(c) of the Lanham Act protects against dilution of trademarks only if the trademark is "famous." 15 U.S.C. § 1125(c). A mark is "famous" only if it is "widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Id.* § 1125(c)(2)(A). Determining this requires consideration of four factors: (1) the duration, extent, and reach of advertising and publicity of the mark; (2) the amount, volume, and extent of product sales under the mark; (3) actual recognition of the mark; and (4) whether the mark is federally registered. *Id.*; *see also Kibler v. Hall*, 843 F.3d 1068, 1083 (6th Cir. 2016). To be famous, courts have required the mark to be a household name, such that "when the general public encounters the mark in almost any context, it associates the term, at least initially, with the mark's owner." *Id.* at 1083.

SBM contends that Scotts did not plead sufficient factual allegations in support of its trademark dilution claim in Count III. Each factor, according to SBM, weighs against Scotts. The Court disagrees.

*First*, consider the duration, extent, and reach of advertising and publicity of the mark. 15 U.S.C. § 1125(c)(2)(A)(i). While SBM contends that "[n]o detail is provided [] about the actual extent, duration, or reach of Scotts' use, marketing, advertising or other publicity involving the marks," (SBM Mot., ECF No. 45, at PageID # 1150–51), Scotts includes several allegations regarding these aspects of Factor 1. For example, Scotts alleges it has manufactured, marketed, and sold products under the Red Mark since at least as early as 1995. (Sec. Am. Compl., ¶ 16.) Scotts alleges it has sold its products throughout the United States under the Red Design Mark since as early as 2010 (*id.* ¶ 26), that it has spent at least tens of millions of dollars on promoting its products under the Red Marks on a nationwide basis (*id.* ¶ 36), and that its efforts have caused

consumers to favorably associate the Red Design Mark with Scotts' Ortho Products (*id.* ¶ 31). Scotts has marketed its ORTHO Products under the Red Marks on social media (*id.* ¶ 28), in retail stores (*id.* ¶ 19), and in print and television advertisements (*id.* ¶¶ 18, 30). These allegations support Factor 1, weighing in favor of a plausible "famous" allegation.

*Second*, consider the amount, volume, and extent of product sales under the mark. 15 U.S.C. § 1125(c)(2)(A)(ii). For this factor, Scotts alleges that it advertises and sells its ORTHO Products under the Red Mark throughout the United States (Sec. Am. Compl., ¶ 19), and that it has made hundreds of millions of dollars in sales of its products under the Red Marks throughout the United States (*id.* ¶ 36). These allegations allege a financial value and geographical extent associated with the volume and extent of sales under the marks. While less detailed than the allegations in support of Factor 1, Factor 2 also weighs in favor of a plausible allegation that the Red Marks are "famous."

*Third*, consider the actual recognition of the mark. 15 U.S.C. § 1125(c)(2)(A)(iii). Scotts alleges it invested substantial resources developing and marketing ORTHO Products under the Red Mark, thus establishing the goods in the minds of consumers as high-quality goods offered by Scotts. (Sec. Am. Compl., ¶ 17.) Scotts further alleges that the Red Marks are known favorably among consumers, becoming "an invaluable symbol of the source of products bearing the Red Mark." (*Id.* ¶¶ 20, 31.) And due to its alleged widespread publicity in the United States, "when consumers . . . encounter the Red Marks, they immediately associate the Red Marks with Scotts." (*Id.* ¶ 36.) These allegations are not legal conclusions but factual allegations regarding consumer recognition of the marks at issue. Factor 3 weighs in favor of Scotts.

*Fourth*, consider whether the mark is federally registered. 15 U.S.C. § 1125(c)(2)(A)(iv). Here, the Red Marks are federally registered. (Sec. Am. Compl., ¶¶ 21, 32.) While SBM argues

that "this fact alone is not sufficient to establish that [the Red Marks] are plausibly famous for purposes of a trademark dilution claim," this factor indisputably weighs in Scotts' favor, along with the other factors.

SBM's arguments would require more detailed factual allegations than necessary at this early stage of litigation, wherein the Court is required to draw all reasonable inferences in favor of Scotts and treat the allegations in the Second Amended Complaint as true. As the case proceeds, Scotts will have to establish these allegations as true through evidence. Scotts' Second Amended Complaint plausibly alleges that the Red Marks are famous, therefore stating a plausible claim for relief under Count III, trademark dilution of the Red Marks.

Accordingly, the Court **DENIES** SBM's motion to dismiss Count III.

## II. Count VI: Federal False Designation of Origin and Federal Unfair Competition Relating to ORTHO Black Trade Dress (15 U.S.C. § 1125(a))

SBM argues that Scotts' Count VI fails to state a viable claim for unfair competition under the Lanham Act for the ORTHO Black Trade Dress. (SBM Mot., ECF No. 45, at PageID # 1157 (citing 15 U.S.C. § 1125(a)).) The Lanham Act, Section 43(a), requires plaintiffs to allege that (1) its unregistered trade dress is protectable; (2) the trade dress is primarily nonfunctional; and (3) there is a likelihood of confusion between its trade dress and the competing good's trade dress. *Herman Miller, Inc., v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 308 (6th Cir. 2001). SBM only challenges the first element—whether the ORTHO Black Trade Dress is "protectable." SBM Mot., ECF No. 45, at PageID # 1157.) Specifically, SBM argues that the Second Amended Complaint does not plausibly allege protectability because it (A) does not identify the trade dress with sufficient specificity; (B) lacks sufficient facts plausibly showing that the trade dress is distinctive; and (C) does not allege facts plausibly showing that the product line bearing the claimed trade dress has a consistent overall look. (*Id.* at PageID # 1157–67.) The Court rejects

11

each argument.

### A. Sufficient Identification of Trade Dress

"To recover for trade-dress infringement under § 43(a) of the Lanham Act, a party must first identify what particular elements or attributes comprise the protectable trade dress." *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 768 (6th Cir. 2005) (citing *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 634 (6th Cir. 2002)). "Without [] a precise expression of the character and scope of the claimed trade dress, litigation will be difficult, as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market." *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 415 (6th Cir. 2006) (quoting *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997)).

> The Second Amended Complaint identifies the ORTHO Black Trade Dress as follows:
>
> The distinctive packaging of certain Scotts' ORTHO control products consists of a unique arrangement of colors, graphic elements, font styles and text, with a black background with some lighter gradations of gray, a prominent placement of a red pentagon containing a brand name in white lettering above horizontal information bars that start on the left side of the label and connect into a circular or arc design that contains an image of green plant material. One information bar is yellowish/gold and the other information bar is silver. A product name is placed between the pentagon design and the information bars.

(Sec. Am. Compl., ¶ 40.) Scotts includes an image of the trade dress alongside its description. (*Id.*)

SBM argues that this description and image is insufficient. First, SBM argues that describing the trade dress as "a unique arrangement of colors, graphic elements, font styles and texts" is overly generic. (Def. Mot., ECF No. 45, at PageID # 1158–59.) Then SBM argues that Scotts' use of "with," which follows its more general description, gives them inadequate notice because "it does not clearly delineate the boundaries of protection that [Scotts] is claiming." (*Id.* (quoting *EVIG, LLC v. Mister Brightside, LLC*, No. 223CV186JCMBNW, 2023 WL 5717291, at

*5 (D. Nev. Sept. 5, 2023)).) There, the District of Nevada found that language such as "including" or "for example" gave the defendant and court inadequate notice because they are non-limiting qualifiers. *Mister Brightside*, 2023 WL 5717291, at *5.

The Court is not persuaded by SBM's arguments. The Court does not read "with" to be a non-limiting qualifier in this instance. Qualifiers such as "including, but not limited to," "for example," or—as stated in this very sentence—"such as," are non-limiting qualifiers that leave open the possibility for other examples. SBM's suggestion that Scotts needs to "offer even a hint why it did not list the claimed features using the limiting qualifier 'consisting of,'" is not well-taken. (Def. Reply, ECF No. 49, at PageID # 1331–32.).

Scotts counters that its trade dress is described in a "closed manner" because it uses the phrase "consists of" prior to describing its trade dress. Thus, Scotts does use "consists of," just not in the precise manner SBM prefers. SBM argues that because Scotts placed "consists of" at the opening portion of its description, it merely introduces Scotts' phrase that the trade dress consists of "a unique arrangement of colors, graphic elements, font styles and text." (*Id.* at PageID # 1330–31.) Given the image Scotts includes alongside its description, the Court rejects SBM's argument.

SBM further contends that the image Scotts includes does not dispel its confusion and argues that Scotts should have connected the image to the particular textual description. The Court disagrees, as the description Scotts provides is easily connected to particular parts of its image.

B.      **Whether the Trade Dress is Distinctive**

SBM also argues that Count VI fails because Scotts does not plead facts sufficient to state a plausible allegation that the ORTHO Black Trade Dress is distinctive. (Def. Mot., ECF No. 45, at PageID # 1161.) Scotts counters that its trade dress is both inherently distinctive and has

13

obtained a secondary meaning. (Pl. Resp., ECF No. 48, at PageID # 1224.) The Court agrees with Scotts that it plausibly alleges its trade dress has obtained a secondary meaning, and therefore does not address whether it is inherently distinctive.

Courts in the Sixth Circuit apply a seven-factor test to determine whether trade dress has obtained secondary meaning, considering:

> (1) direct consumer testimony, (2) consumer surveys, (3) exclusivity, length, and manner of use, (4) amount and manner of advertising, (5) amount of sales and number of customers, (6) established place in the market, and (7) proof of intentional copying.

*Gen. Motors Corp.*, 468 F.3d at 418 (citing *Mktg. Displays, Inc. v. TrafFix Devices, Inc.*, 200 F.3d 929, 937 (6th Cir. 1999), *rev'd on other grounds, TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001)).

SBM argues that these factors do not support plausible secondary meaning because Scotts does not allege direct consumer testimony or consumer surveys (factors one and two), does not allege how long Scotts has allegedly used the ORTHO Black Trade Dress (factor 3), only alleges as a conclusion that Scotts has extensively advertised with its trade dress (factor four), alleges no details about the number of customers who have purchased products bearing the trade dress (factor five), includes only conclusory allegations regarding whether the trade dress is established in the market (factor six), and that the Court should be skeptical of Scotts' allegations of intentional copying made on "information and belief" (factor seven). (Def. Reply, ECF No. 49, at PageID # 1334–37.)

Accepting SBM's argument would subject Scotts to a higher standard than required at this stage. Courts "apply this seven-factor test in order to determine if [a plaintiff] has sufficiently *proven* that the trade dress has acquired a secondary meaning." *Gen. Motors Corp.*, 468 F.3d at 418 (emphasis added). While Scotts does not cite consumer surveys, a precise timeframe for how

14

it has used the trade dress, or identify the number of customers who purchased products bearing the ORTHO Black Trade Dress, Scotts' Second Amended Complaint includes sufficient allegations, taken as true, that plausibly allege its trade dress has obtained secondary meaning. It alleges how consumers associate Scotts with its trade dress, that sales occur throughout the United States and are substantial, and that it markets its trade dress nation-wide, among other relevant allegations. Whether, and to what extent, these allegations are true is a matter more fit for post-discovery motions. (Sec. Am. Compl., ¶¶ 39, 44–45, 48.)

Scotts plausibly alleges that its trade dress obtained secondary meaning.

### C. Trade Dress with Consistent Overall Look

Scotts clarifies that it does not assert a claim involving trade dress across a line or series of products. (Pl. Resp., ECF No. 48, at PageID # 1223.) Rather, it asserts its claims regarding the specific product shown in Paragraph 40 and Exhibit D of its complaint— the "GroundClear" product. (*Id.*) Scotts has plausibly alleged that its ORTHO Black Trade Dress is consistent across the "GroundClear" products. Indeed, as Scotts argues, SBM's ability to assess other Scotts' products and determine they lack the defined trade dress supports Scotts' claims. (*See* Def. Mot., ECF No. 45, at PageID #1162–66.)

Accordingly, because Scotts sufficiently identifies its trade dress and the trade dress is distinctive, the Court **DENIES** SBM's motion to dismiss Count VI.

### III. Count VII: Violation of Ohio's Deceptive Trade Practices Act Relating to ORTHO Black Trade Dress (O.R.C. §§ 4165.01–04)

SBM argues that Scotts' claim for violation of the Ohio Deceptive Trade Practices Act is preempted by the Copyright Act and fails to state a claim. Because the Court agrees that Scotts' Ohio state law trade practices claims are preempted by the Copyright Act, the Court need not address SBM's Rule 12(b)(6) arguments.

State laws are preempted by 17 U.S.C. § 301(a) of the Copyright Act if two prerequisites are met.  "First, the work at issue must fall within the scope of the 'subject matter of copyright' as defined in Sections 102 and 103 of the Copyright Act."  *Slep-Tone Ent. Corp. v. Arrowood*, No. 2:10-CV-592, 2011 WL 4482082, at *4 (S.D. Ohio Sept. 26, 2011) (Watson, J.) (citing *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001)).  Second, the rights granted under state law must be "equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106."  *Wrench*, 256 F.3d at 453.  These are respectively referred to as the "subject matter" and "equivalency" elements.  The "subject matter" element is not at issue here, as Scotts only contests that the rights it asserts are not equivalent to its federal copyright rights.  (Pl. Resp., ECF No. 48, at PageID # 1230–31.)

The Sixth Circuit has held that:

> [I]f an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.

*Wrench*, 256 F.3d at 456.  The parties agree that Scotts' state law claims have an extra element— proof of likelihood of confusion.  (Def. Reply, ECF No. 49, at PageID # 1342; Pl. Resp., ECF No. 48, at PageID # 1231.)  They disagree regarding whether this extra element "changes the nature of the action so that it is qualitatively different from a copyright infringement claim," as *Wrench* requires.  256 F.3d at 456.

Scotts claims that its copyright and trade dress claims differ.  Specifically, Scotts claims its trade dress claim "addresses [SBM's] infringing sale of its control products bearing the ORTHO Black Trade Dress, and not merely the copying and sale of the Trade Dress and/or the ORTHO Black Label alone."  (Pl. Resp., ECF No. 48, at PageID # 1231.)  Thus, Scotts argues that its copyright claim involves SBM's copying of the trade dress—and nothing more—while its trade

16

dress claims involve copying the trade dress and selling them in competition to Scotts' products. (*Id.* at PageID # 1232.) These are not "qualitatively" different.

Although Scotts cites *Hua-Cheng Pan v. Kohl's Dep't Stores, Inc.* as a distinguishable case, the Court finds that its reasoning similarly bars Scotts' claims here. No. 2:12-CV-01063, 2013 WL 5181144, at *8 (S.D. Ohio Sept. 12, 2013) (Marbley, J.). There, this Court held that the plaintiff's claim was preempted by the Copyright Act because "[t]he underlying action—Defendants' alleged infringement upon Plaintiff's Work—[was] the same" for the copyright infringement, Ohio Deceptive Trade Practices Act, and Ohio common-law claims. (*Id.*) (citing *ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts*, 402 F.3d 700, 714 (6th Cir. 2005)).

As SBM argues, based on Scotts' allegations, the source of any likelihood of confusion—the extra element required to advance Scotts' state-law claims—is the same activity that forms Scotts' copyright claim. (Def. Mot., ECF No. 45, at PageID # 1170.) Accordingly, the Court finds that Scotts' state-law claim—despite containing an extra element—does not "alter qualitatively the nature of the litigation sufficiently to distinguish them from [its] copyright infringement claim." *Hua-Cheng Pan*, 2013 WL 5181144, at *8.

Because the Court does not find that Scotts' state-law claims are qualitatively different from its copyright infringement claims, the "equivalency" prong is satisfied. Because both the subject matter and equivalency prongs are satisfied, Scotts' state-law claim is preempted by the Copyright Act. Therefore, the Court **GRANTS** SBM's motion to dismiss Count VII.

## IV. Count VIII: Common Law Unfair Competition Relating to ORTHO Black Trade Dress

SBM moves to dismiss Count VIII for the same reasons it seeks dismissal of Count VII. Because the Court agreed that Scotts' state-law claims are preempted by the Copyright Act, the

Court **GRANTS** SBM's motion to dismiss Count VIII.

**V.     Count XII: Copyright Infringement Relating to OMS Investments' ORTHO Black Label (17 U.S.C. §§ 106 and 501)**

"[T]he long-accepted policy of the copyright laws is that they protect all manner of works—mundane and lofty, commercial and non-commercial, even the dull and workaday—so long as they satisfy the modest imperatives of originality." *Premier Dealer Servs., Inc. v. Allegiance Administrators, LLC*, 93 F.4th 985, 991 (6th Cir. 2024). A plausible claim for copyright infringement must allege facts demonstrating (1) ownership of a copyright, and (2) copying of that copyright by the defendant. *Halper v. Sony/ATV Music Publ'g, LLC*, No. 18-5915, 2019 WL 994524, at *2 (6th Cir. Feb. 15, 2019); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). As the parties correctly note, plaintiffs must show that the copied elements are the "elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). "A plaintiff may demonstrate that original elements of its work were copied through direct or indirect evidence." *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 536 (6th Cir. 2020).

When alleging copying by indirect evidence, a plaintiff "may establish an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." *Id.* (quoting *Kohus*, 328 F.3d at 853–54) (internal quotation marks omitted).

To determine whether the second requirement—substantial similarity—is met, the Court conducts another two-step inquiry. The Court "must first identify which aspects of [the plaintiff's] works, if any, are protectible by copyright." *Id.* at 537 ("The first step filter[s] out the unoriginal, unprotectible elements—elements that were not independently created by the inventor, and that possess no minimal degree of creativity."). Second, the Court "must determine whether the

18

allegedly infringing works, or elements of those works, are substantially similar to [the plaintiff's] protected works, or protected elements of [the plaintiff's] work." *Id.*

SBM moves to dismiss Count XII, arguing that it fails to state a claim for relief. SBM claims that as a "thin copyright," the ORTHO Black Label is only protected against "virtually identical copying." (SBM Mot., ECF No. 45, at PageID # 1176.) SBM does not address any other requirements or factors. Scotts argues that the copyright protection is not "thin," the proper test is "substantially similar" not "virtually identical copying," and under the "substantially similar" test, it has adequately pled copyright infringement. (Pl. Resp., ECF No. 48, at PageID # 1233–40.) The Court finds that Count XII plausibly states a claim.

SBM cites *Enchant Christmas* to argue that the ORTHO Black Label is only entitled to "thin copyright" protection. (SBM Mot., ECF No. 45, at PageID # 1175.) Though the Sixth Circuit in *Enchant Christmas* cited the Ninth Circuit's decision articulating a "virtually identical" test for thin copyrights, the *Enchant Christmas* court did not apply that test. (*See Enchant Christmas,* 958 F.3d at 538 (citing *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003)).

Immediately after affirming the District Court's finding that the plaintiff was entitled to a "thin copyright at best," the Sixth Circuit assessed substantial similarity as follows:

> Two works are substantially similar when "they are so alike that the later (unprotected) work can fairly be regarded as appropriating the original expression of the earlier (protected) work." Courts "consider substantial similarity from the viewpoint of the intended audience," which is "[n]ormally, ... the lay public, or the ordinary reasonable person[.]"

*Enchant Christmas*, 958 F.3d at 538–39 (cleaned up and citations omitted). Thus, the Sixth Circuit did not assess whether the second work was "virtually identical" to the first—it assessed whether it was substantially similar. *See id.* Regardless of whether Scotts is entitled to "thin copyright" protection or not, this standard application of the substantially similar test guides and binds this Court.

Scotts has plausibly alleged that SBM's black trade dress is substantially similar to the ORTHO Black Label. Each have a primarily black background, lighter gradations of gray, a prominent placement of a red pentagon containing white lettering where the brand name is, and horizontal information bars in yellowish/gold and silver that extend from the left side of the label to a circular image depicting green plant material. (Sec. Am. Compl., ¶ 67.) The ordinary reasonable person could view these trade dresses as substantially similar.

Accordingly, the Court **DENIES** SBM's motion to dismiss Count XII.

## VI. Count XIII: False Advertising Relating to Defendant's Brush Killer Product (15 U.S.C. §1125(a))

SBM moves to dismiss Count XIII, Scotts' claim for false advertising under the Lanham Act, for failure to state a plausible claim. (Def. Mot., ECF No. 45, at PageID # 1180.)

To state a claim for false advertising under Section 43(a) of the Lanham Act, a plaintiff must plausibly allege that "(1) the defendant has made false or misleading statements of fact concerning his own product or another's; (2) the statement actually or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999).

SBM challenges the first element, claiming that Scotts has not alleged facts plausibly showing that SBM made false or misleading statements about its products. (Def. Mot., ECF No. 45, at PageID # 1180 (citing *Ashley Furniture Indus., Inc. v. Am. Signature, Inc.*, No. 2:11-CV-427, 2015 WL 12999664, at *6 (S.D. Ohio Mar. 12, 2015) (Watson, J.)).) The Court disagrees.

The Second Amended Complaint alleges that SBM's advertising statements that its Brush

Killer Product kills brush for up to 12 months, protects for up to 12 months, and provides consumers with up to 365 days of control are false or misleading. (Sec. Am. Compl., ¶¶ 83, 180.) Scotts alleges that these statements are made in a manner that will deceive a substantial portion of consumers seeking to purchase weed control products, as the products do not provide the advertised protection for up to 12 months or 365 days. (*Id.* ¶ 84.)

The Court finds that these allegations are sufficient at the motion to dismiss stage. Discovery will reveal whether these statements were, in fact, false or misleading. At this stage, Scotts has plausibly alleged that they are. Therefore, the Court **DENIES** SBM's motion to dismiss Count XIII.

## VII. Count XIV: Violation of Ohio's Deceptive Trade Practices Act Relating to Defendant's Brush Killer Product

The parties agree that an analysis of a false advertising claim under the Lanham Act is the same as for false advertising claims under the Ohio Deceptive Trade Practices statute. (Pl. Resp., ECF No. 48, at PageID # 1242; Def. Reply, ECF No. 49, at PageID # 1354.) Because "an analysis appropriate for a determination of liability under section 43(a) of the Lanham Act is also appropriate for determining liability under the Ohio Deceptive Trade Practices Act," the Court similarly **DENIES** SBM's motion to dismiss Count XIV. *Clark v. Walt Disney Co.*, 642 F. Supp. 2d 775, 784–85 (S.D. Ohio 2009) (Holschuh, J.) (quoting *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1431 (S.D. Ohio 1990) (Kinneary, J.)).

## CONCLUSION

For the reasons stated herein, the Court **GRANTS in part** and **DENIES in part** SBM's Partial Motion to Dismiss Second Amended Complaint. (Def. Mot., ECF No. 45.) Counts VII and VIII are **DISMISSED**, while Counts III, VI, XII, XIII, and XIV remain.

SBM's prior motions to dismiss are **DENIED as moot**. (ECF Nos. 5, 19.)

21

This case remains open.

**IT IS SO ORDERED.**


**9/18/2024**                          **s/Edmund A. Sargus, Jr.**
**DATE**                               **EDMUND A. SARGUS, JR.**
                                       **UNITED STATES DISTRICT JUDGE**