UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE SCOTTS COMPANY LLC, *et al.*,

     Plaintiffs,

                                Case No. 2:23-cv-1541

     v.                         Judge Edmund A. Sargus, Jr.

                                Magistrate Judge Elizabeth P. Deavers

SBM LIFE SCIENCE CORP.,

     Defendant.

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss for Failure to State a Claim of Defendant-Counterplaintiff's First Amended Counterclaims (ECF No. 78) and a Motion to Dismiss Counterclaims and Motion to Strike Affirmative Defenses (ECF No. 70) filed by Plaintiffs The Scotts Company LLC and OMS Investments, Inc. (together, "Scotts"). (ECF No. 78.)

For the reasons stated in this Opinion and Order, the Court **GRANTS in part and DENIES in part** Plaintiffs' Motion to Dismiss for Failure to State a Claim of Defendant-Counterplaintiff's First Amended Counterclaims (ECF No. 78), **DENIES as moot** Plaintiffs' Motion to Dismiss Counterclaims (ECF No. 70), and **GRANTS in part and DENIES in part** Plaintiffs' Motion to Strike Affirmative Defenses (ECF No. 70). The Court **DISMISSES** Defendant SBM Life Science Corp.'s ("SBM") counterclaims against Plaintiffs for cancellation of Plaintiffs' trademarks based on fraud (Counts I and III). SBM's other counterclaims for cancellation of Plaintiffs' trademarks based on abandonment (Counts II, IV, and V) can continue.

## BACKGROUND

### I.   Procedural History

Scotts brought this trademark infringement, copyright infringement, and unfair

competition action against SBM in May 2023, claiming SBM improperly copies and uses Scotts' registered trademarks. (ECF Nos. 1, 44.) SBM moved to dismiss Scotts' claims. (ECF No. 45.) The Court issued an Opinion and Order granting in part and denying in part SBM's Motion to Dismiss, dismissing two of Scotts' fourteen claims against SBM and allowing the rest to proceed. *Scotts Co. LLC v. SBM Life Sci. Corp.*, 749 F. Supp. 3d 865, 881–82 (S.D. Ohio 2024). A more complete background of the case is provided in that Opinion and Order, including a full list of the claims brought by Scotts. *See id.* at 869–73.

SBM brought counterclaims against Scotts and asserted thirty-two affirmative defenses to Scotts' claims against it. (ECF No. 67.) Scotts filed a Motion to Dismiss Counterclaims and Motion to Strike Affirmative Defenses. (ECF No. 70.) SBM then brought five amended counterclaims, all for cancellation of three of Scotts' registered trademarks under 15 U.S.C. § 1119. (ECF No. 73.) SBM also filed a response in opposition to Scotts' Motion to Strike Affirmative Defenses. (ECF No. 74.) Scotts filed a reply. (ECF No. 77.) Scotts then filed a Motion to Dismiss SBM's amended counterclaims. (ECF No. 78.) SBM filed a response in opposition to the Motion to Dismiss. (ECF No. 81.) Scotts filed a reply. (ECF No. 86.)

SBM claims Scotts' improper trademarks harm SBM because, as in this present lawsuit, Scotts is suing SBM for trademark infringement regarding those same trademarks. (*E.g.,* ECF No. 73, ¶ 29.) SBM requests cancellation of Scotts' "Red Rectangle Mark" on the basis that it was obtained by fraud on the United States Patent and Trademark Office ("USPTO") (Count I) and that Scotts has abandoned its use of that mark (Count II). (*Id.* ¶¶ 14–35.) SBM also asks for cancellation of Scotts' "Red Rectangle with Black Border Mark" based on fraud (Count III) and abandonment (Count IV). (*Id.* ¶¶ 36–58.) Last, SBM requests cancellation of the "Red and Yellow ORTHO Design Mark" based on abandonment (Count V). (*Id.* ¶¶ 59–66.)

Scotts' three registered trademarks at issue are depicted below:



(ECF No. 78, PageID 2065; ECF No. 73, ¶¶ 24, 37, 61.)

## II. Fraud Claims: Red Rectangle Mark and Red Rectangle with Black Border Mark

In Counts I and III, SBM alleges Scotts made multiple materially false and misleading statements to the USPTO as part of its trademark applications for the Red Rectangle Mark and the Red Rectangle with Black Border Mark.

Scotts filed a trademark application for the Red Rectangle Mark in December 2003. (ECF No. 73, ¶ 15.) In July 2004, the USPTO refused registration of the mark and determined it "is not inherently distinctive . . . because the proposed mark is merely a red rectangle that carries text." (*Id.* ¶ 19.) In October 2004, Scotts filed a response to the USPTO's initial refusal to register the trademark and applied for registration of the mark under 15 U.S.C. § 1052(f) based on the mark's acquired distinctiveness. (*Id.* ¶ 20.) The USPTO approved the application based on acquired distinctiveness and issued the Red Rectangle Mark trademark in September 2005. (*Id.* ¶ 24.) Scotts obtained the trademark registration for the Red Rectangle with Black Border Mark by the same process at the same time. (*Id.* ¶¶ 36–51.)

SBM claims the marks should be cancelled because Scotts fraudulently obtained them from the USPTO. To support its claims, SBM references several statements made by Scotts. In its December 2003 trademark registration applications, Scotts represented to the USPTO that the

designs were "then in use in interstate commerce by [Scotts] through its licensees." (*Id.* ¶¶ 17, 39.) In Scotts' October 2004 responses to the USPTO's refusals to register the marks, Scotts stated it "has used its trademark[s] for a significant period of time" and that the designs were "in widespread use on [its] products." (*Id.* ¶¶ 21, 43.) In Scotts' concurrent applications for registration based on the marks' acquired distinctiveness, Scotts stated that the designs have "become distinctive through [their] substantially exclusive and continuous use in commerce" and that Scotts had made use of the designs "for at least the nine (9) years immediately before the date of this statement," meaning since October 22, 1995. (*Id.* ¶¶ 22, 44.)

SBM's fraud allegations regarding these statements fall into three general categories. First, SBM alleges Scotts made materially false statements by representing to the USPTO that the designs were "in use" when, in fact, they were used merely as a background for the ORTHO composite design logo. (*Id.* ¶¶ 17, 18, 21–22, 25, 39–40, 43–44, 47.) Second, SBM alleges Scotts' similar statements were materially false because Scotts "was merely an entity that held title to intellectual property assets and did not market or sell products" and thus "had never itself used the design[s] for which registration was sought." (*Id.* ¶¶ 21–22, 25, 43–44, 47.) Third, SBM alleges Scotts' statements that it had made "substantially exclusive and continuous use" of the marks, and that it had done so since October 22, 1995, were materially false because Scotts did not own the ORTHO line of business (for which the marks were used) at the time and only acquired the ORTHO line of business and brand from Monsanto "years later" in 1999. (*Id.* ¶¶ 22, 25, 44, 47.)

## III. Abandonment Claims: All Three Marks

In Counts II, IV, and V, SBM claims Scotts' marks should be cancelled because Scotts has abandoned their use. Regarding all three marks at issue, SBM alleges that Scotts does not currently make use of the marks (either on their own or as part of the background of an ORTHO mark), as

4

demonstrated by the marks' absence from products shown in Scotts' 2024 ORTHO products catalog and on the website for its ORTHO line of products, www.ortho.com. (ECF No. 73, ¶¶ 31, 54, 62.) SBM also alleges Scotts has not used any of the three marks "for at least 7 years or more," as demonstrated by the marks' absence from products featured in Scotts' ORTHO product catalogs for 2017 through 2024. (*Id.* ¶¶ 32, 55, 63.) SBM states Scotts' non-use of the three designs "has been knowing, intentional, and without intention to resume use in commerce." (*Id.* ¶¶ 33, 56, 64.)

## LEGAL STANDARD

To state a claim upon which relief may be granted, plaintiffs must satisfy the pleading requirements set forth in Rule 8(a), which requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (clarifying the plausibility standard from *Twombly*, 550 U.S. at 556). Furthermore, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, '[the court is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

## ANALYSIS

Because Scotts' Motion to Dismiss Counterclaims (ECF No. 70) relates to SBM's counterclaims (ECF No. 67) before they were superseded by SBM's First Amended Counterclaims (ECF No. 73), the Court **DENIES as moot** Scotts' Motion to Dismiss Counterclaims (ECF No.

70).

Turning to Scotts' Motion to Dismiss SBM's First Amended Counterclaims (ECF No. 78), the Court first addresses the legal standards governing SBM's requests for cancellation of Scotts' trademarks. With that landscape drawn, the Court addresses SBM's fraud-based claims before turning to SBM's abandonment-based claims. The Court concludes with Scotts' Motion to Strike (ECF No. 70).

## I. Standing and Grounds for Cancellation Under 15 U.S.C. § 1119

"A request for cancellation under [15 U.S.C.] § 1119 must be supported by a showing that (1) the party 'has standing to petition for cancellation because it is likely to be damaged,' and (2) 'there are valid grounds for discontinuing registration.'" *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 593 (6th Cir. 2015) (quoting *Coach House Rest. v. Coach & Six Rests.*, 934 F.2d 1551, 1557 (11th Cir. 1991)). SBM's standing to bring cancellation claims under § 1119 is not contested and is clear: Scotts is suing SBM for trademark infringement regarding, in part, the same registered trademarks that SBM now seeks to cancel. (*See* ECF No. 44, ¶¶ 16–23); *Graminex, L.L.C. v. Aktiebolaget Cernelle*, 451 F. Supp. 3d 732, 741 (E.D. Mich. 2020) ("Standing requires only that the petitioner have a 'real interest' in the cancellation proceeding." (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1161 (Fed. Cir. 2002))).

SBM does not dispute that Scotts' three marks at issue have become "incontestable" under 15 U.S.C. § 1065, meaning the registrations are "conclusive evidence of the validity of the registered mark." 15 U.S.C. § 1115(b); (ECF No. 78, PageID 2065; ECF No. 81, PageID 2372.) Although a trademark's incontestable status confers the trademark holder a "powerful protection," *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 159 (2015), a party accused of trademark infringement may raise several defenses against the trademark holder's right to

6

exclusive use of incontestable trademarks, including (1) "[t]hat the registration or the incontestable right to use the mark was obtained fraudulently" or (2) "[t]hat the mark has been abandoned by the registrant." 15 U.S.C. § 1115(b)(1)–(2); *see Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 1110 (S.D. Ohio 2011) (Marbley, J.).

Rather than raising fraud and abandonment as defenses to Scotts' trademark infringement claims against SBM under 15 U.S.C. § 1115(b), though, SBM goes on offense and asks the Court to cancel Scotts' trademarks under 15 U.S.C. § 1119 on grounds of fraud and abandonment. Under that statute, "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119.

"The power of federal courts to cancel a mark under the Lanham Act, as provided for under § 1119, is subject to [15 U.S.C.] § 1064 and limited to the grounds listed in the statute." *NetJets Inc. v. IntelliJet Grp., LLC*, 678 F. App'x 343, 348 (6th Cir. 2017). Valid grounds for cancellation of a registered trademark under 15 U.S.C. § 1064 include fraud and abandonment, as asserted here by SBM. 15 U.S.C. § 1064(3) ("A petition to cancel a registration of a mark, stating the grounds relied upon, may . . . be filed . . . [a]t any time if the registered mark . . . has been abandoned, or its registration was obtained fraudulently."). Federal courts may cancel registered marks with incontestable status under § 1119 on the grounds identified under § 1064. *See NetJets Inc.*, 678 F. App'x at 348–50; *see also H. H. Scott, Inc. v. Annapolis Electroacoustic Corp.*, 195 F. Supp. 208, 217 (D. Md. 1961) (holding that misrepresentation of the source of goods or services "is a ground for canceling the registration of [a] mark even though it has become otherwise incontestable").

Scotts argues that the incontestability status of its marks "immunizes them from attack

except on the limited grounds set forth in 15 U.S.C. § 1115(b)," but it does not dispute that incontestable marks are subject to potential cancellation for fraud and abandonment under the grounds identified in 15 U.S.C. § 1064. (ECF No. 78, PageID 2066–67.)

To be clear, SBM's cancellation claims are properly raised under 15 U.S.C. § 1119 on grounds of fraud and abandonment as listed under 15 U.S.C. § 1064, not under § 1115(b). Accordingly, the Court will assess SBM's claims in light of its cancellation powers under 15 U.S.C. § 1119 and § 1064.

## II.     SBM's Claims for Cancellation Based on Fraud

In the trademark registration context, "[f]raud occurs when the applicant knowingly makes false, material misrepresentations of fact to the USPTO with the intent to deceive." *Scooter Store,* 777 F. Supp. 2d at 1110 (citing *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009)). Fraud claims are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), under which the circumstances of fraud or mistake shall be stated with particularity. The Sixth Circuit has explained that "[s]o long as a [party] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *United States v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

### A.   Fraud Claims Regarding Initial Trademark Applications

The Court begins with SBM's claims that Scotts' trademarks for its Red Rectangle Mark and Red Rectangle with Black Border Mark should be cancelled because they were fraudulently obtained based on false statements made as part of Scotts' initial trademark registration applications in December 2003. SBM's claims on this basis fail for the simple reason that the USPTO rejected Scotts' initial trademark applications regarding both marks. It follows that no

plausible inference may be drawn that Scotts fraudulently obtained its trademarks based on statements made as part of those applications.

### B. Scotts' Designs as Mere Background for Text

Next, SBM claims that Scotts made materially false statements by representing to the USPTO (in Scotts' response to the USPTO's refusal to register its designs and in Scotts' application for trademarks based on acquired distinctiveness) that Scotts' designs were "in use" when they were, in fact, used only as mere background for text. Scotts made these same statements as part of its initial trademark applications. The USPTO rejected those initial applications and found that the marks were not inherently distinctive because they were merely used as the background for text. Presented with nearly identical statements as part of Scotts' trademark applications based on acquired distinctiveness, the USPTO approved the applications and issued the trademarks.

SBM's allegations regarding the use of the designs as background fail to raise a plausible inference that Scotts knowingly made false, material statements to the USPTO. SBM alleges, and Scotts agrees, that Scotts submitted "specimen[s] showing the mark as used in commerce" to the USPTO as part of its trademark applications that show the Red Rectangle Mark and the Red Rectangle with Black Border Mark used as the background for the text "ORTHO." (*See* ECF No. 73, ¶¶ 17, 21–22, 39, 43–44; ECF No. 78, PageID 2069–72.) SBM does not allege that Scotts otherwise attempted to mislead the USPTO that it used the marks independently rather than as components of a more comprehensive logo. In fact, it is undisputed that the USPTO rejected the initial applications on the basis that the marks were used as mere background for text and still issued them later based on the designs' acquired distinctiveness.

SBM's response in opposition to Scotts' Motion to Dismiss makes clear that SBM

primarily takes issue with the USPTO's decision to issue the marks based on acquired distinctiveness *despite* knowing that the designs were used merely as a background for text in a composite ORTHO logo, rather than *because* Scotts' made false representations about its use of the designs. (*See* ECF No. 81, PageID 2375–78 (citing case law regarding USPTO rejection of trademark applications for mere background components). But SBM's counterclaims in this lawsuit seek cancellation of trademarks based on fraud, not based on the USPTO's failure to correctly adjudicate trademark applications. As alleged, there is no plausible inference to be drawn from Scotts' use of the designs as background for text that Scotts made materially false statements to obtain its Red Rectangle and Red Rectangle with Black Border trademarks.

Even if SBM sufficiently alleged that Scotts made materially false statements to the USPTO, SBM fails to sufficiently allege that Scotts acted with the requisite intent to deceive. As discussed, Scotts' undisputed representations to the USPTO regarding its use of the designs were consistent, and its undisputed submission of specimens showing the designs used as a mere component of the composite "ORTHO" logo substantially undermine any potential inference of scienter. No plausible inference of fraudulent intent can be drawn from the facts as alleged by SBM based on Scotts' use of the designs as mere background for text.

### C. Scotts as the Entity "Using" the Designs After Acquiring the ORTHO Brand

Next, SBM alleges Scotts' statements that its designs were "in use" were false because Scotts "was merely an entity that held title to intellectual property assets and did not market or sell products" and thus "had never itself used the design for which registration was sought." (ECF No. 73, ¶¶ 21–22, 25, 43–44, 47.) These assertions also fail to raise a plausible inference of fraud.

SBM admits that "the ORTHO line of business and ORTHO brand were acquired by The Scotts Company from Monsanto in or about 1999." (*Id.* ¶ 22.) SBM does not allege facts about

whether Scotts subsequently assigned the ORTHO brand to another entity or whether, at the time of its trademark applications at issue, Scotts otherwise did not hold rights to the ORTHO brand or its licensees' use of the brand. Thus, it is not disputed that Scotts held the rights and title to the intellectual property assets that were used in Scotts' applications to register the Red Rectangle Mark and Red Rectangle with Black Border Mark as trademarks when it applied for them in 2003 and 2004.

Additionally, Scotts attached to its Motion to Dismiss copies of its applications to the USPTO for registration of trademarks for the Red Rectangle Mark (ECF No. 78-1) and the Red Rectangle with Black Border Mark (ECF No. 78-2). As government records publicly available from the USPTO's website that are also essential to SBM's counterclaim pleadings, the Court takes judicial notice of those documents for the purposes of Scotts' Motion to Dismiss. *See Total Benefits Plan. Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007) (Barrett, J.) (holding the Court may take judicial notice of "public records and government documents available from reliable sources on the Internet"). In those trademark applications, both dated December 22, 2003, Scotts stated to the USPTO that the marks were "now in use by [Scotts] through its licensees, whose use is controlled in all respects by [Scotts], and whose use inures solely to the benefit of [Scotts], and is in use in such commerce." (ECF No. 78-1, PageID 2149; ECF No. 78-2, PageID 2220.)

Based on the facts as alleged and the above records, SBM fails to plausibly allege that Scotts knowingly made a materially false statement to the USPTO or acted with an intent to deceive the USPTO by stating that the marks were "in use" by Scotts itself. First, as part of its initial trademark applications which were included as records with Scotts' subsequent applications based on acquired distinctiveness, Scotts expressly stated to the USPTO that the marks were in use

through its licensees. The full context of Scotts' representations to the USPTO sufficiently negates any potential inference of an intent to deceive. Second, as a matter of law, "[i]t is well-settled that use of a mark by a licensee inures to the benefit of the trademark owner." *Julie A. Moreno v. Pro Boxing Supplies*, 124 U.S.P.Q.2d 1028, 1035 (T.T.A.B. 2017); *see Storage Cap Mgmt. LP v. Robarco, Inc.*, No. 2:19-CV-4328, 2020 WL 7046961, at *3 (S.D. Ohio Dec. 1, 2020) (Graham, J.) (holding that an assignee "acquired all of the legal advantages of [a] trademark, including priority of use" from an assignor); *see also Sock It To Me, Inc. v. Aiping Fan*, No. 91230554, 2020 WL 3027605, at *4 (T.T.A.B. June 3, 2020) (citing additional cases). Third, SBM admits that Scotts had the rights to the ORTHO line of business and brand at the time of the trademark applications and the allegedly fraudulent representations at issue.

Accordingly, SBM's claims that Scotts fraudulently obtained its trademarks by representing to the USPTO that Scotts itself was the entity using the designs has no plausible basis in the facts as alleged by SBM.

### D.  Use of the Marks Before Scotts' Acquisition of the ORTHO Brand

Last, SBM alleges Scotts falsely represented that it had made "substantially [exclusive] and continuous use" of the marks "for at least the nine (9) years immediately before" its applications for trademark registrations based on acquired distinctiveness, which were filed in October 2004. (ECF No. 73, ¶¶ 22, 44.) These statements do not serve as a plausible basis for fraud for similar reasons as the previously assessed statements.

As alleged, Scotts was the applicant seeking trademark registration. U.S. trademark law expressly defines an "applicant" for a trademark registration to "embrace the legal representatives, predecessors, successors and assigns of such applicant or registrant." 15 U.S.C. § 1127. SBM alleges that Scotts acquired the rights to the ORTHO line of business and brand, and the associated

Red Rectangle Mark and Red Rectangle with Black Border Mark, from Monsanto "in or about 1999." (ECF No. 73, ¶¶ 22, 44.)

Furthermore, Scotts attached to its Motion to Dismiss a copy of Monsanto's January 1999 trademark assignment to Scotts, which states that Monsanto conveys to Scotts "all of its right, title, and interest in and to the said marks and trade names," including the ORTHO line of business and brand. (ECF No. 78-5, PageID 2351, 2355.) Because SBM claims that Scotts fraudulently obtained its trademarks by representing that it used the designs since at least October 1995, SBM has made Monsanto's assignment of the rights to the ORTHO business and brand a central part of the pleadings. For that reason, and because the assignment document is a public record available on the USPTO website, this Court takes judicial notice of the assignment document. *See Total Benefits Plan. Agency Inc.*, 630 F. Supp. 2d at 849.

When Scotts obtained the rights, title, and interest in the ORTHO line of business and associated designs from Monsanto in January 1999, it stepped into Monsanto's shoes, including Monsanto's prior use of the designs. *See OMS Invs. v. Regenerated Res. LLC*, No. C2-06-114, 2008 WL 896306, at *5 (S.D. Ohio Apr. 2, 2008) ("[F]ollowing a proper assignment, the assignee steps into the shoes of the assignor." (quoting *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 853 (3d Cir. 1986))). SBM has not alleged any facts about Monsanto's prior use of the designs or lack thereof. And it identifies no legal basis to support its claim that Scotts cannot assert its predecessor in interest's use of the designs as Scotts' own. (*See* ECF No. 81, PageID 2380–86.)

For these reasons, SBM fails to allege a plausible basis for its claim that Scotts fraudulently obtained its trademarks for the Red Rectangle Mark and Red Rectangle with Black Border Mark based on Scotts' representation that it had used the marks since October 22, 1995. The facts as

alleged do not support an inference that Scotts knowingly made a materially false representation to the USPTO or that it acted with an intent to deceive.

Because no plausible inference of fraud arises from the facts alleged by SBM regarding Scotts' applications for trademarks for the Red Rectangle Mark and the Red Rectangle with Black Border Mark, the Court **GRANTS** Scotts' Motion to Dismiss as to Counts I and III of SBM's counterclaims.

### III.    SBM's Claims for Cancellation Based on Abandonment

In SBM's remaining counterclaims (Counts II, IV, and V), SBM asserts that Scotts has abandoned the use of the Red Rectangle Mark, Red Rectangle with Black Border Mark, and Red and Yellow ORTHO Design Mark and asks the Court to cancel the three marks under 15 U.S.C. §§ 1119 and 1064. (ECF No. 73, ¶¶ 31, 54, 62.)

Trademark "abandonment may be asserted offensively," *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013), and is expressly identified as a ground for cancellation under 15 U.S.C. § 1064(3). "A mark is considered abandoned if 'its use has been discontinued with intent not to resume such use.'" *NetJets Inc. v. IntelliJet Grp., LLC*, 602 F. App'x 242, 245 (6th Cir. 2015) (quoting 15 U.S.C. § 1127 (defining "abandonment")); *see Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 575 (6th Cir. 2000) ("In order for a party to succeed on a claim of abandonment, it must prove the elements of both non-use and intent, *i.e.*, that the other party actually abandoned its mark through non-use and that it intended to do so."). "Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127. "A mark owner, however, does not need to use the mark in the precise manner that it was initially used or registered to prevent abandonment." *NetJets Inc.*, 602 F. App'x at 245 (citing 3 J. McCarthy, McCarthy on Trademarks and Unfair Competition § 17:23 (4th ed. 2014)).

### A. Discontinued Use

SBM alleges Scotts abandoned its use of all three marks at issue, whether on their own or as components of a composite ORTHO mark, for at least the last seven years. In support of this assertion, it alleges the marks have not appeared in ORTHO product catalogs since at least 2017. Scotts argues SBM's facts are insufficient to allege that the marks have not been used at all in commerce for at least three consecutive years. (ECF No. 78, PageID 2078.)

Accepting SBM's alleged facts as true, it has sufficiently alleged that Scotts has discontinued use of the three marks at issue. Without knowing more at this early stage, it is plausible to infer that Scotts has discontinued its use of the marks based on the absence of the marks (which were previously used on ORTHO brand products) from any products listed in ORTHO product catalogs from 2017 to the present. SBM has sufficiently pled discontinued use as to all three marks.

### B. Intent Not to Resume Use

SBM alleges Scotts intended not to resume use of the three discontinued marks, as demonstrated by its long and continuing period of non-use. Scotts argues the Sixth Circuit has held that "mere allegations of conduct suggesting non-use are an impermissible basis upon which to allege trademark abandonment." (ECF No. 78, PageID 2079 (citing *Kellogg Co. v. Exxon Corp.*, No. 98-6237/6360, 2000 WL 674205, at *15 (6th Cir. Apr. 6, 2000)).

Scotts mischaracterizes the Sixth Circuit's holding in *Kellogg*. In fact, the Sixth Circuit only addressed the element of discontinued use (as did the district court in that case) and reversed the district court's decision granting summary judgment to the defendant based on the plaintiff's failure to produce evidence of non-use because genuine issues of material fact remained for trial on that element of abandonment. *Kellogg*, 2000 WL 674205, at *15.

Furthermore, "[a] showing of a prima facie case creates a rebuttable presumption that the trademark owner has abandoned the mark without intent to resume use." *Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1391 (Fed. Cir. 2010); *see Yellowbook Inc.*, 708 F.3d at 848 ("This six-year period of non-use puts [the trademark holder] well beyond the three-year statutory presumption for abandonment. 15 U.S.C. § 1127. At [that] point, the burden shifts to [the trademark holder] to demonstrate intent to resume use." (citing *Crash Dummy Movie*, 601 F.3d at 1391)). Although courts apply this burden-shifting standard at the summary judgment stage, a prima facie case of abandonment is all the plaintiff needs to plead at the motion to dismiss stage, and "[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127. Additionally, under the same statute, "[i]ntent not to resume [use of a trademark] may be inferred from circumstances." *Id.*

SBM has sufficiently alleged circumstances from which the Court can plausibly infer that Scotts discontinued its use of the three marks and intended not to resume their use. Scotts' alleged non-use of the marks for at least seven continuous years, which is more than the three-year minimum that constitutes prima facie evidence of abandonment. Without countervailing evidence to assess at this early stage in the case, those facts are sufficient to plead a prima facie case of abandonment and to raise an inference of Scotts' intent not to resume.

Therefore, the Court **DENIES** Scotts' Motion to Dismiss as to Counts II, IV, and V, and those counterclaims may continue.

## IV. Scotts' Motion to Strike SBM's Affirmative Defenses

In SBM's answer to Scotts' Second Amended Complaint (ECF No. 44), SBM asserted thirty-two affirmative defenses. (ECF No. 67, PageID 1443–46.) Scotts moved to strike eleven of SBM's affirmative defenses: its defense that Scotts fails to state a claim for relief (First Affirmative

16

Defense), eight defenses stating that Scotts lacks statutory standing (Second through Ninth Affirmative Defenses), and two defenses regarding the availability of damages under the Copyright Act (Twenty-first and Twenty-seventh Affirmative Defenses). (ECF No. 70, PageID 1636–37.)

This Court, upon motion or on its own, "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). "A motion to strike should be granted if 'it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings.'" *Id.* (quoting *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991)).

### A. SBM's First Affirmative Defense

SBM previously moved to dismiss seven out of Scotts' fourteen claims against it under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 45.) The Court dismissed two of Scotts' seven claims that were raised in SBM's motion to dismiss, leaving five claims raised in that motion remaining, plus seven more claims that SBM did not include in its motion to dismiss, for a total of twelve claims. *Scotts Co. LLC*, 749 F. Supp. 3d at 881–82.

Under Federal Rule of Civil Procedure 12(g)(2), "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Scotts argues SBM could have challenged any of Scotts' fourteen claims in its motion to dismiss and that, because SBM only moved to dismiss seven of them, SBM is now barred under Rule

12(g)(2) from again moving to dismiss any of its twelve remaining claims under Rule 12(b)(6). (ECF No. 70, PageID 1636.) SBM argues that under Federal Rule of Civil Procedure 12(h)(2), it can move to dismiss any of Scotts' claims in a Rule 12(c) motion for judgment on the pleadings, at trial, or, in the Court's discretion, in a successive Rule 12(b)(6) motion. (ECF No. 74, PageID 2044–45.)

The possibility that SBM may move for judgment on the pleadings or at trial to dismiss for failure to state a claim regarding Scotts' remaining claims is not relevant to SBM's first affirmative defense, which reserves a right to move to dismiss under Rule 12(b)(6) only. But Scotts has not shown that SBM could plead no facts that would allow SBM to file a successive motion to dismiss for failure to state a claim under that rule. Although the restrictions of Rule 12(g)(2) apply to motions to dismiss for failure to state a claim, the Parties do not cite Sixth Circuit precedent on whether a district court may apply the rule in its discretion to allow a successive motion to dismiss. *See Novo Nordisk, Inc. v. DCA Pharmacy*, 745 F. Supp. 3d 626, 631 (M.D. Tenn. 2024) (noting that some circuit courts, not necessarily including the Sixth Circuit Court of Appeals, have "expressed a willingness to 'forgive' a district court's choice to consider a late-filed Rule 12(b)(6) motion").

The Court declines to say that, as a matter of law, no circumstances exist that would allow SBM to file a successive motion to dismiss for failure to state a claim under Rule 12(b)(6). Scotts is not prejudiced by allowing SBM to maintain its first affirmative defense because if SBM files a successive motion to dismiss under Rule 12(b)(6), Scotts may argue that the motion is barred under Rule 12(g)(2), and that argument could prove successful. The Court **DENIES** Scotts' Motion to Strike as to SBM's First Affirmative Defense.

### B.  SBM's Second through Ninth Affirmative Defenses

Although the Court has identified the two Plaintiffs in this case together as "Scotts" throughout this Opinion and Order, the Court separates them for the purposes of this section, only because the distinction is relevant to this part of Plaintiffs' Motion to Strike.

SBM asserts seven affirmative defenses that Plaintiff The Scotts Company LLC ("Scotts LLC") lacks statutory standing against SBM under 15 U.S.C. § 1114 to assert the trademark infringement claim (Count I; ECF No. 44, ¶¶ 88–96) in Plaintiffs' Second Amended Complaint and one affirmative defense that Scotts LLC lacks statutory standing under 15 U.S.C. § 1125(c) to assert the trademark dilution claim (Count III; ECF No. 44, ¶¶ 102–07). (ECF No. 67, PageID 1444.) Plaintiffs move to strike these defenses because standing is not an affirmative defense and because the Second Amended Complaint refers to Plaintiff OMS Investments, Inc. ("OMS") as the sole claimant for Counts I and III. (ECF No. 70, PageID 1636; ECF No. 77, PageID 2060–61.)

"Standing is not an affirmative defense that must be raised at risk of forfeiture. Instead, it is a qualifying hurdle that plaintiffs must satisfy even if raised *sua sponte* by the court." *Edison Brewing Co. LLC v. Gourmet Fresh LLC*, No. 2:21-cv-876, 2022 WL 899695, at *4 (S.D. Ohio Mar. 28, 2022) (quoting *Cmty. First Bank v. Nat'l Credit Union Admin.*, 41 F.3d 1050, 1053 (6th Cir. 1994)). Plaintiffs' Second Amended Complaint unambiguously identifies OMS as the Plaintiff who holds the registration to the trademarks at issue and as the claimant for Counts I and III. Accordingly, even if standing could be raised as an affirmative defense, SBM's assertion that Scotts LLC lacks standing is moot because Scotts LLC does not raise trademark infringement claims. Only OMS brings those claims, and SBM does not challenge OMS's standing.

The Court **GRANTS** Scotts' Motion to Strike as to SBM's second through ninth affirmative defenses.

### C. SBM's Twenty-First and Twenty-Seventh Affirmative Defenses

In its twenty-first and twenty-seventh affirmative defenses, SBM asserts that Scotts is barred from recovering statutory damages and attorney's fees relating to Counts XI and XII (both copyright infringement claims) because any alleged infringement occurred before the effective date of Scotts' copyright registrations. (ECF No. 67, PageID 1445–46.)

Under 17 U.S.C. § 412, a district court may not award statutory damages or attorney's fees for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2); *see Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274, 281 (6th Cir. 1988). Scotts argues the Court should strike these defenses because they relate to the calculation of damages and are not affirmative defenses. (ECF No. 70, PageID 1637; ECF No. 77, PageID 2061–62.)

"An affirmative defense raises matters extraneous to the plaintiff's *prima facie* case," but defenses that "negate an element of the plaintiff's *prima facie* case . . . are excluded from the definition of affirmative defense in Fed. R. Civ. P. 8(c)." *Szappan v. Meder*, No. 22-1551, 2023 WL 4760715, at *1 (6th Cir. July 26, 2023) (quoting *Ford Motor Co. v. Transp. Indem. Co.*, 795 F.2d 538, 546 (6th Cir. 1986)). In addition to the affirmative defenses listed under Federal Rule of Civil Procedure 8(c), courts identify affirmative defenses based on the "fairness of allowing the defendant to assert the defense; if permitting the defendant to interpose the defense will force the plaintiff to perform additional discovery or develop new legal theories, these considerations will militate heavily in favor of terming the defense affirmative." *Ford Motor Co.*, 795 F.2d at 546.

"A plausible claim for copyright infringement must allege facts demonstrating (1) ownership of a copyright, and (2) copying of that copyright by the defendant." *Scotts Co. LLC*,

749 F. Supp. 3d at 879 (citing *Halper v. Sony/ATV Music Publ'g, LLC*, No. 18-5915, 2019 WL 994524, at *2 (6th Cir. Feb. 15, 2019)). Demonstrating that Scotts is ineligible for statutory damages or attorney's fees under 17 U.S.C. § 412(2) requires specific facts about the effective date of the copyright registration that a plaintiff need not plead to allege a prima facie case of copyright infringement. Accordingly, the Court construes a defense raised under 17 U.S.C. § 412(2) as an affirmative defense, or at least as "akin to an affirmative defense." *Sullivan v. Flora, Inc.*, 936 F.3d 562, 573 (7th Cir. 2019) ("[17 U.S.C.] § 412 operates akin to an affirmative defense that [the defendant] should have raised far earlier in the proceedings.").

Therefore, the Court **DENIES** Scotts' Motion to Strike as to SBM's twenty-first and twenty-seventh affirmative defenses.

## CONCLUSION

For the reasons stated in this Opinion and Order, the Court **GRANTS in part and DENIES in part** Plaintiffs' Motion to Dismiss for Failure to State a Claim of Defendant-Counterplaintiff's First Amended Counterclaims. (ECF No. 78.) The Court **DISMISSES** Defendant's counterclaims against Plaintiffs for cancellation of Plaintiffs' trademarks based on fraud (Counts I and III). Defendant's counterclaims for cancellation of Plaintiffs' trademarks based on abandonment (Counts II, IV, and V) may continue.

The Court **GRANTS in part and DENIES in part** Plaintiffs' Motion to Strike Affirmative Defenses. (ECF No. 70.) The Court **STRIKES** Defendant's second through ninth affirmative defenses regarding standing. The Court **DENIES as moot** Plaintiffs' Motion to Dismiss Counterclaims. (ECF No. 70.)

This case remains open.

**IT IS SO ORDERED.**

21

**9/16/2025**                                  **s/Edmund A. Sargus, Jr.**
**DATE**                                           **EDMUND A. SARGUS, JR.**
                                                            **UNITED STATES DISTRICT JUDGE**